IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRENDA KAY PFEIFFER,

Plaintiff,

v.

MARGARET SPELLINGS, Secretary of Education, et al.,

Defendants.

Case No. 1:07-cv-00522
(Judge Sullivan)

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56(b) of the Federal Rules of Civil Procedure and Local Civil Rule 7, defendants Margaret Spellings (the "Secretary"), the United States Department of Education (the "Department of Education"), and the United States of America respectfully move this Court to enter summary judgment in their favor and against the plaintiff, Brenda Kay Pfeiffer ("Dr. Pfeiffer"), upon the ground that no genuine issue as to any material fact exists and that defendants are entitled to judgment as a matter of law.

Further, in the event the Court certifies a class pursuant to plaintiff's request, see Complaint ¶¶ 28-35 and Prayer for Relief (Mar. 19, 2007) (Dkt. No. 1), notwithstanding any opposition defendants may submit to plaintiff's request, defendants further move this Court to enter summary judgment in their favor and against any class certified by this Court upon the ground that no genuine issue as to any material fact exists and that defendants are entitled to judgment as a matter of law.

In support of this motion, defendants rely upon the pleadings, the following statement of

points and authorities, and defendants' statement of material facts as to which there are no genuine issues to be tried (filed contemporaneously with this motion).

STATEMENT OF THE ISSUE

Whether the promissory notes executed by Dr. Pfeiffer contractually authorized defendants to capitalize the amount of interest that accrued during the period between defendants' receipt of Dr. Pfeiffer's June payment and June 30th for those years when Dr. Pfeiffer's loan was in a "Negative-Amortization" condition under the Income Contingent Repayment Plan.

STATEMENT OF THE CASE

I. Nature of the Case

This is a breach of contract action commenced by Dr. Pfeiffer, who has borrowed money for student loans under the William D. Ford Federal Direct Loan Program ("Direct Loan Program"). In her complaint, Dr. Pfeiffer challenges defendants' interest capitalization practices for a subset of direct student loan borrowers, as more fully described below.

A. The William D. Ford Federal Direct Loan Program

The Federal Direct Student Loan Program was established by the Student Loan Reform Act of 1993, Pub. L. No. 103-66, Title IV, Subtitle A, 107 Stat. 340, current version codified at 20 U.S.C. § 1087a et. seq. This legislation "[c]reate[d] a new direct loan program to take the place of the [then-]existing guaranteed student loan program." H.R. Rep. No. 103-111, at 106, reprinted in 1993 U.S.C.C.A.N. 378, 474. One of the key principles of this reformative legislation was the

> focus on the "back end" of the system, that is, repayment of loans

> by student borrowers or their parents. In this regard, the [Federal Direct Student Loan Program] would provide for a variety of flexible repayment plans – including fixed, extended, graduated, and income-contingent schedules. Borrowers would choose the repayment option best suited to their individual needs.

H.R. Rep. No. 103-111, at 107, reprinted in 1993 U.S.C.C.A.N. 378, 475. The following year, the Federal Direct Student Loan Program was renamed the William D. Ford Federal Direct Loan Program. See Improving America's Schools Act of 1994, Pub. L. No. 103-382, § 358A, 108 Stat. 3518, 3968, codified at 20 U.S.C. § 1087a.

B. Dr. Pfeiffer's Promissory Notes Executed in 1997

During 1997, Dr. Pfeiffer executed two variable interest rate promissory notes for Federal Direct Consolidation Loans under the Direct Loan Program.[1] The two promissory notes included the following representations within a section captioned "Promise to Pay":

> I understand that this is a Promissory Note. I will not sign this Promissory Note before reading it, including the text on the reverse side, even if I am advised not to read the Promissory Note. . . . My signature certifies that I have read, understand, and agree, to the terms and conditions of this Promissory Note, including the Borrower Certification and Authorization printed on the reverse side and the accompanying Borrower's Rights and Responsibilities.

Dr. Pfeiffer has confirmed that she read, understood, and agreed to all of the terms and conditions of the 1997 promissory notes.

The reverse side of the two promissory notes, referenced in the "Promise to Pay" section

---

[1] The Federal Direct Consolidation Loan Program is one of four program components of the Direct Loan Program. The other programs are the Federal Direct Stafford/Ford Loan Program, the Federal Direct Unsubsidized Stafford/Ford Loan Program, and the Federal Direct PLUS Program. 34 C.F.R. § 685.100(a). As the name implies, the Federal Direct Consolidation Loan Program "provides loans to borrowers to consolidate certain Federal educational loans." 34 C.F.R. § 685.100(a)(4).

quoted above, began with the following statement:

> Governing Law and Notices
>
> This Promissory Note (note) applies to Federal Direct Consolidation Loans (Direct Consolidation Loans). In this note, the Higher Education Act of 1965, as amended, 20 U.S.C. 1070 et seq. and applicable U.S. Department of Education (ED) regulations are referred to as "the Act." The terms of this note will be interpreted according to the Act and other applicable federal statutes and regulations.

C. The Income Contingent Repayment Plan and Applicable Department of Education Regulations

When Dr. Pfeiffer executed her two promissory notes in 1997, she elected to repay them under the Income Contingent Repayment ("ICR") Plan.[2] As the name of this plan implies, the ICR Plan provides a borrower with the option of having his or her scheduled monthly payment determined based primarily upon the borrower's Adjusted Gross Income. See 34 C.F.R. § 685.209(a) ("Repayment amount calculation"). Moreover, under the ICR Plan, the maximum repayment period is twenty-five years, and if the borrower has not repaid his or her loan at the end of the twenty-five year repayment period, the Secretary cancels the unpaid balance of the loan, i.e., the debt is forgiven. 34 C.F.R. § 685.209(c)(4)(i), (iv).

Because the ICR Plan provides that scheduled monthly payments are determined based primarily upon a borrower's Adjusted Gross Income – not the amount of his or her loan, as would be the case in "traditional" repayment plans – a borrower's scheduled monthly payment may be less than the amount of interest that accrues on the loan. In those circumstances, the

---

[2] The Direct Loan Program offers borrowers a choice of up to five repayment plans: Standard, Extended, Graduated, Income Contingent, and Alternative. See 34 C.F.R. § 685.208.

Secretary may capitalize the unpaid interest pursuant to another Department of Education regulation, which provides:

> The Secretary may add unpaid accrued interest to the borrower's unpaid principal balance. This increase in the principal balance of a loan is called "capitalization."

34 C.F.R. § 685.202(b)(1). Because this process increases the outstanding principal, it is often referred to as "negative amortization." The regulation further states:

> Except as provided in [three non-applicable subsections], the Secretary annually capitalizes unpaid interest when the borrower is paying under the . . . income contingent repayment plan[] and the borrower's scheduled payments do not cover the interest that has accrued on the loan.

34 C.F.R. § 685.202(b)(4).[3]

D. Dr. Pfeiffer's Promissory Note Executed in 2001

In November 2001, Dr. Pfeiffer executed a new promissory note for the purpose of "locking in" a fixed interest rate for her loan. The 2001 promissory note included virtually identical representations to those contained in the two 1997 variable interest rate promissory notes executed by Dr. Pfeiffer. Specifically, in the section captioned "Promise to Pay," Dr.

---

[3] The Department of Education's regulations place a "10 percent" ceiling on the amount of interest that may be capitalized:

> Limitation of capitalization of interest. If the amount of a borrower's monthly payment is less than the accrued interest, the unpaid interest is capitalized until the outstanding principal amount is ten percent greater than the original principal amount. After the outstanding principal amount is ten percent greater than the original amount, interest continues to accrue but is not capitalized. . . .

34 C.F.R. § 685.209(c)(5).

Pfeiffer confirmed:

> I understand that this is a Promissory Note. I will not sign this note before reading it, including the text on the reverse side, even if I am advised not to read the note. . . . My signature certifies that I have read, understand, and agree, to the terms and conditions of this Promissory Note, including the Borrower Certification and Authorization printed on the reverse side and the accompanying Borrower's Rights and Responsibilities.[4]

Moreover, like the 1997 promissory notes, the November 2001 promissory note included the following statement on the reverse side

> Governing Law and Notices
>
> This Promissory Note (note) applies to Federal Direct Consolidation Loans (Direct Consolidation Loans). In this note, the Higher Education Act of 1965, as amended, 20 U.S.C. 1070 et seq. and applicable U.S. Department of Education (ED) regulations are referred to as "the Act." The terms of this note will be interpreted according to the Act and other applicable federal statutes and regulations.

As was the case in 1997, when Dr. Pfeiffer executed her promissory note in 2001, she elected to repay it under the ICR Plan, and her scheduled monthly payments were determined primarily based upon her Adjusted Gross Income.

E. Defendants Capitalize Unpaid Interest on Dr. Pfeiffer's Loan as of June 30, 2002; June 30, 2004; and June 30, 2005

Pursuant to the ICR Plan, Dr. Pfeiffer's scheduled monthly payments under the 2001

---

4 The only difference between the language in the 1997 promissory notes and the language in the November 2001 promissory note was that the second sentence of the 1997 promissory notes referred to "Promissory Note," while the second sentence of the 2001 promissory note simply referred to "note."

promissory note were determined in accordance with 34 C.F.R. § 685.209(a),[5] and for some, but not all of the years that followed, the application of 34 C.F.R. § 685.209(a) resulted in Dr. Pfeiffer having scheduled monthly payments which were less than the amounts of interest that accrued on her loan. Specifically, Dr. Pfeiffer's monthly scheduled payments were less than the amount of interest that accrued on her loan in the years ending June 30, 2002; June 30, 2004; and June 30, 2005.[6] Thus, in those years, Dr. Pfeiffer was not contractually required to make payments that covered the amount of interest accruing on her loan, and because her monthly scheduled payments were less than the amounts of monthly interest accruing on her loan, Dr. Pfeiffer's loan was designated as being in a "Negative-Amortization" condition for those years. In accordance with 34 C.F.R § 685.202(b)(1) and (4), defendants capitalized any unpaid interest as of June 30th of those years.

Defendants' determination as to the amount of interest to capitalize as of June 30th begins with allocating each payment received from a borrower between accrued interest and principal reduction. Interest accrues on a daily basis, and when a borrower's payment is received, the payment is applied, first, to pay interest that has accrued since receipt of the

---

[5] Dr. Pfeiffer's complaint does not challenge defendants' interest capitalization practices with regard to her 1997 promissory notes and, accordingly, this Statement of the Case does not discuss interest capitalization under those promissory notes. Defendants note, however, that Dr. Pfeiffer's scheduled monthly payments under the 1997 promissory notes similarly were determined in accordance with 34 C.F.R. § 685.209(a).

[6] Dr. Pfeiffer's scheduled monthly payments exceeded the amounts of interest that accrued on her loan for the years ending June 30, 2003, and June 30, 2006. Further, while the year ending June 30, 2007, concluded after the filing of the complaint and, therefore, was not a subject of the allegations in the complaint, defendants note that Dr. Pfeiffer's scheduled payments exceeded the amount of interest that accrued on her loan for the year ending June 30, 2007.

borrower's previous payment.[7] 34 C.F.R. § 685.211(a)(1). If the amount actually received is sufficient to pay the entire amount of interest that has accrued, any amount in excess of accrued interest is applied to reduce the outstanding principal balance. Id.

During the three years that Dr. Pfeiffer's loan was in a Negative-Amortization condition, she actually made payments that exceeded her scheduled monthly amounts, and defendants do not dispute that during those periods, Dr. Pfeiffer's actual payments exceeded the amounts of interest that had accrued as of the receipt date of the payments. Accordingly, during those years and consistent with applicable regulations, defendants applied Dr. Pfeiffer's payments, first, to pay all interest that had accrued as of the receipt date of her payment and, second, to reduce the amount of her outstanding principal.

As noted above, and as Dr. Pfeiffer has conceded, interest accrued on a daily basis, including during the period between the receipt date of Dr. Pfeiffer's June payment and the June 30th that followed shortly thereafter. The following summarizes the key events at issue in this case:

- In June 2002, Dr. Pfeiffer's payment was received on June 14, 2002, and that payment was applied to accrued interest and to reduce Dr. Pfeiffer's principal balance. Thereafter, interest accrued on Dr. Pfeiffer's loan for the period of June 15, 2002, to June 30, 2002, and the amount of that accrued interest was unpaid as of June 30, 2002.

- In June 2004, Dr. Pfeiffer's payment was received on June 21, 2004, and that payment was applied to accrued interest and to reduce Dr. Pfeiffer's principal balance. Thereafter, interest accrued on Dr. Pfeiffer's loan for the period of June 22, 2004, to June 30, 2004, and the amount of that accrued interest was unpaid as of June 30, 2004.

---

[7] Although not at issue in this case, if a borrower has been assessed charges or defendants have incurred collection costs, the Secretary applies payments to such charges and costs before applying a payment to accrued interest. 34 C.F.R. § 685.211(a)(1).

- In June 2005, Dr. Pfeiffer's payment was received on June 9, 2005, and that payment was applied to accrued interest and to reduce Dr. Pfeiffer's principal balance. Thereafter, interest accrued on Dr. Pfeiffer's loan for the period of June 10, 2005, to June 30, 2005, and the amount of that accrued interest was unpaid as of June 30, 2005.

As provided by 34 C.F.R. § 685.202(b)(4), the Secretary annually capitalized the amounts of Dr. Pfeiffer's unpaid interest as of June 30, 2002; June 30, 2004; and June 30, 2005, and it is the Secretary's capitalization of interest for these three periods – June 15-30, 2002; June 22-30, 2004; and June 10-30, 2005 – that Dr. Pfeiffer has challenged in her complaint.

II. Statement Of The Facts

Defendants incorporate, as their statement of facts, the facts stated in Defendants' Statement of Material Facts as to Which There Are No Genuine Issues to Be Tried, which has been filed contemporaneously with Defendants' Motion for Summary Judgment.

ARGUMENT

Defendants' practice of capitalizing the interest that accrued on Dr. Pfeiffer's loan, when it was in a Negative-Amortization condition, was expressly authorized by the terms of the promissory notes executed by Dr. Pfeiffer. Dr. Pfeiffer confirmed that when she executed her promissory notes, she read, understood, and agreed to all of the terms and conditions of the promissory notes, including the promissory notes' provision that the notes would be interpreted according to the Higher Education Act of 1965, as amended, and applicable regulations promulgated by the Department of Education.

In this regard, two subparagraphs of a Department of Education regulation are controlling. First, the practice of capitalization is both defined and expressly authorized at 34

C.F.R. § 685.202(b)(1). Second, the annual capitalization of unpaid interest for borrowers such as Dr. Pfeiffer – the practice about which she complains – is expressly described in 34 C.F.R. § 685.202(b)(4), and the terms of that subparagraph confirm that this practice is undertaken by the Secretary for ICR borrowers such as Dr. Pfeiffer, whose monthly scheduled payments were insufficient to cover the interest that has accrued on their loans.

Thus, these two subparagraphs of 34 C.F.R. § 685.202(b) expressly authorize the practice of which Dr. Pfeiffer's complains, and this regulation undeniably was incorporated by reference in Dr. Pfeiffer's promissory notes. As a matter of law, Dr. Pfeiffer's complaint that defendants have breached their contract with her is without merit and, accordingly, defendants are entitled to summary judgment.

I. Summary Judgment Is Appropriate In This Case

The standard for granting summary judgment is well-established:

> Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Feirson v. District of Columbia, 506 F.3d 1063, 1066 (D.C. Cir. 2007). In this case, there can be no serious dispute that Dr. Pfeiffer's promissory notes incorporated by reference the Department of Education regulation governing and expressly authorizing the capitalization of unpaid interest on her loan when it was designated as being in a Negative-Amortization condition, i.e., as of June 30, 2002; June 30, 2004; and June 30, 2005. Accordingly, defendants are entitled to

summary judgment because, as a matter of law, defendants have not breached their contract with Dr. Pfeiffer.

II. Defendants are Entitled to Summary Judgment Because Dr. Pfeiffer's Promissory Notes Expressly Authorized the Capitalization of Interest Not Paid By Her as of June 30, 2002; June 30, 2004; and June 30, 2005

At the outset, there should be no serious dispute that Dr. Pfeiffer's loan was properly designated as being in a Negative-Amortization condition as of June 30, 2002; June 30, 2004; and June 30, 2005. At those times, Dr. Pfeiffer's scheduled monthly payments were less than the monthly amounts of interest that accrued on her loan,[8] and her loan was subject to the capitalization practice both authorized and expressly described in 34 C.F.R. § 685.202(b)(1) and (4). See, e.g., United States ex rel. Department of Labor v. Insurance Company of North America, 131 F.3d 1037, 1042 (D.C. Cir. 1997) (in construing bond that referred to "applicable regulations," court holds that "[w]hen a contract incorporates a regulation by reference, that regulation becomes a part of the contract for the indicated purposes as if the words of that regulation were set out in full in the contract") (citations omitted).

In 2002, 2003, and 2005, Dr. Pfeiffer made payments in June, prior to June 30th, and, again, there can be no serious dispute that interest both accrued after receipt of her June payments and that Dr. Pfeiffer was obliged to pay that interest. Indeed, Dr. Pfeiffer conceded these points when she was deposed in December 2007:

---

[8] Because her scheduled monthly payments exceeded the monthly amounts of interest that accrued on her loans as of June 30, 2003, and June 30, 2006, Dr. Pfeiffer's loan was not designated as being in a Negative-Amortization condition at those times. This is the reason the Secretary did not capitalize unpaid accrued interest in 2003 and 2006, as noted in Dr. Pfeiffer's complaint. See Complaint ¶¶ 19, 24.

Q. . . . What is your understanding as to how often interest accrues or what period of time is used for the accrual of interest on your note?

A. My interest accrues daily.

Q. That means each day a calculation can be made as to how much additional interest is owed on the note even if it isn't scheduled for payment then, is that correct?

A. Yes.

Appendix ("App.") 20-21 (Pfeiffer Deposition at 66:20-67:3).[9] Moreover, Dr. Pfeiffer conceded that, as a matter of "common sense," she is obligated to pay the interest that accrues each day, even if it is not scheduled for payment on the day it accrues:

Q. And do you have an understanding as to whether you owe that additional amount that accrues on a daily basis even if it's not scheduled for payment until, say, the 21st of month?

MR. BRYDEN: To the extent you're seeking a conclusion, I object, but you can answer the question.

THE WITNESS: Yes. I owe the interest that's accruing. Yeah. That's common sense, yes.

App. 21 (Pfeiffer Deposition at 67:4-13).[10]

---

[9] "Appendix" refers to the Appendix to Defendants' Motion for Summary Judgment.

[10] Dr. Pfeiffer has long understood, as well, that when defendants receive her payments, those payments are applied, first, to interest that has accrued as of the date her payment is received and, second, to principal reduction:

Q. You had a conversation with [a Department of Education representative] named Valentino --

A. Yes.

Q. -- sometime in 2002, didn't you?

The Secretary's authority to capitalize unpaid accrued interest is expressly disclosed in the following regulation, incorporated by reference into Dr. Pfeiffer's promissory notes:

> The Secretary may add unpaid accrued interest to the borrower's unpaid principal balance. This increase in the principal balance of a loan is called "capitalization."

34 C.F.R. § 685.202(b)(1). The regulation further discloses that the Secretary will capitalize unpaid interest for ICR borrowers whose loans are in a Negative-Amortization condition, such as Dr. Pfeiffer:

> Except as provided in [three non-applicable sections], the Secretary annually capitalizes unpaid interest when the borrower is paying under the alternative or income contingent repayment plans and the borrower's scheduled payments do not cover the interest that has accrued on the loan.

34 C.F.R. § 685.202(b)(4) (emphasis added).

---

> A. Yes.
>
> Q. And didn't he go through the process of explaining how interest is calculated on a daily basis?
>
> A. Yes.
>
> Q. And during that conversation, didn't he -- wasn't he able to recompute the allocation of principal and interest in various payments?
>
> A. Yes, I believe he did
>
> Q. So based on your conversation with Valentino back in 2002, you understood that Education was making an allocation of principal and interest based on the date that your payment was received; right?
>
> A. Yes.

App. 22-23 (Pfeiffer Deposition at 112:20-113:13).

As previously explained, in June 2002, Dr. Pfeiffer's payment was received on June 14, 2002, and following application of that payment to accrued interest and principal, interest accrued on Dr. Pfeiffer's loan for the period of June 15, 2002, to June 30, 2002. The related capitalization of interest, described in Dr. Pfeiffer's complaint, Complaint ¶ 17, was expressly authorized by 34 C.F.R. § 685.202 (which was incorporated by reference in Dr. Pfeiffer's 2001 promissory note).

Similarly, in June 2004, Dr. Pfeiffer's payment was received on June 21, 2004, and following application of that payment to accrued interest and principal, interest accrued on Dr. Pfeiffer's loan for the period of June 22, 2004, to June 30, 2004. Again, the related capitalization of interest, described in Dr. Pfeiffer's complaint, Complaint ¶ 20, was expressly authorized by 34 C.F.R. § 685.202.

Finally, in June 2005, Dr. Pfeiffer's payment was received on June 9, 2005, and following application of that payment to accrued interest and principal, interest accrued on Dr. Pfeiffer's loan for the period of June 10, 2005, to June 30, 2005. As before, the related capitalization of interest, described in Dr. Pfeiffer's complaint, Complaint ¶ 22, was expressly authorized by 34 C.F.R. § 685.202.

Thus, the three instances of interest capitalization cited in Dr. Pfeiffer's complaint – covering the periods of June 15-30, 2002; June 22-30, 2004; and June 10-30, 2005 – were all expressly authorized by the terms of her 2001 promissory note.[11] The gravamen underlying her

---

[11] Dr. Pfeiffer's complaint also refers to the capitalization of interest on her 1997 loans as of June 30, 1998 and June 30, 1999, Complaint ¶¶ 11-12, but in light of the six-year statute of limitations set forth at 28 U.S.C. § 2401(a), her Complaint apparently only seeks to challenge the practice beginning on March 19, 2001. See Complaint ¶ 28. As a result, we have not specifically addressed the interest capitalization on Dr. Pfeiffer's loans in June 1998 and June

complaint is without legal merit; rather than being a breach of contract, the interest capitalization practice was expressly in compliance with Dr. Pfeiffer's contract. Accordingly, defendants are entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, defendants Margaret Spellings, the United States Department of Education, and the United States of America respectfully request that this Court enter summary judgment in defendants' favor and against the plaintiff, Dr. Pfeiffer.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

J. CHRISTOPHER KOHN
Director

ROBERT E. KIRSCHMAN, JR.
Deputy Director

---

1999, but in the event Dr. Pfeiffer seeks to challenge the practices in those years, as well, we note that the foregoing arguments would apply equally to defendants' practices in 1998 and 1999.

/s/ John Warshawsky

______________________________________

JOHN WARSHAWSKY (D.C. Bar No. 417170)
Senior Trial Counsel
CHRISTIAN J. GROSTIC
Trial Attorney
Commercial Litigation Branch
Civil Division
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044-0875
Telephone: (202) 307-0010
Facsimile: (202) 305-4933
Attorneys for Defendants

January 31, 2008

Certificate of Service by ECF

I hereby certify that, on January 31, 2008, the foregoing "DEFENDANTS' MOTION FOR SUMMARY JUDGMENT" was filed electronically in the Court's Electronic Case Filing ("ECF") system. I understand that notice of this filing will be sent to all counsel by operation of the Court's ECF system and that parties may access this filing through the Court's system.

/s/ John Warshawsky
______________________________