IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRENDA KAY PFEIFFER, ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MARGARET SPELLINGS, Secretary of Education, ) <br>     et al., ) <br> ) <br>     Defendants. ) <br> ) | Case No. 1:07-cv-00522 <br> (Judge Sullivan) |

DEFENDANTS' STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE ARE NO GENUINE ISSUES TO BE TRIED

Pursuant to Local Civil Rule 7(h), defendants Margaret Spellings (the "Secretary"), the United States Department of Education (the "Department of Education"), and the United States of America respectfully submit the following statement of material facts as to which there are no genuine issues to be tried.

The 1997 Promissory Notes

1.    On July 15, 1997, the plaintiff, Brenda Kay Pfeiffer, ("Dr. Pfeiffer") executed a variable interest rate promissory note for a Federal Direct Consolidation Loan under the William D. Ford Federal Direct Loan Program. Complaint ¶ 9.

2.    On October 13, 1997, Dr. Pfeiffer executed a second variable interest rate promissory note for a Federal Direct Consolidation Loan under the William D. Ford Federal Direct Loan Program. Appendix ("App.") 9-10 (Pfeiffer Deposition at 14:16-15:6).[1]

---

[1]     "Appendix" refers to the Appendix for Defendants' Motion for Summary Judgment.

3.      Both the July 15, 1997 promissory note and the October 13, 1997 promissory note included the following representations within a section captioned "Promise to Pay":

> I understand that this is a Promissory Note. I will not sign this Promissory Note before reading it, including the text on the reverse side, even if I am advised not to read the Promissory Note. . . . My signature certifies that I have read, understand, and agree, to the terms and conditions of this Promissory Note, including the Borrower Certification and Authorization printed on the reverse side and the accompanying Borrower's Rights and Responsibilities.

App. 6-8 (Pfeiffer Deposition at 10:18-12:18); App. 24 (1997 Form Promissory Note at 1).

4.      Dr. Pfeiffer confirmed that she read, understood, and agreed to all of the terms and conditions of both the July 15, 1997 promissory note and the October 13, 1997 promissory note. App. 8 (Pfeiffer Deposition at 12:14-18).

5.      The reverse side of both the July 15, 1997 promissory note and the October 13, 1997 promissory note began with the following statement:

> Governing Law and Notices
>
> This Promissory Note (note) applies to Federal Direct Consolidation Loans (Direct Consolidation Loans). In this note, the Higher Education Act of 1965, as amended, 20 U.S.C. 1070 et seq. and applicable U.S. Department of Education (ED) regulations are referred to as "the Act." The terms of this note will be interpreted according to the Act and other applicable federal statutes and regulations.

App. 25 (1997 Form Promissory Note at 2).

6.      Dr. Pfeiffer elected to pay both the July 15, 1997 promissory note and the October 13, 1997 promissory note under the Income Contingent Repayment Plan. App. 15-17 (Pfeiffer Deposition at 32:21-34:8).

The 2001 Promissory Note

7.      On November 19, 2001, Dr. Pfeiffer executed a new promissory note for a Federal Direct Consolidation Loan under the William D. Ford Federal Direct Loan Program 2001 for the purpose of "locking in" a fixed interest rate for her loan. Complaint ¶ 14.

8.      The November 19, 2001 promissory note included the following representations within a section captioned "Promise to Pay":

> I understand that this is a Promissory Note. I will not sign this note before reading it, including the text on the reverse side, even if I am advised not to read the note. . . . My signature certifies that I have read, understand, and agree, to the terms and conditions of this Promissory Note, including the Borrower Certification and Authorization printed on the reverse side and the accompanying Borrower's Rights and Responsibilities.

App. 11, 14 (Pfeiffer Deposition at 23:7-24, 26:1-11); App. 29 (2001 Form Promissory Note at 3).

9.      Dr. Pfeiffer confirmed that she read, understood, and agreed to all of the terms and conditions of the November 19, 2001 promissory note. App. 11-14 (Pfeiffer Deposition at 23:7-26:18).

10.     The reverse side of the November 19, 2001 promissory note began with the following statement:

> Governing Law and Notices
>
> This Promissory Note (note) applies to Federal Direct Consolidation Loans (Direct Consolidation Loans). In this note, the Higher Education Act of 1965, as amended, 20 U.S.C. 1070 <u>et seq</u>. and applicable U.S. Department of Education (ED) regulations are referred to as "the Act." The terms of this note will be interpreted according to the Act and other applicable federal statutes and regulations.

App. 18-19 (Pfeiffer Deposition at 58:22-59:19); App. 30 (2001 Form Promissory Note at 4).

11.     Dr. Pfeiffer elected to pay the November 19, 2001 promissory note under the Income Contingent Repayment Plan.  App. 15-17 (Pfeiffer Deposition at 32:21-34:8); see App. 2 (Battle Declaration ¶¶ 4-5).

### Dr. Pfeiffer's Payment History

12.     As of June 30, 2002, Dr. Pfeiffer's scheduled monthly payment was less than the amount of monthly interest that accrued on her loan.  App. 2 (Battle Declaration ¶ 6).

13.     As of June 30, 2003, Dr. Pfeiffer's scheduled monthly payment was more than the amount of monthly interest that accrued on her loan.  App. 2 (Battle Declaration ¶ 7).

14.     As of June 30, 2004, Dr. Pfeiffer's scheduled monthly payment was less than the amount of monthly interest that accrued on her loan.  App. 3 (Battle Declaration ¶ 8).

15.     As of June 30, 2005, Dr. Pfeiffer's scheduled monthly payment was less than the amount of monthly interest that accrued on her loan.  App. 3 (Battle Declaration ¶ 9).

16.     As of June 30, 2006, Dr. Pfeiffer's scheduled monthly payment was more than the amount of monthly interest that accrued on her loan.  App. 3 (Battle Declaration ¶ 10).

17.     When a borrower's scheduled monthly payment is less than the amount of monthly interest that accrues on the borrower's loan, the loan is designated as being in a "Negative-Amortization" condition.  App. 3 (Battle Declaration ¶ 11).

18.     Because her scheduled monthly payments were less than the amounts of monthly interest that accrued on her loan as of June 30, 2002; June 30, 2004; and June 30, 2005, Dr. Pfeiffer's loan was designated as being in a "Negative-Amortization" condition for those periods.  App. 3 (Battle Declaration ¶ 12).

19.     Dr. Pfeiffer's loan was not designated as being in a "Negative-Amortization" condition as of June 30, 2003, and June 30, 2006, because her scheduled monthly payments were more than the amounts of monthly interest that accrued on her loan for those periods.  App. 3 (Battle Declaration ¶ 13).

Capitalization of Unpaid Interest on Dr. Pfeiffer's Loan

20.     As Dr. Pfeiffer conceded, interest accrued on a daily basis on Dr. Pfeiffer's loan. App. 20-21 (Pfeiffer Deposition at 66:20-67:3).

21.     Pursuant to 34 C.F.R. § 685.202(b)(1) and (4), the Secretary annually capitalizes all unpaid interest on a borrower's loan as of June 30th when the borrower's scheduled monthly payment is less than the amount of interest that accrues and the loan has been designated as being in a "Negative-Amortization" condition.  App. 3 (Battle Declaration ¶ 14).

22.     In June 2002, Dr. Pfeiffer's payment was received on June 14, 2002, and that payment was applied to accrued interest and to reduce Dr. Pfeiffer's principal balance.  Interest continued to accrue on Dr. Pfeiffer's loan for the period of June 15, 2002, to June 30, 2002, and the amount of that accrued interest was unpaid as of June 30, 2002.  The Secretary capitalized the amount of Dr. Pfeiffer's unpaid interest as of June 30, 2002, in accordance with applicable Department of Education regulations.  Complaint ¶ 17; App. 4 (Battle Declaration ¶¶ 14, 15-17).

23.     In June 2004, Dr. Pfeiffer's payment was received on June 21, 2004, and that payment was applied to accrued interest and to reduce Dr. Pfeiffer's principal balance.  Interest continued to accrue on Dr. Pfeiffer's loan for the period of June 22, 2004, to June 30, 2004, and the amount of that accrued interest was unpaid as of June 30, 2004.  The Secretary capitalized the amount of Dr. Pfeiffer's unpaid interest as of June 30, 2004, in accordance with applicable

Department of Education regulations.  Complaint ¶ 20; App. 4-5 (Battle Declaration ¶¶ 14, 19-21).

24.    In June 2005, Dr. Pfeiffer's payment was received on June 9, 2005, and that payment was applied to accrued interest and to reduce Dr. Pfeiffer's principal balance.  Interest continued to accrue on Dr. Pfeiffer's loan for the period of June 10, 2005, to June 30, 2005, and the amount of that accrued interest was unpaid as of June 30, 2005.  The Secretary capitalized the amount of Dr. Pfeiffer's unpaid interest as of June 30, 2005, in accordance with applicable Department of Education regulations.  Complaint ¶ 22; App. 5 (Battle Declaration ¶¶ 14, 22-24).

25.    Because Dr. Pfeiffer's loan was not designated as being in a Negative-Amortization condition as of June 30, 2003, or June 30, 2006, the Secretary did not capitalize unpaid interest as of those dates because applicable Department of Education regulations did not provide for capitalization of interest when Dr. Pfeiffer's scheduled monthly payments exceeded the amounts of interest that accrued on her loan.  Complaint ¶¶ 19, 24; App. 4, 5 (Battle Declaration ¶¶ 18, 25).

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

J. CHRISTOPHER KOHN
Director

ROBERT E. KIRSCHMAN, JR.
Deputy Director

/s/ John Warshawsky
_____
JOHN WARSHAWSKY (D.C. Bar No. 417170)
Senior Trial Counsel
CHRISTIAN J. GROSTIC
Trial Attorney
Commercial Litigation Branch
Civil Division
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044-0875
Telephone: (202) 307-0010
Facsimile: (202) 305-4933
Attorneys for Defendants

January 31, 2008

<u>Certificate of Service by ECF</u>

I hereby certify that, on January 31, 2008, the foregoing "DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE ARE NO GENUINE ISSUES TO BE TRIED MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT" was filed electronically in the Court's Electronic Case Filing ("ECF") system. I understand that notice of this filing will be sent to all counsel by operation of the Court's ECF system and that parties may access this filing through the Court's system.

/s/ John Warshawsky
_____