IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Brenda Kay Pfeiffer,<br><br>On behalf of herself and all others similarly situated,<br><br>*Plaintiff*,<br>v.<br><br>Margaret Spellings, in her official capacity as United States Secretary of Education, the United States Department of Education, and the United States of America,<br><br>*Defendants*. | Civil No. 1:07-cv-00522 (EGS)<br><br>CLASS ACTION |

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Brenda Pfeiffer ("Dr. Pfeiffer"), on behalf of herself and all others similarly situated, and pursuant to Fed. R. Civ. P. 56, hereby moves the Court for partial summary judgment with respect the claim for breach of contract against defendants Margaret Spellings, in her official capacity as United States Secretary of Education, the United States Department of Education, and the United States of America (collectively, "DOE"). In support of her motion, Dr. Pfeiffer states as follows:

1. The construction of a contract such as a form promissory note is a question of law which is appropriately decided by this Court on a motion for summary judgment.

2. The form promissory notes executed by Dr. Pfeiffer and the proposed class state that DOE may capitalize interest if the borrower does not pay the interest when it is due:

> Interest. Except for interest [DOE] does not charge me during an in-school, grace or deferment period, I agree to pay interest on the principal amount of my Direct Consolidation Loan from the date of disbursement until the loan is paid in full or

> discharged. [DOE] may add interest that accrues but is not paid when due to the unpaid principal balance of this loan, as provided under the [Higher Education Act of 1965, as amended, 20 U.S.C. 1070 *et seq*., and applicable Department of Education regulations]. This is called capitalization.

(emphasis added). The above-quoted provision is the only language in the form promissory note which addresses interest capitalization.

3. Notwithstanding the above language, DOE routinely capitalized interest before it was due. It did so for borrowers it considered negatively amortized who were repaying their loans under the Income Contingent Repayment Plan. For these borrowers, DOE capitalized accrued interest on June 30 each year, including interest accruing after the borrowers' June payment due date. The interest accruing after the borrowers' June payment due date, however, was not due until the borrowers' July payment due date. The capitalization of interest accruing after the borrowers' June payment date on June 30 each year constitutes a breach of the plain terms of the form promissory note.

4. In further support of her motion, Dr. Pfeiffer respectfully refers the Court to her accompanying statement of undisputed material facts, including exhibits attached thereto, and her memorandum in support of motion for partial summary judgment.

5. Pursuant to LCcR 7(f), Dr. Pfeiffer and the proposed plaintiff class respectfully request oral argument on this motion.

WHEREFORE, plaintiff Brenda Pfeiffer prays that the Court enter the following orders:

(1)      An order declaring that defendants' practice of capitalizing interest that accrues after each class member's June payment due date on June 30 each year constitutes a breach of the form promissory note;

(2)      An order enjoining defendants from continuing to capitalize interest before it is due;

(3)      An order directing the parties to meet to determine if the proper measure of damages may be agreed to by stipulation.

Dated: January 31, 2008

Respectfully submitted,

/s/ Steven M. Sprenger
Steven M. Sprenger (DC No. 418736)
SPRENGER & LANG, PLLC
1400 Eye Street, N.W.
Suite 500
Washington, DC 20005
(202) 265-8010

Daniel C. Bryden (*Pro Hac Vice*)
SPRENGER & LANG, PLLC
310 Fourth Avenue S.
Suite 600
Minneapolis, MN 55415
(612) 871-8910

*Attorneys for Plaintiff and the Class*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Brenda Kay Pfeiffer,<br><br>On behalf of herself and all others similarly situated,<br><br>*Plaintiff*,<br>v.<br><br>Margaret Spellings, in her official capacity as United States Secretary of Education, the United States Department of Education, and the United States of America,<br><br>*Defendants*. | Civil No. 1:07-cv-00522 (EGS)<br><br>CLASS ACTION |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Steven M. Sprenger (DC No. 418736)
SPRENGER & LANG, PLLC
1400 Eye Street, N.W., Suite 500
Washington, DC 20005
(202) 265-8010

Daniel C. Bryden (MN No. 302284 *Pro Hac Vice*)
SPRENGER & LANG, PLLC
310 Fourth Avenue S., Suite 600
Minneapolis, MN 55415
(612) 871-8910

*Attorneys for Plaintiff and the Class*

## TABLE OF AUTHORITIES

### Cases

*Biggs v. Wilson*,
1 F.3d 1537 (9th Cir. 1993) ........ 8

*Boeing v. United States*,
75 Fed. Cl. 34 (2007) ........ 4

*Capital City Mortgage v. Habana Village Art & Folklore, Inc.*,
747 A.2d 564 (D.C. App. 2000) ........ 4

*Dorocon, Inc. v. Burke*, No. 02-2556,
2004 U.S. Dist. LEXIS 29052 (D.D.C. Sept. 27, 2004) ........ 4

**Fort Sumter Tours, Inc. v. Babbitt*,
202 F.3d 349 (D.C. Cir. 2000) ........ 7

**Franconia Associates v. United States*,
536 U.S. 129 (2002) ........ 3, 4

*Harris v. Department of Veterans Affairs*,
142 F.3d 1463 (Fed. Cir. 1996) ........ 4

*Hartford Accident & Indemnity Co. v. Pro-Football, Inc.*,
127 F.3d 1111 (D.C. Cir. 1997) ........ 4

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
514 U.S. 52 ........ 7

*McAbee Construction, Inc. v. United States*,
97 F.3d 1431 (Fed. Cir. 1996) ........ 4

*McCarthy v. Bronson*,
500 U.S. 136 (1991) ........ 9

*Mesa Air Group v. Department of Transport*,
87 F.3d 498 (D.C. Cir. 1996) ........ 4, 5

*Mobil Oil Exploration & Producing Southeast, Inc. v. United States*,
530 U.S. 604 (2000) ........ 3, 4

*Motorola, Inc. v. United States*,
462 F. Supp. 2d 1367 (Ct. Int'l Trade 2006) ........ 8

*National RR Passenger Corp. v. Lexington Insurance Co.*,
445 F. Supp. 2d 37 (D.D.C. 2006) .................................................................... 4

*Priebe & Sons, Inc. v. United States*,
332 U.S. 407 (1947) .................................................................................... 4

**Shulman v. Voyou, L.L.C.*,
251 F. Supp. 2d 166 (D.D.C. 2003)................................................................... 8

*United States v. Insurance Co. of N. America*,
83 F.3d 1507 (D.C. Cir. 1996) ......................................................................... 7

*United States v. Mass. Housing Authority*,
456 F. Supp. 2d 46 (D.D.C. 2006) .................................................................... 5

**United States v. Seckinger*,
397 U.S. 203 (1970) .................................................................................... 4

*YRT Services Corp. v. United States*, 28 Fed. Cl. 366 (1993) ......................................... 7

**Federal Statutes and Regulations**

Higher Education Act of 1965,
20 U.S.C. § 1070 ........................................................................... 2, 16

Codes of Federal Regulation
34 C.F.R. § 685.102(b) ..................................................................... 9
34 C.F.R § 685.102(b)(2)..................................................................... 9
34 C.F.R § 685.102(b)(3)..................................................................... 9
34 C.F.R. § 685.202.......................................................................... 6
34 C.F.R. § 685.202(b) ...................................................................... 9
34 C.F.R. § 685.202(b)(1).................................................................... 9
34 C.F.R. § 685.202(b)(4)............................................................... 6, 7, 8

**Miscellaneous**

*Restatement of the Law (Second) of Contracts*, § 206 ........................................... 4, 5

**Roget's II, The New Thesaurus, Third Edition* (1995) ............................................... 8

## INTRODUCTION

Plaintiff Brenda Pfeiffer ("Dr. Pfeiffer"), a student loan borrower, brings this action against the United States Department of Education and other federal government defendants (collectively, "DOE") for breach of contract. She contends that DOE's interest capitalization practice with respect to borrowers who, like her and members of the proposed class,[1] have selected the Income Contingent Repayment Plan breaches the terms of the form promissory note governing their student loans. The plain terms of the note state that DOE may only capitalize interest that is "not paid when due." In direct violation of these plain terms, it is DOE's regular practice to capitalize accrued interest before that interest is due.[2] Accordingly, Dr. Pfeiffer and the plaintiff class are entitled to partial summary judgment with respect to DOE's liability for breach of contract.

## SUMMARY OF MATERIAL FACTS THAT ARE NOT IN DISPUTE

The material facts that are not in dispute are set forth in full in Plaintiff's Statement of Undisputed Material Facts ("Plaintiff's Statement of Facts") which accompanies this memorandum. In summary, individuals who obtain student loans from the United States Department of Education pursuant to the William D. Ford Direct Loan Program execute identical or substantially identical form promissory notes. Plaintiff's Statement of Facts at ¶¶ 1- 3.

The form promissory notes state that DOE may capitalize interest if the borrower does not pay the interest when it is due:

> Interest. Except for interest [DOE] does not charge me during an in-school, grace or deferment period, I agree to pay interest on the principal amount of my Direct

---

1 Dr. Pfeiffer has simultaneously filed a motion to certify this action as a class action.

2 Such premature interest capitalization has two adverse financial effects on student loan borrowers: first, it results in an immediate increase in the principal balance of the borrower's student loan; and, second, the borrower is required to pay interest on the additional principal balance over the term of the loan.

> Consolidation Loan from the date of disbursement until the loan is paid in full or discharged. [DOE] may add interest that accrues but is not paid when due to the unpaid principal balance of this loan, as provided under the [Higher Education Act of 1965, as amended, 20 U.S.C. 1070 *et seq*., and applicable Department of Education regulations]. This is called capitalization.

*Id.* at ¶ 4 (emphasis added). The above-quoted provision is the only language in the form promissory note that addresses interest capitalization. *Id.*

DOE assigns each borrower a monthly "due date" – that is, the day of the month by which the borrower's monthly loan payment must be received. *Id.* at ¶ 6. When DOE receives a payment on a student loan, it first applies that payment to any outstanding fees, then to accrued interest, and then to principal balance. *Id.* at ¶ 7. On each monthly due date, DOE bills the borrower for the interest that has accrued as of his or her payment due date. *Id.* Interest accruing *after* a borrower's monthly due date is not billed until the next monthly due date. *Id.*

Approximately half of the 600,000 borrowers who have elected to repay their loans under the Income Contingent Repayment Plan ("ICRP") are considered by DOE to be "negatively amortized." This means that the scheduled payment amount (i.e., the amount the borrower is required to pay each month) is less than the amount of interest accruing on the borrower's loan each month. *Id.* at ¶¶ 8-10. For all such negatively amortized borrowers, DOE capitalizes the borrower's accrued interest each year on June 30 and has done so since at least March 19, 2001. *Id.* at ¶ 11.

DOE capitalizes interest accrued through June 30 regardless of the borrower's monthly payment due date. *Id.* Thus, DOE capitalizes interest accruing *after* the borrower's June payment due date through June 30. *Id.* at ¶¶ 11-12. But the interest accruing after the borrowers' June payment due date is not billed to the borrower or otherwise expected to be paid,

i.e., is not due, until his or her July payment due date. *Id.* at ¶¶ 7, 12. Accordingly, DOE's undisputed practice is to capitalize interest prematurely.

Dr. Pfeiffer was subjected to the interest capitalization practice described above in 2002, 2004 and 2005. In addition, while Dr. Pfeiffer's scheduled payment amount led DOE to classify her loan as negatively amortized, her actual monthly payments on her loan in these years exceeded the amount of interest accruing on her loan. *Id.* at ¶¶ 16, 18, 20, 23, 24, 26. Nonetheless, on June 30 in each of these years, DOE capitalized the interest accruing on Dr. Pfeiffer's loan between her June payment date and June 30. *Id.* at ¶¶ 17, 22, 25.

These interest capitalizations occurred because DOE does not consider the borrower's *actual* payments when it determines whether to capitalize the borrower's interest. Instead, if the ICRP borrower's scheduled payments are insufficient to cover the interest accruing each month, DOE capitalizes interest on the borrower's loan even if the borrower's *actual* payments *are* sufficient to cover the interest accruing each month. *Id.* at ¶ 28. There are approximately 26,900 borrowers who, like Dr. Pfeiffer, were considered negatively amortized by DOE and whose actual payments exceeded the interest accruing on their loans each month. *Id.*

**LEGAL ARGUMENT**

In an action against the United States for breach of contract, courts do not look to a specific state's common law of contracts. Rather, courts apply general principles of contract law: "When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals." *Franconia Assocs. v. United States*, 536 U.S. 129, 141 (2002) (quoting *Mobil Oil Exploration & Producing Southeast, Inc. v. United States*, 530 U.S. 604, 607 (2000)). Accordingly, the Court should apply

"principles of general contract law." *Id.* at 141 (quoting *Priebe & Sons, Inc. v. United States*, 332 U.S. 407, 411 (1947)).

The starting point for contract interpretation is the plain language of the contract. *See Boeing v. United States*, 75 Fed. Cl. 34, 42 (2007); *Dorocon, Inc. v. Burke*, No. 02-2556, 2004 U.S. Dist LEXIS 29052, *89 (D.D.C. Sept. 27, 2004) (citing *Capital City Mortgage v. Habana Village Art & Folklore, Inc.*, 747 A.2d 564, 567 (D.C. App. 2000)). In reading the plain language of the contract, a court should "give the words of the agreement their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning." *Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1996); *see also Hartford Accident & Indem. Co. v. Pro-Football, Inc.*, 127 F.3d 1111, 1114 (D.C. Cir. 1997); *Nat'l RR Passenger Corp. v. Lexington Ins. Co.*, 445 F. Supp. 2d 37, 41 (D.D.C. 2006). A contract should be interpreted so that it "makes sense." *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996).

As set forth below, the plain terms of the form promissory note compel judgment in favor of Dr. Pfeiffer and the plaintiff class with respect to DOE's liability for breach of contract. To the extent that the Court finds that the note is ambiguous, however, it must construe it against DOE because it is the drafter of the note. *See United States v. Seckinger*, 397 U.S. 203, 216 (1970) (construing contract against government as drafter of contract, and noting "[t]his principle is appropriately accorded considerable emphasis in this case because of the Government's vast economic resources and stronger bargaining position in contract negotiations"); *Mesa Air Group v. Dep't of Transp.*, 87 F.3d 498, 506 (D.C. Cir. 1996) (where federal agency drafted contracts, such contracts would be construed against agency if ambiguous)(citing *Restatement of the Law (Second) Contracts*, § 206). No deference is due to DOE's interpretation of a contract to which

it is a party.  *Id.* at 503 (contracts that an agency is a party to are "subject to interpretation under the neutral principles of contract law").

Contract disputes such as this one are well-suited for resolution by summary judgment motions.  *See United States v. Mass. Housing Auth.*, 456 F. Supp. 2d 46, 55 (D.D.C. 2006) ("[w]hen a case turns on the meaning of an unambiguous contract, summary judgment is appropriate, because 'no citation of authority is necessary to establish the proposition that the construction of written instruments is a question of law for the court.'"; "[c]ontract interpretation is particularly suited to disposition by summary judgment.") (quotations and citations omitted). This is true whether the moving party is a plaintiff or defendant.

## I.   THE FORM PROMISSORY NOTE DOES NOT PERMIT THE CAPITALIZATION OF ACCRUED INTEREST THAT IS NOT YET DUE.

### A.   Only Accrued Interest That Has Not Been Paid When Due May Be Capitalized.

The form promissory note provides for interest capitalization only when a borrower fails to pay the interest on his or her loan as it becomes due.  The sole provision in the note that specifically addresses interest capitalization states, in relevant part: DOE "may add interest that accrues but is *not paid when due* to the unpaid principal balance of this loan." (emphasis added). The note does not identify any other circumstance under which interest may be capitalized. Accordingly, under the plain terms of the note, the only circumstance under which interest may be capitalized is when interest is not paid when due.

Notwithstanding this language in the promissory note, DOE capitalizes interest on June 30 each year for negatively amortized borrowers who have selected the ICRP, including Dr. Pfieffer, before it is due.  This capitalization includes the interest that accrues *after* the borrower's June payment date.  But borrowers are not billed for or expected to pay the interest accruing *after* their

June payment due date until their July payment due date. In other words, the interest accruing after a borrower's June due date is not due until his or her July payment due date. By capitalizing this interest on June 30 each year, DOE has capitalized interest before it is due in breach of the plain terms of the form promissory note.

**B. 34 C.F.R. § 685.202(b)(4) Does Not Permit the Premature Capitalization of Accrued Interest.**

As set forth above, the form promissory notes state in part that DOE "may add interest that accrues but is not paid when due to the unpaid principal balance of this loan, as provided under the [Higher Education Act of 1965, as amended, 20 U.S.C. 1070 *et seq*., and applicable Department of Education regulations]." Plaintiff's Statement of Facts at ¶ 4 (emphasis added).

The above-quoted language in the note referring to the "Higher Education Act of 1965, as amended, 20 U.S.C. 1070 *et seq*., and applicable Department of Education regulations" is the only language in the note that suggests there are regulations that may apply to the note. At her deposition, Cynthia Battle, DOE's Servicing Director for the Direct Loan Program and 30(b)(6) witness, stated that she did not know to what regulations or portions of the Higher Education Act this language refers. *Id*. at ¶ 5. Other than this general language, DOE does not provide borrowers any information regarding what regulations or portions of the Higher Education Act may be relevant to the note. *Id*.

Notwithstanding the obscure meaning of this language in the note, DOE apparently relies on a regulation, 34 C.F.R. § 685.202, in defense of its practice of capitalizing interest that accrues between a borrower's June payment date and June 30. The regulation provides, in relevant part:

> . . . the Secretary annually capitalizes unpaid interest when the borrower is paying under the alternative or income contingent repayment plan and the borrower's scheduled payments do not cover the interest that has accrued on the loan.

34 C.F.R. § 685.202(b)(4). In other words, the Secretary capitalizes interest only one time per year (i.e., "annually") and only when the borrower's scheduled payments do not cover the interest that has accrued on the loan. The regulation does not authorize the Secretary to ignore the plain terms of the promissory note and capitalize accrued interest that is not yet due. Nor does it require the Secretary capitalize interest on each borrower's student loan on the same day of the year. Rather, the regulation simply limits the number of times the Secretary may capitalize accrued interest each year.

If, as DOE apparently urges, the regulation is interpreted to permit the Secretary to capitalize accrued interest before it is due, then the regulation directly contradicts the form promissory note's interest capitalization provision. The regulation would effectively nullify the "not paid when due" language in the phrase "may add interest that accrues but is not paid when due to the unpaid principal balance of this loan."

DOE asks the Court to read the form promissory note's provision out of the contract – a suggestion that is inconsistent with basic tenets of contract interpretation. *See United States v. Insurance Co. of N. Am.*, 83 F.3d 1507, 1511 (D.C. Cir. 1996) (noting the "cardinal principle of contract construction: that a document should be read to give effect to all its provisions") (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995)); *see also YRT Servs. Corp. v. United States*, 28 Fed. Cl. 366, 389 (1993) ("When interpreting the language of a contract, a court must give reasonable meaning to all parts of the contract and not render portions of the contract meaningless."); *Fort Sumter Tours, Inc. v. Babbitt*, 202 F.3d 349, 358 (D.C. Cir. 2000). And as in *Fort Sumter Tours*, "the provision at issue [is not] unimportant to the contract": DOE's construction would render the prominent language meaningless in favor of an unspecified

provision buried in a welter of regulations concerning student loans and thus frustrate the reasonable expectations of the student loan borrowers.

A second black-letter principle of contract interpretation precludes an interpretation of the contract that creates rather than harmonizes potential conflicts or inconsistencies. As this Court has stated before:

> It is a basic tenet of contract law that where two seemingly conflicting contract provisions exist within a contract, it is the province and duty of the court to find harmony between them and reconcile them if possible. In other words, the court should construe, if possible, all clauses and provisions of a contract so as to harmonize with one another. Only when the parts of a contract are so radically repugnant that there is no way in which they can rationally stand together must any part perish.

*Shulman v. Voyou, L.L.C.*, 251 F.Supp.2d 166, 169 (D.D.C. 2003) (quotations and citations omitted). DOE's interpretation would put the plain language of the promissory note in direct conflict with the unspecified DOE regulation.

These canons of construction are particularly apt here because, to create the supposed conflict between the note and the regulation, DOE also has to violate the canon that regulations be read consistently with "ordinary, contemporary, common meaning." *Motorola, Inc. v. United States*, 462 F. Supp. 2d 1367, 1374-75 (Ct. Int'l Trade 2006). As set forth above, 34 C.F.R. § 685.202(b)(4) provides that the Secretary "annually capitalizes unpaid interest." But "unpaid" interest necessarily means *interest that was not paid as it became due* because "unpaid" is synonymous with "due." *See Roget's II, The New Thesaurus, Third Edition* (1995), *available at* http://www.bartleby.com/62/44/U1624400.html (last visited January 30, 2008); s*ee also Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir. 1993) (holding that under the Fair Labor Standards Act, wages become "unpaid" if not paid when the wage is "due" on payday). Thus, under the ordinary meaning of the regulation, it provides that the Secretary annually capitalizes interest

that was not paid when it was due, which is precisely what the promissory note provides. That is the best reading of the regulation, and the only reading that conforms to the canons of construction set forth above.

Finally, Dr. Pfeiffer's reading accords with the principle that a regulatory section, like a statutory one, should be interpreted in the context of the remainder of the regulation of which it is a part. *McCarthy* v. *Bronson*, 500 U.S. 136, 139 (1991) (statutory language must be read in its proper context and not viewed in isolation). 34 C.F.R. § 685.202(b)(1) explains that under certain circumstances "unpaid accrued interest" may be added to the borrower's "unpaid principle balance," which increase in the balance is called "capitalization." The use of the two words in succession shows that in the DOE's regulations "unpaid" meant something different than "accrued." If the words had the same meaning, the DOE would only have used one of them. Yet for purposes of this lawsuit DOE wishes to treat "unpaid" as synonymous with "accrued."

The other subsections of 34 C.F.R. § 685.202(b) also reflect the distinction between "accrued" and "unpaid" interest and place subsection (4) within a more comprehensive scheme concerning capitalization. Subsection (5) permits capitalization of "unpaid interest when the borrower defaults on the loan." A default, however, occurs only if a borrower fails to make an installment payment or otherwise violates the terms of the note and "this failure persists for 270 days." 34 C.F.R. § 685.102(b). Subsections (2) through (4) permit the DOE to capitalize "unpaid interest" that has accrued in three other situations that do not rise to the level of a default: at the end of a "grace period," *id.* § 685.102(b)(2); at the end of a period of "deferment or forbearance," *id.* § 685.102(b)(3); or under an ICPR when "the borrower's scheduled payments do not cover the interest that has accrued on the loan." In each of these situations,

however, capitalization is limited expressly to "unpaid interest," not to all "interest that has accrued on the loan."

Thus, DOE is in the untenable position of interpreting a regulation so as to render a key concept meaningless in order to create a conflict with the form promissory note that would render a phrase of that note meaningless, all in defiance of the principle that the interpretations should be harmonized rather than placed into conflict. There is no reason to create these contradictions and read words and phrases out of the DOE's own documents. The note and the regulations are in harmony if all words are given their ordinary meaning. The Court should reject DOE's convoluted interpretations of the note and the regulation.

## II. THE FORM PROMISSORY NOTE DOES NOT PERMIT THE CAPITALIZATION OF ACCURED INTEREST WHEN THE BORROWER'S ACTUAL PAYMENTS HAVE BEEN EQUAL TO OR GREATER THAN THE MONTHLY INTEREST ACCRUAL.

The absurdity of DOE's interest capitalization practice is perhaps best exemplified by the experience of a particular subgroup of the class. There are approximately 26,900 members of the class who, although they were considered negatively amortized by DOE, paid more than their scheduled payment each month. These borrowers' actual payments were more than the interest accruing on their loans each month. Nonetheless, each year on June 30 DOE capitalized the interest accruing between these borrowers' June payment date and June 30.

The facts relating to Dr. Pfeiffer's loan illustrate the experience of this subclass. Since November 2001, *all* of Dr. Pfeiffer's monthly payments have been *timely* and *equal to or greater than* the interest accrued in the previous month. Plaintiff's Statement of Facts at ¶¶ 16, 20, 24. In 2002, 2004 and 2005 DOE considered Dr. Pfeiffer to be negatively amortized because her scheduled payments were less than the interest accruing on her loan each month. *Id.* at ¶¶ 16, 20,

24.  Dr. Pfeiffer paid more than her scheduled payment each month, however, and in fact paid more than the interest accruing on her loan each month.  *Id.* at ¶¶ 16, 20, 24.

Due to DOE's interest capitalization practice described above, even borrowers like Dr. Pfeiffer who paid more than the interest accruing on their loans each month *still* had interest capitalized on their student loans on June 30.  This is because under DOE's practice it does not matter whether the borrower pays all the interest that has accrued each month as it becomes due on the monthly due date.  There is no connection between whether interest is due and when it is capitalized under DOE's practices.  Thus, the manner in which DOE capitalizes interest produces the absurd result experienced by this subgroup, where even borrowers who pay more than all the interest that accrues on their loan each month experience interest capitalization.

At her deposition, Ms. Battle agreed with the proposition that borrowers who pay more than the accrued interest each month should not experience any interest capitalization.  She was asked "[i]f a borrower's total payments during the past year were more than the accrued interest on their loans, should there be any interest capitalization?"  Her answer was "Oh, I understand.  I guess the answer would be – should there be capitalization?  I guess the answer would be no."  Plaintiff's Statement of Facts at ¶ 21.

The experience of this subgroup demonstrates how DOE's interest capitalization practice cannot be reconciled with the plain language of the promissory note.  The promissory note states that interest may be capitalized if it is not paid when due.  But even for those borrowers who paid all the interest that accrued on their loan each month as it became due, DOE still capitalized interest on their loans.  This practice constitutes a breach of the plain terms of the promissory note.

## CONCLUSION

For the reasons set forth above, Dr. Pfeiffer and the plaintiff class respectfully request that the Court enter partial summary judgment in their favor and against defendants, declaring that DOE's interest capitalization practice constitutes a breach of the form promissory note and enjoining DOE from continuing to capitalize interest on student loans that is not yet due.

## REQUEST FOR ORAL ARGUMENT

Dr. Pfeiffer and the plaintiff class respectfully request an oral hearing on their motion.

Dated: January 31, 2008

Respectfully submitted,


 /s/ Steven M. Sprenger
Steven M. Sprenger (DC No. 418736)
SPRENGER & LANG, PLLC
1400 Eye Street, N.W., Suite 500
Washington, DC 20005
(202) 265-8010

Daniel C. Bryden (MN No. 302284 *Pro Hac Vice*)
SPRENGER & LANG, PLLC
310 Fourth Avenue S., Suite 600
Minneapolis, MN 55415
(612) 871-8910

*Attorneys for Plaintiff and the Class*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Brenda Kay Pfeiffer,<br><br>On behalf of herself and all others similarly situated,<br><br>*Plaintiff*,<br>v.<br><br>Margaret Spellings, in her official capacity as United States Secretary of Education, the United States Department of Education, and the United States of America,<br><br>*Defendants*. | ) | Civil No. 1:07-cv-00522 (EGS)<br><br>CLASS ACTION |

**PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. The United States Department of Education ("DOE") lends money to post-secondary students through the William D. Ford Direct Loan Program (the "Program"). There are several loan types available under the Program, including Stafford Loans and Consolidation Loans. Ex. 1 (Battle[1] Depo. at 36-37). Regardless of the type of loan it issues, DOE requires student loan borrowers to execute a standard form promissory note.

2. The form promissory note for each loan type is identical or substantially identical for all borrowers. *Id.* at 79, 86-88; Ex. 2 (Battle Depo. Ex. 1 at 7-8 (Answer to Interrogatory No. 6)); Exs. 3-9 (Battle Depo. Exs. 4-10 (form promissory notes)). The form promissory note signed by the borrower is the governing legal contract between DOE and the borrower. Ex. 10 (Battle Depo. Ex. 13, at P00406). DOE informs borrowers that the "promissory note contains the terms and conditions of the loan, including how and when the loan must be repaid." *Id*; Ex. 1

(Battle Depo. at 97 (explaining that Battle Depo. Ex. 13 is a glossary provided to borrowers with the Loan Application)).

3. Since at least March 19, 2001, the form promissory notes executed by Stafford and Consolidation Loan borrowers have contained identical or substantially similar language with respect to interest capitalization. Ex. 2 (Battle Depo. Ex. 1, at 7-8 (Answer to Interrogatory No. 6)); Ex. 1 (Battle Depo. at 86-88); *compare* Ex. 11 (Battle Depo. Ex. 3, at P00486 (promissory note executed by Dr. Pfeiffer in 2001)) *with* Exs. 3-9 (Battle Depo. Exs. 4 – 10 (form promissory notes produced by DOE)). Dr. Pfeiffer executed such a form promissory note when she obtained her Consolidation Loan from DOE in 2001. Ex. 11 (Battle Depo. Ex. 3).

4. The form promissory note executed by Dr. Pfeiffer provides that DOE may capitalize interest if the borrower does not pay the interest when it is due:

> **Interest.** Except for interest [DOE] does not charge me during an in-school, grace or deferment period, I agree to pay interest on the principal amount of my Direct Consolidation Loan from the date of disbursement until the loan is paid in full or discharged. [DOE] <u>may add interest that accrues but is not paid when due</u> to the unpaid principal balance of this loan, as provided under the [Higher Education Act of 1965, as amended, 20 U.S.C. 1070 *et seq*., and applicable Department of Education regulations]. This is called capitalization.

*Id.* at P00486. (emphasis added). The above-quoted provision is the only language in the form promissory note that addresses interest capitalization. Ex. 1 (Battle Depo. at 73-75). This provision is identical or substantially similar for all members of the proposed class. Ex. 2 (Battle Depo. Ex. 1, at 7-8 (Answer to Interrogatory No. 6)).

5. The above-quoted language in the note referring to the "Higher Education Act of 1965, as amended, 20 U.S.C. 1070 *et seq*., and applicable Department of Education regulations" is the only language in the note that suggests there are regulations that may apply to the note. At

[1] DOE designated Cynthia D. Battle as its deposition representative pursuant to Fed. R. Civ. P. 30(b)(6). Ms. Battle's job title is Servicing Director for the Direct Loan Program.

her deposition, the Servicing Director for the Direct Loan Program stated she did not know what regulations or portions of the Higher Education Act this language refers to. Ex. 1 (Battle Depo. at 89-90). DOE does not provide borrowers any further information regarding what regulations or portions of the Higher Education Act may be relevant to the note. *Id.* at 90.

6. When a student loan borrower's loan enters repayment, he or she is assigned a "payment due date" of the 7th, 14th, 21st or 28th of each month. *Id.* at 49-50. A borrower's "payment due date" is also commonly referred to as the "monthly due date" or simply the "due date." *Id.* at 49-50; Ex. 12 (Battle Depo. Ex. 2 (monthly billing statements sent to Dr. Pfeiffer indicating the 21st of each month as the "current payment due date")); Ex. 13 (Battle Depo. Ex. 27 (DOE glossary defining the term "payment due date")). DOE documents define the "payment due date" as "[t]he date during the month when payment of the current due amount must be received." *Id.*

7. DOE applies payments received first to fees (if any), second to accrued interest, and third to the principal balance. Ex. 1 (Battle Depo. at 51). Thus, if a borrower's payment due date is the 21st of each month and the borrower makes a payment on February 21st, then DOE would apply that payment first to fees (if any), second to interest accrued through February 21st, and third to the principal balance. *See Id.* The borrower is not billed for or expected to pay the interest accruing after February 21st until his or her next payment due date, *i.e.*, March 21st. *Id.* at 76-77.

8. Stafford and Consolidation Loan borrowers have the option of repaying their student loans under the Income Contingent Repayment Plan ("ICRP"). Under the ICRP, a borrower's monthly payment amount is determined by a formula that is based on his or her adjusted annual income, family size and the principal balance of the loan. *Id.* at 38. The

payment amount determined by this formula is referred to by DOE as the "scheduled payment" or the "fixed payment amount." *Id.* at 48; Ex. 2 (Battle Depo. Ex. 1 (column labeled "fixed payment amount" contained within computer print-out showing payment history for Dr. Pfeiffer's loans attached to Defendant's Response to Plaintiff's First Set of Interrogatories)).

9. Generally speaking, under the ICRP the higher a borrower's income, the higher his or her scheduled payment and, conversely, the lower a borrower's income, the lower his or her scheduled payment. Notwithstanding the amount of a borrower's scheduled payment, he or she may voluntarily pay a greater amount in any month. Ex. 1 (Battle Depo. at 48).

10. If a borrower's income is low in relation to his or her loan balance, the scheduled payment may be less than the amount of interest accruing on the loan each month. DOE refers to such borrowers as being on a "negative amortization payment schedule" or as "negatively amortized." *Id.* at 45-47. DOE treats approximately one-half of the 600,000 borrowers currently repaying their student loans under the ICRP as "negatively amortized." *Id.* at 91-92.

11. Throughout the liability period, DOE has consistently capitalized all interest accrued through June 30th on June 30th for all "negatively amortized" loans – that is, loans being repaid by a borrower whose scheduled payments are less than the amount of interest accruing on the loan each month. *Id.* at 58-59, 87-88; Ex. 2 (Battle Depo. Ex. 1, at 1(Answer to Interrogatory No. 1)). DOE has engaged in this interest capitalization practice notwithstanding the borrower's payment due date or actual payment amounts. Ex. 1 (Battle Depo. at 45-47, 55-56). This capitalization on June 30th of each year includes interest accruing *after* the borrower's June payment date through June 30th. *Id.* at 42-44, 52-53, 55-56.

12. Interest accruing after a borrower's June payment date is not billed or otherwise expected to be paid by DOE until the borrower's July payment date. *Id.* at 54-55. In her

deposition, Cynthia Battle, DOE's Rule 30(b)(6) representative and Servicing Director for the Direct Loan Program, admitted that the interest that accrues *after* a borrower's June payment due date is not due until July. She testified:

> Q: So isn't the interest that accrues after a borrower's June payment date not due until their July payment date?
>
> A: Yes, they would be billed for July.

*Id.* at 76-77.

13. In 2001 Dr. Pfeiffer consolidated her student loans with DOE, and selected the Income Contingent Repayment Plan ("ICRP"). Cmplt. (Dkt. 1, at ¶ 14); Answr. (Dkt. 10, at ¶ 14).

14. The promissory note Dr. Pfeiffer executed in connection with her loan consolidation contained the exact same language as the form promissory note set forth above in ¶ 4. Ex. 11 (Battle Depo. Ex. 3, at P00486).

15. Dr. Pfeiffer's monthly payments were due on the 21st of each month after the 2001 consolidation. Cmplt. (Dkt. 1, at ¶ 15); Answr. (Dkt. 10, at ¶ 15).

16. During the period January 1, 2002 through June 30, 2002, DOE considered Dr. Pfeiffer to be "negatively amortized" because her scheduled payments were less than the interest accruing on her loan. Ex. 12 (Battle Depo. Ex. 2 (monthly billing statements sent to Dr. Pfeiffer in 2002, stating that she was "negatively amortized")); Ex. 2 (Battle Depo. Ex. 1 (payment history attached to Defendants' Responses to Plaintiff's First Set of Interrogatories)).[2] Dr. Pfeiffer's actual payments each month during this period, however, exceeded the interest

---

[2] The payment history attached to Defendants' Responses to Plaintiff's First Set of Interrogatories is not numbered by page. The left hand column on the payment history sets forth the "Transaction Date." On the Transaction Date 01/01/02, in the column captioned "Transaction," the payment history notes "Neg-Amortization Start." On Transaction Date

accruing on her loan each month. *Id.* at Transaction Dates 01/01/02 through 07/16/02 (under column captioned Total Payment Received, showing that Dr. Pfeiffer paid more each month than the amount of interest accruing each month on her loan as set forth in Ex. 12 (Battle Depo. Ex. 2)); Ex. 1 (Battle Depo. at 65-72). Each monthly payment made by Dr. Pfeiffer during this period was also received by DOE on or before her monthly payment due date. Ex. 2 (Battle Depo. Ex. 1, at payment history, Transaction Dates 01/01/02 through 07/16/02).

17. On or about June 30, 2002, Dr. Pfeiffer received notice that DOE had capitalized interest on her loan in the amount of $368.76. Ex. 14 (Battle Depo. Ex. 14). The interest capitalized on Dr. Pfeiffer's loan on June 30, 2002 is the interest that accrued between her June payment and June 30, 2002. Ex. 1 (Battle Depo. at 52-53); Cmplt. (Dkt. 1, at ¶ 17); Answr. (Dkt. 10, at ¶ 17).

18. The June 30, 2002 notice stated: "During the past year, your total payments were less than your accrued interest on the loan(s) [you] had or have been repaying under the Income Contingent Repayment (ICR) plan (this is called negative amortization)." By "the past year," this notice referred to the period July 1, 2001 through June 30, 2002. Ex. 1 (Battle Depo. at 99-100). In fact, Dr. Pfeiffer's payments through her June 2002 payment on June 14, 2002 exceeded the accrued interest on her loan. *Id.* at 52; Ex. 2 (Battle Depo. Ex. 1, at payment history, Transaction Dates 12/14/01 through 06/14/02); Ex. 12 (Battle Depo. Ex. 2 (2002 monthly billing statements stating the amount of interest accruing each month on Dr. Pfeiffer's loan)).

19. DOE did not consider Dr. Pfeiffer's loan to be negatively amortized during the period November 24, 2002 through June 30, 2003 and, therefore, did not capitalize interest on

---

11/24/02, in the column captioned "Transaction," the payment history notes "Neg-Amortization End."

her loan in June of 2003. *See* Ex. 2 (Battle Depo. Ex. 1, at payment history, Transaction Date 11/24/02 (with notation "Neg-Amortization End")).

20. During the period July 1, 2003 through June 30, 2004, Dr. Pfeiffer's actual payments exceeded the amount of interest accruing on her loan. Ex. 2 (Battle Depo. Ex. 1, at payment history, Transaction Dates 07/16/03 through 07/20/04); Ex. 15 (Pfeiffer Decl., Ex. A (2004 monthly billing statements stating the amount of interest accruing each month on Dr. Pfeiffer's loan)). In addition, all of Dr. Pfeiffer's monthly payments during this period were received by DOE on or before her monthly due date. Ex. 2 (Battle Depo. Ex. 1, at payment history, Transaction Dates 07/16/03 through 07/20/04).

21. At her deposition, Ms. Battle was asked "[i]f a borrower's total payments during the past year were more than the accrued interest on their loans, should there be any interest capitalization?" Her answer was "Oh, I understand. I guess the answer would be – should there be capitalization? I guess the answer would be no." Ex. 1 (Battle Depo. at 104).

22. On or about June 30, 2004, Dr. Pfeiffer received notice that DOE had capitalized interest on her loan in the amount of $207.56. Ex. 16 (Battle Depo. Ex. 18, at P00454). The interest capitalized on her loan on June 30, 2004 is the interest that accrued between her June payment and June 30, 2004. Cmplt. (Dkt. 1, at ¶ 20); Answr. (Dkt. 10, at ¶ 20).

23. The June 30, 2004 notice further stated: "During the past year, your total payments were less than your accrued interest on the loan(s) you had or have been repaying under the Income Contingent Repayment (ICR) plan (this is called negative amortization)." Ex. 16 (Battle Depo. Ex. 18, at P00454). In fact, Dr. Pfeiffer's payments from July 1, 2003 through June 30, 2004 exceeded the accrued interest on her loan. Ex. 2 (Battle Depo. Ex. 1, at payment history, Transaction Dates 07/16/03 through 07/20/04); Ex. 15 (Pfeiffer Decl., Ex. A (2004

monthly billing statements stating the amount of interest accruing each month on Dr. Pfeiffer's loan)).

24. During the period July 1, 2004 through June 30, 2005, Dr. Pfeiffer's actual loan payments exceeded the amount of interest accruing on her loan. Ex. 2 (Battle Depo. Ex. 1, at payment history, Transaction Dates 07/20/04 through 06/09/05); Ex. 15 (Pfeiffer Decl., Ex. B (2005 monthly billing statements stating the amount of interest accruing each month on Dr. Pfeiffer's loan)). All of Dr. Pfeiffer's monthly payments during this period were received by DOE on or before Dr. Pfeiffer's monthly due date. Ex. 2 (Battle Depo. Ex. 1, at payment history, Transaction Dates 07/20/04 through 06/09/05).

25. On or about June 30, 2005, Dr. Pfeiffer received notice that DOE had capitalized interest on her loan in the amount of $440.95. Ex. 16 (Battle Depo. Ex. 18, at P00455). The interest capitalized on her loan on June 30, 2005 is the interest that accrued between her June payment and June 30, 2005. Cmplt. (Dkt. 1, at ¶ 22); Answr. (Dkt. 10, at ¶ 22).

26. The June 30, 2005 notice stated: "During the past year, your total payments were less than your accrued interest on the loan(s) had or have been repaying under the Income Contingent Repayment (ICR) plan (this is called negative amortization)." Ex. 16 (Battle Depo. Ex. 18, at P00455). In fact, Dr. Pfeiffer's payments from July 1, 2004 through June 30, 2005 exceeded the accrued interest on her loan. Ex. 2 (Battle Depo. Ex. 1, at payment history, Transaction Dates 07/20/04 through 06/09/05); Ex. 15 (Pfeiffer Decl., Ex. B (2005 monthly billing statements stating the amount of interest accruing each month on Dr. Pfeiffer's loan)).

27. DOE has not considered Dr. Pfeiffer's loan to be negatively amortized at any time after July 1, 2005. Ex. 2 (Battle Depo. Ex. 1, at payment history, Transaction Dates 12/01/05 through 10/31/07).

28. There are approximately 26,900 student loan borrowers DOE considers to be negatively amortized but whose actual payments have been equal to or greater than the amount of interest accruing on their loan each month. Ex. 2 (Battle Depo. Ex. 1, at 2-3 (Answer to Interrogatory No. 2); Ex. 1 (Battle Depo. at 90-92). Nevertheless, like Dr. Pfeiffer, and the other 270,000 borrowers DOE considers negatively amortized, DOE capitalized interest on these borrower's loans. Ex. 1 (Battle Depo. at 58-59 (explaining that DOE capitalized interest on June 30 each year for all borrowers repaying under the ICRP that it considered negatively amortized)); Ex. 2 (Battle Depo. Ex. 1, at 1).

Dated: January 31, 2008

Respectfully submitted,

/s/ Steven M. Sprenger

Steven M. Sprenger (DC No. 418736)
SPRENGER & LANG, PLLC
1400 Eye Street, N.W.
Suite 500
Washington, DC 20005
(202) 265-8010

Daniel C. Bryden (*Pro Hac Vice*)
SPRENGER & LANG, PLLC
310 Fourth Avenue S.
Suite 600
Minneapolis, MN 55415
(612) 871-8910

*Attorneys for Plaintiff and the Class*

EXHIBIT #1
Pfeiffer v. Spelling
C.A. #1:07cv00522 (EGS)

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

---------------------------------x

BRENDA KAY PFEIFFER, :
On behalf of herself and all :
others similarly situated, :
Plaintiff, :Case No.:
vs. :1:07-CV-00522(EGS)
MARGARET SPELLINGS, Secretary :
of Education, et al., :
Defendants. :

---------------------------------x

December 10, 2007
Washington, DC

DEPOSITION OF:

CYNTHIA DENISE BATTLE,

called for oral examination by counsel for the Plaintiff, at the Law Offices of Sprenger & Lang, PLLC, 1400 I Street, NW, Suite 500, Washington, DC, beginning at 9:44 a.m., Monday, December 10, 2007, before Lohna Esteb, Reporter and Notary Public, when were present:

ON BEHALF OF PLAINTIFF:
DANIEL C. BRYDEN, ESQUIRE
SPRENGER & LANG, PLLC
310 Fourth Avenue S.
Suite 600
Minneapolis, Minnesota 55415
(612) 871-8910
E-mail: dbryden@sprengerlang.com

ON BEHALF OF DEFENDANTS:
JOHN WARSHAWSKY, ESQUIRE
CHRISTIAN J. GROSTIC, Esquire
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, NW
Washington, DC 20005
(202) 307-0010
E-mail: john.warshawsky@usdoj.gov

-and-

S. DAWN SCANIFFE, ESQUIRE
U.S. Department of Education
500 Maryland Avenue, SW
Room 6E120
Washington, DC 20202-2110
E-mail: Dawn.Scaniffe@ed.gov

-and-

RONALD B. SANN, ESQUIRE
U.S. Department of Education
Department of the General Counsel
400 Maryland Avenue, SW
Washington, DC 20202-2110
(202) 401-6292
E-mail: Ronald.Sann@ed.gov

INDEX

| WITNESS: | EXAMINATION ON BEHALF OF THE PLAINTIFFS: (Mr. Bryden) | DEFENDANTS: (Mr. Warshawsky) |
|---|---|---|
| CYNTHIA D. BATTLE | 8 | 123 |

EXHIBITS

| EXHIBIT NO.: | | PAGE: |
|---|---|---|
| 1 | Defendants' Responses to Plaintiff's First Set of Interrogatories | 39 |
| 2 | Direct Loans, Billing Statements Negative Amortization | 63 |
| 3 | Fax to Ms. Pfeiffer from Department of Education Loan Origination Center Loan Consolidation | 72 |
| 4 | Federal Direct Consolidation Loan Application and Promissory Note | 77 |
| 5 | Federal Direct Consolidation Promissory Note Endorser Addendum | 78 |

| EXHIBITS CONTINUED | | PAGE: |
|---|---|---|
| 6 | Federal Direct Consolidation Loan Promissory Note Exp. 1/31/99 | 80 |
| 7 | Federal Direct Consolidation Application and Promissory Note | 81 |
| 8 | Federal Direct Consolidation Loan Application and Promissory Note | 82 |
| 9 | William D. Ford Federal Direct Loan Program | 83 |
| 10 | Application and Promissory Note Federal Direct Consolidation Loan | 83 |
| 11 | Application and Promissory Note Federal Direct Consolidation Loan Exp. 12/19/94 | 84 |
| 12 | Federal Direct Consolidation Loan Instructions for Promissory Note Endorser Addendum | 84 |
| 13 | Glossary | 96 |
| 14 | Account Statement for Ms. Pfeiffer 6/30/02 | 99 |

EXHIBITS CONTINUED: PAGE:

| | | |
|---|---|---|
| 15 | Account Statement for Ms. Pfeiffer 6/30/04 | 100 |
| 16 | Account Statement for Ms. Pfeiffer 6/30/05 | 101 |
| 17 | Letter to Whom It May Concern: from Ms. Pfeiffer 6/2/05 re: Grievance on Capitalization | 102 |
| 18 | Letter to Direct Loans Program Attn: Lupe Lopez 12/27/05 | 110 |
| 19 | Account Statement form | 111 |
| 20 | Online Federal Student Aid Forms | 115 |
| 21 | Federal Direct Consolidation Loan, Borrower's Rights and Responsibilities | 116 |
| 22 | William D. Ford Federal Direct Loan Program, Repayment Plan Choices | 118 |

EXHIBITS CONTINUED: PAGE:

| | | |
|---|---|---|
| 23 | Addendum to Federal Direct Consolidation Loan Application and Promissory Note | 118 |
| 24 | Questions and Answers About Direct Consolidation Loans | 119 |
| 25 | Document with handwriting "Due Date" | 120 |
| 26 | Document with Handwriting "Monthly Payment" | 121 |
| 27 | Document with Handwriting "Payment Due Date" | 122 |

P-R-O-C-E-E-D-I-N-G-S

Thereupon,

CYNTHIA DENISE BATTLE,

having been first duly sworn by the Notary Public, was examined upon her oath and testified as follows:

EXAMINATION ON BEHALF OF THE PLAINTIFF:

BY MR. BRYDEN:

Q Good morning.

A Good morning.

Q My name is Dan Bryden. I'm an attorney for the plaintiffs in this action.

Have you ever had your deposition taken before?

A No.

Q Can you first just state for the record your name?

A Cynthia Battle.

Q Do you have a middle name?

A Yes.

Q What is that?

A D-E-N-I-S-E.

Q Let me just go over a couple basic rules we try to follow in the deposition. One thing you may have noticed already, there's a court reporter here and she's going to make a written record of

everything we say today. To help her in her job, we both have to give verbal responses. It would be hard for her to record shaking head, nodding head or she might not be sure which one you're doing. So if you can say yes or no to the questions I ask, that would be helpful. Also, huh-uh, uh-huh, that sort of thing might not come through on the record so please, again, say yes or no.

The other thing that we will both have to do is even if you think you know the question I'm asking you while I'm halfway through asking it, please wait until I'm done asking the question. If we both talk at the same time it will be very difficult for her to write down. And I'll do my best to not talk at the same time you're talking.

And we can take a break any time you want to, although I ask that we not take a break while a question is pending. In other words, if I ask you a question, please don't ask for a break before you answer the question. But any time you want to take a break is fine.

I don't expect this to last all day. It may go through lunch and if it does, we will break for lunch and come back after lunch.

If you don't understand a question that I

ask you, please let me know and I'll try to clarify the question. If you answer the question, I'll assume that you understood the question.

I probably will ask you a couple questions today that don't make a lot of sense or I haven't phrased them well. If I do that, feel free to tell me I don't understand what you're talking about or the question didn't make any sense, that's fine and I'll try to rephrase it for you.

I'll ask you to bear in mind that your testimony is under oath today as if you were in court. Do you have any questions about that?

A No.

Q Is there anything that prevents you from giving your best testimony today? Do you have any condition that affects your memory? Do you take any medications that might affect your ability to testify accurately?

A No.

Q I would like to just get some basic background information about you. You stated your name for the record. Are you a college graduate?

A No.

Q No?

A (Witness nods head affirmatively.)

Q Can you tell me where you went to high school?

A High school, Suitland High School.

Q How do you spell that?

A S-U-I-T-L-A-N-D.

Q Where is that?

A Suitland, Maryland.

Q Did you graduate from Suitland High School?

A Yes.

Q What year did you graduate?

A 1984.

Q Did you get any more education after you graduated from high school?

A Yes.

Q Can you tell me what that was?

A I went to a community college and then transferred to a four-year institution.

Q What community college did you go to?

A Prince George's Community College.

Q Did you have a major while you were there?

A Initially, yes.

Q What was your major initially?

A Accounting.

Q And then did you change majors or did that

change at some point?

A Yes.

Q When did that happen?

A Midway through, I changed majors.

Q Okay. What did you change your major to?

A It was business at that time.

Q Business administration?

A Yes.

Q Then you said you transferred to a four-year institution?

A Yes.

Q What institution was that?

A University of Maryland.

Q Did you have a major while you were there?

A No. Had not declared.

Q What year did you transfer over to the University of Maryland?

A I don't recall.

Q Was it before 1990?

A I don't recall.

Q Do you recall what years you were in community college?

A Oh, yes. That would have been '87.

Q You were in community college from --

A Like 1987 because I graduated in '84, yes.

Q And what did you do from 1984 to 1987 before you went to community college?

A I worked.

Q What did you do?

A I worked at a law firm.

Q What was your position?

A It was an entry-level position so I'm not sure what the actual title of it was.

Q Can you tell me what you did --

A Yes.

Q -- to the best of your recollection?

A I did a couple of things. I started off in the front office in a clerical capacity. And then I worked as a bookkeeper for the partner's properties.

Q What do you mean by bookkeeper, what specifically did you do?

A I handled some of the basic accounting for his rental properties; incoming, outgoing kind of transactions.

Q And then did you continue to do that when you went to community college in 1987?

A Yes.

Q And then you said you went to community college in 1987. Does that refresh your

14

recollection as to when you transferred to the University of Maryland?
A No.
Q Do you know, was there a period of time after you were going to community college before you went to the University of Maryland?
A I don't understand your question.
Q You said you went to community college in 1987. Did you go 1988, 1989, or were you there for just one year?
A Ask your question again.
Q What years were you in community college?
A I don't recall the exact timeframe that I was in community college versus when I transferred to Maryland, I don't recall.
Q You don't recall what year you started going to University of Maryland?
A For University of Maryland, I was at the department by that time, I do remember that.
Q I believe you stated that you did not declare a major while you were at the University of Maryland?
A I don't believe I did.
Q Did you complete some course work while you were there?

15

A Yes.
Q Can you tell me generally what sort of course work you did? Was it liberal arts?
A More things in IT, computer-related courses is what I completed at Maryland.
Q Did you receive any sort of certificate or degree?
A No, did not complete.
Q Have you completed any other education since that time?
A What do you mean?
Q Have you attended any other university or secondary education?
A No.
Q I believe you said you had some training when you were in community college as an accountant, is that right?
A Ask your question again.
Q Did you complete courses in accounting in any of your educational background?
A I don't recall my actual classes.
Q Do you recall whether or not you completed anything in accounting or you just don't know?
A I don't recall. I don't recall how many other courses I completed.

16

Q But do you recall that you did complete some courses in accounting?
A I don't recall.
Q When did you first become employed by the Department of Education?
A 1993.
Q What was your position when you first came to the Department of Education?
A I was hired as an assistant in a clerical capacity.
Q How long did you work in a clerical position to the best of your recollection?
A Approximately two years, two and a half years.
Q Did you change positions then?
A Yes.
Q What was your next position after that?
A The series is management analyst.
Q I'm sorry, you said the series?
A Well, it's -- you're categorized as a management analyst.
Q Are there different levels of management analyst?
A What do you mean?
Q I'll withdraw the question.

17

What does a management analyst do or what did you do in your capacity as a management analyst?
A I started out in -- I started working personnel security when I joined that office. I switched offices at that time.
Q And how long did you work in personnel and security for?
A Approximately two years.
Q So until approximately 1997?
A Sounds right.
Q Okay. Then I take it you changed responsibilities approximately 1997?
A Approximately, yes.
Q What was your next position with the Department of Education?
A In that office, it was requirements. We worked on the actual requirements for the program.
Q And what do you mean by requirements for the program? Which program are you talking about?
A William D. Ford Federal Direct Loan Program.
Q And what do you mean requirements for the program?
A Our team was responsible for implementing changes in the regulations so it was responsible for

taking whatever regulatory guidance we have and implementing them into the system.
Q What was your title at that time?
A I don't know whether I had a specific title. It was still management analyst. I don't know whether there was another title I went by at that time.
Q So were you responsible for analyzing regulations, implementing regulations, is that what you did?
A Yes.
Q Can you tell me what aspects of the William D. Ford loan program you were working on?
A At that time, I believe I was working a good percentage of my time on website functions.
Q By website functions, do you mean the websites that borrowers go to to get information about their loans?
A Yes.
Q And was it your responsibility to determine what material to put on the Department of Education's websites about student loans?
A Could you clarify your question?
Q Was it your job to decide what content to put onto the website?

A Solely, no; but, I was involved in deciding what information needed to be present on the website.
Q Did you do that as part of a team?
A Yes.
Q How many people were on your team?
A Are we just talking about department employees or contractor employees as well?
Q Why don't you tell me just department employees.
A At that time there may have been two or three people on a team, or involved.
Q How long did you do that for?
A I did that a number of years. To some capacity, I still do that; but, at that time, that was my primary function.
Q At some point did your responsibilities change or did your position change?
A Yes.
Q When was the next time that your title or responsibilities changed?
A I want to say around 2000, I took on a team -- I took on team members and I became a team lead.
Q And can you explain to me the nature of

the team that you were the leader of?
A The team at that time was responsible for the call center. We have a direct loan services call center and we were responsible for the functions of that call center.
Q When you say the functions of that call center, was the team that you led responsible for giving the people who answered the phones at the call center direction as to how to answer certain types of questions?
A Yes, that is a function of the call center team.
Q What are the other functions of the call center team?
A Functions include helping with borrower calls; the training of the customer service representatives; the actual running; questions that relate to the actual call center itself.
Q Okay. And you recall who you reported to at that time?
A My division director at that time would have been Dan Hayward.
Q Is he still with the Department of Education to the best of your knowledge?
A Yes.

Q Do you know what his title is now?
A No, I do not.
Q How long were you the team leader for the team you have been describing?
A I don't recall how long for that team because subsequent to that, then my role expanded and I took a larger team so I don't recall the time span between when I took that role and when I got additional staff.
Q Can you estimate for me when that would have been? Would it have been 2003, 2004?
A Could have been 2002, 2003, sounds about right.
Q Tell me, you said your team expanded. Can you explain to me what that was?
A I was responsible for the function of the call center. And then a position came up for the supervisor for all of the -- all of the employees for direct loan servicing. And I became the supervisor for that entire group.
Q And is that your current position?
A No.
Q Do you recall what your title was at that time?
A It's just been supervisor for direct loan

servicing.
Q What were your responsibilities in that position?
A In addition to the management of the call center, it would have involved the management of the other -- of the employees that also managed different parts of that contractor.
Q And so did you have any responsibilities other than the call center, then, at that time?
A At that time, I would have still been involved in the call center as well as the website that still continues. And then it was just the management of the staff that was there.
Q How many people did you supervise at that time?
A It would have been about 10 to 12.
Q Can you tell me, when you say 10 to 12 people, is that the total number of employees that answer the phones when people call into the call center?
A Are we referring to the department employees?
Q Well, maybe I need to clarify that.
Do you contract out some of the work for people that work at the call center?

A Yes.
Q Who do you contract that out to?
A It's contracted out to a contractor called ACS.
Q So ACS employees are the individuals that will answer the phones?
A Correct.
Q Are there any Department of Education employees that are responsible for answering phones at the call center?
A For customers, no.
Q To be clear what we are talking about here, when you say the call center --
A That's the number that's provided to borrowers to call if they have questions about their loans, yes.
Q What sort of training is required of the ACS employees that answer the telephones?
A They go through a three-week training in the actual call center itself.
Q Are they required to be high school graduates?
A I'm not positive of the criteria. I believe so but I'm not positive.
Q Do you know if they are required to have

any background in accounting?
A I do not know.
Q Or mathematics?
A I do not know.
Q Do you know how many different employees there are that answer calls, how many ACS people it takes to answer all the phone calls that come in?
A What period of time are we talking about?
Q Let's talk about, I believe you said it was around 2002 or 2003 when you were responsible for the contractor.
A I don't recall how many employees there were at that time.
Q Can you give an estimate?
A An estimate? Sure. At that time we could have had anywhere between 200 and 300 representatives answering calls.
Q Do you receive a lot of calls every day, then? Do you have a sense of the call volume?
A It depends on the time of year. Can I give you currently?
Q Sure.
A Okay. Currently, if we are in peak, we could get somewhere between -- we could get close to 100,000 calls a week.

Q Do you still have 200 to 300 ACS employees answering the phones?
A Currently?
Q Currently.
A I think it's a little bit more than that now.
Q What was your next position with the department?
Let me step back. Did you continue to report to the same individual when you took on the added responsibilities of supervising the contractor for the call center?
A Clarify your question again.
MR. WARSHAWSKY: Excuse me. Are you talking about Dan Hayward?
MR. BRYDEN: Right.
MR. WARSHAWSKY: I think she testified that was who she reported to when she took on the call center, am I correct?
THE WITNESS: Uh-huh.
BY MR. BRYDEN:
Q Is that correct?
A Yes.
Q So what was your next position with the department?

A After? What are you referring to, "after"?

Q I believe you testified that in 2002, 2003 you took on additional responsibilities relating to the call center. When was the next time your position or responsibilities changed?

A Around 2005, our offices reorganized at that time. Our contract structure changed a little bit and I became responsible for multiple call centers.

Q And were you responsible for all the call centers at that point?

A All, meaning what?

Q Well, you said that there were 200 to 300 ACS employees, there may be more now, and there are multiple physical locations where these people are that answer the phones.

A Our contract structure earlier in the years just involved direct loan servicing. It then expanded to include direct loan servicing, consolidation, total and permanent disability and collections. So our contract -- the contract mechanism expanded and it was combining multiple functions in one area.

So when I say all, I was referring to

earlier I was just responsible for direct loan servicing. When the contract structure changed, then it would -- then it became multiple call centers that did multiple functions.

Q Do you recall when that was?

A That would have been -- we reorganized in 2005, I believe it was.

Q What were your responsibilities at that time?

A Similar to the previous where you monitor call monitoring, insuring that -- customer satisfaction; website was still a function; and responsible for insuring that the contractor met certain metrics.

Q So if somebody called the 1-800 number and they disagreed with the person they were talking to and they asked to speak to a supervisor, would you maybe be responsible for taking on those calls when you had this position?

A No.

Q You would supervise other people that did that, is that right?

A No. The escalation process in the call center didn't necessarily mean that it came directly to the department. So if a customer wanted to

escalate their concern or issue, then it would go through the escalation process established at the call center.

Q In other words, through ACS?

A Correct.

Q And your job was to monitor that contract?

A Yes, our job was to monitor that contract.

Q What the next time you had a change of title or responsibility?

A It would have been November of 2006.

Q What was your change in title and responsibilities in November 2006?

A Then it was director of direct loan servicing.

Q Can you tell me what your responsibilities are in that position?

A In the current position, it's a little different where it's more looking at the regulatory changes, policy, that kind of thing; implementing -- implementing those changes, recommending changes; delinquency management and condo portfolio trending.

Q Is that your current position now?

A Yes.

Q Are there other people that have the same title as you, or are you the director of student

loan servicing? Why don't you tell me exactly what your title is.

A The -- the actual title that we refer to at the department is -- it's director of direct loan servicing, it's easier to kind of understand, but it's director of non-default because we do have some small -- a small balance that is handled by our group as well. There's a small non-defaulted portfolio, but ...

Q I take it what you are saying is that there's a different director for the non-defaulted portfolio, is that right?

A No. I'm still the director for -- director for -- non-default includes direct loan servicing.

Q So you are the director of student loan servicing. Are there other directors of student loan servicing?

A When you say student loan services?

Q I'm sorry. I thought that's what you said.

A No. Director of direct loan servicing.

Q Director of direct loan servicing.

A Uh-huh.

Q Are there other directors of direct loan

servicing, or are you the director of direct loan servicing?
A I'm the director of direct loan servicing.
Q Who do you report to?
A I report to Jenna Hernandez. (phonetically)
Q What is her position?
A She is the general manager.
Q General manager of?
A Borrower servicing.
Q Do you know who she reports to?
A She reports to Sue S-Z-A-B-O.
Q Do you know what her position is?
A She is -- I'm not sure -- she is our area -- it's business operations so I'm not sure whether it's general manager, director. I'm not sure what her actual title is. But she's responsible for all of business operations.
Q Do you know who she reports to?
A She reports to the chief operating officer.
Q Who is that?
A Larry Water.
Q That's your current position, right?
A That's my current position.

Q Throughout your tenure at the Department of Education, have they required you to take any courses in either accounting or any sort of legal training or analysis?
A Required?
Q Required.
A No.
Q Can you tell me how many different loan programs are offered by the Department of Education and could you list them for me?
A There are two loan programs: The William D. Ford Direct Loan Program and the FFEL program.
Q What does FFEL --
A Federal Family Education Loan Program.
Q So those are the two loan programs?
A Yes.
Q And then there are a number of different loans you can take out under each program? For example, where would a Perkins loan come under those two programs?
A The -- where would Perkins fall? Perkins is a school loan program so, yes, it's a -- yes, Perkins is also another loan program.
Q That's a different loan program?
A Perkins, I guess, would be separate.

Q Are there any other loan programs?
A There is -- if we are doing categories, I guess if you're looking for -- you have direct, you have FFEL, you have Perkins, and you have campus based.
Q What do you mean by campus based?
A Those could be work study programs.
Q Then what about consolidation loans, where do they come in?
A Consolidation loans are a product of either direct or the FFEL program.
Q Can you tell me under the William D. Ford loan program, I take it a borrower can take out a subsidized loan, an unsubsidized loan, consolidation loan. Are there other types of loans that are available under the William D. Ford loan program?
A Name then again. You said I could have a Stafford loan which is unsubsidized or subsidized. I can have a consolidation loan.
What else did you say?
Q Those were the examples I gave. What I'm looking for is a list of all the loans offered under the William D. Ford loan program.
A Okay. There is a plus loan that you can also have.

Q What's a plus loan?
A Plus is a parent loan.
Q It's a loan that's made to the parent rather than the student, is that ...
A It is a loan made to the parent. There's -- there were changes in the regulations to allow what is called a graduate plus loan which can be made to the student as well.
Q Let's turn to the FFEL program. What are the different loans that can be taken out?
A The program is the same. You can take out the same types of loans in the FFEL program as well.
Q What's the difference between the William D. Ford program and the FFEL program?
A The primary difference between the two programs is -- is how the program is structured. So the Direct Loan Program, the Department of Education is the lender; whereas, in the -- and the schools work directly with the Department of Education from disbursement all the way through servicing.
Where the FFEL program is concerned, it deals with the banks and guarantors.
Q What role does the Department of Education or the United States government play in the FFEL loan program? Do they make the actual loan or do

they subsidize banks that do? Can you explain how that works?
A No, no, I cannot explain that in detail.
Q Does the Department of Education make the loans in the FFEL program, and is it money from the department that is being lent as I take it it is in the William D. Ford program?
A I don't understand -- what do you mean -- I don't understand your question.
Q If I take out a loan under the FFEL program, do I owe my debt to the Department of Education or do I owe it to a bank?
A You would owe it to a bank.
Q Okay.
A Yes, you would owe it to a bank or, yeah, a lending institution.
Q What role does the Department of Education play in those loans? Do they regulate them in some fashion?
A I don't understand what you are asking me.
Q I guess my question is, if under the FFEL program I take out a loan from a lending institution, what role does the federal government play in that?
MR. WARSHAWSKY: Objection. There's no foundation. You can answer subject if you can.

THE WITNESS: I don't understand -- I don't understand the question.
BY MR. BRYDEN:
Q I guess I don't understand under the loan program, but we can return back to that later.
Let me ask you about the Perkins loan program. What is the nature of the Perkins loan program?
MR. WARSHAWSKY: Object to the form. Go ahead and answer subject.
BY MR. BRYDEN:
Q There's another thing I should have explained to you.
MR. WARSHAWSKY: I explained it.
MR. BRYDEN: Okay.
MR. WARSHAWSKY: Just to be clear, the only reason I'm objecting is that Ms. Battle's been offered. She's the director of the direct loan servicing program. So to the extent you are getting into areas beyond direct loans, it may be beyond something she can answer.
MR. BRYDEN: If she doesn't have knowledge of it, that's fine. I think if she has relevant knowledge, I can ask her.

MR. WARSHAWSKY: Of course.
MR. BRYDEN: But, right, if you don't know, you don't know.
BY MR. BRYDEN:
Q So do you have any involvement in the FFEL program?
A Involved. What do you mean by involvement?
Q Is it part of your responsibility to oversee that program?
A No.
Q Is it part of your responsibility to oversee the Perkins loan program?
A No.
Q Are there any other loan programs that you are aware of?
A No. I've given you the ones that I'm responsible for.
Q But are there any other programs that you're aware of that are offered by the department?
A To my knowledge, you have everything that's offered by the department.
Q I believe you testified earlier that under the William D. Ford Direct Loan Program, there are Stafford loans that are offered, subsidized and

unsubsidized; there are consolidation loans; there are plus loans.
Are there any other loans under the William D. Ford Direct Loan Program?
A That's it.
Q Is the income contingent repayment plan available to borrowers under all four of those types of loans under the William D. Ford Direct Loan Program?
A The income contingent repayment plan is available to Stafford borrowers, sub and unsub. It's available to a consolidation borrower if they have a plus, but it is not available to a direct plus borrower.
Q What is a direct plus loan?
A That's the parent loan.
Q What do you mean by parent loan?
A Parent loan meaning a parent can take out a loan on behalf of their child.
Q I understand. Okay.
A Sorry.
Q That's all right.
And do you know when the income contingent repayment plan was first implemented; was that around 1984 to the best of your knowledge?

A Yes, to the best of my knowledge, yes, it was implemented in 1994.

Q So you first came to the Department of Education in 1993, I believe?

A Yes.

Q Can you explain what the income contingent repayment plan is?

A The income contingent repayment plan is a plan that is based on the borrower's annual adjusted income and family size and balance. So it's based on income. And your payments are calculated based on that income.

Q Do you know, is there a formula for determining what somebody's payments are going to be under the income contingent repayment plan?

A Yes.

Q Do you know what that formula is?

A Off the top of my head, no.

Q Which borrowers are appropriate for the income contingent repayment plan? Is it designed for borrowers with high payments but low income?

MR. WARSHAWSKY: Object to the form of the question. Vague. You can answer subject.

THE WITNESS: Clarify that, please. I'm sorry. Say that again.

BY MR. BRYDEN:

Q Can you tell me which borrowers would be best suited for the income contingent repayment plan?

MR. WARSHAWSKY: Same objection. Answer subject.

THE WITNESS: It is suited for -- it was designed for someone with low income that may not be able to afford payments under some of the other repayment plans.

BY MR. BRYDEN:

Q So for borrowers with lower income than borrowers under the other repayment plans?

A Yes.

(Deposition Exhibit No. 1 was marked for identification.

BY MR. BRYDEN:

Q Have you seen Exhibit 1 before?

A Have I seen Exhibit 1 before?

Yes.

Q If you turn to -- well, can you turn to Page 19 and then turn to the next page that I believe is unnumbered. Is that your signature?

A Yes.

Q Can I have you turn to the payment history

which I believe is the next page.

Do you see where I am?

A Yes.

Q Did you make this chart or do you know who did?

A I did not make this chart.

Q Do you know who did?

A Yes.

Q Then who is that?

A The contractor, the servicing center generated this chart.

Q Is this chart accurate to the best of your knowledge?

A Yes.

Q I ask you to turn to what's labeled Page 3 in -- I think you are on it. At the top.

MR. WARSHAWSKY: For the record, this is the 11/1/, 2007 payment history sheet, Page 3.

BY MR. BRYDEN:

Q If you look at the top of the chart here on Page 3, it indicates that on December 7th, 2001, there was a loan disbursement. Do you see where I am?

A No, 12/07/01?

Q Correct.

A Okay.

Q Let me actually step back. Hold on a second.

Let's go to the beginning of the chart. Let's go to what is designated as Page 2 of the payment chart.

A Page 2?

Q Which appears to begin in August of 1997. Do you see where I am?

MR. WARSHAWSKY: Just to be clear, there are two different payment history charts here.

MR. BRYDEN: Right.

MS. SCANIFFE: Now you are on the one dated October 31, '07?

MR. BRYDEN: That's correct.

BY MR. BRYDEN:

Q Can you go down to the line dated July 1, 1998.

A Okay.

Q Do you see where it says, "Rate Chg./Neg-AM Capitalization."

Do you see where I am?

A Yes.

Q And then if you go along the line here, it appears that the chart indicates that $2,913.09 was

capitalized to Dr. Pfeiffer's account. Is that right?
A Yes, that's what it says.
Q Then let's go down to the line dated July 1, 1999.
A Okay.
Q And it appears that the chart indicates that $6,721.76 was capitalized to Dr. Pfeiffer's account, is that right?
A Yes, that's what it says.
Q If you go one line up, it appears that on June 14th, 1999, Dr. Pfeiffer made a payment of $100, is that correct?
A June 14, 1999?
Q Correct.
A Yes, she made a payment of $100.
Q Do you know, does that interest capitalization of the $6,721.76, does that include interest that would have accrued on her account from June 15th, 1999 through June 30th, 1999?
A I'm sorry. Ask your question again.
Q The interest capitalization that occurred on July 1st, 1999, would that include interest that accrued on Dr. Pfeiffer's account from June 15th, 1999 through June 30th, 1999?

A Yes, the interest -- the interest accrual would have included any interest that accrued from the last payment date to the end of the month, yes.
Q Let's then turn back to Page 3 that we were looking at before dated November 1, 2007. At the top of the chart, there's a December 7th, 2001, two loan disbursements.
Do you see those?
A Yes.
Q I take it that refers to the consolidation loan taken out by Dr. Pfeiffer in 2001?
A Yes.
Q Do you know what the interest rate on Dr. Pfeiffer's loan was?
A No, I do not.
Q Then if you go to the line dated January 1, 2002 --
A Yes.
Q -- looks like there are actually three entries there.
A January 1, 2002?
Q Yes.
The first entry says "Grace End."
Do you see where that is?
A Yes.

Q What does that mean?
A Grace end is the sixth month after your separation would be considered your grace end. Borrowers are allowed six months before entering repayment, which would be considered a grace end date.
Q During that sixth-month grace period, does interest accrue on the student's account, on the borrower's account?
A If it's unsubsidized.
Q Then do borrowers have the option of paying off that interest each month during the grace period?
A The answer would be yes, they have the option of paying that interest during the grace period.
Q And then if they don't pay the interest during the grace period, does it capitalize at the end of the grace period?
A Yes, it does.
Q Then the next line down it says, "Neg-Amortization Start."
Do you see that?
A Yes.
Q What does that mean?

A Negative amortization is a condition where -- where your calculated payments are less than the interest accrual.
Q And how often are the scheduled payments determined, the amount of the scheduled payments?
A How often are they determined?
Q I mean, when a borrower is repaying the loan under the income contingent repayment plan, do you annually review their income to determine their monthly payment or do you do it every six months? How does that work?
A Annually.
Q So does the department treat all loans under the income contingent repayment loan where the borrower's scheduled payment is less than the interest accruing in the previous month as negatively amortized?
A Ask your question again. Does the department treat ...
Q Does the department consider all loans where the borrower is repaying under the income contingent repayment plan and their monthly payments have been calculated according to the plan, and the amount that's going to be their monthly payment is less than the interest accruing in the previous

month, does the department consider all those loans to be negatively amortized?

A I believe your question to be if we've calculated your payment based upon annual income, and your monthly payment, your interest accrual for a given month is less than that -- if that calculated payment is less than the interest accrual, yes, you would negatively amortize.

Q What if your actual payments are more than the interest that was accrued in a previous month, is it still considered negatively amortized?

A Yes, because your calculated payments are -- your calculated payments are in a negative amoritizing condition.

MR. WARSHAWSKY: We've been going almost 70 minutes so whenever you get to a stopping point.

MR. BRYDEN: We can take a break now. Why don't we take five.

(Recess)

BY MR. BRYDEN:

Q Before the break we were talking about negative amortization. Can you for the record tell me what negative amortization means?

A Negative amortization, as defined for

both -- the ICR plan, deals with a monthly calculated payment that is less than the accrued interest that would be earned during that month.

Q And the way the department treats negative amortization, it relates only to the calculated scheduled payment, it does not relate to the actual payment, is that right?

A By scheduled, you mean the monthly fixed payment?

Q Right.

A Is that what you are referring to?

Q Right.

A Yes, it would be -- refer to the monthly fixed payment based upon that income.

Q So even if the actual payments made by a borrower exceed the interest which accrued each month, the department still considers the loan negatively amortized, is that right?

A Yes. It -- yes, the loan would still be considered a negative amoritizing loan, yes.

Q On the same line we were looking at, January 1, 2002, do you see the line that says "Repayment Begins"?

A Yes.

Q And then apparently the interest accrued

to date was $391.78, is that correct?

A Yes.

Q That interest is not capitalized, correct?

A It is not capitalized, correct.

Q Why isn't that interest capitalized?

A I don't know why that interest is not or whether it should be.

Q Do you see there's a column, "Fixed Payment Amount."

Do you see that?

A Yes.

Q Those figures that are in the column, fixed payment amount, are those the monthly payment amounts as determined by the formula that's used to calculate payments under the income contingent repayment plan?

A Yes, that would be the fixed payment amount.

Q And under the income contingent repayment plan, borrowers are allowed to pay more than that fixed payment amount, correct?

A Correct.

Q And doesn't that happen routinely?

MR. WARSHAWSKY: Object to the form. Answer subject.

THE WITNESS: I don't understand when you say routinely.

BY MR. BRYDEN:

Q Is it common for borrowers to pay more than their fixed payment amount?

A I do not know whether it's common.

Q Is there a penalty for paying early?

A No, there is not.

Q But if a borrower pays more than the fixed payment amount, obviously the more they pay the sooner they are going to pay off their loans, right?

A Yes.

Q Do you know what Dr. Pfeiffer's monthly due date was for her payments?

A Not off the top of my head. I don't know whether it's changed during the course of the years.

Q Can you tell me how the monthly due date is determined for borrowers?

A Sure. There are four billing cycles: The 7th, the 14th, the 21st and the 28th. A borrower can choose any one of those dates.

If a borrower gets a brand new loan, then there's just -- when the loan is received into servicing, it just distributes them across those payment dates.

If the borrower already had an established due date in the system, then that new loan gets applied to that due date.
Q So the computer generates one of the four dates, sort of randomly distributes them, is that right?
A I don't think it's anything complex. It just goes one, two, three, and moves through the actual input file.
Q So borrowers are assigned a due date for their monthly payments?
A Provided a due date, yes.
Q Can you tell me how interest is calculated on a loan? Is it simple interest that accrues daily?
A It's a daily accrual, yes.
Q And let's go back to the chart. Let's go to the line dated January 15th, 2002.
A January 15th, 2002?
Q Right. Below where we were just looking.
A Uh-huh.
Q And it appears that the fixed payment amount on her loan was $512.07, is that right?
A That's correct.
Q And the total payment received on that

date was $725, is that right?
A That's correct.
Q Then it appears that $696.50 was applied to interest?
A Yes.
Q And would that be all the interest that had accrued on this loan as of that date?
A Yes, it says, "Interest accrued to date."
Q So at the time that she made this January 15th, 2002 payment, she paid off all the interest that had accrued as of January 15th, 2002; and then $28.50 was applied to principal, correct?
A That's correct.
Q And every time a borrower makes a payment, it's applied to any outstanding interest before it's applied to principal, correct?
A Fees, and then interest, and then to principal.
Q So is it fair to say that on this payment chart, every time you see that one of her payments is applied in part to principal, that that payment paid off all the interest that had accrued as of that date?
A It's fair to say -- repeat your question

again.
COURT REPORTER: "So is it fair to say that on this payment chart, every time you see that one of her payments is applied in part to principal, that that payment paid off all the interest that had accrued as of that date?"
THE WITNESS: Yes, to my knowledge, yes.
BY MR. BRYDEN:
Q Let's go down to the line dated June 14, 2002.
A Okay.
Q It appears that on June 14, 2002, Dr. Pfeiffer made a payment of $725?
A Yes, she did.
Q And $629.58 was applied to principal. And then $95.42 was applied -- I'm sorry, did I say principal?
A You did.
Q I'm sorry. $629.58 was applied to interest; and $95.42 was applied to principal.
So is it fair to say that the June 14, 2002 payment covered all the interest that had accrued on her loan as of that date?
A Yes, that's fair.
Q Then on the next line, July 1, 2002, it

appears that $368.76 is capitalized to her account, is that right?
A Yes.
Q And do you know where that $368.76 figure would have come from? Is that the interest that accrued from June 15 to June 30 on her loan?
A Yes.
Q Why does this interest capitalization happen on June 30, is that when the Department of Education ends its fiscal year, or is there something magical about June 30?
A Not to my knowledge.
Q Okay. But in the normal course, if there wasn't this capitalization that happened on July 1st, in the normal course, the borrower wouldn't pay off the interest accruing after the payment date until the next month, correct?
MR. WARSHAWSKY: May I have that question back?
COURT REPORTER: "Okay. But in the normal course, if there wasn't this capitalization that happened on July 1st, in the normal course, the borrower wouldn't pay off the interest accruing after the payment date until the next month, correct?"

MR. WARSHAWSKY: Object to the form. You can answer subject.

BY MR. BRYDEN:

Q Do you understand the question?

A No. Could you ask it again?

Q Sure.

A Okay.

Q The interest that accrues after a payment is made in any given month, if my payment date is the 21st --

A Correct.

Q -- I pay all the outstanding interest on, let's say, February 21st, the interest that accrues after that payment until March 21st isn't due until March 21, my next monthly payment, correct?

A What do you mean by due?

Q That's when the payment is expected by the department.

A You mean you are not billed?

Q Right.

A You are not billed until the next month. But interest is due. It's still due. It's accrued daily.

Q Right.

A So if you're referring to you are not billed until -- you are not billed until the next month, then, yes, I would agree.

Q So just to make sure I have that right, you are not billed for interest until your monthly payment?

A Until your monthly payment, correct.

Q And so let me make sure I understand what's going on here. I think we both know, but let's be explicit about it.

After a borrower, under the income contingent repayment plan that the department considers negatively amortized, the department capitalizes interest after their June payment through June 30th, correct?

A Okay. Annually, on June 30, the department capitalizes interest -- capitalizes interest, unpaid, for that period, for that cycle. So if the borrower made a June payment, any interest unpaid on June 30th would be capitalized.

Did I repeat what you understood?

Q I think so but let me rephrase it a little bit.

So the interest that accrues between the borrower's June payment and June 30th is

capitalized regardless of whether or not the June payment covered all the accrued interest as of the June payment date?

A Correct.

Q Is that true for all borrowers under the income contingent repayment plan?

A You mean -- no. What do you mean, borrowers under the income contingent repayment plan who are negatively amoritizing, that's who we are referring to, correct.

Q I'm asking you.

A I want to make sure I was clear on what your question was.

So borrowers under the income contingent payment plan that are in a negative amoritizing condition, those are the ones we are referring to, they are capitalizing on June 30th.

Q And is that true with respect to all of the direct loans, it's true with respect to all Stafford loans, consolidation loans, plus loans and direct plus loans?

A What do you mean is that true?

Q I believe you testified earlier that you could repay any of those loans under the income contingent repayment plan.

A Yes.

Q Is interest capitalized on June 30th in the same manner under all those loan programs?

A We are not talking about loan programs. You're talking about a payment plan.

So under the income contingent repayment plan, those borrowers are eligible to apply for the income contingent repayment plan.

But when we are just talking about just negative amortization, we are talking about a much smaller group. And you are talking about borrowers just on the income contingent repayment loan.

Q It wouldn't matter which loan program you took out your loan under?

A You are talking about the loan type. When you say loan program, I'm thinking you are referring to FFEL or direct.

If you are talking about loan types, it does not matter, with certain exceptions, what type of loan you have. Those that are eligible for ICR would be eligible for ICR.

When you talk about program, I am still thinking you're referring to FFEL or direct and I don't know -- I'm not talking about that. I'm only talking about the loan types. Then with loan types,

you have a category called repayment plan which is income contingent. And then income contingent, then you have the ability to negative amortize. So am I clear?

Q Yes. But let me just try to summarize.

I believe what you are telling me is that for all loan types that can be repaid under the income contingent plan, interest is capitalized in the same fashion for negatively amortized borrowers?

MR. WARSHAWSKY: May I have that back?

COURT REPORTER: "Yes. But let me just try to summarize.

"I believe what you are telling me is that for all loan types that can be repaid under the income contingent plan, interest is capitalized in the same fashion for negatively amortized borrowers."

BY MR. BRYDEN:

Q Do you not understand the question? I can rephrase if you'd like.

A That may be helpful.

Q Does it matter what loan type you have with respect to how your interest is capitalized by the department?

A Does it matter -- only under the income

contingent repayment plan. If you have an eligible loan type being repaid under income contingent, then, yes, it does not matter to us. So if your question -- if I understand your question, if I have a Stafford loan repaid under ICR, would I still capitalize on June 30th? The answer is yes.

If I have a consolidation loan that is under the ICR plan, would I capitalize on June 30th? If I'm in a negatively amortization condition, the answer is yes.

Q Okay. And do you know whether or not loans under the FFEL can be repaid under the income contingent repayment plan?

A They cannot.

Q What about Perkins loans?

A No, they cannot.

Q Do you know why not?

A No.

Q Let's go down to the Line 112402. Do you see where it says, "Neg-Amortization" -- or, I'm sorry, "11/24/02 Neg-Amortization End."

A Uh-huh.

Q Can you tell me what that means?

A Means the negative amortization. She wasn't in a negative amortization condition.

Q Can you tell me what that means?

A Meaning her calculated payment -- her calculated payment would have exceeded the interest accrual.

Q And then if you go down to the line dated August 25th, 2003 --

A Uh-huh.

Q -- it says, "Neg-Amortization Start."

A Yes.

Q Can you tell me what that means?

A Meaning her calculated payment, her calculated fixed payment, would not have covered the accrual, monthly accrual.

Q Apparently her calculated fixed payment -- it looks like in January of 2003 her calculated fixed payment went up, correct?

A Yes, it looks like it went up.

Q But then on October 9, 2003 it went back down again?

A October 9th, yes, that's what it indicates, yes.

Q But if you look at her actual payments --

A Yes.

Q -- on the total amount received --

A Yes.

Q -- it appears that at least as of June of 2003 through April of 2004, those payments have gone up; she's actually paying $900, and then $925, right?

A I'm sorry. Where are you?

Q I'm sort of at the bottom of the chart here. If you look at where her -- we were looking at October 9th, 2003 where her fixed payments went down.

A Yes.

Q If you look over at the total payments received --

A Yes.

Q -- in fact, she's paying $925 each month, correct?

A Correct.

Q It appears that beginning 2003, each payment she was making covered all the accrued interest on her loan and then the remainder was applied to principal, correct?

A That's correct.

Q Let's go to the next page, and let's begin on the very top line of June 21, 2004.

A Yes.

Q It appears that Dr. Pfeiffer makes a

payment of $900?
A That's correct.
Q And $665.60 is applied to interest, and $234.40 is applied to principal, correct?
A That's correct.
Q And then on July 1, 2004, $207.56 is capitalized to her account?
A That's correct.
Q Is that $207.56, is that the interest accruing on her account between her June payment and June 30th?
A That's correct.
Q Let's go down to the line dated June 9th, 2005.
A Yes.
Q It appears that Dr. Pfeiffer made a payment of $900, and $482.93 was applied to pay off all accrued interest, correct?
A That's correct.
Q Then $417.07 was applied to pay down her principal balance, correct?
A Correct.
Q And then July 1st, 2005, $440.95 is capitalized to her account, correct?
A That's correct.

Q And that $440.95, is that the interest that accrued after Dr. Pfeiffer's June 9th, 2005 payment and June 30th, 2005?
A Yes.
Q Then it doesn't appear there's any interest capitalization for 2006 and 2007, correct?
A That's correct.
Q And do you know why not?
A Because it states that her negative amortization ended and her calculated payment of $1,140.50 covered the interest accrual so she was not in a negative amortization condition.
Q Because her scheduled payments --
A Her fixed scheduled payments.
Q Because her scheduled payments were greater than the interest accruing each month?
A Scheduled fixed payments were greater than the interest.
Q By scheduled fixed payments, you are not referring to her actual payments?
A That's correct.
Q Okay.
(Deposition Exhibit No. 2 was marked for identification)
MR. WARSHAWSKY: Excuse me. Just for the

record, I assume that this spreadsheet we went through in Battle Exhibit 1 and Battle Exhibit 2, those are being treated subject to the protective order, is that correct?
MR. BRYDEN: Yes. I appreciate your comment. I think that we can assume, I can say this with respect to any document that has Dr. Pfeiffer's Social Security number, we'd like to treat that as confidential.
I don't think we've had any testimony that needed to be marked as confidential yet; but, at least the portion of these exhibits that contain account numbers or Social Security numbers, we would like to treat as confidential.
MR. WARSHAWSKY: It's certainly your call whether, for example, you want payment amounts to be treated as confidential.
MR. BRYDEN: We don't need to keep those confidential, but we would like to keep all the Social Security numbers confidential. And it appears the account numbers are Social Security numbers so we'd like to treat those as confidential.
We can talk later if we want to have a

redacted version of the exhibits.
MR. WARSHAWSKY: Okay.
BY MR. BRYDEN:
Q Now, do you see in the lower right-hand corner, we have numbers?
A Yes.
Q P00279, do you see that?
A Yes.
Q Could I have you thumb backwards to P00287.
A Okay.
Q And have you ever seen this document before? Are you familiar with this billing statement?
A Yes.
Q And is this a form statement that's sent to -- why don't you tell me. Who is this type of billing statement sent to?
A This statement is sent to borrowers on ICR in a negative amortization condition.
Q And this apparently is dated February 2002?
A Yes.
Q If you go to the box at the top, let's go to the last sentence where it says, "To avoid

capitalization you can, (1) send a payment to cover all or part of interest owed or, (2) pay at least the amount of interest charged monthly to your account. (About 587.53)"

Do you see where I am?

A Yes.

Q So is this statement informing the borrower that if you want to pay more than your scheduled payment, you can do that to pay off all the accrued interest on your account?

MR. WARSHAWSKY: Objection. The document speaks for itself.

You can answer, subject.

THE WITNESS: Ask your question again.

BY MR. BRYDEN:

Q Is the purpose of what I just read to you to notify the borrower that if they want to pay more than their scheduled amount, they can do that to pay off all the interest which has accrued to avoid capitalization?

MR. WARSHAWSKY: Same objection.

You may answer, subject.

BY MR. BRYDEN:

Q Does my question make sense?

A I believe it does.

Right, it explains how to avoid capitalization.

Q And here it's telling Dr. Pfeiffer that if she were to pay $587.53 each month, she could avoid capitalization?

A It's an approximation; but, yes.

Q Let's turn back to the payment chart.

A The payment chart?

Q In Exhibit 1.

A Okay.

Q And can you go to the line dated February 19, 2002.

A Uh-huh, yes.

Q Apparently she paid $725 that month, correct?

A Correct.

Q And that's more than the 587.53, correct?

A Correct.

Q Can I have you turn to Page P00286?

A Uh-huh, yes.

Q And, again, let's look at that same sentence. Apparently this billing statement told Dr. Pfeiffer that if she paid $662.33, that would avoid capitalization, correct?

MR. WARSHAWSKY: Why not make a running

objection, standing objection to the extent you are asking her to interpret what a statement is in the billing statement. I think it speaks for itself.

You can answer subject.

MR. BRYDEN: I am just asking her to confirm what it says.

MR. WARSHAWSKY: That's why I'm going to make a standing objection so we don't have interruptions.

THE WITNESS: It says pay amount, pay at least the amount of interest charged, which is about 662.

BY MR. BRYDEN:

Q And then if you go beneath the box here, it says the current payment due date is March 21, 2002?

A Correct.

Q And then if you look on the payment chart, you see on March 18th, 2002, Dr. Pfeiffer makes a payment of $725, correct?

A That's correct.

Q Let's go to the next page.

A Which is the next page?

Q P00285.

A Okay.

Q And, again, this billing statement, this apparently is the billing statement for April 21, 2002?

A Yes.

Q And it suggests to Dr. Pfeiffer that to avoid capitalization, she could send in a check for $661.75 is that correct?

A Yes.

Q Then if you go to the payment chart, on April 15th, 2002, Dr. Pfeiffer sends in a check for $725, correct?

A That's correct.

Q Let's go to P00284.

A Okay.

Q And I take it this is the billing statement for May 2002?

A May 2002, that's correct.

Q And the billing statement suggests to Dr. Pfeiffer that to avoid capitalization, she could pay at least the amount of interest charged monthly to her account, which is approximately $661.08, is that correct?

A That's correct.

Q And then if you go to the payment chart,

on May 16th, 2002, Dr. Pfeiffer makes a payment of $725, correct?
A On May 16th?
Q 2002.
A That's correct.
Q Can I ask you to turn to P00283. I take it this is the June billing statement?
A Yes.
Q And the June billing statement suggests to Dr. Pfeiffer that to avoid capitalization, she could pay at least the amount of interest charged monthly to her account which is approximately $660.79 correct?
A That's correct.
Q And then if you go to the line on the payment chart for June 14, 2002, Dr. Pfeiffer makes a payment of $725, correct?
A That's correct.
Q And then on July 1st, 2002, $368.76 is capitalized to her account, is that correct?
A That's correct.
Q Can I have you turn to P00282.
I take it this is the July 21, 2002 billing statement?
A Yes.

Q And, again, this document suggests to Dr. Pfeiffer that she pay at least the amount of interest charged monthly to her account, which is approximately $660.24, is that correct?
A Yes.
Q Then if you go to the payment chart, on June 16, 2002, the department receives a payment of $725, is that correct?
A That's correct.
Q Can I have you turn to P00281?
A Yes.
Q Again, I take it this is the August 2002 billing statement?
A Yes.
Q And it suggests one way to avoid capitalization is to pay at least the amount of interest charged monthly to the account, which is approximately $660.07, correct?
A Yes.
Q Then if we go to the payment chart, on August 16th, 2002, the department received payment of $725, is that correct?
A Yes.
Q Is it fair to say that Dr. Pfeiffer in fact paid more than these notices that we just

reviewed suggested she pay each month to avoid capitalization?
A I'm sorry. Say your question again. Is it fair to say...
Q Is it fair to say Dr. Pfeiffer, in fact, paid more than what the notices we just reviewed suggested she pay to avoid capitalization?
A Yes.
(Deposition Exhibit No. 3 was marked for identification)
BY MR. BRYDEN:
Q Do you know, does the Department of Education keep a copy of all borrowers' promissory notes in a file somewhere, or does your contractor do that?
A The contractor -- a contractor is responsible for housing the promissory notes.
Q Does the Department of Education keep a file on each borrower with information about their loan or do you contract that out?
A By file, what are you referring to?
Q Is there a manila envelope like this that has basic information about every borrower, or do you send that over to ACS, or how does that work?
A No, the borrower records are imaged into

an imaging system. So file as manila, no; but, we do have information regarding that particular customer.
Q That's kept in a Department of Education system?
A When you say Department of Education system, yes, the contractors are agents of the department; so, yes, if that's what you are referring to.
Q Could I ask you to take a look at Exhibit 3. Why don't we skip the first page and go to the second page.
Can you tell me what the next three pages appear to be?
A This appears to be her -- it is her promissory note for her loan.
Q Okay. Can I get you to turn to P00486?
A Uh-huh.
Q Do you see the paragraph about a third of the way down on the left-hand side captioned "Interest"?
A Yes.
Q And I would like to read the last sentence in that paragraph:
"ED may add interest that accrues but is

74

not paid when due to the unpaid principal balance of this loan, as provided under the Act. This is called capitalization."

Did I read that accurately?

A Yes.

Q Do you know, is there any other discussion of interest capitalization in the promissory note?

MR. WARSHAWSKY: Object. The document speaks for itself.

You can answer subject.

THE WITNESS: I think -- I guess this is the only reference to interest capitalization in this section.

BY MR. BRYDEN:

Q And does this promissory note make reference to interest for borrowers that are negatively amortized being capitalized between their June payment and June 30th?

MR. WARSHAWSKY: May I make a standing objection to the extent you are asking the witness to testify about what the document says? It speaks for itself. We can avoid the interruption, okay. Do you agree?

MR. BRYDEN: Yes, you can have a standing objection.

75

BY MR. BRYDEN:

Q Did you understand my question before the objection?

A If you could repeat it for me.

Q Is there anything in the promissory note that says anything about interest being capitalized between a borrower's June payment date and June 30th for borrowers that are in the income contingent repayment plan and considered to be negatively amortized?

A I haven't -- I don't know. I don't know whether there's any other -- I didn't read the note. Would you like me to read the note?

Q If you'd like to review it, you can. I can tell you it's not in there, but don't take my word for it.

If I were to tell you it doesn't say anything about capitalizing interest between the June payment date and June 30th for those borrowers, would you have any reason to disagree with me?

A No.

Q Do you know when the practice of capitalizing interest between the borrower's June payment and June 30th began, do you know how long

76

that had been done?

A The actual date I think was provided in the documentation. Can I look at it?

Q If you'd like. You don't have to give me an exact date. If you have an idea...

MR. BRYDEN: Is that in the interrogatories, John?

THE WITNESS: Your question was when did we begin to ...

MR. BRYDEN: If it's in the interrogatories, I'll withdraw the question.

MR. WARSHAWSKY: I think you're referring to Interrogatory 9.

MR. BRYDEN: I'll take a quick look at that.

(Pause)

Okay. I'll withdraw the question.

BY MR. BRYDEN:

Q So isn't the interest that accrues after a borrower's June payment date not due until their July payment date?

MR. WARSHAWSKY: Object to the extent you're calling for a legal conclusion.

You can answer subject.

THE WITNESS: Ask your question again.

77

COURT REPORTER: "So isn't the interest that accrues after a borrower's June payment date not due until their July payment date?"

THE WITNESS: Yes, they would be billed for July.

BY MR. BRYDEN:

Q I have a number of different forms of promissory note that were produced in this litigation. I would like to show them to you to see if you recognize them, and I'm going to ask you if you know when they were in use. I don't know if you will know that or not but if you can tell me to the best of your knowledge, that would be great.

(Deposition Exhibit No. 4 was marked for identification)

BY MR. BRYDEN:

Q Do you see on Exhibit No. 4, there's a reference to it being a clearance draft in kind of the upper right-hand corner. Do you see that?

A Yes.

Q Do you know what that means?

A This -- this particular version is going through the clearance process.

Q So this particular version, looking at Exhibit 4, is not in use yet?

A I cannot attest to that --
Q Okay.
A -- because the date is August 2nd, 2007.
Q It wasn't in use before August 2nd, 2007, is that right?
A I would assume, yes.
Q Do you recognize this document, though? Do you recognize this as a form promissory note that the department is considering using or may be using?
A Yes.
(Deposition Exhibit No. 5 was marked for identification)
BY MR. BRYDEN:
Q If you look in the upper right-hand corner on Exhibit 5, there's an OBM number. Does that refer to the Office of Management and Budget?
A OMB?
Q I'm sorry, OMB.
A Yes, it does.
Q That's some number that tracks these forms, is that right, or identifies the form?
A Yes.
Q And does that notation where it says "Form Approved, Exp. date 1/31/2005," can you explain to me what that information is there?

A Just what it says. OMB number is assigned to a particular document provided by OMB. The form was approved, and that the expiration date on this particular document is that 2005 date.
Q And do we know when it would have been in use, then?
A It would have been in use no earlier than that date. I'm not sure how long it would have been in use until we know what the next series is.
Q Is it fair to say that -- I take it this is the Federal Direct Consolidation Loan Promissory Note, is that right?
A This one says, "Federal Direct Consolidation Loan Promissory Note Endorser Addendum."
Q Is it fair to say that all borrowers under the Federal Direct Consolidation Loan Program that consolidated their loans while this form was in use would have signed the same promissory note, or would there be more than one at any given time?
A No, there would only be one in use.
Q And so the line, again, in the upper right-hand corner where it says, "EXP period, date, 1/31/, 2005," that's when this would have stopped being used, is that right?

A Not always. Not always. There could be relief provided if a new form is in the clearance process. So we could have a form that is still in use after an expiration date assuming we have worked with OMB to get some kind of waiver while we are in the clearance process.
(Deposition Exhibit 6 No. was marked for identification)
BY MR. BRYDEN:
Q Can you just tell me what Exhibit 6 appears to be?
A It appears to be another Federal Direct Consolidation Loan Promissory Note with an expiration date of 1/31, 1999.
Q So this particular form would have gone out of approval in 1999; but, there may have still been some in use, or there may have been some layover. Is it fair to assume that this form maybe by June of 1999 was no longer in use, or is it possible this form would have still been being used?
MR. WARSHAWSKY: Objection to the extent you are asking the witness to speculate.
You can answer subject to the objection.
THE WITNESS: I couldn't speak to how long it was in existence.

BY MR. BRYDEN:
Q Okay. Is there any estimate you can place on when it's likely that it was no longer in use?
A If the expiration date was 1/31/99, it's estimated that something else would have been in place around that timeframe.
MR. BRYDEN: It's noon. Can we go another 15, 20 minutes, and then take a lunch break? Is that okay?
MR. WARSHAWSKY: Let's keep going.
MR. BRYDEN: I think I have about ten more of these.
MR. WARSHAWSKY: Maybe we could stipulate to this.
MR. BRYDEN: I don't know any of this is controversial.
(Deposition Exhibit No. 7 was marked for identification)
BY MR. BRYDEN:
Q Looking at Exhibit 7, I take it there's no information provided on this document, correct me if I'm wrong, but you don't know when this was approved. There's information in the upper right-hand corner that tells you when this form will expire but we don't know when it was approved, is

82

that right?
A I do not know.
Q You don't know. Okay.
Do you know, does the department somewhere track that information, does it keep track of when which forms were in use?
A Yes, we do.
Q Have you seen that information before? Is it set forth in a spreadsheet or something like that?
A I do not know how it's kept.
Q Okay. How do you know that they do keep that information?
A Only because we work with the office that is responsible for the clearance process.
Q You know from your personal knowledge that they keep track of that information?
A Yes, they keep track of all forms.
Q Again, does Exhibit 7 appear to be a Federal Direct Consolidation Loan Application and Promissory Note?
A Yes.
Q Okay.
(Deposition Exhibit No. 8 was marked for identification)

83

BY MR. BRYDEN:
Q Looking at Exhibit 8, does this appear to be a Federal Direct Consolidation Loan Application and Promissory Note?
A Yes.
Q We know apparently when the form expired, is that right? So we are not sure when it may have been approved, at least from this document we can't figure that out?
A Yes, I cannot figure it out.
Q Okay.
(Deposition Exhibit No. 9 was marked for identification)
BY MR. BRYDEN:
Q This one apparently goes back a ways, No. 9.
Can you tell me or can you verify this appears to be a Federal Direct Loan Program Consolidation Loan Application and Promissory Note, Exhibit No. 9?
A Yes. Appears to be an application and promissory note.
Q Okay.
(Deposition Exhibit No. 10 was marked for identification)

84

BY MR. BRYDEN:
Q Can you tell me what Exhibit 10 appears to be?
A Application and Promissory Note for the Federal Direct Consolidation Loan Program.
Q Again, looking at the information in the upper right-hand corner, apparently this particular form expired June 30, 1995, is that right?
A That's correct.
(Deposition Exhibit No. 11 was marked for identification)
BY MR. BRYDEN:
Q Can you just tell me what Exhibit No. 11 appears to be?
A Application and promissory note for the Federal Direct Consolidation Loan. Expires 12/19/94.
(Deposition Exhibit No. 12 was marked for identification)
BY MR. BRYDEN:
Q Can you tell me what Exhibit No. 12 is?
A Federal Direct Consolidation Loan Instructions for Promissory Note Endorser Addendum.
Q And how was this used, if you know?
A This is an instructional. So this is used

85

to help complete the promissory note.
Q So this is not an actual promissory note or part of the promissory note?
A These are the instructions. So it's probably -- it says it's an instruction so it's not the actual note itself, if that's your question.
Q Can I have you turn back to Exhibit 1 for a minute. Could I have you turn to Page 7.
MR. WARSHAWSKY: Interrogatory 6?
MR. BRYDEN: Yes.
BY MR. BRYDEN:
Q Have you reviewed Interrogatory No. 6 before?
A Yes.
Q And I take it you verified the accuracy of the answer to Interrogatory No. 6?
A Yes.
Q And if you go to the very bottom of Page 7, it reads -- well, I won't read the whole sentence into the record, but can I ask you what it means?
I understand the part that says that the form promissory note contains language identical to Dr. Pfeiffer's, but what do you mean by substantially similar?

A I don't understand your question.
Q Can you just read the paragraph beginning at the bottom of Page 7 beginning with, "All borrowers who have had"--
MR. WARSHAWSKY: This is language from your interrogatory. She's responding to that.
MR. BRYDEN: I understand.
BY MR. BRYDEN:
Q Are there promissory notes executed by borrowers that have language that is substantially different than the language in Dr. Pfeiffer's promissory note to the best of your knowledge?
A No.
MR. BRYDEN: Why don't break for lunch?
(Off the record)
(Luncheon Recess)
AFTERNOON SESSION
CONTINUED EXAMINATION BY COUNSEL FOR PLAINTIFF
BY MR. BRYDEN:
Q Before the break we went through a series of different promissory notes, correct?
A Yes.
Q Is there any variation in the way that the department capitalizes interest with respect to different promissory notes for these consolidation

promissory notes we've been looking at, or are they all treated in the same manner? Does that make sense?
A No.
Q Okay. Let me try to rephrase it.
Again, I want to talk about the interest capitalization we've been talking about, interest capitalization that occurs on June 30th of each year.
A Okay.
Q Is there any difference in the way that interest is capitalized depending on what form of promissory note the borrower signed?
A No. Capitalization, as documented in the promissory note, it's going to be consistent, if I'm answering your question correctly.
Q I believe you are.
So there isn't some, you know, if you signed Form 0007, then your interest is capitalized in this manner; but, if you signed some other form, it's capitalized in some other manner. There's nothing like that, correct?
MR. WARSHAWSKY: Within the context of the Direct Loan Program?
MR. BRYDEN: Correct.

THE WITNESS: No, not to my knowledge.
BY MR. BRYDEN:
Q Are there regulations, Department of Education regulations, that address when interest may be capitalized?
A Yes.
Q And do you know the cites for those regulations?
A Off the top of my head, no. It's probably in the documentation. Do you want me to cite that?
Q You can look in there, sure. I don't know if the interrogatory answer has all the cites.
MR. WARSHAWSKY: I'm reasonably sure it does not. That was getting into a legal area.
MR. BRYDEN: Sure.
MR. WARSHAWSKY: That was in response -- that was in response to one of your document production requests that we talked about.
MR. BRYDEN: Right.
BY MR. BRYDEN:
Q You don't know off the top of your head the cites to the regulations that address interest capitalization?
MR. WARSHAWSKY: I'll just object to the extent you are asking for a legal conclusion

from the witness.
You may answer subject to.
THE WITNESS: No, I do not.
BY MR. BRYDEN:
Q Okay. Can I ask you to take another look at Exhibit No. 3. Can you turn to Page P00486.
And do you see in the upper left-hand corner, there's a paragraph captioned "Governing Law and Notices."
A Yes.
Q Could I ask you to read that paragraph to yourself.
(Pause)
A Okay.
Q Do you know what Department of Education regulations that paragraph refers to?
A Not specifically, no.
Q Do you know what provisions of the Higher Education Act that paragraph is referring to?
A Not specifically, no.
Q Is there any information that's given to borrowers about what regulations or parts of the Higher Education Act are referred to in that paragraph when they took out their loans?
MR. WARSHAWSKY: You mean aside from the

language contained in the promissory note?
MR. BRYDEN: Right.
BY MR. BRYDEN:
Q Is there anything other than the language in that paragraph that tells a borrower what regulations or portions of the Higher Education Act might be applicable to their loans?
A Not to my knowledge.
Q Let's go back to Exhibit No. 1. I would like you to take a look at the response to Interrogatory No. 2. Can you just go ahead and read the answer to yourself.
I don't know if you have to read the whole thing, but can you read Interrogatory No. 2 and then read the answer to yourself.
(Pause)
A Okay.
Q Did you verify the accuracy of that answer?
A Yes.
Q Can you tell me how the 26,900 borrowers figure was come up with?
A The 26,900 figure was derived from looking at borrowers under income contingent repayment where negative amoritizing and satisfied the interest in

their June payment, and thus capitalized between their last June payment and June 30th.
Q Okay. So the 26,900 figure does not include borrowers whose June payments did not cover all the interest that had accrued as of their June payment date, is that right?
A The -- repeat your question. It does not cover...
Q It does not include borrowers whose June payment did not cover all the accrued interest as of the June payment?
A Correct.
Q And do you know approximately how many borrowers there are that are repaying under the income contingent repayment plan, total?
A There are a little over 600,000 that are repaying under income contingent repayment.
Q And do you know approximately how many of those borrowers were negatively amortized according to the department at one time or another?
A There are approximately half that are in a negative amortization condition or payments that are calculated in a negative amortization condition.
Q And by approximately half, you mean half of the 600,000?

A That's correct.
Q The other half, their scheduled payments were enough to cover the accrued interest in the previous month, is that right?
A Yes.
Q What about the alternative repayment plan, are there any borrowers that are negatively amortized pursuant to an alternative repayment plan?
A Yes.
Q Do you know, are they included in this 26,900 figure?
A No, they are not.
Q Do you have an approximation of how many negatively amortized borrowers there are on alternative repayment programs?
A Less than five.
Q And does the 26,900 figure include borrowers that have Stafford loans?
A I would assume, yes. I didn't look at loan types but I would assume that, yes, that would include all loan types eligible for ICR.
Q Why would you assume that?
A Why would I assume what?
Q Your understanding is that the 26,900 relates to all borrowers under the income contingent

repayment plan, it was not broken out by loan type?
A Correct, right. This includes all borrowers, the 26,9, all borrowers that are on the income contingent repayment loan despite loan type.
Q And in calculating the 26,900 figure, were actual payments looked at or were just the scheduled payments looked at; in other words, my understanding, correct me if I'm wrong, is that the 26,900 -- I'll withdraw the question.
Can you tell me how interest capitalization increases the cost of a loan?
A Clarify what you mean by increases the cost of the loan.
Q My understanding is when interest is capitalized, it is added to the principal balance, correct?
A That's correct.
Q And then interest accrues on the interest that was capitalized, correct?
A Interest would accrue on your new principal balance outstanding, correct.
Q So it increases the cost of your loan in the sense that more interest accrues on your loan, correct?
A Yes.

Q And it increases the principal balance on your loan, correct?
A When you capitalize, it increases the principal on your loan, yes.
Q Does it increase the amount that a borrower has to repay on the loan in any other way?
A What are you referring to?
Q Well, maybe the answer is no; but, I mean, are there any other costs that are associated with interest capitalization other than it seems to me you have the interest that accrues on the capitalization, and you have an increased principal balance. And my question is, is there any other manner in which interest capitalization increases the cost of your loan?
A No.
MR. BRYDEN: Do you have an objection?
MR. WARSHAWSKY: No, not at this point.
BY MR. BRYDEN:
Q So if you want to determine how much an interest capitalization had increased the cost of the loan, all you would need to know is the amount of the interest capitalization and the amount of interest that accrued on the interest capitalization, correct?

MR. WARSHAWSKY: Object to the form of the question.
You can answer subject.
THE WITNESS: Clarify.
BY MR. BRYDEN:
Q If you wanted to explain to a borrower how interest capitalization had increased or was going to increase the cost of their loan, all you would have to know to calculate that would be the amount of the interest capitalization and the amount of interest that accrued on that capitalization, correct?
MR. WARSHAWSKY: Objection. Again, I'll object to the form of the question.
Does this somehow pertain to any of the subjects that we are producing Ms. Battle for?
Seems to me you are getting into your legal theory. That may be something we will end up discussing with Judge Sullivan.
But I'm not sure how this relates to subjects she's been identified to testify about as a fact witness.
MR. BRYDEN: She's a witness with respect to the practice of capitalizing interest.
MR. WARSHAWSKY: She's discussed that

practice. But you're asking how you would go about calculating damages, basically, and that's not what she's here to testify about.
You can ask the questions if you want, but...
MR. BRYDEN: If she doesn't know an answer, that's fine and I understand that.
MR. WARSHAWSKY: But it's also an objectional line of questioning.
I'll state the objection and we can make it a standing objection if you like, but she's not here to provide opinions about your legal theory of damages.
MR. BRYDEN: I disagree it's a legal theory. I can show you some of the documents later, but there are documents that the Department of Education provides to borrowers that say if interest is capitalized, this is how it's going to increase the cost of your loan.
MR. WARSHAWSKY: Maybe that might be the way to do it.
MR. BRYDEN: Right.
(Deposition Exhibit No. 13 was marked for identification)

BY MR. BRYDEN:
Q Can you tell me what Exhibit 13 appears to be?
A Appears to be a glossary.
Q And is there a glossary provided in the direct consolidation loan application packet.
A Currently? When are you referring to?
Q Is there one currently?
A I don't know.
Q If you go down to the bottom of the first page of Exhibit 13, it refers to direct consolidation loan application packet?
A Uh-huh.
Q Was there at least some period in time during which a glossary was provided along with a direct consolidation loan application packet?
A Yes.
Q Can you go down to the portion where they have a definition of capitalized interest.
A Okay.
Q Do you see the last sentence in that paragraph that reads:
"It then becomes capitalized interest. Capitalizing interest increases the principal amount of the loan and therefore the total cost of the

loan."
A Yes.
Q Can you tell me how you would determine how much the total cost of your loan had increased because you had capitalized interest?
A Okay. What is your question?
Q Well, the paragraph says, "Capitalizing interest increases the principal amount of the loan and therefore the total cost of the loan."
My question is how do you determine how much capitalizing interest increased the amount of your loan and the total cost of your loan?
A So over time, if you capitalize on your principal amount, then you are going to pay interest on that capitalized amount.
Q Are there any other additional costs associated with interest capitalization?
A I don't -- I don't know what you are referring to.
Q I think your answer is no.
A Okay.
MR. WARSHAWSKY: I think her answer was she doesn't know what you are referring to.
MR. BRYDEN: Oh, okay.
MR. WARSHAWSKY: But the record says what

she said.
(Deposition Exhibit No. 14 was marked for identification)
BY MR. BRYDEN:
Q Can you tell me what this document, Exhibit No. 14, is?
A This is a disclosure, interest capitalization disclosure.
Q Is this the same form that's sent to all borrowers whose interest is being capitalized?
A Yes. If they are in a negative amortization condition, then, yes, they would receive the same form.
Q This is dated June 30th, 2002, is that correct?
A Yes.
Q And if you go down to the notification of capitalization, do you see the first sentence there beginning, "During the past year"?
A Yes.
Q The portion that says, "During the past year," does that refer to June 30th, 2001 through June 30th, 2002?
A During the past year would be referring to -- June 30th -- what were the dates that you...

Q Well, the document says, "During the past year." And the document is dated June 30th, 2002. So my question was by during the past year, does this notice mean June 30th, 2001 through June 30th 2002?
A It would more accurately be July 1st, 2001 through June 30th, 2002.
Q Okay. That's what it means by during the past year?
A Yes.
(Deposition Exhibit No. 15 was marked for identification)
BY MR. BRYDEN:
Q I'm looking at Exhibit No. 15. Does this appear to be the same type of notice as Exhibit 14?
A Yes, it appears to be the same.
Q And, again, then, I take it right underneath where it says, "Notification of Capitalization" --
(Off-the-record discussion)
MR. BRYDEN: We would like to clarify for the record we are looking at Exhibit 15 here. I don't know if that's your note, John, but there's a note "Battle Exhibit 15," at the bottom, that was not part of the original

exhibit, that was just added because I handed the court reporter the wrong exhibit.
MR. WARSHAWSKY: Right. The first officially marked version of Battle Exhibit 15 included a notation you had made so we will go with the substituted one with the little box at the bottom that says "Battle X15", which is my handwritten note. Okay.
BY MR. BRYDEN:
Q All right. So Exhibit 15 is the same form of notification as Exhibit 14, right?
A Yes, same form of notification.
Q And then I take it, then, the reference in the first paragraph where it states, "During the past year," would refer to July 1, 2003 through June 30th, 2004, is that right?
A That's correct.
MR. WARSHAWSKY: For the record, Battle Exhibit 15 is from the plaintiff's production P00425.
(Deposition Exhibit No. 16 was marked for identification)
BY MR. BRYDEN:
Q Looking at Exhibit 16, does this appear to be the same form of notification as Exhibits 14 and

15?

A Yes, it does.

(Deposition Exhibit No. 17 was marked for identification)

BY MR. BRYDEN:

Q Can you take a moment and read Exhibit No. 17?

A Okay.

Q Now, if a borrower's total payments between July 1st in one year and June 30th in the next year, if you were to total all their payments during that time period, and, it was more than the interest that had accrued during that same time period, should there be any interest capitalization on June 30th?

A Repeat your question.

COURT REPORTER: "Now, if a borrower's total payments between July 1st in one year and June 30th in the next year, if you were to total all their payments during that time period and it was more than the interest that had accrued during that same time period, should there be any interest capitalization on June 30th?"

MR. WARSHAWSKY: May I ask for

clarification? Are you asking her about total scheduled payments, or total actual payments?

BY MR. BRYDEN:

Q Well, I guess we could ask it either way; but, how about total actual payments?

A Okay. The total actual payments, if I calculate it -- if I added those all up, and the remaining portion of the question is what?

If I added my actual payments for an entire year.

Q If you were to add a borrower's actual payments for an entire year and the total amount that the borrower had paid during that year was more than the interest accruing during that same time period, should there be any interest capitalization?

A I guess I'm still unclear as to what you're asking me because we don't calculate payments that way. So ...

Q Okay.

A So I'm unclear.

Q Let's go back to the exhibits we were just looking at, 14, 15 and 16.

A Uh-huh.

Q If you look at the first sentence on all of these, it reads, "During the past year, your

total payments were less than your accrued interest on the loans you had."

If a borrower's total payments during the past year were more than the accrued interest on their loans, should there be any interest capitalization?

A Oh, I understand. I guess the answer would be -- should there be capitalization?

I guess the answer would be no.

Q But, in fact, there could be capitalization or there was in Dr. Pfeiffer's case, correct?

A There was capitalization between her last payment and June 30th, yes.

Q And so there's interest being capitalized to her account, even though her payments from July 1st, for example in 2004, through June 30th, 2004, were larger than the interest that accrued during that year?

A They weren't until June 30th, but it depends on what her payment date was. I understand your question. As of her -- from July 1st through whatever her last payment date was.

Q I guess I don't understand your answer.

A Okay. Clarify your question and I'll

clarify my answer.

Q So I believe you testified earlier, correct me if I'm wrong, that if a borrower's total payments between July 1st and June 30th of the next year totaled more than the interest that accrued during that time period, there should not be interest capitalization, is that correct?

A That would be correct.

Q Okay. But if you look at -- can we go back to that payment chart?

A Uh-huh.

Q Why don't we look at July 1st, 2004.

A July 1st, 2004, okay.

Q Through June 30th, 2005.

A Okay.

Q Now, as we discussed earlier, every time principal is being paid off, that's because her payment covered all the interest that accrued, and there was also some left over to pay off principal, right?

MR. WARSHAWSKY: Interest. Say that again.

MR. BRYDEN: Did I say it backwards?

THE WITNESS: I think you said -- say it again.

BY MR. BRYDEN:
Q Let me say it again.
Every time we see a payment where a portion of the principal is being paid down, that means that the payment was large enough to cover all the accrued interest, and what was left was applied to pay down the principal?
A Yes.
Q Okay. And so if we go through all of the payments between July 1st, 2004 and through June 30th, 2005 --
A Yes.
Q -- is it fair to say that Dr. Pfeiffer's payments exceeded the interest that accrued on her loan during that time period?
MR. WARSHAWSKY: The document speaks for itself. You can answer subject to.
BY MR. BRYDEN:
Q Do you understand my question?
A Okay. Repeat.
Q All I am asking is between July 1, 2004 and June 30th, 2005, is it accurate to say that Dr. Pfeiffer's payments exceeded the interest accruing on her loan during that time period?
A No.

Q Okay. And why do you say no?
A Because Dr. Pfeiffer's payments from, whatever the first payment date in June, to, if we are talking about 2005, only covered the period up until June 9th. It didn't cover the entire month.
Q Right. I understand that. But if you look at --
MR. WARSHAWSKY: I'm sorry. Were you finished?
THE WITNESS: I was finished.
BY MR. BRYDEN:
Q But if you look at -- and I understand what you're saying -- let me just state it to make sure I understand it right.
I think what you're saying is that between June 9th, 2005 and June 30th, 2005, there was $440 in interest that accrued, right? Is that what you are referring to?
A Yes, between June 9th, 2005 and June 30th, there was $440 that capitalized.
Q But if you look at the amounts that her loan was paid down over that year period, it's a lot more than $440, isn't it?
MR. WARSHAWSKY: I am going to object. Mr. Bryden, you are arguing with the

witness. This is obviously going to be the issue we ask Judge Sullivan to resolve. We can all add that up and make arguments to the judge. I think you have asked her about payments and how they total up and compared the interest that's accrued. And she's answered that.
And you can answer again subject to.
BY MR. BRYDEN:
Q I am just asking a factual question. I don't know if I'm misreading this document --
A Okay.
Q -- but can you answer my question?
A Ask your question.
Q My question is, isn't it fair to say that the amount that the principal balance was paid down on the loan between July 1, 2004 and June 30th, 2005 was greater than $440.
A If I'm adding those up. You are asking me if those amounts are greater than $440.95?
Q Right.
A Yes, those amounts are greater than.
Q Isn't it, true, then, that her payments during that time period were greater than the interest that accrued during that time period?

MR. WARSHAWSKY: Objection. Argumentative.
You can answer subject to.
THE WITNESS: Her scheduled payments, her fixed scheduled payments, or the payments received each month appear to be greater than the interest accrual that month.
Okay, is that what you asked me?
BY MR. BRYDEN:
Q I was asking about the entire year.
A The entire year?
Q Yes, July 1st 2004 through June 30th, 2005.
A We are still going back to June 30th because, again, you can't pre-pay interest.
Q Right.
A Okay. So for that period of time, her payments covered both the principal -- well, she covered the interest accrual and some principal.
I guess I'm not understanding.
Q My question was did her total payments, were they equal to or greater than the interest that accrued during that same time?
A Were they equal to or greater? It would be equal to.

110

Q Okay. Let me ask you, looking at Exhibit 17, was the procedure when a borrower makes a formal grievance like this when they send in a letter that formally complains about something that has happened, what's the procedure that's supposed to happen after that?
A All correspondence is received by the servicing center, imaged in, and goes through a work flow queue, and it's worked appropriately.
Q Are borrowers supposed to receive a response when they complain like that, or not?
A It doesn't matter whether it's -- it's a -- a complaint or informational, all letters are worked as they come in.
Q Is there some protocol that all people who write a formal letter complaining about something are given a response or supposed to be responded to?
A All letters are supposed to receive a response regardless of the subject matter.
(Deposition Exhibit No. 18 was marked for identification)
BY MR. BRYDEN:
Q If you would just take a moment to review at least the first page of Exhibit 18.
A Okay.

111

Q Have you are seen Exhibit 18 before?
A Yes.
Q And, again, your testimony is that when a borrower makes a formal complaint in a letter, they should be responded to, they should get some response?
A Yes.
(Deposition Exhibit No. 19 was marked for identification)
BY MR. BRYDEN:
Q Looking at Exhibit 19, is this a blank form for the notices we were looking at in Exhibits 14, 15 and 16?
A It's a -- yes, it appears to be a form notice for -- a similar notice, yes, 14, 15 and 16.
Q So this is for all borrowers that would be negatively amortized, this is the form of notice they would receive, is that right, Exhibit 19?
A This is similar to the other ones we saw, 14, 15 and 16.
Q My question is, I mean, that looks like a fill-in-the-blank type of form --
A Right. This is -- I talked over you. I'm sorry.
Q I take it Exhibit 19 is from a

112

fill-in-the-blank form that's sent to all negatively amortized borrowers regarding their interest capitalization?
MR. WARSHAWSKY: Can you read that back, please?
COURT REPORTER: "I take it Exhibit 19 is from a fill-in-the-blank form that's sent to all negatively amortized borrowers regarding their interest capitalization?"
THE WITNESS: No, it's not a fill-in-the-blank form.
BY MR. BRYDEN:
Q Okay. What type of a form is it?
A This is a template for the system-generated form.
Q By the system, you mean the computer system?
A Yes.
Q And does the computer system automatically generate those notices of capitalization and send them out?
A Yes.
Q So nobody has to go in and individually fill each form out?
A No.

113

MR. BRYDEN: You want to take five?
(Recess)
BY MR. BRYDEN:
Q I want to step back and ask you a question about the monthly payment dates that we talked about a little bit earlier.
A Okay.
Q You were describing how borrowers are assigned a monthly payment date. And my question was, if the borrower's payment date is the 7th of each year, and they are negatively amortized, I take it then the interest from the June 7th payment through June 30th would be capitalized, correct?
MR. WARSHAWSKY: You meant the 7th of each month?
MR. BRYDEN: Right.
THE WITNESS: Okay. So if the borrower's payment is the 7th, then -- had they had outstanding interest and, yes, made a payment to the 7th, yes, their capitalization would still occur between the last payment date in June to June 30th.
BY MR. BRYDEN:
Q If your payment date was the 7th, it would be interest accruing from the 7th to the 30th,

correct?
A Yes.
Q If the monthly payment date for all borrowers in a negatively amortized situation was moved to June 30th, then you wouldn't have any interest capitalization between the June payment date and June 30th, would you?
A You said -- your question was, if your payment date, meaning you made a payment on June 30th?
Q No, what if the due dates that we've been talking about that are the 7th, the 14th or 21st, what if your due date was June 30th?
A Okay.
Q It seems to me then you wouldn't have any interest capitalization for the interest accruing between your June payment and June 30th because you'd be making your payment on June 30th. Would you agree?
A I would agree if you made your payment on June 30th, then you would not have a capitalization event, right.
Q You could have a system where everybody under the income contingent repayment plan, their payments were due on the 30th of each month,

couldn't you?
A Sure, we could.
Q Let me show you just a few more documents. I'm getting close to wrapping things up here.
(Deposition Exhibit No. 20 was marked for identification)
BY MR. BRYDEN:
Q Do you recognize Exhibit 20?
A I'm not positive what this came out of.
Q Do you see in the caption there's a reference to an IFAP online library?
A Yes.
Q Do you know what that is?
A Yes.
Q What is that?
A IFAP is a web-based system that is used for our financial aid community.
Q By financial aid community, do you mean borrowers, or do you mean people that are involved in administering these programs?
A Mostly the latter, the people that are used to administer programs.
Q Is the IFAB library still available online?
A Yes.

Q Does it include all the Department of Education's regulations?
A All the department's regulations?
Q Yes.
A I am not sure. I do not know if it contains all of the department's regulations.
Q Do you know whether or not it contains regulations that relate to the capitalization of interest on student loans?
A You said all. I couldn't attest to that.
Q Does it have some of them?
A Yes.
Q This apparently relates to entrance and exit counseling. Are schools or other individuals required to give counseling to student loan borrowers?
A Schools, yes, are required to administer both entrance and exit counseling.
Q Are you involved in that at all? Do your responsibilities include informing schools what to tell students in entrance or exit borrowing?
A No.
Q That's not part of your responsibility?
A No.
(Deposition Exhibit No. 21 was

marked for identification)
BY MR. BRYDEN:
Q Do you recognize Exhibit No. 21?
A Yes.
Q What is Exhibit 21?
A Direct Consolidation Loan Borrower's Rights and Responsibilities document.
Q Is this a document that's given to borrowers when they take out their loans?
A When they take out consolidation loans, yes.
Q And is this informations given -- let me step back.
Can borrowers fill out all the required payment work online to take out a consolidation loan or a Stafford loan, if you know?
A Ask your question again. Can they complete a consolidation loan application online? The answer is yes.
Q And then if they do that online, are they still given a copy of the borrower's rights and responsibilities?
A Yes, it's available online.
Q Do you know if it's part of the application packet?

A I'm not sure how it's designed on the web but it is available online.

(Deposition Exhibit No. 22 was marked for identification)

BY MR. BRYDEN:

Q Do you recognize Exhibit No. 22?

A Yes.

Q Can you tell me what it is?

A It's a repayment plan choices document.

Q And is this document given to student loan borrowers?

A By given to, clarify your question.

Q Is this information or is this document part of the application materials?

A A form of this document would be available or made available to the borrower as part of the application packet, yes.

(Deposition Exhibit No. 23 was marked for identification)

BY MR. BRYDEN:

Q Do you recognize Exhibit No. 23.

MR. WARSHAWSKY: I note this is indicated as being a two-page document.

MR. BRYDEN: Yes, you're right. I have not included Page 2, but we can review it with

the understanding that it appears there's a second page that is included.

MR. WARSHAWSKY: Okay. Very good.

BY MR. BRYDEN:

Q I want to ask you first of all, do you recognize Exhibit 23?

A Yes.

Q Could I ask you to go down under No. 4. If you go down to where in bold it says, "Income Contingent Repayment Plan."

A Yes.

Q Apparently -- am I reading that right to say that as of July 1, 2006, direct plus consolidation loan borrowers can choose the income contingent repayment plan, is that accurate?

A That's correct.

Q They were prohibited from doing that before July 1, 2006?

A Yes.

Q Do you know why that changed?

A No, I do not.

(Deposition Exhibit No. 24 was marked for identification)

BY MR. BRYDEN:

Q I can tell you with respect to Exhibit 24,

I have not included every page. I have included select pages but I did keep the first page. Are you familiar with the question and answers about direct consolidation loans document?

A I've seen this before. This is a very old document but I've seen it before.

Q You think this is an old one?

A Yes.

Q Do you know how old?

A I don't know how old, but it's an older document.

Q Do you know, was this a document that was available or given to student borrowers at one time?

A Yes, I do know that.

Q Were you involved at all in the document production in this case?

A By document production, you mean the documents that were provided?

Q Yes.

A Yes.

(Deposition Exhibit No. 25 was marked for identification)

BY MR. BRYDEN:

Q Have you ever seen Exhibit No. 25 before?

A Yes.

Q Is this part of an online help system for student borrowers?

A No.

Q What is it?

A This is an online help for our customer service reps and the servicing center.

Q It appears that in the right-hand side somebody has written "Due Date."

A Yes.

Q Do you know whose writing that is?

A I do not.

Q The way I read this document is that the definition provided down below is the definition of due date on this online?

A That's correct.

Q So it's your understanding that the definition given there is the definition of due date provided to your customer service representatives?

A Yes.

Q I have the same questions about Exhibit No. 26.

(Deposition Exhibit No. 26 was marked for identification)

BY MR. BRYDEN:

Q The way I read Exhibit 26 is that the

definition given below is the definition of monthly payment --

A Yes.

Q -- is that right?

A Yes.

Q Okay.

(Deposition Exhibit No. 27 was marked for identification)

BY MR. BRYDEN:

Q I have the same question with No. 27. I take it that the definition set forth on Exhibit No. 27 is the definition of payment due date that's provided to your customer service representatives?

A That's correct.

MR. WARSHAWSKY: Just for your information, I'm advised that the handwriting on those documents is my co-counsel's from when she was compiling the response.

MR. BRYDEN: Okay. Okay.

MS. SCANIFFE: When Cindy verified all the documents, she verified every one of these. She, I don't think, ever clarified with me that this is my handwriting. But she, in my recollection, you went through every one of these and verified the online system with my

printout.

THE WITNESS: Yes, that's correct. I didn't know whose handwriting it was.

MR. BRYDEN: Okay. Great. Thank you for that clarification.

MS. SCANIFFE: She knew the handwriting was there whenever she verified it.

MR. BRYDEN: Right. Okay. Thank you. I guess I would like to take five just to review my notes but I think I'm done. In fact, I think I'm prepared to conclude.

MR. WARSHAWSKY: Do you want to take a break, then?

MR. BRYDEN: Just give me two minutes, I guess.

(Recess)

MR. BRYDEN: I have no further questions for the witness.

EXAMINATION BY COUNSEL FOR DEFENDANTS:

BY MR. WARSHAWSKY:

Q Ms. Battle, I've placed before you what's been previously marked Battle Exhibit 5, and I'm not sure, my notes may be wrong, but I thought you testified with respect to the date in the upper right-hand corner, that this form would have been in

use no earlier than January 31, 2005. Would it have been no earlier than or no later than?

A Oh. It would have been in use prior to the January 31st, 2005 date.

MR. WARSHAWSKY: I have no more questions. Thank you.

MR. BRYDEN: Thank you for your clarification.

MR. WARSHAWSKY: We will review the transcript.

(Signature reserved, the deposition was concluded at 2:47 p.m.)

CERTIFICATE OF STENOTYPE REPORTER - NOTARY PUBLIC

I, Lohna Esteb, Court Reporter, the officer before whom the foregoing proceeding was taken, do hereby certify that the foregoing transcript is a true, correct, and complete record of the proceeding; that said proceeding was taken by me stenographically and thereafter reduced to typewriting by me; and that I am neither counsel for, related to, nor employed by any of the parties to this litigation and have no interest, financial or otherwise, in its outcome.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal this 18th day of December, 2007.

LOHNA ESTEB
Notary Public in and for
the District of Columbia

My commission expires: 9/30/12

EXHIBIT #2
Pfeiffer v Spelling
C.A. #1:07cv00522 (EGS)

NOV 0 5 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRENDA KAY PFEIFFER,

Plaintiff,

v.

MARGARET SPELLINGS, Secretary of Education, et al.,

Defendants.

Case No. 1:07-cv-00522
(Judge Sullivan)

DEFENDANTS' RESPONSES TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, defendants Secretary of Education Margaret Spellings, the United States Department of Education, and the United States of America respond to the first set of interrogatories propounded by plaintiff Brenda Kay Pfeiffer as follows:

GENERAL OBJECTIONS:

Defendants object to the Definitions and Instructions contained in plaintiff's first set of interrogatories and to plaintiff's first set of interrogatories to the extent they seek to impose upon defendants any requirements beyond those established by the Federal Rules of Civil Procedure.

Defendants object to the Definitions and Instructions and to plaintiff's first set of interrogatories to the extent they seek the disclosure of any information or documents protected from disclosure by the attorney-client privilege or attorney work product doctrine.

Defendants object to plaintiff's first set of interrogatories to the extent they are not relevant to class certification and summary judgment motions, as required by the Court in its



September 24, 2007 Scheduling Order.

Finally, defendants' object to plaintiff's references in her interrogatories to the "Federal Direct Consolidated Loan Program" because the program at issue in the complaint is the William D. Ford Federal Direct Loan Program.  Solely for purposes of responding to plaintiffs' interrogatories, defendants' responses should be construed as referring to the William D. Ford Federal Direct Loan Program.

In responding to plaintiff Brenda Kay Pfeiffer's first set of interrogatories, defendants do not waive any of the foregoing general objections or any objections specifically set forth below in responses to individual interrogatories.

FIRST SET OF INTERROGATORIES

Interrogatory 1:

State whether the interest capitalization practices complained of by Dr. Pfeiffer are limited to the Income Contingent Repayment Plan for the Federal Direct Consolidated Loan Program. If your answer is "no," identify all other student loan programs and/or repayment plans for which interest is capitalized in the same or substantially similar manner as complained of by Dr. Pfeiffer.

Response:

Defendants object to Interrogatory 1 on the grounds that the phrases "interest capitalization practices complained of by Dr. Pfeiffer" and "capitalized in the same or substantially similar manner as complained of by Dr. Pfeiffer" are vague and ambiguous.

Subject to and without waiving the foregoing objections, defendants respond as follows:

In responding to this interrogatory, defendants interpret the two phrases "interest capitalization practices complained of by Dr. Pfeiffer" and "capitalized in the same or substantially similar manner as complained of by Dr. Pfeiffer" as referring to the capitalization that occurs on June 30th each year for interest that has accrued between a borrower's June scheduled payment and June 30th, on loans with a negative amortization payment schedule (defined as a payment schedule for which the monthly accrued interest is greater than the scheduled monthly payment). Defendants capitalize interest in this fashion for applicable loans under the Income Contingent Repayment Plan and the Alternative Repayment Plan.

Interrogatory 2:

State the approximate number of borrowers during the liability period (i.e., between March 19, 2001 and the present) whose loans have been subject to the same or substantially similar interest capitalization practices complained of by Dr. Pfeiffer.

Response:

Defendants object to Interrogatory 2 on the grounds that the phrase "same or substantially similar interest capitalization practices complained of by Dr. Pfeiffer" is vague and ambiguous.

Defendants further object to the phrase "liability period" because it improperly implies that liability has been established with regard to defendants.

Subject to and without waiving the foregoing objections, defendants respond as follows:

In responding to this interrogatory, defendants interpret the phrase "same or substantially similar interest capitalization practices complained of by Dr. Pfeiffer" as referring to the capitalization that occurs on June 30th each year for interest that has accrued between a borrower's June scheduled payment and June 30th, on loans with a negative amortization payment schedule (defined as a payment schedule for which the monthly accrued interest is greater than the scheduled monthly payment). Further, in responding to this interrogatory, defendants interpret the phrase "liability period" as referring to the period of time between March 19, 2001, and the present.

It is not feasible to provide an "approximate number of borrowers" in response to this interrogatory because the process of estimating the number of borrowers depends on defining which borrowers are considered to be similarly situated to the plaintiff. In addition, the process of estimating the number of borrowers is complicated by the fact that a borrower is permitted to

change plans during the life of his or her loan.  Subject to the foregoing, defendants state that a

minimum of approximately 26,900 borrowers have been subject to the same or substantially

similar interest capitalization practices complained of by the plaintiff.

Interrogatory 3:

State the approximate total dollar amount of interest capitalized by you during the liability period to the principal balances of borrowers pursuant to the interest capitalization practices complained of by Dr. Pfeiffer.

Response:

Defendants object to the phrase "liability period" because it improperly implies that liability has been established with regard to defendants.

Defendants further object to Interrogatory 3 on the grounds that it is not relevant to class certification and summary judgment motions, as required by the Court in its September 24, 2007 Scheduling Order.

Interrogatory 4:

Identify all documents made available by you to student loan borrowers or potential student loan borrowers that refer to the manner and method in which you capitalize interest on loans issued under the program(s) and subject to the repayment plan(s) identified in your answer to Interrogatory No. 1.

Response:

Defendants will produce for inspection and copying by plaintiff copies of all responsive documents at a mutually agreeable time and place.

Interrogatory 5:

Identify all documents that reflect written or verbal communications among or between you, your agents and/or employees with respect to the manner and method by which you capitalize interest on loans issued under the program(s) and subject to the repayment plan(s) identified in your answer to Interrogatory No. 1.

Response:

Defendants will produce for inspection and copying by plaintiff copies of all responsive, nonprivileged documents at a mutually agreeable time and place.

Interrogatory 6:

State whether all borrowers whose loans have been subject to the same interest capitalization practices complained of by Dr. Pfeiffer have executed a form promissory note containing the same or substantially similar language concerning interest capitalization as the notes executed by Dr. Pfeiffer. If your answer is "no," identify by OMB No. or otherwise the form promissory note(s) executed by other borrowers and explain how the interest capitalization provision(s) of such note(s) differ from the provision contained in Dr. Pfeiffer's notes.

Response:

Defendants object to Interrogatory 6 on the grounds that the phrases "interest capitalization practices complained of by Dr. Pfeiffer" and "same or substantially similar language" are vague and ambiguous.

Subject to and without waiving the foregoing objection, defendants respond as follows:

In responding to this interrogatory, defendants interpret the phrase "interest capitalization practices complained of by Dr. Pfeiffer" as referring to the capitalization that occurs on June 30th each year for interest that has accrued between a borrower's June scheduled payment and June 30th, on loans with a negative amortization payment schedule (defined as a payment schedule for which the monthly accrued interest is greater than the scheduled monthly payment). Further, in responding to this interrogatory, defendants interpret the phrase "same or substantially similar language" as referring to the language contained in the notes executed by plaintiff.

All borrowers who have had capitalized on June 30th interest that accrued between the

borrower's June scheduled payment and June 30th on loans with a negative amortization payment schedule have executed a form promissory note containing language concerning interest capitalization identical to or substantially similar to that in the notes executed by plaintiff.

Interrogatory 7:

State whether there is a uniform monthly payment date for all borrowers with loans issued under the Federal Direct Consolidated Loan Program and subject to the Income Contingent Repayment Plan and, if so, provide the date of the month.

Response:

For loans issued under the William D. Ford Federal Direct Loan Program, including consolidation loans, defendants offer borrowers the choice of four separate dates within each month for making scheduled payments. Borrowers may select to have their scheduled payments due on the 7th, 14th, 21st, or 28th day of each month. These four dates apply to loans under all repayment plans, including the Income Contingent Repayment Plan.

Interrogatory 8:

State whether there is a uniform monthly payment date for each other specific loan program and repayment plan identified in your answer to Interrogatory No. 1 and, if so, provide the date of the month for each.

Response:

For loans issued under the William D. Ford Federal Direct Loan Program, including consolidation loans, defendants offer borrowers the choice of four separate dates within each month for making scheduled payments. Borrowers may select to have their scheduled payments due on the 7th, 14th, 21st, or 28th day of each month. These four dates apply to loans under all repayment plans, including the Income Contingent Repayment Plan and the Alternative Repayment Plan.

Interrogatory 9:

State the approximate date on which you began the interest capitalization practices complained of by Dr. Pfeiffer.

Response:

Defendants object to Interrogatory 9 on the grounds that the phrase "interest capitalization practices complained of by Dr. Pfeiffer" is vague and ambiguous.

Subject to and without waiving the foregoing objections, defendants respond as follows:

In responding to this interrogatory, defendants interpret the phrase "interest capitalization practices complained of by Dr. Pfeiffer" as referring to the capitalization that occurs on June 30th each year for interest that has accrued between a borrower's June scheduled payment and June 30th, on loans with a negative amortization payment schedule (defined as a payment schedule for which the monthly accrued interest is greater than the scheduled monthly payment).

Defendants began tracking, on November 8, 1997, interest that accrued to borrowers' accounts while in a negative amortization repayment schedule. Defendants first capitalized on June 30, 1998, all unpaid interest that had accrued to a borrower's account while in a negative amortization payment schedule, including interest that accrued between the June scheduled payment and June 30, 1998.

Interrogatory 10:

Identify all individuals involved in creating and implementing the interest capitalization practices complained of by Dr. Pfeiffer and briefly state each individual's role.

Response:

Defendants object to Interrogatory 10 on the grounds that the phrase "interest capitalization practices complained of by Dr. Pfeiffer" is vague and ambiguous.

Subject to and without waiving the foregoing objection, defendants respond as follows:

In responding to this interrogatory, defendants interpret the phrase "interest capitalization practices complained of by Dr. Pfeiffer" as referring to the capitalization that occurs on June 30th each year for interest that has accrued between a borrower's June scheduled payment and June 30th, on loans with a negative amortization payment schedule (defined as a payment schedule for which the monthly accrued interest is greater than the scheduled monthly payment).

The regulation establishing the practice of capitalizing annually interest that accrues on loans with a negative amortization payment schedule was developed in 1994 as part of negotiated rulemaking for the William D. Ford Federal Direct Loan Program. Defendants no longer have the names of the individual members of the negotiation committee. However, the Federal Register notice of December 28, 1993 lists the organizations that were members of the Direct Student Loan Regulations Negotiated Rulemaking Advisory Committee. See 58 Fed. Reg. 68619. Department of Education personnel who were involved in the negotiated rulemaking were:

Brian Kerrigan (negotiator for the Department of Education)

Ronald Sann (legal advisor to the Department of Education's negotiator)

Brian Siegel (legal advisor to the Department of Education's negotiator)

The following Department of Education personnel were or are involved in the implementation of the practice of capitalizing annually interest that accrues on loans with a negative amortization payment schedule:

Cindy Battle (Direct Loan Program servicing director, 2006 - present)

Dwight Vigna (Direct Loan Program servicing director, 2003 - 2006)

Dan Hayward (Direct Loan Program servicing director, 1995 - 2003)

All of the individuals listed above are currently employed by the U.S. Department of Education and their business address is U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, D.C. 20202.

Interrogatory 11:

Identify all individuals involved in drafting the form promissory note executed by Dr. Pfeiffer and any other form notes identified in your answer to Interrogatory No. 6 and briefly state each individual's role.

Response:

The form promissory notes used in the William D. Ford Federal Direct Loan Program are cleared through the forms clearance process. Notices are published in the Federal Register and interested persons are invited to comment. Federal Register Notices of Clearance issued in connection with the forms clearance process generally make no mention of public comments received, regardless of whether comments were received. Defendants have reviewed this interrogatory with Department of Education personnel listed below, who had responsibility for the William D. Ford Federal Direct Loan Program promissory note clearance process, and defendants have not ascertained any information indicating receipt of any comments on the notices for the Direct Loan Program promissory notes.

Department of Education personnel who have had responsibility for the Direct Loan Program promissory note clearance process are the following:

Katrina Ingalls (1994-2001/2002)

Current Position: Management Analyst
U.S. Department of Education, Regulatory Information Management Service
550 12th Street, N.W.
Washington, D.C. 20202

Nicki Meoli (1994-2003)

Current Position: Management and Program Analyst
U.S. Department of Education, Federal Student Aid
830 First Street, N.E.
Washington, D.C. 20202

John Utz (2002/2003 - present)

Current Position: Program Specialist, Policy Liaison and Implementation
U.S. Department of Education, Federal Student Aid
830 First Street, N.E.
Washington, D.C. 20202

In addition, all promissory notes are reviewed by Department of Education Office of General Counsel attorneys. The attorneys who have had responsibility in this area are Ronald Sann and Brian Siegel, who are currently employed by the U.S. Department of Education, and their business address is U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, D.C. 20202.

Interrogatory 12:

Identify the individual(s), including their employer(s), involved in creating the computer program that calculates interest capitalization for loans issued under the program(s) and subject to the repayment plan(s) identified in your answer to Interrogatory No. 1.

Response:

Defendants object to Interrogatory 12 on the grounds that it is not relevant to class certification and summary judgment motions, as required by the Court in its September 24, 2007 Scheduling Order.

Interrogatory 13:

Identify all documents that reflect or relate to communications between defendant(s), on the one hand, and the individuals and/or entities identified in your answer to Interrogatory No. 12, on the other hand, that address computer programming for interest capitalization on loans issued under the program(s) and subject to the repayment plan(s) identified in your answer to Interrogatory No. 1.

Response:

Defendants object to Interrogatory 13 on the grounds that it is not relevant to class certification and summary judgment motions, as required by the Court in its September 24, 2007 Scheduling Order.

Interrogatory 14:

Provide a complete payment history on Dr. Pfeiffer's loan for the period November 2001 to the present including (a) the date of each payment made by Dr. Pfeiffer was received; (b) the amount of each payment; (c) the amount of each payment applied to (i) accrued interest and (ii) principal balance; and (d) the outstanding principal balance on Dr. Pfeiffer's loan after each payment.

Response:

Defendants object to Interrogatory 14 on the grounds that it is not relevant to class certification and summary judgment motions, as required by the Court in its September 24, 2007 Scheduling Order.

Subject to and without waiving the foregoing objection, defendants respond as follows:

A complete payment history on Dr. Pfeiffer's loan for the period from November 2001 to the present is attached to these responses to plaintiff's first set of interrogatories.

PETER D. KEISLER
Assistant Attorney General

J. CHRISTOPHER KOHN
Director

ROBERT E. KIRSCHMAN, JR.
Deputy Director

JOHN WARSHAWSKY (D.C. Bar No. 417170)
Senior Trial Counsel
CHRISTIAN J. GROSTIC
Trial Attorney
Commercial Litigation Branch
Civil Division
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044-0875
Telephone: (202) 307-0010
Facsimile: (202) 514-9163

November 1, 2007

Certification

I, Cynthia Battle, state that I have reviewed the factual information included in the defendants' responses to Interrogatories 1, 2, 6, 7, 8, 9, 10, 11, and 14. I hereby declare, under penalty of perjury, that the factual information contained therein is true and correct, to the best of my knowledge, information, and belief.

Cynthia Battle

Date: November 1, 2007

## Payment History Sheet

Borrower SSN: PFEIFFER, BRENDA K          Rep Name          Date: 11/01/07          Page 3

| Transaction Date | Transaction | Fixed Payment Amount | Total Payment Received | Principal Paid | Interest Paid | Interest Accrued to Date | Interest Capitalization | Running Principal Balance | New Disbursement |
|---|---|---|---|---|---|---|---|---|---|
| 12/07/01 | Loan Disbursement | | | | | $0.00 | | $57,165.98 | $57,165.98 |
| 12/07/01 | Loan Disbursement | | | | | $0.00 | | $116,834.58 | $59,716.52 |
| 12/14/01 | Payment | | $700.00 | $548.92 | $153.08 | $153.08 | | $116,834.58 | |
| 01/02/02 | Grace End | | | | | $153.08 | | $116,834.58 | |
| 01/02/02 | Non-Amortization Start | | | | | $391.78 | | $116,834.58 | |
| 01/02/02 | Repayment Begins | | | | | $391.78 | | $116,834.58 | |
| 01/16/02 | Payment | $812.47 | $725.00 | $26.50 | $698.50 | $698.50 | | $116,808.08 | |
| 02/19/02 | Payment | $812.47 | $725.00 | $8.00 | $725.00 | $726.00 | | $116,800.08 | |
| 03/18/02 | Payment | $812.47 | $725.00 | $100.88 | $624.12 | $624.12 | | $116,699.20 | |
| 04/16/02 | Payment | $812.47 | $725.00 | $116.24 | $608.76 | $608.76 | | $116,582.96 | |
| 05/16/02 | Payment | $812.47 | $725.00 | $51.70 | $673.30 | $673.30 | | $116,531.26 | |
| 06/14/02 | Payment | $812.47 | $725.00 | $95.42 | $629.58 | $629.58 | | $116,435.84 | |
| 07/16/02 | Payment | $812.47 | $725.00 | $398.05 | $326.42 | $326.42 | | $116,815.80 | $589.76 |
| 07/16/02 | Rate Chg/New-Am Capitalization | | | | | $0.00 | $589.76 | $116,815.80 | |
| 07/16/02 | Payment | $597.57 | $725.00 | $52.73 | $672.27 | $672.27 | | $116,189.29 | |
| 08/16/02 | Payment | $597.57 | $760.00 | $143.07 | $905.93 | $905.93 | | $116,016.22 | |
| 09/13/02 | Payment | $597.57 | $760.00 | $208.78 | $561.22 | $541.22 | | $115,807.44 | |
| 10/08/02 | Payment | $597.57 | $760.00 | $0.00 | $750.00 | $690.01 | | $115,807.44 | |
| 11/18/02 | Payment | $597.57 | $700.00 | $0.00 | $0.00 | $208.01 | | $115,807.44 | |
| 11/24/02 | Non-Amortization End | | | | | $208.01 | | $114,807.44 | |
| 12/16/02 | Payment | $597.57 | $750.00 | $0.00 | $750.00 | $750.00 | | $114,807.44 | |
| 01/14/03 | Payment | $975.70 | $975.70 | $257.92 | $837.78 | $837.78 | | $114,569.52 | |
| 02/18/03 | Payment | $975.70 | $975.70 | $120.91 | $754.79 | $754.79 | | $114,448.61 | |
| 03/16/03 | Payment | $975.70 | $975.70 | $272.52 | $805.18 | $805.18 | | $114,176.09 | |
| 04/15/03 | Payment | $975.70 | $975.70 | $273.65 | $901.75 | $901.75 | | $113,902.44 | |
| 05/16/03 | Payment | $975.70 | $975.70 | $211.38 | $664.62 | $664.62 | | $113,690.76 | |
| 06/16/03 | Payment | $975.70 | $900.00 | $226.60 | $665.40 | $665.40 | | $113,464.16 | |
| 07/31/03 | Interest Rate Change | | | | | $520.33 | | $113,464.16 | |
| 07/31/03 | Payment | $932.70 | $900.00 | $640.00 | $945.00 | $945.00 | | $113,194.62 | |
| 08/18/03 | Payment | $932.70 | $900.00 | $186.08 | $703.12 | $703.12 | | $112,937.34 | |
| 09/25/03 | Non-Amortization Start | | | | | $143.93 | | $112,937.21 | |
| 09/17/03 | Payment | $932.70 | $925.00 | $414.63 | $510.47 | $510.47 | | $112,883.41 | |
| 10/08/03 | Payment | $932.70 | $925.00 | $331.65 | $593.35 | $593.35 | | $112,281.79 | |
| 11/18/03 | Payment | $933.52 | $925.00 | $79.85 | $645.15 | $645.15 | | $112,171.91 | |
| 12/30/03 | Payment | $933.52 | $925.00 | $502.72 | $422.28 | $422.28 | | $111,869.19 | |
| 02/13/04 | Payment | $933.52 | $925.00 | $105.25 | $819.75 | $819.75 | | $111,563.94 | |
| 03/16/04 | Payment | $933.52 | $925.00 | $337.02 | $587.98 | $587.98 | | $111,226.82 | |
| 04/09/04 | Payment | $933.52 | $925.00 | $213.18 | $711.82 | $711.82 | | $111,013.74 | |
| 04/09/04 | Payment | $933.52 | $925.00 | $206.34 | $668.66 | $668.66 | | $110,767.40 | |

## Payment History Sheet

Borrower SSN: REDACTED          Rep Name          Date: 11/01/07          Page 2

| Transaction Date | Transaction | Fixed Payment Amount | Total Payment Received | Principal Paid | Interest Paid | Interest Accrued to Date | Interest Capitalization | Running Principal Balance | New Disbursement |
|---|---|---|---|---|---|---|---|---|---|
| 06/20/04 | Payment | $533.92 | $590.00 | $363.73 | $646.27 | $646.27 | | $110,600.87 | |

## Payment History Sheet

| | | | |
|---|---|---|---|
| Borrower: | | Rep Name | Date: 0 |
| Borrower SSN: | REDACTED | | Page 1 |

| Transaction Date | Transaction | Total Payment Received | Principal Paid | Interest Paid | Interest Accrued to Capitalization | Interest Date Capitalization | Running Principal Balance | New Disbursement |
|---|---|---|---|---|---|---|---|---|
| 05/01/04 | Payment | $593.32 | $500.00 | $234.40 | $665.50 | | $116,288.27 | |
| 07/01/04 | Payment | $593.32 | $500.00 | $341.10 | $207.56 | $207.56 | $116,478.83 | |
| 07/02/04 | Rate Chg-Neg-Am Capitalization | $544.42 | $500.00 | $504.90 | $395.10 | | $109,271.93 | |
| 09/16/04 | Payment | $544.42 | $500.00 | $341.10 | $598.90 | | $109,530.83 | |
| 09/16/04 | Payment | $544.42 | $500.00 | $250.30 | $589.70 | | $109,376.63 | |
| 10/18/04 | Payment | $544.42 | $500.00 | $300.15 | $555.84 | | $109,301.37 | |
| 11/15/04 | Payment | $244.42 | $625.00 | $247.94 | $577.06 | | $109,763.43 | |
| 12/13/04 | Payment | $244.33 | $625.00 | $351.94 | $373.16 | | $104,401.09 | |
| 01/18/05 | Payment | $344.33 | $625.00 | $190.40 | $734.54 | | $109,211.13 | |
| 02/16/05 | Payment | $344.33 | $625.00 | $334.32 | $590.68 | | $107,479.31 | |
| 04/14/05 | Payment | $344.33 | $625.00 | $397.00 | $527.84 | | $107,478.70 | |
| 04/14/05 | Payment | $344.32 | $625.00 | $297.85 | $927.15 | | $107,181.90 | |
| 05/16/05 | Payment | $344.32 | $625.00 | $279.41 | $945.59 | | $109,202.49 | |
| 06/06/05 | Payment | $543.72 | $600.00 | $417.07 | $482.93 | | $109,488.42 | |
| 07/07/05 | Payment | $543.72 | $600.00 | | $440.95 | $440.95 | $109,828.37 | |
| 07/07/05 | Rate Chg-Neg-Am Capitalization | $543.10 | $625.00 | $663.33 | $291.64 | | $109,263.01 | |
| 09/11/05 | Payment | $543.10 | $600.00 | $339.05 | $590.95 | | $109,923.08 | |
| 08/03/05 | Payment | $33.0 | $600.00 | $391.92 | $518.08 | | $109,748.01 | |
| 10/17/05 | Payment | $543.10 | $600.00 | $86.50 | $814.50 | | $105,541.44 | |
| 11/14/05 | Payment | $543.10 | $600.00 | $85.09 | $814.90 | | $108,688.94 | |
| 10/17/05 | Payment | $543.10 | $600.00 | $344.20 | $556.80 | | $106,111.74 | |
| 12/01/05 | Payment | $543.10 | | $197.95 | $732.04 | | $104,843.78 | |
| 12/01/05 | Neg Amortization End | $538.95 | $500.00 | $607.18 | $333.34 | | $104,236.62 | |
| 12/27/05 | Payment | $538.95 | $500.00 | $607.01 | $333.34 | | $104,938.61 | |
| 01/17/06 | Payment | $538.95 | $500.00 | $406.51 | $548.99 | | $109,583.63 | |
| 01/17/06 | Payment | $1,140.50 | $564.65 | $586.84 | | | $100,191.35 | |
| 02/14/06 | Payment | $1,140.50 | $515.05 | $625.45 | | | $109,872.40 | |
| 03/16/06 | Payment | $1,140.50 | $490.45 | $625.05 | | | $102,932.18 | |
| 04/13/06 | Payment | $1,140.50 | $575.77 | $550.90 | | | $102,202.35 | |
| 05/09/06 | Payment | $1,140.50 | $544.70 | $595.72 | | | $100,647.67 | |
| 09/01/06 | Payment | $1,140.50 | $545.29 | $595.72 | | | $100,547.62 | |
| 07/01/06 | Interest Rate Change | $538.98 | | $200.71 | $230.71 | | $100,747.33 | |
| 07/07/06 | Payment | $1,140.50 | $547.97 | $592.53 | | | $100,999.60 | |
| 07/17/06 | Payment | $1,138.67 | $568.34 | $570.33 | | | $100,431.26 | |
| 08/16/06 | Payment | $1,138.67 | $612.83 | $525.84 | | | $99,903.43 | |
| 09/13/06 | Payment | $1,138.67 | $691.25 | $545.42 | | | $99,328.18 | |
| 10/17/06 | Payment | $1,138.67 | $575.77 | $563.90 | | | $98,763.41 | |
| 11/17/06 | Payment | $1,138.67 | $615.06 | $525.05 | | | $98,361.26 | |
| 12/18/06 | Payment | $986.98 | $392.16 | $594.82 | | | $98,381.58 | |
| 01/02/07 | Payment | $986.98 | $430.07 | $538.91 | | | $97,911.18 | |
| 01/02/07 | Interest Rate Change | $415.66 | $538.91 | $571.32 | | | $97,495.62 | |
| 02/16/07 | Payment | $986.98 | $571.32 | $571.32 | | | $97,495.62 | |

| | Total Payment Received | Principal Paid | Interest Paid | Net Disbursed |
|---|---|---|---|---|
| Total Disbursed | $116,913.58 | $728.48 | $57,132.xx | $116,181.90 |

| Transaction Date | Transaction | Total Payment | Principal Paid | Interest Paid | Interest Accrued to Capitalization | | Running Principal Balance |
|---|---|---|---|---|---|---|---|
| 06/00/07 | Payment | $986.98 | $428.48 | $559.50 | | | $98,287.16 |
| 07/00/07 | Payment | $986.15 | $360.02 | $601.13 | | | $94,327.14 |
| 09/14/07 | Payment | $986.15 | $360.02 | $601.13 | | | $94,327.14 |
| 09/17/07 | Payment | $986.15 | $373.38 | $608.87 | | | $94,413.86 |
| 10/15/07 | Payment | $986.15 | $407.60 | $407.60 | | | $93,271.51 |
| 10/31/07 | Accrual Through Date | | $482.36 | $300.70 | | | $93,271.51 |

| Total Payment Received | Total Principal Paid | Total Interest Paid |
|---|---|---|
| $65,550.27 | $23,227.26 | $42,323.01 |

| Total Capitalization | Ending Balance |
|---|---|
| $1,017.27 | $93,971.51 |

# Payment History Sheet

Borrower: REDACTED

Borrower SSN:

Rep Name    0                    Date: 10/31/07    Page 2

| Transaction Date | Transaction | Final Payment Amount | Total Payment Received | Principal Paid | Total Rebate & Rebates | Net Disbursed | Interest Paid | Interest Accrued to Date | Interest Capitalization | Running Principal Balance | New Disbursement |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 06/13/07 | Loan Disbursement | | | | | | | $0.00 | | $0.00 | $44,883.44 |
| 06/13/07 | Loan Disbursement | | | | | | | $0.00 | | $0.00 | $45,942.56 |
| 06/01/07 | Grace End | | | | | | | $0.00 | | $0.00 | |
| 06/01/07 | Repayment Begins | | | | | | | $0.00 | | $0.00 | |
| 06/01/07 | | | | | | | | $275.50 | | $90,828.00 | |
| 06/01/07 | | | | | | | | $276.00 | | $90,828.00 | |
| 06/13/07 | Payment | $547.09 | | $111.53 | | | $635.77 | $328.60 | | $90,828.00 | |
| 10/26/07 | Payment | $547.09 | $547.09 | $0.00 | | | $547.09 | $658.33 | | $90,337.06 | $2,622.58 |
| 10/26/07 | Loan Disbursement | | | | | | | $160.04 | | $90,337.06 | $0.00 |
| 11/25/07 | Payment | | | | | | | $150.04 | | $90,337.05 | $0.00 |
| 12/14/07 | Payment | $547.09 | $664.43 | $0.00 | | | $664.43 | $502.93 | | $90,337.05 | |
| 12/14/07 | Payment | $547.09 | $673.50 | $89.21 | | | $595.35 | $595.35 | | $90,252.84 | |
| 01/01/08 | Payment | $547.09 | $673.50 | $5.23 | | | $673.97 | $673.97 | | $90,247.81 | |
| 01/02/08 | Non-Amortization Start | | | | | | | $239.13 | | $90,247.81 | |
| 02/17/08 | Payment | $673.20 | $673.20 | $0.00 | | | $673.20 | $717.40 | | $90,247.81 | |
| 07/08/08 | Payment | | | | | | | $2,351.29 | $2,513.09 | $90,247.81 | |
| 07/01/08 | Rule Chg-Amort-Am Capitalization | | | | | | | $3,726.17 | | $90,100.70 | |
| 12/14/08 | Payment | $0.00 | $100.00 | $0.00 | | $100.00 | $100.00 | $4,462.48 | | $90,100.70 | |
| 01/01/09 | Payment | $0.00 | $100.00 | $0.00 | | $100.00 | $100.00 | $4,998.81 | | $90,100.70 | |
| 02/02/09 | Payment | $0.00 | $100.00 | $0.00 | | $100.00 | $100.00 | $5,427.15 | | $90,100.70 | |
| 04/01/09 | Payment | $0.00 | $100.00 | $0.00 | | $100.00 | $100.00 | $6,176.34 | | $90,100.70 | |
| 05/01/09 | Payment | $0.00 | $100.00 | $0.00 | | $100.00 | $100.00 | $6,727.78 | | $90,100.70 | |
| 06/01/09 | Payment | $0.00 | $100.00 | $0.00 | | $100.00 | $100.00 | $7,232.51 | | $90,100.70 | |
| 07/01/09 | Payment | $0.00 | $100.00 | $0.00 | | $100.00 | $100.00 | $7,513.26 | | $90,100.70 | |
| 07/01/09 | Rule Chg-Amort-Am Capitalization | | | | | | | $8,721.75 | | $105,882.46 | |

# Payment History Sheet

Borrower: REDACTED

Borrower SSN:

Rep Name    0                    Date: 10/31/07    Page 1

| | Total Disbursed | Total Payment Received | Principal Paid | Total Rebate & Rebates | Net Disbursed | Interest Paid | Interest Accrued to Date | Interest Capitalization | Running Principal Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| | $59,876.39 | | $2,622.72 | | $56,348.89 | | | | |

| Transaction Date | Transaction | Final Payment Amount | Total Payment Received | Principal Paid | Interest Paid | Interest Accrued to Date | Running Principal Balance |
|---|---|---|---|---|---|---|---|
| 07/01/09 | Payment | $0.00 | $100.00 | $0.00 | $100.00 | $5,236.70 | $105,882.46 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 08/16/99 | Payment | $0.00 | $100.00 | $0.00 | $100.00 | $1,720.95 | $105,882.46 |
| 09/17/99 | Payment | $0.00 | $100.00 | $0.00 | $100.00 | $2,337.08 | $105,882.46 |
| 10/19/99 | Payment | $0.00 | $100.00 | $0.00 | $100.00 | $2,953.22 | $105,882.46 |
| 11/16/99 | Payment | $0.00 | $100.00 | $0.00 | $100.00 | $3,479.84 | $105,882.46 |
| 12/23/99 | Payment | $95.80 | $100.00 | $0.00 | $100.00 | $4,207.88 | $105,882.46 |
| 12/28/99 | Payment | $95.80 | $102.07 | $0.00 | $102.07 | $4,219.77 | $105,882.46 |
| 01/18/00 | Payment | $95.80 | $202.07 | $0.00 | $202.07 | $4,597.87 | $105,882.46 |
| 02/17/00 | Payment | $95.80 | $202.07 | $0.00 | $202.07 | $5,056.98 | $105,882.46 |
| 03/20/00 | Payment | $95.80 | $202.07 | $0.00 | $202.07 | $5,571.05 | $105,882.46 |
| 04/17/00 | Payment | $95.80 | $202.07 | $0.00 | $202.07 | $5,995.60 | $105,882.46 |
| 05/18/00 | Payment | $95.80 | $202.07 | $0.00 | $202.07 | $6,487.29 | $105,882.46 |
| 06/15/00 | Payment | $95.80 | $215.07 | $0.00 | $215.07 | $6,911.84 | $105,882.46 |
| 07/01/00 | Interest Rate Change | | | | | $7,054.84 | $105,882.46 |
| 08/04/00 | Payment | $95.80 | $215.00 | $0.00 | $215.00 | $7,667.97 | $105,882.46 |
| 08/16/00 | Payment | $92.63 | $250.00 | $0.00 | $250.00 | $7,939.96 | $105,882.46 |
| 09/18/00 | Payment | $92.63 | $600.00 | $0.00 | $600.00 | $8,479.18 | $105,882.46 |
| 10/18/00 | Payment | $92.63 | $800.00 | $0.00 | $800.00 | $8,396.65 | $105,882.46 |
| 11/20/00 | Payment | $92.63 | $400.00 | $0.00 | $400.00 | $8,385.86 | $105,882.46 |
| 12/14/00 | Payment | $202.07 | $500.00 | $0.00 | $500.00 | $8,559.84 | $105,882.46 |
| 01/16/01 | Payment | $202.07 | $500.00 | $0.00 | $500.00 | $8,849.06 | $105,882.46 |
| 02/14/01 | Payment | $202.07 | $450.00 | $0.00 | $450.00 | $9,042.61 | $105,882.46 |
| 03/20/01 | Payment | $202.07 | $500.00 | $0.00 | $500.00 | $9,405.74 | $105,882.46 |
| 04/16/01 | Payment | $202.07 | $500.00 | $0.00 | $500.00 | $9,551.47 | $105,882.46 |
| 05/15/01 | Payment | $202.07 | $500.00 | $0.00 | $500.00 | $9,745.02 | $105,882.46 |
| 06/14/01 | Payment | $202.07 | $500.00 | $0.00 | $500.00 | $9,962.49 | $105,882.46 |
| 07/01/01 | Interest Rate Change | | | | | $9,869.06 | $105,882.46 |
| 07/17/01 | Payment | $202.07 | $500.00 | $0.00 | $500.00 | $10,183.99 | $105,882.46 |
| 08/14/01 | Payment | $200.23 | $500.00 | $0.00 | $500.00 | $10,235.09 | $105,882.46 |
| 09/14/01 | Payment | $200.23 | $500.00 | $0.00 | $500.00 | $10,345.30 | $105,882.46 |
| 10/15/01 | Payment | $200.23 | $500.00 | $0.00 | $500.00 | $10,455.49 | $105,882.46 |
| 11/19/01 | Payment | $200.23 | $700.00 | $0.00 | $700.00 | $10,644.43 | $105,882.46 |
| 12/07/01 | Consolidation Payoff | $428.78 | $116,181.50 | $105,882.46 | $10,299.04 | $10,299.04 | $0.00 |
| | | | | | | $0.00 | $0.00 |
| | | | | | | $0.00 | $0.00 |
| | | | | | | $0.00 | $0.00 |
| | | | | | | $0.00 | $0.00 |
| | | | | | | $0.00 | $0.00 |
| | | | | | | $0.00 | $0.00 |
| | | | | | | $0.00 | $0.00 |

| Total Payment Received | Total Principal Paid | Total Interest Paid |
|---|---|---|
| $131,420.77 | $105,983.43 | $25,437.34 |

| Total Capitalization | Ending Balance |
|---|---|
| $9,634.85 | $0.00 |

Certificate of Service

I hereby certify that, on November 1, 2007, a copy of the foregoing DEFENDANTS'

RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES" was mailed, postage

prepaid and first class, to the following:

Steven M. Sprenger, Esq.
Sprenger & Lang
1400 Eye St. N.W., Suite 500
Washington, D.C. 20005

EXHIBIT #3
Pfeiffer v Spelling
C.A. #1:07cv00522 (EGS)

Direct
Loans

# Federal Direct Consolidation Loan Application and Promissory Note

WARNING: Any person who knowingly makes a false statement or misrepresentation on this form will be subject to penalties which may include fines, imprisonment, or both, under the U.S. Criminal Code and 20 U.S.C. 1097.

OMB No. 1845-0053
Form Approved
Exp. Date

## Before You Begin

Read the instructions for completing this Federal Direct Consolidation Loan Application and Promissory Note. Print using blue or black ink or type. You must sign and date this form. If you cross out anything and write in new information, put your initials beside the change.

**NOTE: PAGES 1, 2, and 3 OF THIS FORM MUST BE SUBMITTED IN ORDER TO PROCESS YOUR LOAN REQUEST.**

## Section A: Borrower Information

1. Last Name First Name Middle Initial
2. Social Security Number
3. Permanent Street Address (if P.O. box or general delivery, see instructions)

City State Zip Code

4. Area Code/Telephone Number ( )
5. E-Mail Address (Optional)
6. Former Name(s)
7. Date of Birth (mm-dd-yyyy)
8. Driver's License State and Number
State Number
9. Employer's Name
10. Employer's Address
City State Zip Code
11. Work Area Code/Telephone Number ( )

## Section B: Reference Information

12. References: List two persons with different addresses who have known you for at least three years. Do not list individuals who live with you (for example, your spouse) or who live outside the United States.

| | 1. | 2. |
|---|---|---|
| Name | | |
| Permanent Address | | |
| City, State, Zip Code | | |
| E-Mail Address (optional) | | |
| Area Code/Telephone Number | ( ) | ( ) |
| Relationship to Borrower | | |

## Section C1: Education Loan Indebtedness – Loans You Want to Consolidate (continued on page 2)

***Read the Instructions before completing this section.*** List each federal education loan that you want to consolidate, including any William D. Ford Federal Direct Loan (Direct Loan) Program loans that you want to include in your Direct Consolidation Loan. If you need more space to list additional loans, use the Additional Loan Listing Sheet included with this package. List each loan separately. Please print. **ONLY LIST LOANS THAT YOU WANT TO CONSOLIDATE IN THIS SECTION.**

| 13. [illegible] | 14. [illegible] | 15. [illegible] | 16. [illegible] |
|---|---|---|---|
| | | | |
| | | | |

PLAINTIFF'S DEPOSITION EXHIBIT

Submit pages 1, 2, and 3

Pfeiffer–Gov't Production (Nov. 2007) --002056

**Borrower's Name (please print)** ______________________ **Social Security Number** ____________

**Section C1: Education Loan Indebtedness – Loans You Want to Consolidate** (continued from page 1)

| 13. Loan Type (See Instructions) | 14. Loan Holder's/Servicer's Name, Address, and Area Code/Telephone Number (See Instructions) | 15. Loan Account Number | 16. Estimated Payoff Amount |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**17. Grace Period End Date.** If any of the loans you want to consolidate are in a grace period, you can delay the processing of your Direct Consolidation Loan until the end of your grace period by entering your expected grace period end date in the space provided: If you leave this item blank, your Direct Consolidation Loan will be processed and any loans listed in Section C1 that are in a grace period will enter repayment immediately upon consolidation.

**Expected Grace Period End Date (month/year):** ____________

**Section C2: Education Loan Indebtedness – Loans You Do Not Want to Consolidate**

***Read the instructions before completing this section.*** List all education loans that you are not consolidating, but want to have considered when calculating your maximum repayment period. Include any Direct Loan Program loans that you do not want to consolidate. If you need more space to list additional loans, use the Additional Loan Listing Sheet included with this package. List each loan separately. Please print. **ONLY LIST LOANS THAT YOU DO NOT WANT TO CONSOLIDATE IN THIS SECTION.**

| 18. Loan Type (See Instructions) | 19. Loan Holder's/Servicer's Name, Address, and Area Code/Telephone Number (See Instructions) | 20. Loan Account Number | 21. Current Balance |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

**Section D: Repayment Plan Selection**

To understand your repayment plan options, carefully read the repayment plan information in the Borrower's Rights and Responsibilities Statement on pages 5-8 of this Application and Promissory Note (Note) and in any supplemental materials you receive with this Note. Then select a repayment plan by completing the **Repayment Plan Selection** form that accompanies this Note. Please note the following:

- If you select the Income Contingent Repayment (ICR) Plan, you must also complete the **Income Contingent Repayment Plan Consent to Disclosure of Tax Information** form that is included with this Note. **Your selection of the ICR Plan cannot be processed without this form.**
- If you want to consolidate a defaulted loan(s) and you have not made a satisfactory repayment arrangement with your current holder(s), you must select the ICR Plan. You must also select the ICR Plan if you are consolidating a delinquent Federal Consolidation Loan that the lender has submitted to the guaranty agency for default aversion, and you are not consolidating any additional eligible loans.

**Submit pages 1, 2, and 3**

**Borrower's Name (please print)** ______________________ **Social Security Number** ______________

**Section E: Borrower Understandings, Certifications, and Authorizations**

22. I understand that:

A. My Direct Consolidation Loan will, to the extent used to pay off loans that I have selected for consolidation, count against the applicable aggregate loan limits under the Act. The term "the Act" is defined under "Governing Law" on page 4 of this Note.

B. The amount of my Direct Consolidation Loan is the sum of the balances of my outstanding eligible loans that I have chosen to consolidate. My outstanding balance on each loan to be consolidated includes unpaid principal, unpaid accrued interest, and late charges as defined by federal regulations and as certified by each holder. Collection costs may also be included. For a Direct Loan Program or Federal Family Education Loan (FFEL) Program loan that is in default, the U.S. Department of Education (ED) limits collection costs that may be included in the payoff balances of the loans to a maximum of 18.5 percent of the outstanding principal and interest. For any other defaulted federal education loans, all collection costs that are owed may be included in the payoff balances of the loans.

C. ED will provide me with information about the loans and payoff amounts that ED verifies with the holders of my loans before the actual payoffs occur. If I do not want to consolidate any of the loans that ED has verified, I must notify ED before the loans are paid off.

D. If the amount ED sends to my holders is more than the amount needed to pay off the balances of the selected loans, the holders will refund the excess to ED and it will be applied against the outstanding balance of my Direct Consolidation Loan. If the amount that ED sends to my holders is less than the amount needed to pay off the balances of the loans selected for consolidation, ED will include the remaining amount in my Direct Consolidation Loan.

E. Unless I am consolidating a delinquent Federal Consolidation Loan that the lender has submitted to the guaranty agency for default aversion or a defaulted Federal Consolidation Loan, I may consolidate an existing Federal Consolidation Loan or Direct Consolidation Loan only if I include at least one additional eligible loan in the consolidation.

F. If I am consolidating a delinquent Federal Consolidation Loan that the lender has submitted to the guaranty agency for default aversion or a defaulted Federal Consolidation loan, and I am not including another eligible loan, I must agree to repay my Direct Consolidation Loan under the Income Contingent Repayment Plan.

23. Under penalty of perjury, I certify that:

A. The information that I have provided on this Note is true, complete, and correct to the best of my knowledge and belief and is made in good faith.

B. I do not have any other application pending for a Federal Consolidation Loan with any FFEL Program lender.

C. All of the loans selected for consolidation have been used to finance my education or the education of my dependent student(s).

D. All of the loans selected for consolidation are in a grace period or in repayment (including loans in deferment or forbearance).

E. Unless I am consolidating a delinquent Federal Consolidation Loan that the lender has submitted to the guaranty agency for default aversion or a defaulted Federal Consolidation Loan, if none of the loans I am consolidating is a Direct Loan Program loan, I have sought and been unable to obtain a Federal Consolidation Loan from a FFEL Program lender, or I have been unable to obtain a Federal Consolidation Loan with income-sensitive repayment terms that are acceptable to me.

F. If I owe an overpayment on a Federal Perkins Loan, Federal Pell Grant, Federal Supplemental Educational Opportunity Grant, Academic Competitiveness Grant (ACG), National Science or Mathematics Access to Retain Talent (SMART) Grant, or Leveraging Educational Assistance Partnership Grant, I have made satisfactory arrangements with the holder to repay the amount owed.

G. If I am in default on any loan I am consolidating (except as provided above in Item 22.F.), I have either made a satisfactory repayment arrangement with the holder of that defaulted loan, or I will repay my Direct Consolidation Loan under the Income contingent repayment plan.

H. If I have been convicted of, or pled *nolo contendere* or guilty to, a crime involving fraud in obtaining federal student aid funds under Title IV of the Higher Education Act of 1965, as amended (the Act), I have completed the repayment of those funds to ED, or to the loan holder in the case of a Title IV federal student loan.

24. I make the following authorizations:

A. I authorize ED to contact the holders of the loans selected for consolidation to determine the eligibility of the loans for consolidation and the payoff amounts. I further authorize release to ED or its agent of any information required to consolidate my education loans in accordance with the Act.

B. I authorize ED to issue the proceeds of my Direct Consolidation Loan to the holders of the selected loans to pay off the debts.

C. I authorize ED to investigate my credit record and report information about my loan status to persons and organizations permitted by law to receive that information.

D. I authorize my school(s) and ED to release information about my Direct Consolidation Loan to the references on the loan and to members of my immediate family, unless I submit written directions otherwise.

E. I authorize my school(s), ED, or their agents to verify my social security number with the Social Security Administration (SSA) and, if the number on my loan record is incorrect, then I authorize SSA to disclose my correct social security number to these parties.

**Section F: Promissory Note** (continued on page 4) **– to be completed and signed by the borrower.**

**25. Promise to Pay:**

I promise to pay to the U.S. Department of Education (ED) all sums disbursed under the terms of this Note to pay off my prior loan obligations, plus interest and other charges and fees that may become due as provided in this Note. If I do not make payments on this Note when due, I will also pay reasonable collection costs, including but not limited to attorney's fees, court costs, and other fees.

If ED accepts my application, I understand that ED will on my behalf send funds to the holders of the loans that I want to consolidate to pay off those loans. I further understand that the amount of my Direct Consolidation Loan will equal the sum of the amounts that the holders of the loans verified as the payoff balances on the loans selected for consolidation. My signature on this Note serves as my authorization to pay off the balances of the loans selected for consolidation as provided by the holders of the loans.

The payoff amount may be greater than or less than the estimated total balance I have indicated in Section C1. Further, I understand that if any collection costs are owed on the loans selected for consolidation, these costs may be added to the principal balance of my Direct Consolidation Loan.

I will not sign this Note before reading the entire Note, even if I am told not to read it. I am entitled to an exact copy of this Note and the Borrower's Rights and Responsibilities Statement. My signature certifies that I have read, understand, and agree to the terms and conditions of this Note, including the Borrower Understandings, Certifications, and Authorizations in Section E, and the Borrower's Rights and Responsibilities Statement.

**I UNDERSTAND THAT THIS IS A LOAN THAT I MUST REPAY.**

**26. Borrower's Signature** ______________________ **Today's Date (mm-dd-yyyy)** ______________

**Submit pages 1, 2, and 3**




## Promissory Note – continued from page 3

**Governing Law**

The terms of this Federal Direct Consolidation Loan Application and Promissory Note (Note) will be interpreted in accordance with the Higher Education Act of 1965, as amended (20 U.S.C. 1070 et seq.), the U.S. Department of Education's (ED's) regulations, as they may be amended in accordance with their effective date, and other applicable federal laws and regulations (collectively referred to as the "Act"). Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this Note.

**Disclosure of Loan Terms**

This Note applies to a Federal Direct Consolidation Loan (Direct Consolidation Loan). Under this Note, the principal amount that I owe, and am required to repay, will be equal to all sums disbursed to pay off my prior loan obligations, plus any unpaid interest that is capitalized and added to the principal amount.

My Direct Consolidation Loan may have up to two separate loan identification numbers depending on the loans I choose to consolidate. These loan identification numbers will represent prior subsidized loans and prior unsubsidized loans. Each applicable loan identification number is represented by this Note.

When the loans that I am consolidating are paid off, a disclosure statement will be sent to me identifying the amount of my Direct Consolidation Loan, the associated loan identification numbers, and additional terms of the loan. Important additional information is also contained in the Borrower's Rights and Responsibilities Statement. The Borrower's Rights and Responsibilities Statement and any disclosure I receive in connection with the loan made under this Note are hereby incorporated into this Note.

**Interest**

Interest will be calculated using a formula provided for by the Act. Unless ED notifies me in writing of a lower rate, the interest rate on my Direct Consolidation Loan will be based on the weighted average of the interest rates on the loans being consolidated, rounded to the nearest higher one-eighth of one percent, but will not exceed 8.25%. This is a fixed interest rate, which means that the rate will remain the same throughout the life of the loan.

Except for interest ED does not charge me during a deferment period on the subsidized portion of my Direct Consolidation Loan, I agree to pay interest on the principal amount of my Direct Consolidation Loan from the date of disbursement until the loan is paid in full or discharged. ED may add interest that accrues but is not paid when due to the unpaid principal balance of this loan, as provided under the Act. This is called capitalization.

**Late Charges and Collection Costs**

ED may collect from me: (1) a late charge of not more than six cents for each dollar of each late payment if I fail to make any part of a required installment payment within 30 days after it becomes due, and (2) any other charges and fees that are permitted by the Act related to the collection of my Direct Consolidation Loan. If I default on my loan, I will pay reasonable collection costs, plus court costs and attorney fees.

**Repayment**

I must repay the full amount of the Direct Consolidation Loan made under this Note, plus accrued interest. I will repay my loan in monthly installments during a repayment period that begins on the date of the first disbursement of the loan, unless it is in a deferment or forbearance period. Payments made by me or on my behalf will be applied first to late charges and collection costs that are due, then to interest that has not been paid, and finally to the principal amount of the loan.

ED will provide me with a choice of repayment plans. Information on these plans is included in the Borrower's Rights and Responsibilities Statement. I must select a repayment plan. If I do not select a repayment plan, ED will choose a plan for me in accordance with ED's regulations.

ED will provide me with a repayment schedule that identifies my payment amounts and due dates. My first payment will be due within 60 days of the first disbursement of my Direct Consolidation Loan unless it is in a deferment or forbearance period. If I am unable to make my scheduled loan payments, ED may allow me to temporarily stop making payments, reduce my payment amount, or extend the time for making payments, as long as I intend to repay my loan. Allowing me to temporarily delay or reduce loan payments is called forbearance.

ED may adjust payment dates on my Direct Consolidation Loan or may grant me forbearance to eliminate a delinquency that remains even though I am making scheduled installment payments.

I may prepay any part of the unpaid balance on my loan at any time without penalty. After I have repaid my Direct Consolidation Loan in full, ED will send me a notice telling me that I have paid off my loan.

**Acceleration and Default**

At ED's option, the entire unpaid balance of the Direct Consolidation Loan will become immediately due and payable (this is called "acceleration") if either of the following events occurs: (1) I make a false representation that results in my receiving a loan for which I am not eligible; or (2) I default on the loan.

The following events will constitute a default on my loan: (1) I fail to pay the entire unpaid balance of the loan after ED has exercised its option under the preceding paragraph; (2) I fail to make installment payments when due, provided my failure has persisted for at least 270 days; or (3) I fail to comply with other terms of the loan, and ED reasonably concludes that I no longer intend to honor my repayment obligation. If I default, ED may capitalize all outstanding interest into a new principal balance, and collection costs will become immediately due and payable.

If I default, the default will be reported to national credit bureaus and will significantly and adversely affect my credit rating. I understand that a default will have additional adverse consequences to me as disclosed in the Borrower's Rights and Responsibilities Statement. I also understand that if I default, ED may require me to repay the loan under an income contingent repayment plan in accordance with the Act.

**Legal Notices**

Any notice required to be given to me will be effective if mailed by first class mail to the most recent address that ED has for me. I will immediately notify ED of a change of address or status, as specified in the Borrower's Rights and Responsibilities Statement.

If ED fails to enforce or insist on compliance with any term on this Note, this does not waive any right of ED. No provision of this Note may be modified or waived except in writing by ED. If any provision of this Note is determined to be unenforceable, the remaining provisions will remain in force.

## Borrower's Rights and Responsibilities Statement

***Important Notice:*** *This Borrower's Rights and Responsibilities Statement provides additional information about the terms and conditions of the loan you will receive under the accompanying Federal Direct Consolidation Loan (Direct Consolidation Loan) Application and Promissory Note (Note).* ***Please keep a copy of the Note and this Borrower's Rights and Responsibilities Statement for your records.***

*In this document, the words "we," "us," and "our" refer to the U.S. Department of Education. The word "loan" refers to your Direct Consolidation Loan.*

**1. The William D. Ford Federal Direct Loan Program.** The William D. Ford Federal Direct Loan (Direct Loan) Program includes the following types of loans, known collectively as "Direct Loans":

- Federal Direct Stafford/Ford Loans (Direct Subsidized Loans)
- Federal Direct Unsubsidized Stafford/Ford Loans (Direct Unsubsidized Loans)
- Federal Direct PLUS Loans (Direct PLUS Loans)
- Federal Direct Consolidation Loans (Direct Consolidation Loans)

The Direct Loan Program is authorized by Title IV, Part D, of the Higher Education Act of 1965, as amended.

Direct Loans are made by the U.S. Department of Education. Our Direct Loan Servicing Center services, answers questions about, and processes payments on Direct Loans. We will provide you with the Direct Loan Servicing Center's address and telephone number.

**2. Laws that apply to this Note.** The terms and conditions of loans made under this Note are determined by the Higher Education Act of 1965, as amended (20 U.S.C. 1070 et seq.) and other applicable federal laws and regulations. These laws and regulations are referred to as "the Act" throughout this Borrower's Rights and Responsibilities Statement. State law, unless it is preempted by federal law, may provide you with certain rights, remedies, and defenses in addition to those stated in the Note and this Borrower's Rights and Responsibilities Statement.

**NOTE: Any change to the Act applies to loans in accordance with the effective date of the change.**

**3. Direct Consolidation Loan identification numbers.** Depending on the type(s) of federal education loan(s) that you choose to consolidate, your loan may have up to two individual loan identification numbers. However, you will have only one Direct Consolidation Loan and will receive only one bill.

**3a.** The subsidized portion of your loan ("Direct Subsidized Consolidation Loan") will have one loan identification number representing the amount of the following types of loans that you consolidate:

- Subsidized Federal Stafford Loans
- Direct Subsidized Loans
- Subsidized Federal Consolidation Loans
- Direct Subsidized Consolidation Loans
- Federal Insured Student Loans (FISL)
- Guaranteed Student Loans (GSL)

**3b.** The unsubsidized portion of your loan ("Direct Unsubsidized Consolidation Loan") will have one identification number representing the amount of the following types of loans that you consolidate:

- Unsubsidized and Nonsubsidized Federal Stafford Loans
- Direct Unsubsidized Loans
- Unsubsidized Federal Consolidation Loans
- Direct Unsubsidized Consolidation Loans
- Federal PLUS Loans (for parents or for graduate and professional students)
- Direct PLUS Loans (for parents or for graduate and professional students)
- Direct PLUS Consolidation Loans
- Federal Perkins Loans
- National Direct Student Loans (NDSL)
- National Defense Student Loans (NDSL)
- Federal Supplemental Loans for Students (SLS)
- Parent Loans for Undergraduate Students (PLUS)
- Auxiliary Loans to Assist Students (ALAS)
- Health Professions Student Loans (HPSL)
- Health Education Assistance Loans (HEAL)
- Nursing Student Loans (NSL)
- Loans for Disadvantaged Students (LDS)

**4. Adding eligible loans to your Direct Consolidation Loan.** You may add eligible loans to your Direct Consolidation Loan by submitting a request to us within 180 days of the date your Direct Consolidation Loan is made. (Your Direct Consolidation Loan is "made" on the date we pay off the first loan that you are consolidating.) After we pay off any loans that you add during the 180-day period, we will notify you of the new total amount of your Direct Consolidation Loan and of any adjustments that must be made to your monthly payment amount.

If you want to consolidate an additional eligible loan after the 180-day period, you must apply for a new Direct Consolidation Loan.

**5. Loans that may be consolidated.** *General.* Only the federal education loans listed in Items 3a.and 3b. of this Borrower's Rights and Responsibilities Statement may be consolidated into a Direct Consolidation Loan. You may only consolidate loans that are in a grace period or in repayment (including loans in deferment or forbearance). At least one of the loans that you consolidate must be a Direct Loan Program loan or a Federal Family Education Loan (FFEL) Program loan.

*Defaulted loans.* You may consolidate a loan that is in default if (a) you first make satisfactory repayment arrangements with the holder of the defaulted loan, or (b) you agree to repay your Direct Consolidation Loan under the Income Contingent Repayment Plan (see Item 10).

*Existing consolidation loans.* Generally, you may consolidate an existing Direct Consolidation Loan or Federal Consolidation Loan into a new Direct Consolidation Loan only if you include at least one additional eligible loan in the consolidation. However, you may consolidate a Federal Consolidation Loan into a new Direct Consolidation Loan without including an additional loan if the Federal Consolidation Loan is delinquent and has been submitted by the lender to the guaranty agency for default aversion, or if the Federal Consolidation Loan is in default. In such cases, you must agree to repay the new Direct Consolidation Loan under the Income Contingent Repayment Plan.

**6. Information you must report to us.** Until your loan is repaid, you must notify the Direct Loan Servicing Center if you:

- Change your address or telephone number;
- Change your name (for example, maiden name to married name);
- Change your employer or your employer's address or telephone number changes; or
- Have any other change in status that would affect your loan (for example, if you received a deferment while you were unemployed, but have found a job and therefore no longer meet the eligibility requirements for the deferment)

**7. Interest rate.** The interest rate on your Direct Consolidation Loan will be the lesser of the weighted average of the interest rates on the loans being consolidated, rounded to the nearest higher one-eighth of one percent, OR 8.25%. We will send you a notice that tells you the interest rate on your loan.

The interest rate on a Direct Consolidation Loan is a fixed rate. This means that the interest rate will remain the same throughout the life of your loan.

**8. Payment of interest.** We charge interest on a Direct Consolidation Loan from the date the loan is made until it is paid in full or discharged, including during periods of deferment or forbearance. However, we do not charge interest on the subsidized portion of a Direct Consolidation Loan ("Direct Subsidized Consolidation Loan" – see Item 3a.) during deferment periods.

If you do not pay the interest as it is charged during the periods described above, we will add the interest to the unpaid principal amount of your loan at the end of the deferment or forbearance period. This is called "capitalization." Capitalization increases the unpaid principal balance of your loan, and we will then charge interest on the increased principal amount.

The chart below shows the difference in the total amount you would repay on a $15,000 Direct Unsubsidized Consolidation Loan if you pay the interest as it is charged during a 12-month deferment or forbearance period, compared to the amount you would repay if you do not pay the interest and it is capitalized.

| | If you pay the interest as it is charged... | If you do not pay the interest and it is capitalized... |
|---|---|---|
| Loan Amount | $15,000 | $15,000 |
| Capitalized Interest for 12 months (at the maximum rate of 8.25%) | $0 | $1,238 |
| Principal to be Repaid | $15,000 | $16,238 |
| Monthly Payment (Standard Repayment Plan) | $146 | $158 |
| Number of Payments | 180 | 180 |
| Total Amount Repaid | $26,209 | $28,359 |

In this example, you would pay $12 less per month and $2,150 less altogether if you pay the interest as it is charged during a 12-month deferment or forbearance period.

You may be able to claim a federal income tax deduction for interest payments you make on Direct Loans. For further information, refer to IRS Publication 970, which is available at http://www.irs.ustreas.gov.

**9. Repayment incentive programs.** A repayment incentive is a benefit that we offer to encourage you to repay your loan on time. Under a repayment incentive program, the interest rate we charge on your loan may be reduced. Some repayment incentive programs require you to make a certain number of payments on time to keep the reduced interest rate. For Direct Consolidation Loans, the following repayment incentive program may be available to you:

*Interest Rate Reduction for Electronic Debit Account Repayment*

Under the Electronic Debit Account (EDA) repayment option, your bank automatically deducts your monthly loan payment from your checking or savings account and sends it to us. EDA helps to ensure that your payments are made on time. In addition, you receive a 0.25 percent interest rate reduction while you repay under the EDA option. We will include information about the EDA option in your first bill. You can also get this information on the Direct Loan Servicing Center's web site, or by calling the Direct Loan Servicing Center's toll-free telephone number (the web site address and telephone number are provided on all correspondence that the Direct Loan Servicing Center sends you).

The Direct Loan Servicing Center can provide you with more information on other repayment incentive programs that may be available.

**Note:** Another repayment incentive program, the up-front interest rebate, is available on Direct Subsidized Loans, Direct Unsubsidized Loans, and Direct PLUS Loans. The rebate is equal to a percentage of the loan amount, and is the same amount that would result if the interest rate on the loan were lowered by a specific percentage. To permanently keep an up-front interest rebate, a borrower must make each of the first 12 required monthly payments on time when the loan enters repayment. If you consolidate a Direct Loan on which you received an up-front interest rebate before you permanently earn the rebate (the correspondence you received about your loan will tell you if you received a rebate), you will have to make the first 12 required monthly payments on your Direct Consolidation Loan on time to keep the interest rebate. You will lose the rebate if you do not make all of your first 12 required monthly payments on time. If you lose the rebate, we will add the rebate amount back to the principal balance on your loan account. This will increase the amount that you must repay.

**10. Repaying your loan.** Your first payment will be due within 60 days of the first disbursement of your Direct Consolidation Loan unless your loan is in a deferment or forbearance period. The Direct Loan Servicing Center will notify you of the date your first payment is due.

You must make payments on your loan even if you do not receive a bill or repayment notice. Billing information is sent to you as a convenience, and you are obligated to make payments even if you do not receive a bill or notice.

You may choose one of the following repayment plans to repay your loan:

- **Standard Repayment Plan** – Under this plan, you will make fixed monthly payments and repay your loan in full within 10 to 30 years (not including periods of deferment or forbearance) from the date the loan entered repayment, depending on the amount of your Direct Consolidation Loan and the amount of your other student loan debt as listed in Section C2 of your Note (see the chart below). Your payments must be at least $50 a month and will be more, if necessary, to repay the loan within the required time period.
- **Graduated Repayment Plan** – Under this plan, your payments will be lower at first and will then increase over time, usually every two years. You will repay your loan in full within 10 to 30 years (not including periods of deferment or forbearance) from the date the loan entered repayment, depending on the total amount of your Direct Consolidation Loan and the amount of your other student loan debt as listed in Section C2 of your Note (see the chart below). No single payment under this plan will be more than three times greater than any other payment.

| Maximum Repayment Periods Under the Standard and Graduated Repayment Plans | |
|---|---|
| **Total Education Loan Indebtedness** | **Maximum Repayment Period** |
| Less than $7,500 | 10 years |
| $7,500 to $9,999 | 12 years |
| $10,000 to $19,999 | 15 years |
| $20,000 to $39,999 | 20 years |
| $40,000 to $59,999 | 25 years |
| $60,000 or more | 30 years |

- **Extended Repayment Plan** – You may choose this plan only if (1) you had no outstanding balance on a Direct Loan Program loan as of October 7, 1998, or on the date you obtained a Direct Loan Program loan on or after October 7, 1998, and (2) you have an outstanding balance on Direct Loan Program Loans that exceeds $30,000. Under this plan, you may choose to make either fixed or graduated monthly payments and will repay your loan in full over a repayment period not to exceed 25 years (not including periods of deferment or forbearance) from the date your loan entered repayment. If you choose to make fixed monthly payments, your payments must be at least $50 a month and will be more, if necessary, to repay the loan within the required time period. If you choose to make graduated monthly payments, your payments will start out lower and will then increase over time, generally every two years. Under a graduated repayment schedule, your monthly payment must at least be equal to the amount of interest that accrues each month, and no single payment will be more than three times greater than any other payment.
- **Income Contingent Repayment Plan** – Under this plan, your monthly payment amount will be based on your adjusted gross income (and that of your spouse if you are married), your family size, and the total amount of your Direct Loans. Until we obtain the information needed to calculate your monthly payment amount, your payment will equal the amount of interest that has accrued on your loan unless you request a forbearance. As your income changes, your payments may change. If you do not repay your loan after 25 years under this plan, the unpaid portion will be forgiven. You may have to pay income tax on any amount forgiven.

If you can show to our satisfaction that the terms and conditions of these repayment plans are not adequate to meet your exceptional circumstances, we may provide you with an alternative repayment plan.

If you do not choose a repayment plan, we will choose a plan for you in accordance with the Act.

You may change repayment plans at any time after you have begun repaying your loan. There is no penalty if you make loan payments before they are due, or pay more than the amount due each month.



We apply your payments and prepayments in the following order: late charges and collection costs first, outstanding interest second, and outstanding principal last.

When you have repaid your loan in full, the Direct Loan Servicing Center will send you a notice telling you that you have paid off your loan. You should keep this notice in a safe place.

**11. Late charges and collection costs.** If you do not make any part of a payment within 30 days after it is due, we may require you to pay a late charge. This charge will not be more than six cents for each dollar of each late payment. If you do not make payments as scheduled, we may also require you to pay other charges and fees involved in collecting your loan.

**12. Demand for immediate repayment.** The entire unpaid amount of your loan becomes due and payable (on your Note this is called "acceleration") if you:

- Make a false statement that causes you to receive a loan that you are not eligible to receive; or
- Default on your loan.

**13. Defaulting on your loan.** Default (failing to repay your loan) is defined in detail in the "Promissory Note" section on page 4 of your Note. If you default:

- We will require you to immediately repay the entire unpaid amount of your loan.
- We may sue you, take all or part of your federal tax refund or other federal payments, and/or garnish your wages so that your employer is required to send us part of your wages to pay off your loan.
- We will require you to pay reasonable collection fees and costs, plus court costs and attorney fees.
- You will lose eligibility for other federal student aid and assistance under most federal benefit programs.
- You will lose eligibility for loan deferments.
- We will also report your default to national credit bureaus (see Item 14).

**14. Credit bureau notification.** We will report information about your loan to one or more national credit bureaus. This information will include the disbursement dates, amount, and repayment status of your loan (for example, whether you are current or delinquent in making payments).

If you default on a loan, we will also report this to national credit bureaus. We will notify you at least 30 days in advance that we plan to report default information to a credit bureau unless you resume making payments on the loan within 30 days. You will be given a chance to ask for a review of the debt before we report it.

If a credit bureau contacts us regarding objections you have raised about the accuracy or completeness of any information we have reported, we are required to provide the credit bureau with a prompt response.

**15. Deferment and forbearance (postponing payments).** If you meet certain requirements, you may receive a deferment that allows you to temporarily stop making payments on your loan. If you cannot make your scheduled loan payments, but do not qualify for a deferment, we may give you a forbearance. A forbearance allows you to temporarily stop making payments on your loan, temporarily make smaller payments, or extend the time for making payments.

**Deferment**

You may receive a deferment while you are:

- Enrolled at least half-time at an eligible school;
- In a full-time course of study in a graduate fellowship program;
- In an approved full-time rehabilitation program for individuals with disabilities;
- Unemployed (for a maximum of three years; you must be conscientiously seeking, but unable to find, full-time employment); or
- Experiencing an economic hardship (including Peace Corps service), as determined under the Act (for a maximum of three years).

If all of the Title IV loans that were paid off by your Direct Consolidation Loan were first disbursed on or after July 1, 2001, a deferment is also available for up to three years while you are serving on active duty during a war or other military operation or national emergency, or performing qualifying National Guard duty during a war or other military operation or national emergency.

You may be eligible to receive additional deferments if, at the time you received your first Direct Loan, you had an outstanding balance on a loan made under the Federal Family Education Loan (FFEL) Program before July 1, 1993. If you meet this requirement, you may receive a deferment while you are:

- Temporarily totally disabled, or unable to work because you are required to care for a spouse or dependent who is disabled (for a maximum of three years);
- On active duty in the U.S. Armed Forces, on active duty in the National Oceanic and Atmospheric Administration (NOAA), or serving full-time as an officer in the Commissioned Corps of the Public Health Service (for a combined maximum of three years);
- Serving in the Peace Corps (for a maximum of three years);
- A full-time paid volunteer for a tax-exempt organization or an ACTION program (for a maximum of three years);
- In a medical internship or residency program (for a maximum of two years);
- Teaching in a designated teacher shortage area (for a maximum of three years);
- On parental leave (for a maximum of six months);
- A working mother entering or re-entering the workforce (for a maximum of one year); or
- While the student for whom you borrowed a PLUS loan is dependent and is enrolled at least half-time at an eligible school, or is in an approved full-time rehabilitation training program for individuals with disabilities.

You may receive a deferment based on your enrollment in school on at least a half-time basis if (1) you submit a deferment request form to the Direct Loan Servicing Center along with documentation of your eligibility for the deferment, or (2) the Direct Loan Servicing Center receives information from the school you are attending that indicates you are enrolled at least half-time. If the Direct Loan Servicing Center processes a deferment based on information received from your school, you will be notified of the deferment and will have the option of canceling the deferment and continuing to make payments on your loan.

For all other deferments, you must submit a deferment request form to the Direct Loan Servicing Center, along with documentation of your eligibility for the deferment. The Direct Loan Servicing Center can provide you with a deferment request form that explains the requirements for the type of deferment you are requesting. You may also obtain deferment request forms and information on deferment eligibility requirements from the Direct Loan Servicing Center's web site at www.dl.ed.gov.

If you are in default on your loan, you are not eligible for a deferment.

You are responsible for paying the interest on a Direct Unsubsidized Consolidation Loan during a deferment period. You are not responsible for paying the interest on a Direct Subsidized Consolidation Loan during a deferment period.

**Forbearance**

We will give you a forbearance if: You are serving in a medical or dental internship or residency program, and you meet specific requirements;

- You are serving in a national service position for which you receive a national service education award under the National and Community Service Act of 1990 (AmeriCorps);
- You qualify for partial repayment of your loans under the Student Loan Repayment Program, as administered by the Department of Defense.
- You are performing service that would qualify you for loan forgiveness under the teacher loan forgiveness program that is available to certain Direct Loan and FFEL program borrowers; or
- The total amount you owe each month for all of the student loans you received under Title IV of the Act is 20 percent or more of your total monthly gross income (for a maximum of three years).

In addition, we may give you a forbearance if you are temporarily unable to make your scheduled loan payments for reasons including, but not limited to, financial hardship or illness.

To request a forbearance, contact the Direct Loan Servicing Center. The Direct Loan Servicing Center can provide you with a forbearance request form that explains the requirements for the type of forbearance you are requesting. You may also obtain forbearance request forms and information on forbearance eligibility requirements from the Direct Loan Servicing Center's web site at www.dl.ed.gov.

Under certain circumstances, we may also give you a forbearance without requiring you to submit a request or documentation. These circumstances include, but are not limited to, the following:

- Periods necessary for us to determine your eligibility for a loan discharge;



- A period of up to 60 days in order for us to collect and process documentation related to your request for a deferment, forbearance, change in repayment plan, or consolidation loan (we do not capitalize interest charged during this period); or
- Periods when you are involved in a military mobilization, or a local or national emergency.

You are responsible for paying the interest on your entire Direct Consolidation Loan during a forbearance period.

**16. Discharge (having your loan forgiven).** We will discharge (forgive) your Direct Consolidation Loan if:

- The Direct Loan Servicing Center receives an original or certified copy of a death certificate as evidence of your death. In exceptional circumstances, we may discharge your loan based on other reliable documentation of your death. We will also discharge the portion of a Direct Consolidation Loan that repaid one or more Direct PLUS Loans or Federal PLUS Loans obtained on behalf of a student who dies.
- Your loan is discharged in bankruptcy. However, federal student loans are not automatically discharged if you file for bankruptcy. To have your loan discharged in bankruptcy, you must prove to the bankruptcy court, in an adversary proceeding, that repaying the loan would cause undue hardship.
- We determine that you are totally and permanently disabled (as defined in the Act), based on a physician's certification, and you meet additional requirements during a 3-year conditional discharge period. During that period, your earnings from work must not exceed the poverty line amount for a family of two, and you must not receive any additional loans under the Direct Loan, FFEL, or Federal Perkins Loan programs. You may not receive a discharge due to total and permanent disability based on a condition that existed before you received any of the loans that you consolidated, unless a doctor certifies that the condition substantially deteriorated after the loan was made.

In certain cases, we may also discharge all or a portion of your Direct Consolidation Loan if:

- One or more Direct Loan Program, FFEL Program, or Federal Perkins Loan Program loans that you consolidated was used to pay for a program of study that you (or the dependent student for whom you borrowed a PLUS loan) were unable to complete because the school closed;
- Your eligibility (or the eligibility of the dependent student for whom you borrowed a PLUS loan) for one or more of the Direct Loan Program or FFEL Program loans that you consolidated was falsely certified by the school;
- Your eligibility for one or more of the Direct Loan Program or FFEL Program loans that you consolidated was falsely certified as a result of a crime of identity theft; or
- The school did not pay a required refund of one or more Direct Loan Program or FFEL Program loans that you consolidated.

We may forgive a portion of your Direct Consolidation Loan that repaid Direct Subsidized or Direct Unsubsidized Loans you received after October 1, 1998, or subsidized or unsubsidized Federal Stafford Loans you received under the FFEL program after October 1, 1998 if you teach full time for five consecutive years in certain low-income elementary and/or secondary schools and meet certain other qualifications, and if you did not owe a Direct Loan or FFEL program loan as of October 1, 1998, or as of the date you obtain a loan after October 1, 1998.

To request a loan discharge based on one of the conditions described above (except for discharges due to death or bankruptcy), you must complete an application that you may obtain from the Direct Loan Servicing Center or from the Direct Loan Servicing Center's web site at www.dl.ed.gov.

In some cases, you may assert, as a defense against collection of your loan, that the school did something wrong or failed to do something that it should have done. You can make such a defense against repayment only if the school's act or omission directly relates to your loan or to the educational services that the loan was intended to pay for, and if what the school did or did not do would give rise to a legal cause of action against the school under applicable state law. If you believe that you have a defense against repayment of your loan, contact the Direct Loan Servicing Center.

We do not guarantee the quality of the academic programs provided by schools that participate in federal student financial aid programs. You must repay your loan even if you do not complete your education, are unable to obtain employment in your field of study, or are dissatisfied with, or do not receive, the education you paid for with the loan.

**17. Department of Defense and other federal agency loan repayment.** Under certain circumstances, military personnel may have educational loans repaid by the Secretary of Defense. This benefit is offered as part of a recruitment program that does not apply to individuals based on their previous military service or to those who are not eligible for enlistment in the U.S. Armed Forces. For more information, contact your local military service recruitment office.

Other agencies of the federal government may also offer student loan repayment programs as an incentive to recruit and retain employees. Contact the agency's human resources department for more information.

***END OF BORROWER'S RIGHTS AND RESPONSIBILITIES STATEMENT***



**IMPORTANT NOTICES**

**Gramm-Leach-Bliley Act Notice**

In 1999, Congress enacted the Gramm-Leach-Bliley Act (Public Law 106-102). This Act requires that lenders provide certain information to their customers regarding the collection and use of nonpublic personal information.

We disclose nonpublic personal information to third parties only as necessary to process and service your loan and as permitted by the Privacy Act of 1974. See the Privacy Act Notice below. We do not sell or otherwise make available any information about you to any third parties for marketing purposes.

We protect the security and confidentiality of nonpublic personal information by implementing the following policies and practices. All physical access to the sites where nonpublic personal information is maintained is controlled and monitored by security personnel. Our computer systems offer a high degree of resistance to tampering and circumvention. These systems limit data access to our staff and contract staff on a "need-to-know" basis, and control individual users' ability to access and alter records within the systems. All users of these systems are given a unique user ID with personal identifiers. All interactions by individual users with the systems are recorded.

**Privacy Act Notice**

The Privacy Act of 1974 (5 U.S.C. 552a) requires that the following notice be provided to you:

The authority for collecting the requested information from and about you is §451 et seq. of the Higher Education Act (HEA) of 1965, as amended (20 U.S.C. 1087a et seq.) and the authorities for collecting and using your Social Security Number (SSN) are §484(a)(4) of the HEA (20 U.S.C. 1091(a)(4)) and 31 U.S.C. 7701(b). Participating in the William D. Ford Federal Direct Loan (Direct Loan) Program and giving us your SSN are voluntary, but you must provide the requested information, including your SSN, to participate.

The principal purposes for collecting the information on this form, including your SSN, are to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan (such as a deferment, forbearance, discharge, or forgiveness) under the Direct Loan Program, to permit the servicing of your loan(s), and, if it becomes necessary, to locate you and to collect and report on your loan(s) if your loan(s) become delinquent or in default. We also use your SSN as an account identifier and to permit you to access your account information electronically.

The information in your file may be disclosed, on a case by case basis or under a computer matching program, to third parties as authorized under routine uses in the appropriate systems of records notices. The routine uses of this information include, but are not limited to, its disclosure to federal, state, or local agencies, to private parties such as relatives, present and former employers, business and personal associates, to consumer reporting agencies, to financial and educational institutions, and to guaranty agencies in order to verify your identity, to determine your eligibility to receive a loan or a benefit on a loan, to permit the servicing or collection of your loan(s), to enforce the terms of the loan(s), to investigate possible fraud and to verify compliance with federal student financial aid program regulations, or to locate you if you become delinquent in your loan payments or if you default. To provide default rate calculations, disclosures may be made to guaranty agencies, to financial and educational institutions, or to state agencies. To provide financial aid history information, disclosures may be made to educational institutions. To assist program administrators with tracking refunds and cancellations, disclosures may be made to guaranty agencies, to financial and educational institutions, or to federal or state agencies. To provide a standardized method for educational institutions to efficiently submit student enrollment status, disclosures may be made to guaranty agencies or to financial and educational institutions. To counsel you in repayment efforts, disclosures may be made to guaranty agencies, to financial and educational institutions, or to federal, state, or local agencies.

In the event of litigation, we may send records to the Department of Justice, a court, adjudicative body, counsel, party, or witness if the disclosure is relevant and necessary to the litigation. If this information, either alone or with other information, indicates a potential violation of law, we may send it to the appropriate authority for action. We may send information to members of Congress if you ask them to help you with federal student aid questions. In circumstances involving employment complaints, grievances, or disciplinary actions, we may disclose relevant records to adjudicate or investigate the issues. If provided for by a collective bargaining agreement, we may disclose records to a labor organization recognized under 5 U.S.C. Chapter 71. Disclosures may be made to our contractors for the purpose of performing any programmatic function that requires disclosure of records. Before making any such disclosure, we will require the contractor to maintain Privacy Act safeguards. Disclosures may also be made to qualified researchers under Privacy Act safeguards.

**Financial Privacy Act Notice**

Under the Right to Financial Privacy Act of 1978 (12 U.S.C. 3401-3421), ED will have access to financial records in your student loan file maintained in compliance with the administration of the Direct Loan Program.

**Paperwork Reduction Notice**

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a currently valid OMB control number. The valid OMB control number for this information collection is 1845-0053. The time required to complete this information collection is estimated to average 1.0 hour (60 minutes) per response, including the time to review instructions, search existing data resources, gather and maintain the data needed, and complete and review the information collection. **If you have any comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to:** U.S. Department of Education, Washington, DC 20202-4700.

**If you have any questions regarding the status of your individual submission of this form, write directly to:**

**U.S. Department of Education**
**Consolidation Department**
**P.O. Box 242800**
**Louisville, KY 40224-2800**

EXHIBIT #4
Pfeiffer v Spelling
C.A. #1:07cv00522 (EGS)

# Federal Direct Consolidation Loan Promissory Note Endorser Addendum

OMB No. 1845-0053
Form Approved
Exp. Date 01/31/2005

WARNING: Any person who knowingly makes a false statement or misrepresentation on this form shall be subject to penalties which may include fines, imprisonment, or both, under the U.S. Criminal Code and 20 U.S.C. 1097.

## Section A: Parent Borrower Information (Completed by U.S. Department of Education)

| 1. Name (Last, First, Middle Initial) | 2. Social Security Number | 3. Date of Birth |
|---|---|---|
| 4. Permanent Address (Street, City, State, Zip Code) | | |
| 5. Home Area Code/Telephone Number | 6. Direct PLUS Consolidation Loan Amount | |

## Section B: Endorser Information

| 7. Name (Last, First, Middle Initial) | 8. Social Security Number | 9. Date of Birth |
|---|---|---|
| 10. Permanent Address (Street, City, State, Zip Code) | | 11. Fax Number (Optional) |
| 12. Home Area Code/Telephone Number ( ) | 13. Driver's License Number (list state abbreviation first) ( ) | 14. E-Mail Address (Optional) |

15. U.S. Citizenship Status (Check One)
1 ☐ U.S. Citizen or National
2 ☐ Permanent Resident or Other Eligible Noncitizen — Alien Registration Number
3 ☐ Neither 1 nor 2

| 16. Employer's Name | 17. Employer's Area Code/Telephone Number ( ) |
|---|---|
| 18. Employer's Address (Street, City, State, Zip Code) | |

19. References: (See instructions before completing this section.)

Name 1. ____________ 2. ____________

Permanent Address ____________ ____________

City, State, Zip Code ____________ ____________

Area Code/Telephone Number ( ) ____________ ( ) ____________

## Section C: Endorser's Certification

In the event that the borrower identified in Section A does not repay the Federal Direct Consolidation Loan (Direct Consolidation Loan) for which I am the endorser, I promise to pay the U.S. Department of Education (ED) all sums (hereafter "loan" or "loans") disbursed for the purpose of paying off a parent PLUS loan(s) or a parent PLUS consolidation loan(s) under the Federal Direct Consolidation Loan Promissory Note plus interest and other fees that may become due, as provided in this Federal Direct Consolidation Loan Promissory Note Endorser Addendum (addendum). If I fail to make payments on this addendum when due, I will also pay collection costs including but not limited to attorney's fees and court costs.

I understand that this is an addendum to the Federal Direct Consolidation Loan Promissory Note. I will not sign this addendum before reading it, even if I am advised not to read it. I am entitled to an exact copy of this addendum and a statement of the Borrower's Rights and Responsibilities. My signature certifies that I have read, understand, and agree to the terms and conditions of this addendum.

Under penalty of perjury, I certify that the information contained on this addendum is true and accurate. I authorize ED to investigate my credit record and report information concerning my credit to the proper persons and organizations.

**I UNDERSTAND THAT THIS IS A FEDERAL LOAN THAT I MUST REPAY IN THE EVENT THE BORROWER IDENTIFIED IN SECTION A DOES NOT REPAY THE LOAN.**

20. Loan Identification Number

21. Signature of Endorser ____________ Date

Pfeiffer--Gov't Production (Nov. 2007) --001870

Borrower's Name________________________________

Borrower's Social Security Number________________________

[illegible]

| 25. Loan Holder/Servicer's Name, Address, and Area Code/Telephone Number | 26. Loan Type | 27. B=Borrower S=Spouse J=Joint | 28. Account Number | 29. Current Balance | 30. To Be Consolidated? Yes | No |
|---|---|---|---|---|---|---|
| ( ) | | | | | | |
| ( ) | | | | | | |
| ( ) | | | | | | |
| ( ) | | | | | | |
| ( ) | | | | | | |
| ( ) | | | | | | |
| ( ) | | | | | | |
| ( ) | | | | | | |

Pfeiffer--Gov't Production (Nov. 2007) --001873

**Borrower's Name** ______________________________

**Borrower's Social Security Number** ______________________________

## Section E: Repayment Plan Selection

Carefully read the repayment plan information in "Direct Consolidation Loans" that accompanies this application and promissory note to understand your repayment plan options. Then, complete this section to select your repayment plan. Remember--

- All student loans must be repaid under the same repayment plan. Parent PLUS loans may be repaid under a different repayment plan.
- If you select the Income Contingent Repayment Plan, you must complete the "Repayment Plan Selection" and "Income Contingent Repayment Plan Consent to Disclosure of Tax Information" forms that accompany this application and promissory note. Your selection cannot be processed without these forms.
- **If you want to consolidate a defaulted student loan(s) and you have not made a satisfactory repayment arrangement with your current holder(s), you must select the Income Contingent Repayment Plan.**

31. Place an "X" in the box that corresponds to your repayment plan selection for each loan type. Note that Direct PLUS Consolidation Loans cannot be repaid under the Income Contingent Repayment Plan.

| | Income Contingent | Standard | Extended | Graduated |
|---|---|---|---|---|
| **STUDENT LOANS** *Direct Subsidized and Unsubsidized Consolidation Loans* | ☐ | ☐ | ☐ | ☐ |
| **PARENT LOANS** *Direct PLUS Consolidation Loans* | Not Available | ☐ | ☐ | ☐ |

## Section F: Promissory Note (Continued on reverse side)

**Promise to Pay:**

I promise to pay to the U.S. Department of Education (ED) all sums (hereafter "loan" or "loans") disbursed under the terms of this Promissory Note (note) to discharge my prior loan obligations, plus interest, and other fees that may become due as provided in this note. If I fail to make payments on this note when due, I will also pay collection costs including but not limited to attorney's fees and court costs. If ED accepts my application, I understand that ED will on my behalf send funds to the holder(s) of the loan(s) selected for consolidation in order to pay off this loan(s). I further understand that the amount of this loan will equal the sum of the amount(s) that the holder(s) of the loan(s) verified as the payoff balance(s) on that loan(s) selected for consolidation. My signature on this note will serve as my authorization to pay off the balance(s) of the loan(s) selected for consolidation as provided by the holder(s) of such loan(s).

This amount may be more or less than the estimated total balance I have indicated in Section D. Further, I understand that if any collection costs are owed on the loans selected for consolidation, these costs may be added to the principal balance of the consolidation loan.

I understand that this is a Promissory Note. I will not sign this note before reading it, including the text on the reverse side, even if I am advised not to read the note. I am entitled to an exact copy of this note and a statement of the Borrower's Rights and Responsibilities. My signature certifies that I have read, understand, and agree, to the terms and conditions of this note, including the Borrower Certification and Authorization printed on the reverse side and the accompanying Borrower's Rights and Responsibilities.

If consolidating jointly with my spouse, we agree to the same terms and conditions contained in the Borrower Certification and Authorization. In addition, we confirm that we are legally married to each other and understand and agree that we are and will continue to be held jointly and severally liable for the entire amount of the debt represented by the Federal Direct Consolidation Loan without regard to the amounts of our individual loan obligations that are consolidated and without regard to any change that may occur in our marital status. We understand that this means that one of us may be required to pay the entire amount due if the other is unable or refuses to pay. We understand that the Federal Direct Consolidation Loan we are applying for will be cancelled only if both of us qualify for cancellation. We further understand that we may postpone repayment of the loan only if we provide ED with written requests that confirm Federal Direct Consolidation Loan Program deferment or forbearance eligibility for both of us at the same time.

**I UNDERSTAND THAT THIS IS A FEDERAL LOAN THAT I MUST REPAY.**

32. Signature of Borrower ______________________________ Date ______________

Signature of Spouse (if consolidating jointly) ______________________________ Date ______________

## Promissory Note (continued)

### Governing Law and Notices

This Promissory Note (note) applies to Federal Direct Consolidation Loans (Direct Consolidation Loans). In this note, the Higher Education Act of 1965, as amended, 20 U.S.C. 1070 et seq., and applicable U.S. Department of Education (ED) regulations are referred to as "the Act." The terms of this note will be interpreted according to the Act and other applicable federal statutes and regulations. Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this note.

### Disclosure of Terms

When the loan(s) that I am consolidating is paid off, I will be sent a Disclosure Statement and Repayment Schedule (disclosure). The disclosure will identify my Direct Consolidation Loan amount and additional terms of my loan. If I have questions about the information disclosed, I will contact ED. If the information in this note conflicts with the information in the disclosure, the disclosure will be controlling.

Important additional terms of this loan are disclosed in the statement of Borrower's Rights and Responsibilities accompanying this note.

I understand that my Direct Consolidation Loan may consist of up to three separate loan identification numbers depending on the loan(s) I choose to consolidate. These loan identification numbers will represent prior subsidized loans, prior unsubsidized loans, and prior parent PLUS loans. The Borrower's Rights and Responsibilities identifies which eligible loans are included in each of these categories. Each applicable loan identification number is represented by this note.

### Interest

Except for interest ED does not charge me during an in-school, grace, or deferment period, I agree to pay interest on the principal amount of my Direct Consolidation Loan from the date of disbursement until the loan is paid in full or discharged. ED may add interest that accrues but is not paid when due to the unpaid principal balance of this loan, as provided under the Act. This is called capitalization.

Interest will be calculated according to the applicable formulas provided for by the Act.

The interest rate on my Direct Consolidation Loan will be based on the weighted average of the interest rates on the loans being consolidated, rounded to the nearest higher one-eighth of one percent, but shall not exceed 8.25%. This is a fixed interest rate, which means that the rate will remain the same throughout the life of the loan.

### Late Charges and Collection Costs

If I fail to make any part of an installment payment within 30 days after it becomes due, ED may collect from me a late charge that will not exceed six cents for each dollar of each late installment. If I default on the loan, I will pay reasonable collection fees and costs, plus court costs and attorney's fees associated with collection of the debt.

### Grace Period

My Direct Consolidation Loan will receive a grace period if I meet all of the following conditions: (1) I have at least one William D. Ford Federal Direct Loan (Direct Loan) Program loan or attend a Direct Loan school, (2) at least one Direct Loan or Federal Family Education Loan (FFEL) Program loan that I am consolidating is in an in-school period, and (3) my application for a Direct Consolidation Loan is received by ED prior to the end of my in-school period. A six-month grace period begins the day after I cease to be enrolled at least half time at an eligible school. (If my enrollment status changes to less than half time after I apply but before the first disbursement of my Direct Consolidation Loan, I will not have to make payments on my Direct Consolidation Loan for the number of months remaining in my grace period at the time the first disbursement is made.)

### Repayment

Unless my Direct Consolidation Loan is in an in-school or grace period when it is disbursed, I must select a repayment plan. If I do not select a repayment plan, ED will choose a plan for me in accordance with ED's regulations. My first payment will be due within 60 days of the first disbursement of my Direct Consolidation Loan unless it is in an in-school, grace, or deferment period. A repayment schedule will be furnished to me and will establish repayment terms, including my payment amount and the length of my repayment period. Payments will be scheduled in monthly installments. The amount of my monthly payment may be adjusted to reflect changes in the variable interest rate. ED may adjust my repayment schedule if ED learns that any of the loans listed herein is not eligible to be consolidated. My repayment period will be up to 30 years in length, depending on the amount of my student loan indebtedness and my repayment plan. Any period for which ED has granted a deferment or forbearance will not be included in determining my repayment period.

I may prepay all or any part of the unpaid balance on my loan at any time without penalty. I agree to accept written notification of such pay off in lieu of receiving the original note.

### Acceleration and Default

At the option of ED, the entire unpaid balance shall become immediately due and payable when either of the following events occurs: (i) I make false representation that results in my receiving a loan for which I am not eligible, or (ii) I default on the loan.

The following events shall constitute a default on a loan: (i) I fail to pay the entire unpaid balance after ED has exercised its option under the preceding paragraph; or (ii) I fail to make installment payments when due, or fail to comply with other terms of the loan, and ED reasonably concludes I no longer intend to honor my repayment obligation. My failure must have persisted for at least 270 days. If I default, ED will capitalize all outstanding interest into a new principal balance.

If I default, this will be reported to national credit bureau organizations and will significantly and adversely affect my credit rating. I acknowledge that a default shall have additional adverse consequences to me as disclosed in the Borrower's Rights and Responsibilities.

Following default, the loan may at ED's option, be subject to income contingent repayment in accordance with the Act.

Any notice required to be given to me will be effective when mailed by first class mail to the latest address that ED has for me. I will immediately notify ED of any change of my address. Failure by ED to enforce or insist on compliance with any term on this note shall not waive any right of ED. No provision of this note may be changed or waived except in writing by ED. If any provision of this note is determined to be unenforceable, the remaining provisions shall remain in force.

### Borrower Certification and Authorization

I declare under penalty of perjury that the following is true and correct:

(1) I certify that the information provided by me and my spouse, if applicable, in this note is true, complete, and correct to the best of my knowledge and belief and is made in good faith.

(2) I certify that I do not now owe a refund on a Federal Pell Grant, Basic Educational Opportunity Grant, Federal Supplemental Educational Opportunity Grant, or a State Student Incentive Grant, or if I owe a refund, I have made satisfactory arrangements with the holder to repay the amount owed. I further certify that I am not now in default on any loan I am consolidating or, if I am in default, I have either made a satisfactory repayment arrangement with the holder of that defaulted loan, or I will repay under the income contingent repayment plan. I understand that income contingent repayment is not available for the parent PLUS loan portion of my Direct Consolidation Loan.

(3) I certify that all of the loans selected have been used to finance my education, my spouse's education, or my child's education.

(4) I certify that I do not have any other application pending for a Federal Consolidation Loan with any other lender. If my student loans are in a grace or repayment period and if none of the loans I am consolidating is a Direct Loan Program loan, I further certify that I have sought and been unable to obtain a Federal Consolidation Loan from a FFEL Program lender, or a lender would not provide me with a Federal Consolidation Loan with income-sensitive repayment terms acceptable to me. If I have parent PLUS loans and none of the loans I am consolidating is a Direct Loan Program loan, I further certify that I have sought and been unable to obtain a Federal Consolidation Loan from a FFEL Program lender. If, however, I am consolidating jointly with my spouse, only one borrower, my spouse or I, must have sought a Federal Consolidation Loan from a FFEL Program lender.

(5) I understand that this loan shall, to the extent used to discharge loans that I have selected, count against the applicable aggregate loan limits under the Act.

(6) I understand that the amount of my Direct Consolidation Loan is the sum of the balance(s) of my outstanding eligible loan(s) that I have chosen to consolidate. My outstanding balance on each loan to be consolidated includes unpaid principal, unpaid accrued interest, and late charges as defined by federal regulations and as certified by each holder. Collection costs may also be included. For a Direct Loan or FFEL Program loan that is in default, ED limits collection costs that may be charged to the borrower to no more than those currently authorized under the FFEL Program and may impose reasonable limits on collection costs paid to the holder. If the amount ED advances to my holder(s) exceeds the amount needed to pay off the balance(s) of the selected loan(s), I understand that the holder will refund the excess to ED for application against the outstanding balance of this loan. If the amount that ED advances to my holder(s) is less than the amount needed to pay off the balance(s) of the loan(s) selected for consolidation, ED will include the remaining amount in this loan unless I pay the remaining balance myself.

(7) I authorize ED to contact the holder(s) identified on my application to determine the eligibility and/or payoff amount for the loan(s) I have identified. I further authorize release to ED or its agent any information required to consolidate my education loan(s) pursuant to the Act.

(8) I authorize ED to issue the proceeds of my Direct Consolidation Loan to the holder(s) of the loan(s) so selected to discharge the debt.

(9) I authorize ED to investigate my credit record and report information concerning my loan status to proper persons and organizations authorized to receive this information.

(10) I authorize the release of information pertinent to this loan: (i) by my school(s) and ED, to members of my immediate family unless I submit written direction otherwise; and (ii) by and amongst my school(s), ED, and their agents.

(11) I authorize my school(s), ED, and their agents, to verify my social security number with the Social Security Administration (SSA) and, if the number on my loan record is incorrect, then I authorize SSA to disclose my correct social security number to these parties.

**Direct Loans**
William D. Ford Federal Direct Loan Program

# Federal Direct Consolidation Loan
## Additional Loan Listing Sheet

WARNING: Any person who knowingly makes a false statement or misrepresentation on this form shall be subject to penalties which may include fines, imprisonment, or both, under the U.S. Criminal Code and 20 U.S.C. 1097.

OMB No. 1845-0053
Form Approved
Exp. Date 1/31/2005

**Borrower's Name**______________________________
**Borrower's Social Security Number**______________________________

Section D: Education Loan Indebtedness (Continued)

Use this form only if you need additional space to list loans in Section D. Refer to the instructions for items 25-30 when completing this form. Be sure to attach this form to your application and promissory note when you submit it.

| 25. Loan Holder/Servicer's Name, Address, and Area Code/Telephone Number | 26. Loan Type | 27. B=Borrower S=Spouse J=Joint | 28. Account Number | 29. Current Balance | 30. To Be Consolidated? Yes | No |
|---|---|---|---|---|---|---|
| ( ) | | | | | | |
| ( ) | | | | | | |
| ( ) | | | | | | |
| ( ) | | | | | | |
| ( ) | | | | | | |

Pfeiffer--Gov't Production (Nov. 2007) --001875

EXHIBIT #5
Pfeiffer v Spelling
C.A. #1:07cv00522 (EGS)

Direct
Loans

# Federal Direct Consolidation Loan

# Promissory Note

OMB No. 1840-0693
Form Approved
Exp. Date 1/31/99

WARNING: Any person who knowingly makes a false statement or misrepresentation on this form shall be subject to penalties which may include fines, imprisonment, or both, under the U.S. Criminal Code and 20 U.S.C. 1097.

## Section A: Borrower Information (Completed by U.S. Department of Education)

If any of the preprinted personal information is incorrect, check here ☐, put a line through any incorrect information, enter it correctly below, and initial the correction.

Borrower's SSN ___-__-____

Spouse's SSN (if applicable) ___-__-____

Borrower's Name ______________________

Spouse's Name (if applicable) ______________________

Permanent Street Address ______________________

City, State, Zip Code ______________________

Home Area Code / Telephone Number ( ) ______________________

## Section B: Loans Consolidated

| Loan Identification Number | Loan Type | Amount |
|---|---|---|
| XXXXXXXXXX | Direct Subsidized Consolidation Loan | $ XXXX.XX |
| XXXXXXXXXX | Direct Unsubsidized Consolidation Loan | $ XXXX.XX |
| XXXXXXXXXX | Direct PLUS Consolidation Loan | $ XXXX.XX |
| TOTAL | Direct Consolidation Loan | $ XXXX.XX |

## Section C: Promissory Note (Continued on reverse side) To be completed and signed by borrower and spouse, if applicable.

### Promise to Pay:

I promise to pay to the U.S. Department of Education (ED) all sums (hereafter "loan" or "loans") disbursed under the terms of this Promissory Note to discharge my prior loan obligations, plus interest, and other fees that may become due as provided in this Promissory Note. If I fail to make payments on this Promissory Note when due, I will also pay collection costs including attorney's fees and court costs. I understand that ED will on my behalf send funds to the holder(s) of the loan(s) in order to pay off this loan(s). I further understand that the amount of this loan equals the sum of the amount(s) that the holder(s) of the loan(s) verified as the payoff balance(s) on that loan(s) selected for consolidation. My signature on this Promissory Note will serve as my authorization to pay off the balance(s) of the loan(s) selected for consolidation as provided by the holder(s) of such loan(s).

**I understand that the total amount of this loan may exceed the amounts listed above under Loans Consolidated if I do not continue to make monthly payments to my current loan holder(s) until the time I am notified that my Federal Direct Consolidation Loan has been made or because of collection costs or additional interest that may accrue after the date this Promissory Note was prepared. I understand that I am obligated to repay these additional amounts under the terms of this Promissory Note.**

I understand that this is a Promissory Note. I will not sign this Promissory Note before reading it, including the text on the reverse side, even if I am advised not to read the Promissory Note. I am entitled to an exact copy of this Promissory Note and a statement of the Borrower's Rights and Responsibilities. My signature certifies that I have read, understand, and agree, to the terms and conditions of this Promissory Note, including the Borrower Certification and Authorization printed on the reverse side and the accompanying Borrower's Rights and Responsibilities.

If consolidating jointly with my spouse, we agree to the same terms and conditions contained in the Borrower Certification and Authorization. In addition, we confirm that we are legally married to each other and understand and agree that we are and will continue to be held jointly and severally liable for the entire amount of the debt represented by the Federal Direct Consolidation Loan without regard to the amounts of our individual loan obligations that are consolidated and without regard to any change that may occur in our marital status. We understand that this means that one of us may be required to pay the entire amount due if the other is unable or refuses to pay. We understand that the Federal Direct Consolidation Loan we are applying for will be cancelled only if both of us qualify for cancellation. We further understand that we may postpone repayment of the loan only if we provide ED with a written request that confirms Federal Direct Consolidation Loan Program deferment or forbearance eligibility for both of us.

**I UNDERSTAND THAT THIS IS A FEDERAL LOAN THAT I MUST REPAY.**

Signature of Borrower ______________________ Date ________

Signature of Spouse (if consolidating jointly) ______________________ Date ________

PLAINTIFF'S DEPOSITION EXHIBIT 6 Barth

# Promissory Note *(continued)*

**Governing Law and Notices**

This promissory note (note) applies to Federal Direct Consolidation Loans (Direct Consolidation Loans). In this note, the Higher Education Act of 1965, as amended, 20 U.S.C. 1070 et seq., and applicable U.S. Department of Education (ED) regulations are referred to as "the Act." The terms of this note will be interpreted according to the Act and other applicable federal statutes and regulations. Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this note.

**Disclosure of Terms**

When the loan(s) that I am consolidating is paid off, I will be sent a Disclosure Statement and Repayment Schedule (disclosure). The disclosure will identify my Direct Consolidation Loan amount and additional terms of my loan. If I have questions about the information disclosed, I will contact ED. If the information in this note conflicts with the information in the disclosure, the disclosure will be controlling. The information in the disclosure statement will be different from this note if the loan(s) being consolidated is not paid off on the anticipated disbursement date.

Important additional terms of this loan are disclosed in the statement of Borrower's Rights and Responsibilities accompanying this note.

I understand that my Direct Consolidation Loan may consist of up to three separate loan identification numbers depending on the loans I choose to consolidate. These loan identification numbers will represent prior subsidized loans, prior unsubsidized loans, and prior PLUS loans. The Borrower's Rights and Responsibilities identifies which eligible loans are included in each of these categories. Each applicable loan identification number is represented by this note.

Except for interest ED does not charge me during an authorized deferment or grace period, I agree to pay interest on the principal amount of my Direct Consolidation Loan from the date of disbursement until the loan is paid in full or discharged.

ED may add interest that accrues but is not paid when due to the unpaid principal balance of this loan. This is called capitalization.

**Interest**

If my Direct Consolidation Loan includes a loan identification number that represents previous Federal PLUS loans, the interest rate for that portion of the loan during any 12-month period beginning on July 1 and ending on June 30, is determined on the preceding June 1 and is equal to the bond equivalent rate of 52-week Treasury bills auctioned at the final auction held prior to such June 1 plus 3.1 percentage points, but shall not exceed 9 percent.

If my Direct Consolidation Loan includes loan identification numbers that represent previous loans other than Federal PLUS loans, and I am in repayment, the interest rate for that portion of the loan during any 12-month period beginning on July 1 and ending on June 30, is determined on the preceding June 1 and is equal to the bond equivalent rate of 91-day Treasury bills auctioned at the final auction held prior to such June 1 plus 3.1 percentage points, but shall not exceed 8.25 percent.

If my Direct Consolidation Loan includes loan identification numbers that represent previous loans other than Federal PLUS loans, and I am in an authorized period of deferment, the interest rate for that portion of the loan during any 12-month period beginning on July 1 and ending on June 30, is determined on the preceding June 1 and is equal to the bond equivalent rate of 91-day Treasury bills auctioned at the final auction held prior to such June 1 plus 2.5 percentage points, but shall not exceed 8.25 percent.

If my Direct Consolidation Loan includes loan identification numbers that represent previous loans other than Federal PLUS loans and a loan in an in-school period, and I am not yet in repayment, the interest rate for that portion of the loan during any 12-month period beginning on July 1 and ending on June 30, is determined on the preceding June 1 and is equal to the bond equivalent rate of 91-day Treasury bills auctioned at the final auction held prior to such June 1 plus 2.5 percentage points, but shall not exceed 8.25 percent.

**Late Charges and Collection Costs**

If I fail to make any part of an installment payment within 30 days after it becomes due, ED may collect from me a late charge that will not exceed six cents for each dollar of each late installment. If I default on the loan, I will pay reasonable collection fees and costs, plus court costs and attorney's fees associated with collection of the debt.

**Grace Period**

My Direct Consolidation Loan will receive a grace period if at least one William D. Ford Federal Direct Loan (Direct Loan) Program or Federal Family Education Loan (FFEL) Program loan that I am consolidating is in an in-school period and my application for a Direct Consolidation Loan is received by ED prior to the end of my in-school period. A six-month grace period begins the day after I cease to be enrolled at least half time at an eligible school.

**Repayment**

Unless I am in school when my Direct Consolidation Loan is disbursed, I will be asked to select a repayment plan. If I do not select a repayment plan, ED will choose a plan for me in accordance with ED's regulations. My first payment will be due within 60 days of the first disbursement of my Direct Consolidation Loan unless I am eligible for a deferment or my Direct Consolidation Loan includes at least one Direct Loan or FFEL Program loan for which I am in an in-school period. A repayment schedule will be furnished to me and will establish repayment terms, including my payment amount and the length of the repayment period. Payments will be scheduled in monthly installments. ED may adjust my repayment schedule if ED learns that any of the loans listed herein is not eligible to be consolidated. My repayment period will be up to 30 years in length, depending on the amount of my student loan indebtedness and my repayment plan. Any period for which ED has granted a deferment or forbearance will not be included in determining the repayment period.

I may prepay all or any part of the unpaid balance on my loan at any time without penalty.

**Acceleration and Default**

At the option of ED, the entire unpaid balance shall become immediately due and payable when any one of the following events occurs: (i) I make false representation that results in my receiving a loan for which I am not eligible, or (ii) I default on the loan.

The following events shall constitute a default on a loan: (i) I fail to pay the entire unpaid balance after ED has exercised its option under the preceding paragraph; or (ii) I fail to make installment payments when due, or fail to comply with other terms of the loan, and ED reasonably concludes I no longer intend to honor my repayment obligation. My failure must have persisted for at least 180 days. If I default, ED will capitalize all outstanding interest into a new principal balance.

If I default, this will be reported to national credit bureau organizations and will significantly and adversely affect my credit rating. I acknowledge that a default shall have additional adverse consequences to me as disclosed in the statement of Borrower's Rights and Responsibilities.

Following default, the loan may at ED's option, be subject to income contingent repayment in accordance with the Act.

Any notice required to be given to me will be effective when mailed by first class mail to the latest address that ED has for me. Failure by ED to enforce or insist on compliance with any term on this note shall not waive any right of ED. No provision of this note may be changed or waived except in writing by ED. If any provision of this note is determined to be unenforceable, the remaining provisions shall remain in force.

**Borrower Certification and Authorization**

I declare under penalty of perjury that the following is true and correct:

(1) I certify that the information provided by me and my spouse, if applicable, in this note is true, complete, and correct to the best of my knowledge and belief and is made in good faith.

(2) I certify that the loan proceeds will be used solely to discharge my outstanding eligible education loan debts.

(3) I certify that I do not now owe a refund on a Federal Pell Grant, Basic Educational Opportunity Grant, Federal Supplemental Educational Opportunity Grant, or a State Student Incentive Grant. I further certify that I am not now in default on any loan that was received under the Federal Perkins Loan Program (including NDSL loans), the FFEL Program, or the Direct Loan Program, or, if I am in default, I have either made satisfactory repayment arrangements with the holder of that defaulted loan, or I am consolidating all of these loans and will repay under the income contingent repayment plan. I understand that income contingent repayment is not available for Federal Direct PLUS Consolidation Loans (Direct PLUS Consolidation Loans).

(4) I certify that all of the loans selected have been used to finance my education, my spouse's education, or my child's education.

(5) I certify that I do not have any other application pending for a Federal Consolidation Loan with any other lender. If I am not in school and if none of the loans I am consolidating is a Direct Loan Program loan, I further certify that I have sought and been unable to obtain a Federal Consolidation Loan from a FFEL Program lender, or a lender would not provide me with a Federal Consolidation Loan with income-sensitive repayment terms acceptable to me, and I am eligible for the income contingent repayment plan. If, however, I am consolidating jointly with my spouse, only one borrower, my spouse or I, must have sought a Federal Consolidation Loan from a FFEL Program lender.

(6) I understand that this loan shall, to the extent used to discharge loans that I have selected, count against the applicable aggregate loan limits under the Act.

(7) I understand that the amount of my Direct Consolidation Loan is the sum of the balance(s) of my outstanding eligible loan(s) that I have chosen to consolidate. My outstanding balance on each loan to be consolidated includes unpaid principal, unpaid accrued interest, and late charges as defined by federal regulations and as certified by each holder. Collection costs may also be included. For a Direct Loan or FFEL Program loan that is in default, ED limits collection costs that may be charged to the borrower to no more than those currently authorized under the FFEL Program and may impose reasonable limits on collection costs paid to the holder. If the amount ED advances to my holder(s) exceeds the amount needed to pay off the balance(s) of the selected loan(s), I understand that the holder will refund the excess to ED for application against the outstanding balance of this loan. If the amount that ED advances to my holder(s) is less than the amount needed to pay off the balance(s) of the loan(s) selected for consolidation, ED will include the remaining amount in this loan unless I pay the remaining balance myself.

(8) I authorize ED to issue the proceeds of my Direct Consolidation Loan to the holder(s) of the loan(s) so selected to discharge the debt.

(9) I authorize ED to investigate my credit record and report information concerning my loan status to proper persons and organizations authorized to receive this information.

(10) I authorize the release of information pertinent to this loan: (i) by my school(s) and ED, to members of my immediate family unless I submit written direction otherwise; and (ii) by and amongst my school(s), ED, and their agents.

(11) I authorize my school(s), ED, and their agents, to verify my social security number with the Social Security Administration (SSA) and, if the number on my loan record is incorrect, then I authorize SSA to disclose my correct social security number to these parties.

EXHIBIT #6
Pfeiffer v Spelling
C.A. #1:07cv00522 (EGS)

**Direct Loans**
William D. Ford Federal Direct Loan Program

# Federal Direct Consolidation Loan
## Application and Promissory Note

WARNING: Any person who knowingly makes a false statement or misrepresentation on this form shall be subject to penalties which may include fines, imprisonment, or both, under the U.S. Criminal Code and 20 U.S.C. 1097.

OMB No. 1845-0053
Form Approved
Exp. Date 1/31/2005

This form should be printed in blue or black ink or typewritten and must be signed and dated by the applicant(s). If you cross out anything and write in new information, put your initials beside the change.

| | | | |
|---|---|---|---|
| 1. Last Name / First Name / Middle Initial | | 2. Social Security Number — — | |
| 3. Permanent Street Address (If P.O. box, see instructions) | | 4. Home Area Code/Telephone Number ( ) | |
| City / State / Zip Code | | 5. Fax Number (Optional) ( ) | 6. E-Mail Address (Optional) |
| 7. Former Name(s) | 8. Date of Birth | 9. Driver's License Number (put state abbreviation first) ( ) | |
| 10. Employer's Name | 11. Employer's Address | | |
| 12. Employer's Area Code/Telephone Number ( ) | City / State / Zip Code | | |

13. If you are married, does your spouse have an eligible loan(s) (see instructions) that you want to consolidate with your loan(s)? Yes ☐ No ☐
If yes, complete Section C, include your spouse's loan(s) in Section D, and have your spouse sign and date Item 32 in Section F.

14. References: Enter the requested information for two relatives or acquaintances who do not live with you and who have known you for at least three years. References may not live outside the United States.

| | 1. | 2. |
|---|---|---|
| Name | | |
| Permanent Address | | |
| City, State, Zip Code | | |
| Area Code/Telephone Number | ( ) | ( ) |

| | | |
|---|---|---|
| 15. Last Name / First Name / Middle Initial | | 16. Social Security Number — — |
| 17. Date of Birth | 18. Driver's License Number (put state abbreviation first) ( ) | 19. Fax Number (Optional) ( ) |
| 20. Former Name(s) | | 21. E-Mail Address (Optional) |
| 22. Employer's Name | 23. Employer's Address | |
| 24. Employer's Area Code and Telephone Number ( ) | City / State / Zip Code | |

Pfeiffer--Gov't Production (Nov. 2007) --001583

Borrower's Name________________________________________

Borrower's Social Security Number________________________________________

| 25. Loan Holder/Servicer's Name, Address, and Area Code/Telephone Number | 26. Loan Type | 27. B=Borrower S=Spouse J=Joint | 28. Account Number | 29. Current Balance | 30. To Be Consolidated? Yes | No |
|---|---|---|---|---|---|---|
| ( ) | | | | | | |
| ( ) | | | | | | |
| ( ) | | | | | | |
| ( ) | | | | | | |
| ( ) | | | | | | |
| ( ) | | | | | | |
| ( ) | | | | | | |
| ( ) | | | | | | |

**Borrower's Name** ____________________

**Borrower's Social Security Number** ____________________

## Section E: Repayment Plan Selection

Carefully read the repayment plan information in "Direct Consolidation Loans" that accompanies this application and promissory note to understand your repayment plan options. Then, complete this section to select your repayment plan. Remember–

- All student loans must be repaid under the same repayment plan. Parent PLUS loans may be repaid under a different repayment plan.
- If you select the Income Contingent Repayment Plan, you must complete the "Repayment Plan Selection" and "Income Contingent Repayment Plan Consent to Disclosure of Tax Information" forms that accompany this application and promissory note. Your selection cannot be processed without these forms.
- **If you want to consolidate a defaulted student loan(s) and you have not made a satisfactory repayment arrangement with your current holder(s), you must select the Income Contingent Repayment Plan.**

31. Place an "X" in the box that corresponds to your repayment plan selection for each loan type. Note that Direct PLUS Consolidation Loans cannot be repaid under the Income Contingent Repayment Plan.

| | Income Contingent | Standard | Extended | Graduated |
|---|---|---|---|---|
| **STUDENT LOANS** *Direct Subsidized and Unsubsidized Consolidation Loans* | ☐ | ☐ | ☐ | ☐ |
| **PARENT LOANS** *Direct PLUS Consolidation Loans* | Not Available | ☐ | ☐ | ☐ |

## Section F: Promissory Note (Signature Required)

**Promise to Pay:**

I promise to pay to the U.S. Department of Education (ED) all sums (hereafter "loan" or "loans") disbursed under the terms of this Promissory Note (note) to discharge my prior loan obligations, plus interest, and other fees that may become due as provided in this note. If I fail to make payments on this note when due, I will also pay collection costs including but not limited to attorney's fees and court costs. If ED accepts my application, I understand that ED will on my behalf send funds to the holder(s) of the loan(s) selected for consolidation in order to pay off this loan(s). I further understand that the amount of this loan will equal the sum of the amount(s) that the holder(s) of the loan(s) verified as the payoff balance(s) on that loan(s) selected for consolidation. My signature on this note will serve as my authorization to pay off the balance(s) of the loan(s) selected for consolidation as provided by the holder(s) of such loan(s).

This amount may be more or less than the estimated total balance I have indicated in Section D. Further, I understand that if any collection costs are owed on the loans selected for consolidation, these costs may be added to the principal balance of the consolidation loan.

I understand that this is a Promissory Note. I will not sign this note before reading it, including the text on the reverse side, even if I am advised not to read the note. I am entitled to an exact copy of this note and a statement of the Borrower's Rights and Responsibilities. My signature certifies that I have read, understand, and agree, to the terms and conditions of this note, including the Borrower Certification and Authorization printed on the reverse side and the accompanying Borrower's Rights and Responsibilities.

If consolidating jointly with my spouse, we agree to the same terms and conditions contained in the Borrower Certification and Authorization. In addition, we confirm that we are legally married to each other and understand and agree that we are and will continue to be held jointly and severally liable for the entire amount of the debt represented by the Federal Direct Consolidation Loan without regard to the amounts of our individual loan obligations that are consolidated and without regard to any change that may occur in our marital status. We understand that this means that one of us may be required to pay the entire amount due if the other is unable or refuses to pay. We understand that the Federal Direct Consolidation Loan we are applying for will be cancelled only if both of us qualify for cancellation. We further understand that we may postpone repayment of the loan only if we provide ED with written requests that confirm Federal Direct Consolidation Loan Program deferment or forbearance eligibility for both of us at the same time.

**I UNDERSTAND THAT THIS IS A FEDERAL LOAN THAT I MUST REPAY.**

32. Signature of Borrower ____________________ Date ____________

Signature of Spouse (if consolidating jointly) ____________________ Date ____________

## Promissory Note (continued)

### Governing Law and Notices

This Promissory Note (note) applies to Federal Direct Consolidation Loans (Direct Consolidation Loans). In this note, the Higher Education Act of 1965, as amended, 20 U.S.C. 1070 et seq., and applicable U.S. Department of Education (ED) regulations are referred to as "the Act." The terms of this note will be interpreted according to the Act and other applicable federal statutes and regulations. Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this note.

### Disclosure of Terms

When the loan(s) that I am consolidating is paid off, I will be sent a Disclosure Statement and Repayment Schedule (disclosure). The disclosure will identify my Direct Consolidation Loan amount and additional terms of my loan. If I have questions about the information disclosed, I will contact ED. If the information in this note conflicts with the information in the disclosure, the disclosure will be controlling.

Important additional terms of this loan are disclosed in the statement of Borrower's Rights and Responsibilities accompanying this note.

I understand that my Direct Consolidation Loan may consist of up to three separate loan identification numbers depending on the loan(s) I choose to consolidate. These loan identification numbers will represent prior subsidized loans, prior unsubsidized loans, and prior parent PLUS loans. The Borrower's Rights and Responsibilities identifies which eligible loans are included in each of these categories. Each applicable loan identification number is represented by this note.

### Interest

Except for interest ED does not charge me during an in-school, grace, or deferment period, I agree to pay interest on the principal amount of my Direct Consolidation Loan from the date of disbursement until the loan is paid in full or discharged. ED may add interest that accrues but is not paid when due to the unpaid principal balance of this loan, as provided under the Act. This is called capitalization.

Interest will be calculated according to the applicable formulas provided for by the Act.

The interest rate on my Direct Consolidation Loan will be based on the weighted average of the interest rates on the loans being consolidated, rounded to the nearest higher one-eighth of one percent, but shall not exceed 8.25%. This is a fixed interest rate, which means that the rate will remain the same throughout the life of the loan.

### Late Charges and Collection Costs

If I fail to make any part of an installment payment within 30 days after it becomes due, ED may collect from me a late charge that will not exceed six cents for each dollar of each late installment. If I default on the loan, I will pay reasonable collection fees and costs, plus court costs and attorney's fees associated with collection of the debt.

### Grace Period

My Direct Consolidation Loan will receive a grace period if I meet all of the following conditions: (1) I have at least one William D. Ford Federal Direct Loan (Direct Loan) Program loan or attend a Direct Loan school, (2) at least one Direct Loan or Federal Family Education Loan (FFEL) Program loan that I am consolidating is in an in-school period, and (3) my application for a Direct Consolidation Loan is received by ED prior to the end of my in-school period. A six-month grace period begins the day after I cease to be enrolled at least half time at an eligible school. (If my enrollment status changes to less than half time after I apply but before the first disbursement of my Direct Consolidation Loan, I will not have to make payments on my Direct Consolidation Loan for the number of months remaining in my grace period at the time the first disbursement is made.)

### Repayment

Unless my Direct Consolidation Loan is in an in-school or grace period when it is disbursed, I must select a repayment plan. If I do not select a repayment plan, ED will choose a plan for me in accordance with ED's regulations. My first payment will be due within 60 days of the first disbursement of my Direct Consolidation Loan unless it is in an in-school, grace, or deferment period. A repayment schedule will be furnished to me and will establish repayment terms, including my payment amount and the length of my repayment period. Payments will be scheduled in monthly installments. The amount of my monthly payment may be adjusted to reflect changes in the variable interest rate. ED may adjust my repayment schedule if ED learns that any of the loans listed herein is not eligible to be consolidated. My repayment period will be up to 30 years in length, depending on the amount of my student loan indebtedness and my repayment plan. Any period for which ED has granted a deferment or forbearance will not be included in determining my repayment period.

I may prepay all or any part of the unpaid balance on my loan at any time without penalty. I agree to accept written notification of such pay off in lieu of receiving the original note.

### Acceleration and Default

At the option of ED, the entire unpaid balance shall become immediately due and payable when either of the following events occurs: (i) I make false representation that results in my receiving a loan for which I am not eligible, or (ii) I default on the loan.

The following events shall constitute a default on a loan: (i) I fail to pay the entire unpaid balance after ED has exercised its option under the preceding paragraph; or (ii) I fail to make installment payments when due, or fail to comply with other terms of the loan, and ED reasonably concludes I no longer intend to honor my repayment obligation. My failure must have persisted for at least 270 days. If I default, ED will capitalize all outstanding interest into a new principal balance.

If I default, this will be reported to national credit bureau organizations and will significantly and adversely affect my credit rating. I acknowledge that a default shall have additional adverse consequences to me as disclosed in the Borrower's Rights and Responsibilities.

Following default, the loan may at ED's option, be subject to income contingent repayment in accordance with the Act.

Any notice required to be given to me will be effective when mailed by first class mail to the latest address that ED has for me. I will immediately notify ED of any change of my address. Failure by ED to enforce or insist on compliance with any term on this note shall not waive any right of ED. No provision of this note may be changed or waived except in writing by ED. If any provision of this note is determined to be unenforceable, the remaining provisions shall remain in force.

### Borrower Certification and Authorization

I declare under penalty of perjury that the following is true and correct:

(1) I certify that the information provided by me and my spouse, if applicable, in this note is true, complete, and correct to the best of my knowledge and belief and is made in good faith.

(2) I certify that I do not now owe a refund on a Federal Pell Grant, Basic Educational Opportunity Grant, Federal Supplemental Educational Opportunity Grant, or a State Student Incentive Grant, or if I owe a refund, I have made satisfactory arrangements with the holder to repay the amount owed. I further certify that I am not now in default on any loan I am consolidating or, if I am in default, I have either made a satisfactory repayment arrangement with the holder of that defaulted loan, or I will repay under the income contingent repayment plan. I understand that income contingent repayment is not available for the parent PLUS loan portion of my Direct Consolidation Loan.

(3) I certify that all of the loans selected have been used to finance my education, my spouse's education, or my child's education.

(4) I certify that I do not have any other application pending for a Federal Consolidation Loan with any other lender. If my student loans are in a grace or repayment period and if none of the loans I am consolidating is a Direct Loan Program loan, I further certify that I have sought and been unable to obtain a Federal Consolidation Loan from a FFEL Program lender, or a lender would not provide me with a Federal Consolidation Loan with income-sensitive repayment terms acceptable to me. If I have parent PLUS loans and none of the loans I am consolidating is a Direct Loan Program loan, I further certify that I have sought and been unable to obtain a Federal Consolidation Loan from a FFEL Program lender. If, however, I am consolidating jointly with my spouse, only one borrower, my spouse or I, must have sought a Federal Consolidation Loan from a FFEL Program lender.

(5) I understand that this loan shall, to the extent used to discharge loans that I have selected, count against the applicable aggregate loan limits under the Act.

(6) I understand that the amount of my Direct Consolidation Loan is the sum of the balance(s) of my outstanding eligible loan(s) that I have chosen to consolidate. My outstanding balance on each loan to be consolidated includes unpaid principal, unpaid accrued interest, and late charges as defined by federal regulations and as certified by each holder. Collection costs may also be included. For a Direct Loan or FFEL Program loan that is in default, ED limits collection costs that may be charged to the borrower to no more than those currently authorized under the FFEL Program and may impose reasonable limits on collection costs paid to the holder. If the amount ED advances to my holder(s) exceeds the amount needed to pay off the balance(s) of the selected loan(s), I understand that the holder will refund the excess to ED for application against the outstanding balance of this loan. If the amount that ED advances to my holder(s) is less than the amount needed to pay off the balance(s) of the loan(s) selected for consolidation, ED will include the remaining amount in this loan unless I pay the remaining balance myself.

(7) I authorize ED to contact the holder(s) identified on my application to determine the eligibility and/or payoff amount for the loan(s) I have identified. I further authorize release to ED or its agent any information required to consolidate my education loan(s) pursuant to the Act.

(8) I authorize ED to issue the proceeds of my Direct Consolidation Loan to the holder(s) of the loan(s) so selected to discharge the debt.

(9) I authorize ED to investigate my credit record and report information concerning my loan status to proper persons and organizations authorized to receive this information.

(10) I authorize the release of information pertinent to this loan: (i) by my school(s) and ED, to members of my immediate family unless I submit written direction otherwise; and (ii) by and amongst my school(s), ED, and their agents.

(11) I authorize my school(s), ED, and their agents, to verify my social security number with the Social Security Administration (SSA) and, if the number on my loan record is incorrect, then I authorize SSA to disclose my correct social security number to these parties.

EXHIBIT #7
Pfeiffer v Spelling
C.A. #1:07cv00522 (EGS)

**Direct Loans**
William D. Ford Federal Direct Loan Program

# Federal Direct Consolidation Loan Application and Promissory Note

WARNING: Any person who knowingly makes a false statement or misrepresentation on this form shall be subject to penalties which may include fines, imprisonment, or both, under the U.S. Criminal Code and 20 U.S.C. 1097.

OMB No. 1840-0693
Form Approved
Exp. Date 3/31/99

## Before You Begin

This form should be printed in blue or black ink or typewritten and must be signed and dated by the applicant(s). If you cross out anything and write in new information, put your initials beside the change.

## Section A: Borrower Information

1. Last Name First Name Middle Initial
2. Social Security Number — —
3. Permanent Street Address (if P.O. box, see instructions)
4. Home Area Code/Telephone Number ( )

City State Zip Code

5. Fax Number (Optional) ( )
6. Former Name(s)
7. Date of Birth
8. Driver's License Number (put state abbreviation first) ( )
9. Employer's Name
10. Employer's Address
11. Employer's Area Code/Telephone Number ( )

City State Zip Code

12. If you are married, does your spouse have an eligible loan(s) (see instructions) that you want to consolidate with your loan(s)? Yes ☐ No ☐
If yes, complete Section C, include your spouse's loan(s) in Section D, and have your spouse sign and date Item 30 in Section F.

## Section B: Reference Information

13. References: Enter the requested information for two relatives or acquaintances who do not live with you and who have known you for at least three years. References may not live outside the United States.

Name 1.__________ 2.__________

Permanent Address __________ __________

City, State, Zip Code __________ __________

Area Code/Telephone Number ( ) __________ ( ) __________

## Section C: Spouse Information — To be completed only if you responded "Yes" to Item 12

14. Last Name First Name Middle Initial
15. Social Security Number — —
16. Date of Birth
17. Driver's License Number (put state abbreviation first) ( )
18. Former Name(s)
19. Fax Number (Optional) ( )
20. Employer's Name
21. Employer's Address
22. Employer's Area Code and Telephone Number ( )

City State Zip Code

PLAINTIFF'S DEPOSITION EXHIBIT 8 12/07 Batt

Pfeiffer–Gov't Production (Nov. 2007) --001579

Borrower's Name ______________________________

Borrower's Social Security Number ______________________________

**Education Loan Indebtedness (See instructions before completing this section.)**

| 23. Loan Holder/Servicer's Name, Address, and Area Code/Telephone Number | 24. Loan Type | 25. B=Borrower S=Spouse J=Joint | 26. Account Number | 27. Current Balance | 28. To Be Consolidated? Yes | No |
|---|---|---|---|---|---|---|
| ( ) | | | | | | |
| ( ) | | | | | | |
| ( ) | | | | | | |
| ( ) | | | | | | |
| ( ) | | | | | | |
| ( ) | | | | | | |
| ( ) | | | | | | |
| ( ) | | | | | | |

Pfeiffer–Gov't Production (Nov. 2007) –001580

Borrower's Name ____________________

Borrower's Social Security Number ____________________

## Section E: Repayment Plan Selection

Carefully read the repayment plan information in "Direct Consolidation Loans" that accompanies this application and promissory note to understand your repayment plan options. Then, complete this section to select your repayment plan. Remember–

- All student loans must be repaid under the same repayment plan. Parent PLUS loans may be repaid under a different repayment plan.
- If you select the Income Contingent Repayment Plan, you must complete the "Repayment Plan Selection" and "Income Contingent Repayment Plan Consent to Disclosure of Tax Information" forms that accompany this application and promissory note. Your selection cannot be processed without these forms.
- **If you want to consolidate a defaulted student loan(s) and you have not made a satisfactory repayment arrangement with your current holder(s), you must select the Income Contingent Repayment Plan.**

29. Place an "X" in the box that corresponds to your repayment plan selection for each loan type. Note that Direct PLUS Consolidation Loans cannot be repaid under the Income Contingent Repayment Plan.

| | Income Contingent | Standard | Extended | Graduated |
|---|---|---|---|---|
| STUDENT LOANS *Direct Subsidized and Unsubsidized Consolidation Loans* | ☐ | ☐ | ☐ | ☐ |
| PARENT LOANS *Direct PLUS Consolidation Loans* | Not Available | ☐ | ☐ | ☐ |

## Section F: Promissory Note (Continued on reverse side)

To be completed and signed by borrower and spouse, if applicable

**Promise to Pay:**

I promise to pay to the U.S. Department of Education (ED) all sums (hereafter "loan" or "loans") disbursed under the terms of this Promissory Note (note) to discharge my prior loan obligations, plus interest, and other fees that may become due as provided in this note. If I fail to make payments on this note when due, I will also pay collection costs including but not limited to attorney's fees and court costs. If ED accepts my application, I understand that ED will on my behalf send funds to the holder(s) of the loan(s) selected for consolidation in order to pay off this loan(s). I further understand that the amount of this loan will equal the sum of the amount(s) that the holder(s) of the loan(s) verified as the payoff balance(s) on that loan(s) selected for consolidation. My signature on this note will serve as my authorization to pay off the balance(s) of the loan(s) selected for consolidation as provided by the holder(s) of such loan(s).

This amount may be more or less than the estimated total balance I have indicated in Section D. Further, I understand that if any collection costs are owed on the loans selected for consolidation, these costs may be added to the principal balance of the consolidation loan.

I understand that this is a Promissory Note. I will not sign this note before reading it, including the text on the reverse side, even if I am advised not to read the note. I am entitled to an exact copy of this note and a statement of the Borrower's Rights and Responsibilities. My signature certifies that I have read, understand, and agree, to the terms and conditions of this note, including the Borrower Certification and Authorization printed on the reverse side and the accompanying Borrower's Rights and Responsibilities.

If consolidating jointly with my spouse, we agree to the same terms and conditions contained in the Borrower Certification and Authorization. In addition, we confirm that we are legally married to each other and understand and agree that we are and will continue to be held jointly and severally liable for the entire amount of the debt represented by the Federal Direct Consolidation Loan without regard to the amounts of our individual loan obligations that are consolidated and without regard to any change that may occur in our marital status. We understand that this means that one of us may be required to pay the entire amount due if the other is unable or refuses to pay. We understand that the Federal Direct Consolidation Loan we are applying for will be cancelled only if both of us qualify for cancellation. We further understand that we may postpone repayment of the loan only if we provide ED with written requests that confirm Federal Direct Consolidation Loan Program deferment or forbearance eligibility for both of us at the same time.

**I UNDERSTAND THAT THIS IS A FEDERAL LOAN THAT I MUST REPAY.**

30. Signature of Borrower ____________________ Date ____________

Signature of Spouse (if consolidating jointly) ____________________ Date ____________

Pfeiffer–Gov't Production (Nov. 2007) –001581

## Promissory Note (continued)

### Governing Law and Notices

This Promissory Note (note) applies to Federal Direct Consolidation Loans (Direct Consolidation Loans). In this note, the Higher Education Act of 1965, as amended, 20 U.S.C. 1070 et seq., and applicable U.S. Department of Education (ED) regulations are referred to as "the Act." The terms of this note will be interpreted according to the Act and other applicable federal statutes and regulations. Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this note.

### Disclosure of Terms

When the loan(s) that I am consolidating is paid off, I will be sent a Disclosure Statement and Repayment Schedule (disclosure). The disclosure will identify my Direct Consolidation Loan amount and additional terms of my loan. If I have questions about the information disclosed, I will contact ED. If the information in this note conflicts with the information in the disclosure, the disclosure will be controlling.

Important additional terms of this loan are disclosed in the statement of Borrower's Rights and Responsibilities accompanying this note.

I understand that my Direct Consolidation Loan may consist of up to three separate loan identification numbers depending on the loan(s) I choose to consolidate. These loan identification numbers will represent prior subsidized loans, prior unsubsidized loans, and prior parent PLUS loans. The Borrower's Rights and Responsibilities identifies which eligible loans are included in each of these categories. Each applicable loan identification number is represented by this note.

### Interest

Except for interest ED does not charge me during an in-school, grace, or deferment period, I agree to pay interest on the principal amount of my Direct Consolidation Loan from the date of disbursement until the loan is paid in full or discharged. ED may add interest that accrues but is not paid when due to the unpaid principal balance of this loan. This is called capitalization.

Interest will be calculated according to the applicable formulas provided for by the Act.

If my Direct Consolidation Loan includes previous parent PLUS loans, the interest rate for that portion of the loan during any 12-month period beginning on July 1 and ending on June 30, is determined on the preceding June 1 and is equal to the bond equivalent rate of 91-day Treasury bills auctioned at the final auction held prior to such June 1 plus 3.1 percentage points, but shall not exceed 9 percent.

If my Direct Consolidation Loan includes previous loans other than parent PLUS loans, and I am in repayment, the interest rate for that portion of the loan during any 12-month period beginning on July 1 and ending on June 30, is determined on the preceding June 1 and is equal to the bond equivalent rate of 91-day Treasury bills auctioned at the final auction held prior to such June 1 plus 2.3 percentage points, but shall not exceed 8.25 percent.

If my Direct Consolidation Loan includes previous loans other than parent PLUS loans, and I am in an in-school, grace, or deferment period, the interest rate for that portion of the loan during any 12-month period beginning on July 1 and ending on June 30, is determined on the preceding June 1 and is equal to the bond equivalent rate of 91-day Treasury bills auctioned at the final auction held prior to such June 1 plus 1.7 percentage points, but shall not exceed 8.25 percent.

### Late Charges and Collection Costs

If I fail to make any part of an installment payment within 30 days after it becomes due, ED may collect from me a late charge that will not exceed six cents for each dollar of each late installment. If I default on the loan, I will pay reasonable collection fees and costs, plus court costs and attorney's fees associated with collection of the debt.

### Grace Period

My Direct Consolidation Loan will receive a grace period if I meet all of the following conditions: (1) I have at least one William D. Ford Federal Direct Loan (Direct Loan) Program loan or attend a Direct Loan school, (2) at least one Direct Loan or Federal Family Education Loan (FFEL) Program loan that I am consolidating is in an in-school period, and (3) my application for a Direct Consolidation Loan is received by ED prior to the end of my in-school period. A six-month grace period begins the day after I cease to be enrolled at least half time at an eligible school. (If my enrollment status changes to less than half time after I apply but before the first disbursement of my Direct Consolidation Loan, I will not have to make payments on my Direct Consolidation Loan for the number of months remaining in my grace period at the time the first disbursement is made.)

### Repayment

Unless my Direct Consolidation Loan is in an in-school or grace period when it is disbursed, I must select a repayment plan. If I do not select a repayment plan, ED will choose a plan for me in accordance with ED's regulations. My first payment will be due within 60 days of the first disbursement of my Direct Consolidation Loan unless it is in an in-school, grace, or deferment period. A repayment schedule will be furnished to me and will establish repayment terms, including my payment amount and the length of my repayment period. Payments will be scheduled in monthly installments. The amount of my monthly payment may be adjusted to reflect changes in the variable interest rate. ED may adjust my repayment schedule if ED learns that any of the loans listed herein is not eligible to be consolidated. My repayment period will be up to 30 years in length, depending on the amount of my student loan indebtedness and my repayment plan. Any period for which ED has granted a deferment or forbearance will not be included in determining my repayment period.

I may prepay all or any part of the unpaid balance on my loan at any time without penalty. I agree to accept written notification of such pay off in lieu of receiving the original note.

### Acceleration and Default

At the option of ED, the entire unpaid balance shall become immediately due and payable when either of the following events occurs: (i) I make false representation that results in my receiving a loan for which I am not eligible, or (ii) I default on the loan.

The following events shall constitute a default on a loan: (i) I fail to pay the entire unpaid balance after ED has exercised its option under the preceding paragraph; or (ii) I fail to make installment payments when due, or fail to comply with other terms of the loan, and ED reasonably concludes I no longer intend to honor my repayment obligation. My failure must have persisted for at least 180 days. If I default, ED will capitalize all outstanding interest into a new principal balance.

If I default, this will be reported to national credit bureau organizations and will significantly and adversely affect my credit rating. I acknowledge that a default shall have additional adverse consequences to me as disclosed in the Borrower's Rights and Responsibilities.

Following default, the loan may at ED's option, be subject to income contingent repayment in accordance with the Act.

Any notice required to be given to me will be effective when mailed by first class mail to the latest address that ED has for me. I will immediately notify ED of any change of my address. Failure by ED to enforce or insist on compliance with any term on this note shall not waive any right of ED. No provision of this note may be changed or waived except in writing by ED. If any provision of this note is determined to be unenforceable, the remaining provisions shall remain in force.

### Borrower Certification and Authorization

I declare under penalty of perjury that the following is true and correct:

(1) I certify that the information provided by me and my spouse, if applicable, in this note is true, complete, and correct to the best of my knowledge and belief and is made in good faith.

(2) I certify that I do not now owe a refund on a Federal Pell Grant, Basic Educational Opportunity Grant, Federal Supplemental Educational Opportunity Grant, or a State Student Incentive Grant, or if I owe a refund, I have made satisfactory arrangements with the holder to repay the amount owed. I further certify that I am not now in default on any loan I am consolidating or, if I am in default, I have either made a satisfactory repayment arrangement with the holder of that defaulted loan, or I will repay under the income contingent repayment plan. I understand that income contingent repayment is not available for the parent PLUS loan portion of my Direct Consolidation Loan.

(3) I certify that all of the loans selected have been used to finance my education, my spouse's education, or my child's education.

(4) I certify that I do not have any other application pending for a Federal Consolidation Loan with any other lender. If my student loans are in a grace or repayment period and if none of the loans I am consolidating is a Direct Loan Program loan, I further certify that I have sought and been unable to obtain a Federal Consolidation Loan from a FFEL Program lender, or a lender would not provide me with a Federal Consolidation Loan with income-sensitive repayment terms acceptable to me. If I have parent PLUS loans and none of the loans I am consolidating is a Direct Loan Program loan, I further certify that I have sought and been unable to obtain a Federal Consolidation Loan from a FFEL Program lender. If, however, I am consolidating jointly with my spouse, only one borrower, my spouse or I, must have sought a Federal Consolidation Loan from a FFEL Program lender.

(5) I understand that this loan shall, to the extent used to discharge loans that I have selected, count against the applicable aggregate loan limits under the Act.

(6) I understand that the amount of my Direct Consolidation Loan is the sum of the balance(s) of my outstanding eligible loan(s) that I have chosen to consolidate. My outstanding balance on each loan to be consolidated includes unpaid principal, unpaid accrued interest, and late charges as defined by federal regulations and as certified by each holder. Collection costs may also be included. For a Direct Loan or FFEL Program loan that is in default, ED limits collection costs that may be charged to the borrower to no more than those currently authorized under the FFEL Program and may impose reasonable limits on collection costs paid to the holder. If the amount ED advances to my holder(s) exceeds the amount needed to pay off the balance(s) of the selected loan(s), I understand that the holder will refund the excess to ED for application against the outstanding balance of this loan. If the amount that ED advances to my holder(s) is less than the amount needed to pay off the balance(s) of the loan(s) selected for consolidation, ED will include the remaining amount in this loan unless I pay the remaining balance myself.

(7) I authorize ED to contact the holder(s) identified on my application to determine the eligibility and/or payoff amount for the loan(s) I have identified. I further authorize release to ED or its agent any information required to consolidate my education loan(s) pursuant to the Act.

(8) I authorize ED to issue the proceeds of my Direct Consolidation Loan to the holder(s) of the loan(s) so selected to discharge the debt.

(9) I authorize ED to investigate my credit record and report information concerning my loan status to proper persons and organizations authorized to receive this information.

(10) I authorize the release of information pertinent to this loan: (i) by my school(s) and ED, to members of my immediate family unless I submit written direction otherwise; and (ii) by and amongst my school(s), ED, and their agents.

(11) I authorize my school(s), ED, and their agents, to verify my social security number with the Social Security Administration (SSA) and, if the number on my loan record is incorrect, then I authorize SSA to disclose my correct social security number to these parties.

EXHIBIT # 8
Pfeiffer v Spelling
C.A. #1:07cv00522 (EGS)

OMB No. 1840-0693
Form Approved
Exp. Date 6/30/96

# William D. Ford Federal Direct Loan Program

## Federal Direct Consolidation Loan

**Application Materials**

Thank you for your interest in the Federal Direct Consolidation Loan Program (Direct Consolidation Loan Program). Enclosed you will find the following materials that you will need to apply for a Federal Direct Consolidation Loan (Direct Consolidation Loan):

- Instructions for Completing the Application and Promissory Note
- Application and Promissory Note
- Supplemental Loan Listing Sheet
- Authorization to Release Information
- Statement of Borrower's Rights and Responsibilities
- Return Envelope

Please review the instructions and other materials carefully, then complete the Application and Promissory Note, the Authorization to Release Information, and, if necessary, the Supplemental Loan Listing Sheet. (We have provided two copies of the Application and Promissory Note and the Supplemental Loan Listing Sheet, so that you have a practice copy if necessary.) Make a copy of these items for your records and return the originals to the U.S. Department of Education (ED) in the return envelope provided.

If you obtain a Direct Consolidation Loan, the Application and Promissory Note you complete will serve as the promissory note. You may be assigned up to three individual loan identification numbers, depending on the loans that you are consolidating. There will be separate loan identification numbers for the amount of the consolidation that repays subsidized loans, unsubsidized loans, and PLUS loans. Although you may be assigned up to three separate consolidation loan identification numbers, you will only receive a single bill.

Once you have returned your application and related materials, your current loan holder(s) will be contacted to verify eligibility and obtain a payoff balance for your loan(s). If you are consolidating a PLUS loan(s), a credit check will also be performed. A check will be mailed to the holder(s) upon receipt of this information. When the loan(s) has been paid off, you will be notified by ED.

Please note that this process normally takes 8 to 10 weeks, but can vary depending on how quickly your current loan holder(s) verifies your loan balance(s). Processing will take longer if your application is incomplete, so be certain to complete all items accurately.

If you have questions about the Direct Consolidation Loan Program or need help completing any of the forms, contact the Direct Loan Servicing Center at the following address or phone numbers:

U.S. Department of Education
Consolidations Department
Direct Loan Servicing Center
P.O. Box 4640
Utica, NY 13504-4640

1 (800) 848-0982

TDD —1 (800) 848-0983

**IMPORTANT: IF YOU ARE NOT CONSOLIDATING AT LEAST ONE DIRECT LOAN PROGRAM LOAN, when you sign the promissory note you are certifying that you—**

- **Have been unable to obtain a Federal Consolidation Loan from a FFEL Program lender**

***OR***

- **Have been unable to obtain a Federal Consolidation Loan with income-sensitive repayment terms that are acceptable to you**

**If you have questions about your eligibility, contact the Direct Loan Servicing Center.**

PLAINTIFF'S DEPOSITION EXHIBIT



# William D. Ford Federal Direct Loan Program

## Federal Direct Consolidation Loan

### Instructions for Completi[ng] Application and Promissory Note

**Sections A, B, and C: Borrower, Spouse, and Reference Information** *Please print neatly or type. Read the instructions carefully.*

*This form should be legibly completed in blue or black ink or typewritten and must be signed by the applicant(s). Two copies of the Application and Promissory Note and the Supplemental Loan Listing Sheet have been provided, so that you have a practice copy if necessary.*

**Note:** Incorrect or incomplete information may cause your application to be delayed.

**Items 1 - 8:** Enter all borrower information.

**Note:** If you have a Post Office box and a street address, you must list both in Item 3.

**Item 9:** Indicate whether you want to consolidate your loan(s) with your spouse's loan(s). See the instructions for Section D below for a list of "eligible" loans.

**Items 10-15:** Complete this section only if you answered "yes" to Item 9. Enter the requested spouse information.

**Item 16:** Enter the requested reference information for two adults who do not share a common address and who have known you for at least three years. References may not live with you or live outside the United States. If you are consolidating jointly, both references should be relatives or acquaintances who are likely to know how to contact you and your spouse.

**Section D: Education Loan Indebtedness**

**Subsidized Loans:**

- **A** Subsidized Federal Stafford Loans
- **B** Guaranteed Student Loans (GSL)
- **C** Federal Insured Student Loans (FISL)
- **D** Federal Direct Stafford/Ford Loans
- **E** Federal Direct Subsidized Consolidation Loans
- **F** Federal Perkins Loans
- **M** National Direct Student Loans (NDSL)
- **N** National Defense Student Loans (NDSL)
- **O** Subsidized Federal Consolidation Loans

**Unsubsidized Loans:**

- **G** Unsubsidized Federal Stafford Loans (Including Non-Subsidized Stafford Loans made prior to 10/1/92)
- **H** Federal Supplemental Loans for Students (SLS)
- **J** Unsubsidized Federal Consolidation Loans
- **K** Federal Direct Unsubsidized Consolidation Loans
- **L** Federal Direct Unsubsidized Stafford/Ford Loans
- **P** Auxiliary Loans to Assist Students (ALAS)
- **Q** Health Professions Student Loans (HPSL)
- **R** Health Education Assistance Loans (HEAL)
- **S** Federal PLUS Loans
- **T** Parent Loans for Undergraduate Students (PLUS)
- **U** Federal Direct PLUS Loans
- **V** Federal Direct PLUS Consolidation Loans
- **Y** Nursing Student Loans (NSL)
- **Z** Loans for Disadvantaged Students (LDS)
- **W** Other education loans that are ineligible for consolidation

**If you are unsure of the correct information on your loans, call your holder or servicer or check your most recent correspondence from them.**

**Step 1:** Begin by listing (according to instructions for Items 17-22) any eligible loan(s) from the above list that you or your spouse wish to consolidate. If you are in default on any loan(s) being consolidated, you must have made satisfactory arrangements to repay the loan or agree to repay your Federal Direct Consolidation Loan (Direct Consolidation Loan) under the Income Contingent Repayment Plan. If you are currently in school, you may consolidate only William D. Ford Federal Direct Loan (Direct Loan) Program and Federal Family Education Loan (FFEL) Program loans. The codes for these loans are: A, B, C, D, E, G, H, J, K, L, O, S, T, U, and V. (See above list.)

> **NOTE:** The loans listed in Steps 2 and 3 will not be included in your Direct Consolidation Loan but will be used to calculate your maximum repayment term. The amount of these loans may not exceed the total amount of the loan(s) that you are consolidating (listed in Step 1). You may not be in default on any loan(s) you list in Steps 2 and 3, unless you have made satisfactory repayment arrangements with the holder(s) of the loan(s). Contact the holder(s) of your loan(s) for more information about making satisfactory repayment arrangements.

**Step 2:** List any other outstanding education loan(s) that is eligible for consolidation, but that you do NOT want to consolidate, if you wish to have it considered in the calculation of your maximum repayment term.

**Step 3:** List any other outstanding education loan(s) that is not eligible for consolidation, if you wish to have it considered in the calculation of your maximum repayment term. This loan(s) must be from an institution that makes loans (such as banks, schools, or state agencies) under a public or private loan program to finance postsecondary education. A personal loan(s) from family or friends may not be listed.

**Item 17:** Enter the code (as noted in bold print in the list above) of the loan program from which you borrowed.

**Item 18:** Contact your holder or servicer to obtain the address to which a loan payoff verification certificate should be sent. Enter the appropriate name, address, and telephon[e] number. If the loan is a Federal Perkins Loan, enter the name of the school that made the lo[an].

**Item 19:** Enter a "B" if the loan is yours, "S" if it is your spouse's, or "J" if it is jointly held (e.g., PLUS loans made to both parents as co-makers).

**Item 20:** Enter "Yes" if the loan has never entered repayment because you are in school. Enter "No" if the loan has entered repayment.

> **NOTE:** Your Direct Consolidation Loan will receive a six-month grace period if you are in an in-school period on at least one Direct Loan Program or FFEL Program loan that you are consolidating and your application is received prior to the end of your in-school period.

**Item 21:** Enter the account number for each loan. This is listed on your monthly billing statement or coupon.

**Item 22:** Enter the estimated current account balance (payoff amount) as of today's date. Include any unpaid interest and late fees. Collection costs may also be included.

**Item 23:** Indicate whether you wish to include each eligible loan in your Direct Consolidation Loan by checking "Yes" or "No."

> **NOTE:** If you need additional space to list all of your loans, complete the enclosed Supplemental Loan Listing Sheet and return it with your Application and Promissory Note.

*Please read the Promise to Pay, Borrower Certification and Authorization, and statement of Borrower's Rights and Responsibilities carefully before completing this section.*

*Do not make any changes to this section. Changes will void the terms and agreements of the Promissory Note. This is a legally binding contract.*

**Item 24:** Sign and date the Promissory Note in blue or black ink.

**Item 25:** If you and your spouse are jointly consolidating your loans, your spouse must also sign and date the Promissory Note.

**Note:** Signature(s) and date(s) are required. If you or your spouse (if consolidating jointly) fail to sign and date the Promissory Note, your application will not be processed.

Review all information on your Direct Consolidation Loan Application and Promissory Note. When it is complete, forward it to the Direct Loan Servicing Center. Keep a copy for your records. Remember to continue making your regularly schedu[led] education loan payments until your consolidation is compl[ete]. You will receive a Repayment Schedule and Disclosure Statement when the included loans are paid off. It will provide information about your new Direct Consolidation Loan and instructions on where to send your monthly payments.



# William D. Ford Federal Direct Loan Program
## Federal Direct Consolidation Loan

OMB No. 1840-0693
Form Approved
Exp. Date 6/30/96

WARNING: Any person who knowingly makes a false statement or misrepresentation on this form shall be subject to penalties which may include fines, imprisonment or both, under the U.S. Criminal Code and 20 U.S.C. 1097.

## Application and Promissory Note

### Section A: Borrower Information

1. Last Name | First Name | Middle Initial
2. Social Security Number
3. Permanent Street Address (if P.O. Box, see instructions)
4. Former Name
5. Home Area Code/Telephone Number ( )
City | State | Zip Code
6. Driver's License Number (list state abbreviation first)
7. Date of Birth
8. Employer's Name | Employer's Address | Employer's Area Code/Telephone Number ( )
City | State | Zip Code
9. Does your spouse have "eligible" loans (see instructions) that you want to consolidate with your loans? If yes, have your spouse complete Section B and include your spouse's loans in Section D. ☐ Yes ☐ No

### Section B: Spouse Information

*To be completed only if you responded "yes" to Item #9.*

10. Last Name | First Name | Middle Initial
11. Social Security Number
12. Former Name
13. Driver's License Number (List state abbreviation first)
14. Date of Birth (Month, Day, Year)
15. Employer's Name | Employer's Address | Employer's Area Code/Telephone Number ( )
City | State | Zip Code

### Section C: Reference Information

*See instructions before completing this section.*

16. References:

Name 1. ____ 2. ____
Permanent Address ____ ____
City, State, Zip Code ____ ____
Area Code/Telephone Number ( ) ____ ( ) ____

### Section D: Education Loan Indebtedness

*See instructions before completing this section.*

| 17. Loan Type | 18. Holder/Servicer's Name, Address, and Area Code/Telephone Number | 19. B = Borrower S = Spouse J = Joint | 20. In-School Period Yes | No | 21. Account Number | 22. Current Balance | 23. To Be Consolidated Yes | No |
|---|---|---|---|---|---|---|---|---|
| | ( ) | | | | | | | |
| | ( ) | | | | | | | |
| | ( ) | | | | | | | |

### Section E: Promissory Note *(Continued on reverse side)*

*To be completed by borrower and spouse, if applicable.*

**Promise to Pay:**

I promise to pay to the U.S. Department of Education (ED) all sums (hereafter "loan" or "loans") disbursed under the terms of this Promissory Note to discharge my prior loan obligations, plus interest and other fees that may become due as provided in this Promissory Note. If I fail to make payments on this Promissory Note when due, I will also pay collection costs including attorney's fees and court costs. If ED accepts this application, it is my understanding that ED will on my behalf send funds to the holder(s) who currently holds the loan(s) selected for consolidation in order to pay off this loan(s). I further understand that the amount of this loan will equal the sum of the amounts that the holders of the loans selected for consolidation verify are the payoff balances on those loans. My signature on this Promissory Note will serve as my authorization to pay off the balance(s) of the loan(s) selected for consolidation as provided by the holder(s) of such loan(s). This amount may be more or less than the estimated total balance I have indicated above. If the verified total balance on the loan(s) to be consolidated exceeds my estimate by $1,000 or more, ED will notify me before originating my loan.

I understand that this is a Promissory Note. I will not sign this Promissory Note before reading it, including the text on the reverse side, even if I am advised not to read the Promissory Note. I am entitled to an exact copy of this Promissory Note and a statement of the Borrower's Rights and Responsibilities. My signature certifies that I have read, understand, and agree, to the terms and conditions of this Promissory Note, including the Borrower Certification and Authorization printed on the reverse side and the accompanying Borrower's Rights and Responsibilities.

If applying for a loan with my spouse, we agree to the same terms and conditions contained in the Borrower Certification and Authorization. In addition, we confirm that we are legally married to each other and understand and agree that we are and will continue to be held jointly and severally liable for the entire amount of the debt represented by the Federal Direct Consolidation Loan (Direct Consolidation Loan) without regard to the amounts of our individual loan obligations that are consolidated and without regard to any change that may occur in our marital status. We understand that this means that one of us may be required to pay the entire amount due if the other is unable or refuses to pay. We understand that the Federal Direct Consolidation Loan we are applying for will be cancelled only if both of us qualify for cancellation. We further understand that we may postpone repayment of the loan only if we provide ED with a written request that confirms Federal Direct Consolidation Loan Program deferment or forbearance eligibility for both of us.

I UNDERSTAND THAT THIS IS A FEDERAL LOAN THAT I MUST REPAY.

24. Signature of Borrower ____ Date ____

25. Signature of Spouse (only if Section B is completed) ____ Date ____

### U.S. Department of Education Use Only

Loan Identification Number #1 | Loan Identification Number #2 | Loan Identification Number #3

## Promissory Note *(continued)*

### Governing Law and Notices

This promissory note (note) applies to Federal Direct Consolidation Loans (Direct Consolidation Loans). In this note, the Higher Education Act of 1965, as amended, 20 U.S.C. 1070 et seq., and applicable U.S. Department of Education (ED) regulations are referred to as "the Act." The terms of this note will be interpreted according to the Act and other applicable federal statutes and regulations. Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this note.

### Disclosure of Terms

When the loan(s) that I am consolidating are discharged, I will be sent a Disclosure Statement and Repayment Schedule (Disclosure). The Disclosure will identify my Direct Consolidation Loan amount and other additional terms of my loan. If I have questions about the information disclosed, I will contact ED. If the information in this note conflicts with the information in the Disclosure, the Disclosure will be controlling.

Important additional terms of this loan are disclosed in the statement of Borrower's Rights and Responsibilities accompanying this note.

I understand that my Direct Consolidation Loan may consist of up to three separate loan identification numbers depending on the loans I choose to consolidate. These loan identification numbers will represent prior subsidized loans, prior unsubsidized loans, and prior PLUS loans. The Borrower's Rights and Responsibilities identifies which eligible loans is included in each of these categories. Each applicable loan identification number is represented by this note.

Except for interest ED does not charge me during an authorized deferment, I agree to pay interest on the principal amount of my Direct Consolidation Loan from the date of disbursement until the loan is paid in full or discharged.

ED may add interest that accrues but is not paid when due to the unpaid principal balance of this loan. This is called capitalization.

### Interest

If my Direct Consolidation Loan includes a loan identification number that represents previous Federal PLUS loans (see the Borrower's Rights and Responsibilities for a complete listing of loans included under each loan identification number), the interest rate for that portion of the loan during any 12-month period beginning on July 1 and ending on June 30, is determined on the preceding June 1 and is equal to the bond equivalent rate of 52-week Treasury bills auctioned at the final auction held prior to such June 1 plus 3.1 percentage points, but shall not exceed 9 percent.

If my consolidation loan includes loan identification numbers that represent previous loans other than Federal PLUS loans, and I am in repayment, the interest rate for that portion of the loan during any 12-month period beginning on July 1 and ending on June 30, is determined on the preceding June 1 and is equal to the bond equivalent rate of 91-day Treasury bills auctioned at the final auction held prior to such June 1 plus 3.1 percentage points, but shall not exceed 8.25 percent.

If my Direct Consolidation Loan includes loan identification numbers that represent previous loans other than Federal PLUS loans, and I am not yet in repayment or am in an authorized period of deferment, the interest rate for that portion of the loan during any 12-month period beginning on July 1 and ending on June 30, is determined on the preceding June 1 and is equal to the bond equivalent rate of 91-day Treasury bills auctioned at the final auction held prior to such June 1 plus 2.5 percentage points, but shall not exceed 8.25 percent.

### Late Charges and Collection Costs

If I fail to make any part of an installment payment within 30 days after it becomes due, ED may collect from me a late charge that will not exceed six cents for each dollar of each late installment. If I default on the loan, I will pay reasonable collection fees and costs, plus court costs and attorney's fees associated with collection of the debt.

### Grace Period

My Direct Consolidation Loan will receive a grace period if I am in an in-school period on at least one William D. Ford Federal Direct Loan (Direct Loan) Program or Federal Family Education Loan (FFEL) Program loan that I am consolidating and my application for a Direct Consolidation Loan is received by ED prior to the end of my in-school period. A six-month grace period begins the day after I cease to be enrolled at least half-time at an eligible school.

### Repayment

Unless I am in school when my Direct Consolidation Loan is disbursed, I will be asked to select a repayment plan. If I do not select a repayment plan, ED will choose the standard repayment plan for me. My first payment will be due within 60 days of the first disbursement of my Direct Consolidation Loan unless I am eligible for a deferment or my Direct Consolidation Loan includes at least one Direct Loan or FFEL Program loan for which I am in an in-school period at the time of my consolidation. A repayment schedule will be furnished to me and will establish repayment terms, including my payment amount, number of payments, and the length of the repayment period, based on information I have furnished in the application for this Direct Consolidation Loan. Payments will be scheduled in monthly installments. ED may adjust my repayment schedule if ED learns that any of the loans listed herein are not eligible to be consolidated. My repayment period will be up to 30 years in length, depending on the amount of my student loan indebtedness and my repayment plan. Any period for which ED has granted a deferment or forbearance will not be included in determining the repayment period.

I may prepay all or any part of the unpaid balance on my loan at any time without penalty.

### Acceleration and Default

At the option of ED, the entire unpaid balance shall become immediately due and payable when any one of the following events occurs: (i) I make false representation that results in my receiving a loan for which I am not eligible, or (ii) I default on the loan.

The following events shall constitute a default on a loan: (i) I fail to pay the entire unpaid balance after ED has exercised its option under the preceding paragraph; or (ii) I fail to make installment payments when due, or fail to comply with other terms of the loan, and ED reasonably concludes I no longer intend to honor my repayment obligation. My failure must have persisted for at least 180 days. If I default, ED will capitalize all outstanding interest into a new principal balance.

If I default, this will be reported to national credit bureau organizations and will significantly and adversely affect my credit rating. I acknowledge that a default shall have additional adverse consequences to me as disclosed in the statement of Borrower's Rights and Responsibilities.

Following default, the loan may at ED's option be subject to income contingent repayment in accordance with the Act.

Any notice required to be given to me will be effective when mailed by first class mail to the latest address that ED has for me. Failure by ED to enforce or insist on compliance with any term on this note shall not waive any right of ED. No provision of this note may be changed or waived except in writing by ED. If any provision of this note is determined to be unenforceable, the remaining provisions shall remain in force.

### Borrower Certification and Authorization

I declare under penalty of perjury that the following is true and correct:

(1) I certify that the information provided by me and my spouse, if applicable, in this application/note is true, complete, and correct to the best of my knowledge and belief and is made in good faith.

(2) I certify that the loan proceeds will be used solely to discharge my outstanding eligible education loan debts.

(3) I certify that I do not now owe a refund on a Federal Pell Grant, Basic Educational Opportunity Grant, Federal Supplemental Educational Opportunity Grant, or a State Student Incentive Grant. I further certify that I am not now in default on any loan that was received under the Federal Perkins Loan Program (including NDSL Loans), the FFEL Program, or the Direct Loan Program, or, if I am in default, I have either made satisfactory repayment arrangements, or I am consolidating all of these loans and will repay under the income contingent repayment plan. I understand that income-contingent repayment is not available for Federal Direct PLUS Consolidation Loans (Direct PLUS Consolidation Loans).

(4) I certify that all of the loans selected have been used to finance my education, my spouse's education, or my child's education.

(5) I certify that I do not have any other application pending for a Federal Consolidation Loan with any other lender. If none of the loans I am consolidating is a Direct Loan Program loan, I further certify that I have sought and been unable to obtain a Federal Consolidation Loan from a FFEL Program lender, or a lender would not provide me with a Federal Consolidation Loan with income-sensitive repayment terms acceptable to me, and I am eligible for the income contingent repayment plan. If, however, I am applying jointly with my spouse, only one borrower, my spouse or I, must seek a Federal Consolidation Loan from a FFEL Program lender.

(6) I understand that this loan shall, to the extent used to discharge loans that I have selected, count against the applicable aggregate loan limits under the Act.

(7) I understand that the amount of my Direct Consolidation Loan will be the sum of the balances of my outstanding eligible loans that I have chosen to consolidate. My outstanding balance on each loan to be consolidated will include unpaid principal, unpaid accrued interest, and late charges as defined by federal regulations and as certified by each holder. Collection costs may also be included. For a loan that is in default, ED limits collection costs that may be charged to the borrower to no more than those currently authorized under the FFEL Program and may impose reasonable limits on collection costs paid to the holder. If the amount ED advances to my holder(s) exceeds the amount needed to pay off the balance(s) of the selected loan(s), I understand that the holder will refund the excess to ED for application against the outstanding balance of this loan. If the amount that ED advances to my holder(s) is less than the amount needed to pay off the balance(s) of the loan(s) selected for consolidation, ED will include the remaining amount in this loan unless I pay the remaining balance myself.

(8) I authorize ED to issue the proceeds of my Direct Consolidation Loan to the holder(s) of the loan(s) so selected to discharge the debt.

(9) I authorize ED to investigate my credit record and report information concerning my loan status to proper persons and organizations authorized to receive this information.

(10) I authorize ED to contact the holder(s) identified on my application to determine the eligibility and/or payoff amount for the loan(s) I have identified. I further authorize the holder(s) to release that information.

(11) I authorize the release of information pertinent to this loan: (i) by my school(s) and ED, to members of my immediate family unless I submit written direction otherwise; and (ii) by and amongst my school(s), ED, and their agents.

(12) I authorize my school(s), ED, and their agents, to verify my social security number with the Social Security Administration (SSA) and, if the number on my loan record is incorrect, then I authorize SSA to disclose my correct social security number to these parties.

EXHIBIT # 9
Pfeiffer v Spelling
C.A. #1:07cv00522 (EGS)

# Application and Promissory Note Federal Direct Consolidation Loan

OMB No. 1840-0693
Form Approved
Exp. Date 06/30/95

**WARNING:** Any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties which may include fines, imprisonment, or both under the U.S. Criminal Code and 20 U.S.C. 1097.

## Section A. Borrower Information

1. Last Name — First Name — M I
2. Social Security Number
3. Permanent Street Address (if P.O. Box, see Instructions)
4. Former Name
5. Home Telephone Number ( )
City — State — Zip Code
6. Driver's License Number (List state abrv. first)
7. Date of Birth (Month, Day, Year)
8. Employer Name — Employer Address — Telephone Number ( )
City — State — Zip Code
9. Does your spouse have "eligible" loans (see instructions) that you want to consolidate with your loans? If yes, have your spouse complete Section B and include your spouse's loans in Section D. ☐ Yes ☐ No

## Section B. Spouse Information

*Do not complete unless you responded "yes" to item #9.*

10. Last Name — First Name — M I
11. Social Security Number
12. Former Name
13. Driver's License Number (List state abrv. first)
14. Date of Birth (Month, Day, Year)
15. Employer Name — Employer Address — Telephone Number ( )
City — State — Zip Code

## Section C. Reference Information

16. **References:** You must list two persons, with different U.S. addresses, who have known you for at least three years. Do not include individuals who live with you (e.g., spouse) or live outside the United States. Both references must be completed fully and should be acquaintances of both you and your spouse if you are consolidating jointly.

| | 1. | 2. |
|---|---|---|
| Name | | |
| Permanent Address | | |
| City, State, Zip Code | | |
| Area Code/Telephone | ( ) | ( ) |

## Section D. Education Loan Indebtedness

*See instructions before completing this section.*

List the education loans that you want to consolidate and the loans that you are not consolidating but want considered in calculating your maximum repayment period. If you need to list additional loans, attach the enclosed Supplemental Loan Listing Sheet. Do not include your spouse's loans unless you responded "yes" to item #9 and completed Section B.

| 17. Loan Type (e.g., A, B, etc. See Instructions) | 18. Lender/Servicer Name and Address | 19. B = Borrower S = Spouse J = Joint | 20. Account Number | 21. Current Balance | 22. To Be Consolidated Yes | No |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

## Section E. Promissory Note *(Continued on reverse side.)*

*To be completed by borrower and spouse, if applicable.*

**Promise to Pay:**

I promise to pay to the U.S. Department of Education (ED) all sums (hereafter "loan" or "loans") disbursed under the terms of this Promissory Note to discharge my prior loan obligations, plus interest and other fees which may become due as provided in this Promissory Note. If I fail to make payments on this Promissory Note when due, I will also pay collection costs including attorney's fees and court costs. If ED accepts this application, it is my understanding that ED will on my behalf send funds to the holders who currently hold the loans selected for consolidation in order to payoff those loans. I further understand that the amount of this loan will equal the sum of the amounts which the holders of the loans selected for consolidation verify are the payoff balances on those loans. My signature on this Promissory Note will serve as my authorization to pay off the balances of the loans selected for consolidation as provided by the holders of such loans.

I understand that this is a Promissory Note. I will not sign this Promissory Note before reading it, including the writing on the reverse side, even if I am advised not to read the Promissory Note. I am entitled to an exact copy of this Promissory Note and a Statement of the Borrower's Rights and Responsibilities. My signature certifies I have read, understand, and agree, to the terms and conditions of this Application and Promissory Note, including the Borrower Certification and Authorization printed on the reverse side and the accompanying Borrower's Rights and Responsibilities.

If applying for a loan with my spouse, we agree to the same terms and conditions contained in the Borrower Certification and Authorization. In addition, we confirm that we are legally married to each other and we understand and agree that we are and will continue to be held jointly and severally liable for the entire amount of the debt represented by the Federal Direct Consolidation Loan without regard to the amounts of our individual loan obligations that are consolidated and without regard to any change that may occur in our marital status. We understand that this means that one of us may be required to pay the entire amount due if the other is unable or refuses to pay. We understand that the Federal Direct Consolidation Loan we are applying for will be cancelled only if both of us either die or become totally and permanently disabled. We further understand that we may postpone repayment of the loan only if we provide ED with a written request that confirms Federal Direct Consolidation Loan Program deferment or forbearance eligibility for both of us.

I UNDERSTAND THAT THIS IS A FEDERAL LOAN THAT I MUST REPAY.

23. Borrower's Signature ____________ Date (Month/Day/Year) ____________

24. Spouse's Signature (only if Section B is completed) ____________ Date (Month/Day/Year) ____________

## U.S. Department of Education Use Only

| Loan Identification Number #1 | Loan Identification Number #2 | Loan Identification Number #3 |
|---|---|---|
| | | |

Pfeiffer - Govt Production (Nov. 2[illegible]

PLAINTIFF'S DEPOSITION EXHIBIT 10 Battle

# Promissory Note *(continued)*

**Governing Law and Notices**

This Promissory Note applies to Federal Direct Consolidation Loans. In this Note, the Higher Education Act of 1965, as amended, 20 U.S.C. 1070 et seq., and applicable U.S. Department of Education (ED) regulations are referred to as "the Act." The terms of this Note will be interpreted according to the Act and other applicable federal statutes and regulations. Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this Note.

**Disclosure of Terms**

When the loans which I am consolidating are discharged, I will be sent a Disclosure Statement and Repayment Schedule ("Disclosure"). The Disclosure will identify my Federal Direct Consolidation Loan amount and other additional terms of my loan. If I have questions about the information disclosed, I will contact ED. If the information in this Promissory Note conflicts with the information in the Disclosure, the Disclosure will be controlling.

Important additional terms of this loan are disclosed in the statement of Borrower's Rights and Responsibilities accompanying this Note.

I understand that my consolidation loan may consist of up to three separate loan identification numbers depending on the loans I choose to consolidate. These loan identification numbers will represent prior subsidized loans, prior unsubsidized loans, and prior PLUS loans. The Borrower's Rights and Responsibilities identifies which eligible loans will be included in each of these categories. Each applicable loan identification number will be represented by this Promissory Note.

Except for interest charges ED does not charge me during an authorized deferment, I agree to pay interest on the principal amount of my consolidation loan from the date of disbursement until the loan is paid in full or discharged.

ED may add interest that accrues but is not paid when due to the unpaid principal balance of this loan. This is called capitalization.

**Interest**

If my consolidation loan includes a loan identification number which represents previous Federal PLUS loans (see the Borrower's Rights and Responsibilities for a complete listing), the interest rate for that portion of the loan during any 12-month period beginning on July 1 and ending on June 30, is determined on the preceding June 1 and is equal to the bond equivalent rate of 52-week Treasury bills auctioned at the final auction held prior to such June 1; plus 3.1 percentage points, but shall not exceed 9 percent.

If my consolidation loan includes loan identification numbers which represent eligible previous loans other than Federal PLUS loans, the interest rate for that portion of the loan during any 12-month period beginning on July 1 and ending on June 30, is determined on the preceding June 1 and is equal to the bond equivalent rate of 91-day Treasury bills auctioned at the final auction held prior to such June 1; plus 3.1 percentage points, but shall not exceed 8.25 percent.

**Late Charges and Collection Costs**

If I fail to make any part of an installment payment within 10 days after it becomes due, ED may collect from me a late charge not to exceed 6% of each late installment. If I default on the loan, I will pay reasonable collection fees and costs, plus court costs and attorney's fees associated with collection of the debt.

**Repayment**

When my consolidation loan is disbursed I will be asked to select a repayment plan. If I do not select a repayment plan, ED will assign me to the Standard Repayment Plan. My first payment will be due within 60 days of the first disbursement of my consolidation loan unless I am eligible for a deferment. A repayment schedule will be furnished to me and will establish repayment terms, including my payment amount, number of payments, and the length of the repayment period, based on information I have furnished in this Application/Promissory Note. Payments will be scheduled in monthly installments. ED may adjust my repayment schedule if ED learns that any of the loans listed herein are not eligible to be consolidated. My repayment period will be up to 30 years in length, depending on the amount of my student loan indebtedness and my repayment preference. Any period for which ED has granted a deferment or forbearance will not be included in determining the repayment period.

I may prepay all or any part of the unpaid balance on my loan at any time without penalty.

**Acceleration and Default**

At the option of ED, the entire unpaid balance shall become immediately due and payable when any one of the following events occurs: (i) I make false representation that results in my receiving a loan for which I am not eligible, or (ii) I default on the loan.

The following events shall constitute a default on a loan: (i) I fail to pay the entire unpaid balance after ED has exercised its option under the preceding paragraph; or (ii) I fail to make installment payments when due, or fail to comply with other terms of the loan, and ED reasonably concludes I no longer intend to honor my repayment obligation. My failure must have persisted for at least 180 days for payments due monthly or 240 days for payments due less frequently than monthly. If I default, ED will capitalize all outstanding interest into a new principal balance.

If I default, this will be reported to national credit bureau organizations and will significantly and adversely affect my credit rating. I acknowledge that a default shall have additional adverse consequences to me as disclosed in the statement of Borrower's Rights and Responsibilities.

Following default, the loan may at ED's option be subject to income-contingent repayment (including potential collection of amounts in excess of the principal and interest) in accordance with the Act.

Any notice required to be given to me will be effective when mailed by first class mail to the latest address that ED has for me. Failure by ED to enforce or insist on compliance with any term on this Note shall not waive any right of ED. No provision of this Note may be changed or waived except in writing by ED. If any provision of this Note is determined to be unenforceable, the remaining provisions shall remain in force.

**Borrower Certification and Authorization**

I declare under penalty of perjury that the following is true and correct:

(1) I certify that the information provided by me and my spouse in this Note and Application is true, complete, and correct to the best of my knowledge and belief and is made in good faith.

(2) I certify that the loan proceeds will be used solely to discharge my outstanding eligible education loan debts.

(3) I certify that I do not now owe a refund on a Federal Pell Grant, Basic Educational Opportunity Grant, Supplemental Educational Opportunity Grant, or a State Student Incentive Grant. I further certify that I am not now in default on any loan which was received under the Federal Perkins Loan Program (including NDSL Loans), the Federal Family Education Loan Program (FFELP), or the Federal Direct Student Loan (Direct Loan) Program, or, if I am in default, I have either made satisfactory repayment arrangements, or I am consolidating all of these loans and will accept an income contingent repayment plan. I understand that income contingent repayment is not available for Federal Direct PLUS Consolidation Loans. FFELP and Direct Loan Program are defined in the statement of Borrower's Rights and Responsibilities.

(4) I certify that the loans I am consolidating are now in grace period or in repayment status. All of the loans selected have been used to finance my education, my spouse's education or my child's education.

(5) I certify that I do not have any other application pending for a Federal Consolidation Loan with any other lender. If none of the loans I am consolidating are Direct Loan Program loans, I further certify that I have sought and been unable to obtain a Federal Consolidation Loan from any of the holder(s) of my loan(s), or the holder(s) could not provide me with an income-sensitive repayment schedule satisfactory to me, and I am eligible for the income contingent repayment plan. If, however, I am applying jointly with my spouse, only one borrower, my spouse or I, must seek a loan from the current holder(s).

(6) I understand that this loan shall, to the extent used to discharge loans which I have selected, count against the applicable aggregate loan limits under the Act.

(7) I understand that the amount of my Federal Direct Consolidation Loan will be the sum of the balances of my outstanding eligible loans which I have chosen to consolidate. My outstanding balance on each loan to be consolidated will include unpaid principal, unpaid accrued interest, and late charges as defined by federal regulations and as certified by each holder. Collection costs may also be included. For a loan that is in default, ED limits collection costs that may be charged to the borrower to no more than those currently authorized under the FFEL Program, and may impose reasonable limits on collection costs paid to the holder. If the amount ED advances to my holder(s) exceeds the amount needed to pay off the balance(s) of the selected loan(s),
I understand that the holder will refund the excess to ED for application against the outstanding balance of this loan. If the amount that ED advances to my holder(s) is less than the amount needed to pay off the balance(s) of the loan(s) selected for consolidation ED will include the remaining amount in this loan unless I pay the remaining balance myself.

(8) I authorize ED to issue the proceeds of my Federal Direct Consolidation loan to each holder of the loans so selected to discharge the debt.

(9) I authorize ED to investigate my credit record and report information concerning my loan status to proper persons and organizations.

(10) I authorize ED to contact the holder(s) identified on my application to determine the eligibility and/or payoff amount for the loan(s) I have identified. I further authorize those holder(s) to release that information.

(11) I authorize the release of information pertinent to this loan: (i) by my schools and ED, to members of my immediate family unless I submit written direction otherwise; and (ii) by and amongst my schools, ED, and their agents.

(12) I authorize my schools, ED, and their agents, to verify my social security number with the Social Security Administration (SSA) and, if the number on my loan record is incorrect, then I authorize SSA to disclose my correct social security number(s) to these parties.

EXHIBIT #10
Pfeiffer v Spelling
C.A. #1:07cv00522 (EGS)

# GLOSSARY

**Borrower** Individual who signed and agreed to the terms in the promissory note and is responsible for repaying a loan.

**Cancellation** Some student loan programs allow for all or part of the total loan principal and accrued interest to be cancelled in certain circumstances. A cancelled loan may also be referred to as a "discharged loan."

**Capitalized Interest** Rather than paying interest on a periodic basis as it accrues, a borrower may choose to let that interest accumulate and be added to the loan principal. It then becomes *capitalized interest.* Capitalizing interest increases the principal amount of the loan and, therefore, the total cost of the loan.

**Consolidation** When a borrower combines loans by taking out one new loan to repay all the old loans.

**Default** Failure to repay a loan or meet other terms of a signed promissory note.

**Deferment** A temporary postponement of loan payments.

**Direct Loan Servicing Center** The U.S. Department of Education's agent contracted to service and collect Direct Loan Program loans.

**Forbearance** An arrangement to postpone or reduce a borrower's monthly loan repayment amount for a limited and specified period. The borrower is charged interest during a forbearance.

**Grace Period** A six-month period after a student borrower graduates or drops below half-time enrollment during which he or she is not required to make payments on a loan.

**Half Time** A student is considered half time when carrying at least one half the academic workload of a full-time student as determined by the school.

**Holder** An entity that holds a loan promissory note and has the right to collect from the borrower.

**In-School Period** A period prior to a loan entering the grace or repayment periods, and during which a borrower is enrolled at least half time at an eligible school.

**Interest** A loan expense charged by the lender and paid by the borrower for the use of borrowed money. The expense is calculated as a percentage of the unpaid principal amount (loan amount).

**Loan(s)** Money borrowed that must be repaid.

**Loan Origination Center** The U.S. Department of Education's agent contracted to make and disburse Direct Loan Program loans.

**Loan Principal** Total money borrowed.

**Prepayment** Any amount paid on a loan by the borrower before it is required to be paid under the terms of the promissory note. There is never a penalty for prepaying principal or [interest] on Direct Loan Program loans.

PLAINTIFF'S DEPOSITION EXHIBIT 13 Bird

**Promissory Note** A legally binding contract between a lender and a borrower. The promissory note contains the terms and conditions of the loan, including how and when the loan must be repaid.

**Repayment** (also "repayment period") Making payments on a loan. The "repayment period" is the period during which payments are required to be made.

**Repayment Plan(s)** In the Direct Loan Program, borrowers may select from four plans that will determine the length of their repayment period and the amount of their monthly payments. The plans are the Standard Repayment Plan, Extended Repayment Plan, Graduated Repayment Plan, and Income Contingent Repayment (ICR) Plan.

**Servicer** An entity designated to track and collect a loan on behalf of a loan holder.

**Subsidized Loan** A loan on which the borrower is not charged interest during certain prescribed times. In the case of Direct Subsidized Consolidation Loans, the subsidy is provided by the federal government not charging interest during specified periods.

**Unsubsidized Loan** A loan on which interest begins to accrue as soon as the loan is made. The interest may be paid or capitalized.

**Variable Interest** Rate of interest on a loan that is tied to a stated index and changes periodically as the index changes.

**William D. Ford Federal Direct Loan Program** (also referred to as "Direct Loan Program") A federal program that provides loans to student and parent borrowers. The loans are Federal Direct Stafford/Ford Loans, Federal Direct Unsubsidized Stafford/Ford Loans, Federal Direct PLUS Loans, and Federal Direct Consolidation Loans. Funds are provided by the federal government, through participating schools or the Loan Origination Center, to eligible students/borrowers.

*U.S. G.P.O.:1996-408-495

EXHIBIT # 11
Pfeiffer v Spelling
C.A. #1:07cv00522 (EGS)

**DEPARTMENT OF EDUCATION**
**Loan Origination Center**
**Loan Consolidation 800-557-7392**
**Fax: 800-557-7396**
**TDD: 800-557-7395**

# FAX

Date: 4/12/06
Number of pages including cover sheet 3

To:
REDACTED

Phone:
Fax Phone:

From:

Direct Loan Origination Center
Loan Consolidation
Post Office Box
Montgomery, AL 36103
Phone: (334)208-
Fax Phone: (334)208-7672

REMARKS: comment ☒ Urgent ☐ For your review ☐ Reply ASAP ☐ Please

PLAINTIFF'S DEPOSITION EXHIBIT 3 Battle

Borrower's Name ____________________

Borrower's Social Security Number REDACTED

Direct Loans

# FEDERAL DIRECT CONSOLIDATION LOAN

## SECTION E
## CERTIFICATION, AUTHORIZATION, AND RELEASE

(1) I certify that the information I (and my spouse, if applicable) am providing in this application is true, complete, and correct to the best of my knowledge and belief and is made in good faith.

(2) I certify that all of the loans selected have been used to finance my education, my spouse's education, or my child's education.

(3) I certify that I do not have an application pending for a Federal Consolidation Loan with any other lender.

(4) If I am not in school and if none of the loans I am consolidating is a William D. Ford Federal Direct Loan Program (Direct Loan Program) loan, I (or my spouse, if applicable) certify that I have sought and been unable to obtain a Federal Consolidation Loan from a Federal Family Education Loan (FFEL) Program lender, or, if I am consolidating student loans, that a lender would not provide me with a Federal Consolidation Loan with income-sensitive repayment terms acceptable to me.

(5) I certify that I do not now owe a refund on a Federal Pell Grant, Basic Educational Opportunity Grant, Federal Supplemental Educational Opportunity Grant, or State Student Incentive Grant. I further certify that I am not now in default on any loan that was received under the Federal Perkins Loan Program (including NDSL Loans), the FFEL Program, or the Direct Loan Program, or, if I am in default, I have either made satisfactory repayment arrangements with the holder of that defaulted loan or I am consolidating all of these loans and will repay under the Income Contingent Repayment Plan. I understand that income contingent repayment is not available for Federal Direct PLUS Consolidation Loans.

(6) I understand that the amount of my Federal Direct Consolidation Loan will be the sum of the balance(s) of my outstanding eligible loan(s) that I have chosen to consolidate. My outstanding balance on each loan to be consolidated will include unpaid principal, unpaid accrued interest, and late charges as defined by federal regulations and as certified by the holder. Collection costs may also be included. For a Direct Loan or FFEL Program loan that is in default, the U.S. Department of Education (ED) limits collection costs that may be charged to the borrower to no more than those currently authorized under the FFEL Program and may impose reasonable limits on collection costs paid to the holder. If the amount ED advances to my holder(s) exceeds the amount needed to pay off the balance(s) of the selected loan(s), I understand that the holder will refund the excess to ED for application against the outstanding balance of this loan. If the amount that ED advances to my holder(s) is less than the amount needed to pay off the balance(s) of the loan(s) selected for consolidation, ED will include the remaining amount in this loan unless I pay the remaining balance myself.

(7) I authorize ED to investigate my credit record and report information concerning my loan status to proper persons and organizations authorized to receive this information.

(8) I authorize ED to contact the loan holder(s) identified on my application to determine the eligibility and/or payoff amount for the loan(s) I have identified.

(9) I authorize my school(s), ED, and their agents, to verify my social security number with the Social Security Administration (SSA) and, if the social security number on my loan record is incorrect, then I authorize SSA to disclose my correct social security number to these parties.

(10) I hereby authorize release to ED or its agent any information required to consolidate my education loan(s) pursuant to the Higher Education Act of 1965, as amended. A copy of this authorization may be deemed an original release.

COPY

26. REDACTED ____________________ Signature of Borrower

1-4-97 Date

____________________ Signature of Spouse (if consolidating jointly)

____________________ Date

Borrower's Name BRENDA KAY PFEIFFER

NOV 2 3 2001

Borrower's Social Security Number 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

## Section E: Repayment Plan Selection

Carefully read the repayment plan information in "Direct Consolidation Loans" that accompanies this application and promissory note to understand your repayment plan options. Then, complete this section to select your repayment plan. Remember–

- All student loans must be repaid under the same repayment plan. Parent PLUS loans may be repaid under a different repayment plan.
- If you select the Income Contingent Repayment Plan, you must complete the "Repayment Plan Selection" and "Income Contingent Repayment Plan Consent to Disclosure of Tax Information" forms that accompany this application and promissory note. Your selection cannot be processed without these forms.
- **If you want to consolidate a defaulted student loan(s) and you have not made a satisfactory repayment arrangement with your current holder(s), you must select the Income Contingent Repayment Plan.**

31. Place an "X" in the box that corresponds to your repayment plan selection for each loan type. Note that Direct PLUS Consolidation Loans cannot be repaid under the Income Contingent Repayment Plan.

| | Income Contingent | Standard | Extended | Graduated |
|---|---|---|---|---|
| **STUDENT LOANS** *Direct Subsidized and Unsubsidized Consolidation Loans* | ☐ | ☐ | ☐ | ☐ |
| **PARENT LOANS** *Direct PLUS Consolidation Loans* | Not Available | ☐ | ☐ | ☐ |

## Section F: Promissory Note (Continued on reverse side)

To be completed and signed by borrower and spouse, if applicable.

**Promise to Pay:**

I promise to pay to the U.S. Department of Education (ED) all sums (hereafter "loan" or "loans") disbursed under the terms of this Promissory Note (note) to discharge my prior loan obligations, plus interest, and other fees that may become due as provided in this note. If I fail to make payments on this note when due, I will also pay collection costs including but not limited to attorney's fees and court costs. If ED accepts my application, I understand that ED will on my behalf send funds to the holder(s) of the loan(s) selected for consolidation in order to pay off this loan(s). I further understand that the amount of this loan will equal the sum of the amount(s) that the holder(s) of the loan(s) verified as the payoff balance(s) on that loan(s) selected for consolidation. My signature on this note will serve as my authorization to pay off the balance(s) of the loan(s) selected for consolidation as provided by the holder(s) of such loan(s).

This amount may be more or less than the estimated total balance I have indicated in Section D. Further, I understand that if any collection costs are owed on the loans selected for consolidation, these costs may be added to the principal balance of the consolidation loan.

I understand that this is a Promissory Note. I will not sign this note before reading it, including the text on the reverse side, even if I am advised not to read the note. I am entitled to an exact copy of this note and a statement of the Borrower's Rights and Responsibilities. My signature certifies that I have read, understand, and agree, to the terms and conditions of this note, including the Borrower Certification and Authorization printed on the reverse side and the accompanying Borrower's Rights and Responsibilities.

If consolidating jointly with my spouse, we agree to the same terms and conditions contained in the Borrower Certification and Authorization. In addition, we confirm that we are legally married to each other and understand and agree that we are and will continue to be held jointly and severally liable for the entire amount of the debt represented by the Federal Direct Consolidation Loan without regard to the amounts of our individual loan obligations that are consolidated and without regard to any change that may occur in our marital status. We understand that this means that one of us may be required to pay the entire amount due if the other is unable or refuses to pay. We understand that the Federal Direct Consolidation Loan we are applying for will be cancelled only if both of us qualify for cancellation. We further understand that we may postpone repayment of the loan only if we provide ED with written requests that confirm Federal Direct Consolidation Loan Program deferment or forbearance eligibility for both of us at the same time.

**I UNDERSTAND THAT THIS IS A FEDERAL LOAN THAT I MUST REPAY.**

32. Signature of Borrower [signature] Date 11/19/01

Signature of Spouse (if consolidating jointly) ____________________ Date ________

COPY

## Promissory Note (continued)

### Governing Law and Notices

This Promissory Note (note) applies to Federal Direct Consolidation Loans (Direct Consolidation Loans). In this note, the Higher Education Act of 1965, as amended, 20 U.S.C. 1070 et seq., and applicable U.S. Department of Education (ED) regulations are referred to as "the Act." The terms of this note will be interpreted according to the Act and other applicable federal statutes and regulations. Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this note.

### Disclosure of Terms

When the loan(s) that I am consolidating is paid off, I will be sent a Disclosure Statement and Repayment Schedule (disclosure). The disclosure will identify my Direct Consolidation Loan amount and additional terms of my loan. If I have questions about the information disclosed, I will contact ED. If the information in this note conflicts with the information in the disclosure, the disclosure will be controlling.

Important additional terms of this loan are disclosed in the statement of Borrower's Rights and Responsibilities accompanying this note.

I understand that my Direct Consolidation Loan may consist of up to three separate loan identification numbers depending on the loan(s) I choose to consolidate. These loan identification numbers will represent prior subsidized loans, prior unsubsidized loans, and prior parent PLUS loans. The Borrower's Rights and Responsibilities identifies which eligible loans are included in each of these categories. Each applicable loan identification number is represented by this note.

### Interest

Except for interest ED does not charge me during an in-school, grace, or deferment period, I agree to pay interest on the principal amount of my Direct Consolidation Loan from the date of disbursement until the loan is paid in full or discharged. ED may add interest that accrues but is not paid when due to the unpaid principal balance of this loan, as provided under the Act. This is called capitalization.

Interest will be calculated according to the applicable formulas provided for by the Act.

The interest rate on my Direct Consolidation Loan will be based on the weighted average of the interest rates on the loans being consolidated, rounded to the nearest higher one-eighth of one percent, but shall not exceed 8.25%. This is a fixed interest rate, which means that the rate will remain the same throughout the life of the loan.

### Late Charges and Collection Costs

If I fail to make any part of an installment payment within 30 days after it becomes due, ED may collect from me a late charge that will not exceed six cents for each dollar of each late installment. If I default on the loan, I will pay reasonable collection fees and costs, plus court costs and attorney's fees associated with collection of the debt.

### Grace Period

My Direct Consolidation Loan will receive a grace period if I meet all of the following conditions: (1) I have at least one William D. Ford Federal Direct Loan (Direct Loan) Program loan or attend a Direct Loan school, (2) at least one Direct Loan or Federal Family Education Loan (FFEL) Program loan that I am consolidating is in an in-school period, and (3) my application for a Direct Consolidation Loan is received by ED prior to the end of my in-school period. A six-month grace period begins the day after I cease to be enrolled at least half time at an eligible school. (If my enrollment status changes to less than half time after I apply but before the first disbursement of my Direct Consolidation Loan, I will not have to make payments on my Direct Consolidation Loan for the number of months remaining in my grace period at the time the first disbursement is made.)

### Repayment

Unless my Direct Consolidation Loan is in an in-school or grace period when it is disbursed, I must select a repayment plan. If I do not select a repayment plan, ED will choose a plan for me in accordance with ED's regulations. My first payment will be due within 60 days of the first disbursement of my Direct Consolidation Loan unless it is in an in-school, grace, or deferment period. A repayment schedule will be furnished to me and will establish repayment terms, including my payment amount and the length of my repayment period. Payments will be scheduled in monthly installments. The amount of my monthly payment may be adjusted to reflect changes in the variable interest rate. ED may adjust my repayment schedule if ED learns that any of the loans listed herein is not eligible to be consolidated. My repayment period will be up to 30 years in length, depending on the amount of my student loan indebtedness and my repayment plan. Any period for which ED has granted a deferment or forbearance will not be included in determining my repayment period.

I may prepay all or any part of the unpaid balance on my loan at any time without penalty. I agree to accept written notification of such pay off in lieu of receiving the original note.

### Acceleration and Default

At the option of ED, the entire unpaid balance shall become immediately due and payable when either of the following events occurs: (i) I make false representation that results in my receiving a loan for which I am not eligible, or (ii) I default on the loan.

The following events shall constitute a default on a loan: (i) I fail to pay the entire unpaid balance after ED has exercised its option under the preceding paragraph; or (ii) I fail to make installment payments when due, or fail to comply with other terms of the loan, and ED reasonably concludes I no longer intend to honor my repayment obligation. My failure must have persisted for at least 270 days. If I default, ED will capitalize all outstanding interest into a new principal balance.

If I default, this will be reported to national credit bureau organizations and will significantly and adversely affect my credit rating. I acknowledge that a default shall have additional adverse consequences to me as disclosed in the Borrower's Rights and Responsibilities.

Following default, the loan may at ED's option, be subject to income contingent repayment in accordance with the Act.

Any notice required to be given to me will be effective when mailed by first class mail to the latest address that ED has for me. I will immediately notify ED of any change of my address. Failure by ED to enforce or insist on compliance with any term on this note shall not waive any right of ED. No provision of this note may be changed or waived except in writing by ED. If any provision of this note is determined to be unenforceable, the remaining provisions shall remain in force.

### Borrower Certification and Authorization

I declare under penalty of perjury that the following is true and correct:

(1) I certify that the information provided by me and my spouse, if applicable, in this note is true, complete, and correct to the best of my knowledge and belief and is made in good faith.

(2) I certify that I do not now owe a refund on a Federal Pell Grant, Basic Educational Opportunity Grant, Federal Supplemental Educational Opportunity Grant, or a State Student Incentive Grant, or if I owe a refund, I have made satisfactory arrangements with the holder to repay the amount owed. I further certify that I am not now in default on any loan I am consolidating or, if I am in default, I have either made a satisfactory repayment arrangement with the holder of that defaulted loan, or I will repay under the income contingent repayment plan. I understand that income contingent repayment is not available for the parent PLUS loan portion of my Direct Consolidation Loan.

(3) I certify that all of the loans selected have been used to finance my education, my spouse's education, or my child's education.

(4) I certify that I do not have any other application pending for a Federal Consolidation Loan with any other lender. If my student loans are in a grace or repayment period and if none of the loans I am consolidating is a Direct Loan Program loan, I further certify that I have sought and been unable to obtain a Federal Consolidation Loan from a FFEL Program lender, or a lender would not provide me with a Federal Consolidation Loan with income-sensitive repayment terms acceptable to me. If I have parent PLUS loans and none of the loans I am consolidating is a Direct Loan Program loan, I further certify that I have sought and been unable to obtain a Federal Consolidation Loan from a FFEL Program lender. If, however, I am consolidating jointly with my spouse, only one borrower, my spouse or I, must have sought a Federal Consolidation Loan from a FFEL Program lender.

(5) I understand that this loan shall, to the extent used to discharge loans that I have selected, count against the applicable aggregate loan limits under the Act.

(6) I understand that the amount of my Direct Consolidation Loan is the sum of the balance(s) of my outstanding eligible loan(s) that I have chosen to consolidate. My outstanding balance on each loan to be consolidated includes unpaid principal, unpaid accrued interest, and late charges as defined by federal regulations and as certified by each holder. Collection costs may also be included. For a Direct Loan or FFEL Program loan that is in default, ED limits collection costs that may be charged to the borrower to no more than those currently authorized under the FFEL Program and may impose reasonable limits on collection costs paid to the holder. If the amount ED advances to my holder(s) exceeds the amount needed to pay off the balance(s) of the selected loan(s), I understand that the holder will refund the excess to ED for application against the outstanding balance of this loan. If the amount that ED advances to my holder(s) is less than the amount needed to pay off the balance(s) of the loan(s) selected for consolidation, ED will include the remaining amount in this loan unless I pay the remaining balance myself.

(7) I authorize ED to contact the holder(s) identified on my application to determine the eligibility and/or payoff amount for the loan(s) I have identified. I further authorize release to ED or its agent any information required to consolidate my education loan(s) pursuant to the Act.

(8) I authorize ED to issue the proceeds of my Direct Consolidation Loan to the holder(s) of the loan(s) so selected to discharge the debt.

(9) I authorize ED to investigate my credit record and report information concerning my loan status to proper persons and organizations authorized to receive this information.

(10) I authorize the release of information pertinent to this loan: (i) by my school(s) and ED, to members of my immediate family unless I submit written direction otherwise; and (ii) by and amongst my school(s), ED, and their agents.

(11) I authorize my school(s), ED, and their agents, to verify my social security number with the Social Security Administration (SSA) and, if the number on my loan record is incorrect, then I authorize SSA to disclose my correct social security number to these parties.

**Direct Loans**
William D. Ford Federal Direct Loan Program

EXHIBIT #12
Pfeiffer v Spelling
C.A. #1:07cv00522 (EGS)

## Billing Statement - Negative Amortization

Please send your payment. Note that (1) your monthly payment is less than interest owed on your loan and (2) uncapitalized accrued interest on your account is currently $285.67. When unpaid interest is capitalized (added to principal) once a year, it will increase the cost of your loan. To avoid capitalization, you can (1) send a payment to cover all or part of interest owed or (2) pay at least the amount of interest charged monthly to your account (about $657.75).

**Current Month Due Amount:** $507.57 **Current Payment Due Date:** 12/21/2002
**Past Due Amount:** $0.00
**Total Amount Due:** $507.57

**If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing Center immediately to discuss alternative arrangements.**

**All payments are applied first to unpaid fees due and then to unpaid accrued interest. Any remaining amount will automatically be applied to your principal.**

| ACCOUNT NUMBER | CURRENT BALANCE | CURRENT DUE | PAST DUE | LATE CHARGES AND FEES | TOTAL DUE |
|---|---|---|---|---|---|
| REDACTED | $114,807.44 | $507.57 | $0.00 | $0.00 | $507. |
| TOTALS: | $114,807.44 | $507.57 | $0.00 | $0.00 | $507. |

$ 750.00 12/7/02 # 5511

BILFAV04

Please return coupon below with your payment

CONFIDENTIAL

P00279

# Direct Loans

William D. Ford Federal Direct Loan Program

**Billing Statement - Negative Amortization**

Please send your payment. Note that (1) your monthly payment is less than interest owed on your loan and (2) uncapitalized accrued interest on your account is currently $216.76. When unpaid interest is capitalized (added to principal) once a year, it will increase the cost of your loan. To avoid capitalization, you can (1) send a payment to cover all or part of interest owed or (2) pay at least the amount of interest charged monthly to your account (about $659.77).

**Current Month Due Amount:** $507.57 **Current Payment Due Date:** 09/21/2002
**Past Due Amount:** $0.00
**Total Amount Due:** $507.57

**If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing Center immediately to discuss alternative arrangements.**

**All payments are applied first to unpaid fees due and then to unpaid accrued interest. Any remaining amount will automatically be applied to your principal.**

| ACCOUNT NUMBER | CURRENT BALANCE | CURRENT DUE | PAST DUE | LATE CHARGES AND FEES | TOTAL DUE |
|---|---|---|---|---|---|
| REDACTED | $115,159.29 | $507.57 | $0.00 | $0.00 | $507.5 |
| TOTALS: | $115,159.29 | $507.57 | $0.00 | $0.00 | $507.5 |

pd 9/7/02 ck 5396 $ 750.00

BILFAV04

Please return coupon below with your payment

CONFIDENTIAL

P00280

**Direct Loans**

William D. Ford Federal Direct Loan Program

**Billing Statement - Negative Amortization**

Please send your payment. Note that (1) your monthly payment is less than interest owed on your loan and (2) uncapitalized accrued interest on your account is currently $130.12. When unpaid interest is capitalized (added to principal) once a year, it will increase the cost of your loan. To avoid capitalization, you can (1) send a payment to cover all or part of interest owed or (2) pay at least the amount of interest charged monthly to your account (about $660.07).

**Current Month Due Amount:** $507.57 **Current Payment Due Date:** 08/21/2002
**Past Due Amount:** $0.00
**Total Amount Due:** $507.57

**If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing Center immediately to discuss alternative arrangements.**

**All payments are applied first to unpaid fees due and then to unpaid accrued interest. Any remaining amount will automatically be applied to your principal.**

| ACCOUNT NUMBER | CURRENT BALANCE | CURRENT DUE | PAST DUE | LATE CHARGES AND FEES | TOTA DUE |
|---|---|---|---|---|---|
| REDACTED | $115,212.02 | $507.57 | $0.00 | $0.00 | $507.5 |
| TOTALS: | $115,212.02 | $507.57 | $0.00 | $0.00 | $507.5 |

pd. 8/13/02 #5389 $725.00

BILFAV04

Please return coupon below with your payment

CONFIDENTIAL

**Direct Loans**

William D. Ford Federal Direct Loan Program

## Billing Statement - Negative Amortization

Please send your payment. Note that (1) your monthly payment is less than interest owed on your loan and (2) uncapitalized accrued interest on your account is currently $216.92. When unpaid interest is capitalized (added to principal) once a year, it will increase the cost of your loan. To avoid capitalization, you can (1) send a payment to cover all or part of interest owed or (2) pay at least the amount of interest charged monthly to your account (about $660.24).

**Current Month Due Amount:** $512.07 **Current Payment Due Date:** 07/21/2002
**Past Due Amount:** $0.00
**Total Amount Due:** $512.07

**If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing Center immediately to discuss alternative arrangements.**

**All payments are applied first to unpaid fees due and then to unpaid accrued interest. Any remaining amount will automatically be applied to your principal.**

| ACCOUNT NUMBER | CURRENT BALANCE | CURRENT DUE | PAST DUE | LATE CHARGES AND FEES | TOTAL DUE |
|---|---|---|---|---|---|
| REDACTED | $115,241.84 | $512.07 | $0.00 | $0.00 | $512.0 |
| TOTALS: | $115,241.84 | $512.07 | $0.00 | $0.00 | $512.0 |

Pd #5373 $725.00 7/9/02

BILFAV04

Please return coupon below with your payment

CONFIDENTIAL

P00282





**Billing Statement - Negative Amortization**

Please send your payment. Note that (1) your monthly payment is less than interest owed on your loan and (2) uncapitalized accrued interest on your account is currently $238.81. When unpaid interest is capitalized (added to principal) once a year, it will increase the cost of your loan. To avoid capitalization, you can (1) send a payment to cover all or part of interest owed or (2) pay at least the amount of interest charged monthly to your account (about $660.79).

Current Month Due Amount: $512.07 Current Payment Due Date: 06/21/2002
Past Due Amount: $0.00
Total Amount Due: $512.07

**If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing Center immediately to discuss alternative arrangements.**

**All payments are applied first to unpaid fees due and then to unpaid accrued interest. Any remaining amount will automatically be applied to your principal.**

| ACCOUNT NUMBER | CURRENT BALANCE | CURRENT DUE | PAST DUE | LATE CHARGES AND FEES | TOTAL DUE |
|---|---|---|---|---|---|
| REDACTED | $115,337.26 | $512.07 | $0.00 | $0.00 | $512.0 |
| TOTALS: | $115,337.26 | $512.07 | $0.00 | $0.00 | $512.0 |

BILFAV04

Please return coupon below with your payment

CONFIDENTIAL

# Direct Loans

William D. Ford Federal Direct Loan Program

## Billing Statement - Negative Amortization

Please send your payment. Note that (1) your monthly payment is less than interest owed on your loan and (2) uncapitalized accrued interest on your account is currently $152.04. When unpaid interest is capitalized (added to principal) once a year, it will increase the cost of your loan. To avoid capitalization, you can (1) send a payment to cover all or part of interest owed or (2) pay at least the amount of interest charged monthly to your account (about $661.08).

**Current Month Due Amount:** $512.07 **Current Payment Due Date:** 05/21/2002
**Past Due Amount:** $0.00
**Total Amount Due:** $512.07

**If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing Center immediately to discuss alternative arrangements.**

**All payments are applied first to unpaid fees due and then to unpaid accrued interest. Any remaining amount will automatically be applied to your principal.**

| ACCOUNT NUMBER | CURRENT BALANCE | CURRENT DUE | PAST DUE | LATE CHARGES AND FEES | TOTA DUE |
|---|---|---|---|---|---|
| REDACTED | $115,388.96 | $512.07 | $0.00 | $0.00 | $512. |
| TOTALS: | $115,388.96 | $512.07 | $0.00 | $0.00 | $512. |

@ 725 [?]
5/13/02
#5355
pd.

BILFAV04

Please return coupon below with your payment

CONFIDENTIAL

**Direct Loans**
William D. Ford Federal Direct Loan Program

**Billing Statement - Negative Amortization**

Please send your payment. Note that (1) your monthly payment is less than interest owed on your loan and (2) uncapitalized accrued interest on your account is currently $152.19. When unpaid interest is capitalized (added to principal) once a year, it will increase the cost of your loan. To avoid capitalization, you can (1) send a payment to cover all or part of interest owed or (2) pay at least the amount of interest charged monthly to your account (about $661.75).

**Current Month Due Amount:** $512.07 **Current Payment Due Date:** 04/21/2002
**Past Due Amount:** $0.00
**Total Amount Due:** $512.07

**If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing Center immediately to discuss alternative arrangements.**

**All payments are applied first to unpaid fees due and then to unpaid accrued interest. Any remaining amount will automatically be applied to your principal.**

| ACCOUNT NUMBER | CURRENT BALANCE | CURRENT DUE | PAST DUE | LATE CHARGES AND FEES | TOTAL DUE |
|---|---|---|---|---|---|
| REDACTED | $115,505.20 | $512.07 | $0.00 | $0.00 | $512.0 |
| | | pd 4/19/02 $725.00 #5342 | | | |
| TOTALS: | $115,505.20 | $512.07 | $0.00 | $0.00 | $512.0 |

BILFAV04

Please return coupon below with your payment

CONFIDENTIAL

**Direct Loans**

William D. Ford Federal Direct Loan Program

**Billing Statement - Negative Amortization**

Please send your payment. Note that (1) your monthly payment is less than interest owed on your loan and (2) uncapitalized accrued interest on your account is currently $167.16. When unpaid interest is capitalized (added to principal) once a year, it will increase the cost of your loan. To avoid capitalization, you can (1) send a payment to cover all or part of interest owed or (2) pay at least the amount of interest charged monthly to your account (about $662.33).

**Current Month Due Amount:** $512.07 **Current Payment Due Date:** 03/21/2002
**Past Due Amount:** $0.00
**Total Amount Due:** $512.07

If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing Center immediately to discuss alternative arrangements.

All payments are applied first to unpaid fees due and then to unpaid accrued interest. Any remaining amount will automatically be applied to your principal.

| ACCOUNT NUMBER | CURRENT BALANCE | CURRENT DUE | PAST DUE | LATE CHARGES AND FEES | TOTAL DUE |
|---|---|---|---|---|---|
| REDACTED | $115,606.08 | $512.07 | $0.00 | $0.00 | $512.0 |
| TOTALS: | $115,606.08 | $512.07 | $0.00 | $0.00 | $512.( |

#5328 Pd. $725.00 3/12/02

BILFAV04

Please return coupon below with your payment

CONFIDENTIAL

**Direct Loans**

William D. Ford Federal Direct Loan Program

**Billing Statement - Negative Amortization**

Please send your payment. Note that (1) your monthly payment is less than interest owed on your loan and (2) uncapitalized accrued interest on your account is currently $282.88. When unpaid interest is capitalized (added to principal) once a year, it will increase the cost of your loan. To avoid capitalization, you can (1) send a payment to cover all or part of interest owed or (2) pay at least the amount of interest charged monthly to your account (about $587.53).

**Current Month Due Amount:** $512.07 **Current Payment Due Date:** 02/21/2002
**Past Due Amount:** $0.00
**Total Amount Due:** $512.07

**If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing Center immediately to discuss alternative arrangements.**

**All payments are applied first to unpaid fees due and then to unpaid accrued interest. Any remaining amount will automatically be applied to your principal.**

| ACCOUNT NUMBER | CURRENT BALANCE | CURRENT DUE | PAST DUE | LATE CHARGES AND FEES | TOTAL DUE |
|---|---|---|---|---|---|
| REDACTED | $115,606.08 | $512.07 | $0.00 | $0.00 | $512.0 |
| TOTALS: | $115,606.08 | $512.07 | $0.00 | $0.00 | $512.0 |

Pd $725.00 2/12/02 #5321

BILFAV04

Please return coupon below with your payment

CONFIDENTIAL





Direct
Loans
William D. Ford Federal Direct Loan Program

**Payment Due Notice**

Your Direct Loan payment is now due. Please pay the Total Amount Due, mailing the coupon below with your payment. Thank you. For your convenience, you may access loan payment information on your account via the Internet at:

**http://www.dlservicer.ed.gov**

**Current Month Due Amount:** $512.07 **Current Payment Due Date:** 01/21/2002
**Past Due Amount:** $0.00
**Total Amount Due:** $512.07

If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing Center immediately to discuss alternative arrangements.

All payments are applied first to unpaid fees due and then to unpaid accrued interest. Any remaining amount will automatically be applied to your principal.

| ACCOUNT NUMBER | CURRENT BALANCE | CURRENT DUE | PAST DUE | LATE CHARGES AND FEES | TOTA DUI |
|---|---|---|---|---|---|
| REDACTED | $115,634.58 | $512.07 | $0.00 | $0.00 | $512. |
| TOTALS: | $115,634.58 | $512.07 | $0.00 | $0.00 | $512. |

$725.00 pd 1/12/02 5473

BILLAV05

Please return coupon below with your payment

CONFIDENTIAL

Term:

- 1098-E
- Ability to Benefit
- Academic Year
- Account
- Account Number
- Accrue
- Accrued Through Date
- Action Programs Deferment
- Adjusted Gross Income (AGI)
- Administrative Forbearance
- Adverse Credit History
- Alternative Documentation of Income
- Alternative Repayment Plan
- Americorps Forbearance
- Amortization
- Applied to Fees & Charges
- Applied to Interest
- Applied to Principal
- Armed Forces Deferment
- Authentication
- Bankruptcy Discharge
- Billing Cycle
- Borrower
- Call Code
- Cancellation
- Capitalization
- Capitalized Interest
- Child Care Facility
- Child Care Provider
- Child Care Provider Loan Forgiveness

Payment Due Date

Definition:

The date during the month when payment of the current due amount must be received. If any past due amounts or fees/charges are outstanding, they are due immediately.



EXHIBIT #14
Pfeiffer v Spelling
C.A.# 1:07cv00522 (EGS)

**Direct Loans**
William D. Ford Federal Direct Loan Program

# ANNUAL INTEREST CAPITALIZATION DISCLOSURE FOR NEGATIVELY AMORTIZED ACCOUNTS

ACCOUNT NUMBER REDACTED

06/30/2002

ACCOUNT STATEMENT

BRENDA K PFEIFFER
1360 14TH ST
ST JOSEPH, WI 54082

## NOTIFICATION OF CAPITALIZATION

During the past year, your total payments were less than your accrued interest on the loan(s) you had or have been repaying under the Income Contingent Repayment (ICR) plan (this is called negative amortization). We capitalized the interest (totaling $368.76), meaning we added it to your principal balance as required under the repayment plan.

## MONTHLY PAYMENT AMOUNT

As a result of capitalizing the unpaid interest, your monthly payment (see below) may have changed. If you cannot pay your monthly amount, call our toll-free number, 1-800-848-0979. THIS IS NOT A BILL. Your next billing notification will reflect this new amount.

Please call us if you have questions.

PLAINTIFF'S DEPOSITION EXHIBIT 14

New Monthly Payment
$507.57

FOR YOUR DIRECT CONSOLIDATION LOANS, THIS DISCLOSURE IS BASED ONLY ON TOTAL DEBT CONSOLIDATED BY THIS DATE. YOUR PAYMENT AMOUNT WILL BE RECALCULATED IF YOUR DEBT IS FULLY CONSOLIDATED AT A LATER DATE.

**Your interest rate information is shown on the back of this Notice.**

CONFIDENTIAL

OUR RECORDS INDICATE

| | | | |
|---|---|---|---|
| NET DISBURSEMENT AMOUNT | $116,181.50 | LOAN TYPE | CONSOL |
| CAPITALIZED INTEREST | $368.76 | SOCIAL SECURITY NO | REDACTED |
| TOTAL PRINCIPAL PAID | $939.66 | TELEPHONE NO. | |
| TOTAL INTEREST PAID | $4,110.34 | LOAN STATUS | REPAYMENT |
| TOTAL LATE CHARGES PAID | $.00 | CURRENTLY ENROLLED AT | |
| OUTSTANDING PRINCIPAL BAL | $115,610.60 | | |
| LAST PAYMENT DEPOSITED | 06/14/2002 | ☐ FULL TIME ☐ HALF TIME ☐ PART TIME | |
| TO PRINCIPAL | $95.42 | FORBEARANCE EXPIRES | |
| TO INT $629.58 LATE CHRG | $.00 | EXPECTED/ACTUAL SEPARATION DATE | 12/31/2001 |
| LATE CHARGES DUE | $.00 | | |
| PAST DUE AMOUNT | $.00 | DEFERMENT EXPIRES | |
| CURRENT DUE AMOUNT | $512.07 | FIRST/NEXT INSTALLMENT | 07/21/2002 |
| TOTAL AMOUNT DUE | $512.07 | ACCRUED INT. THROUGH 06/30/2002 | $.00 |

Please refer to the back of this statement for important information.

P00307

DSC4AV04

00105172

*Our Mission is to Ensure Equal Access to Education and to Promote Educational Excellence Throughout the Nation*

Handwritten annotations: "How can this be??" → "If the interest is pd first & this is true - No principal would have decreased?!" ; "16 days interest, ACCRUED" ; "not due or unpaid from prev. yr." ; "Where does this come from?"

EXHIBIT #15
Pfeiffer v Spelling
C.A.# 1:07cv00522 (EGS)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Brenda Kay Pfeiffer, on behalf of herself and all others similarly situated,<br><br>*Plaintiff,*<br><br>vs.<br><br>Margaret Spellings, in her official capacity as United States Secretary of Education, the United States Department of Education, and the United States of America,<br><br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil File No. 01:07-cv-00522 (EGS)<br>[Judge Sullivan]<br><br>CLASS ACTION |

**DECLARATION OF BRENDA K. PFEIFFER**

I, Brenda K. Pfeiffer, hereby declare and state, as follows:

1. I am over the age of eighteen years. I have personal knowledge of the facts set forth herein, and am competent to testify thereto.

2. Attached hereto as Exhibit A are true and correct copies of billing statements I received each month from the Department of Education in 2004, including a "Notice of Capitalization" dated June 30, 2004.

3. Attached hereto as Exhibit B are true and correct copies of billing statements I received each month from the Department of Education in 2005, including a "Notice of Capitalization" dated June 30, 2005.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 28th day of January, 2008 in Wyoming, Minnesota.

Brenda K. Pfeiffer

# Direct Loans Billing Statement

2004

BRENDA K PFEIFFER

REDACTED

Account Number

Questions? 1-800-848-0979

## Negative Amortization Billing Statement - Payment Due 12/21/2004

| Current Repayment Plan | Monthly Payment Amount | Amount Past Due | Late Charges Due | Total Payment Due |
|---|---|---|---|---|
| Income Contingent | $543.23 | $0.00 | $0.00 | $543.23 |

**Please Pay This Amount by 12/21/2004**

## Important Account Information

Please note that (1) your *Monthly Payment Amount* is less than interest owed on your loan(s) and (2) uncapitalized accrued interest on your loan(s) is currently $143.29.

When unpaid interest is capitalized once a year, it will increase the cost of your loan(s). To avoid or reduce capitalization, you can (1) send a payment to cover all or a portion of interest owed or (2) pay at least the amount of interest charged monthly to your loan(s) (about $623.07).

### Activity From 10/25/2004 To 11/21/2004

| | Date | Principal Balance | Interest Balance | Late Charges |
|---|---|---|---|---|
| Opening Balance | 10/25/2004 | $109,001.37 | $246.20 | $0.00 |
| Net Disbursement Activity | | $0.00 | | |
| Net Principal Adjustments | | $0.00 | | |
| Capitalized Interest | | $0.00 | $0.00 | |
| Rebate Activity | | $0.00 | | |
| Interest/Late Charges - Accrued/Adjusted | 11/21/2004 | | $574.15 | $0.00 |
| Payment Applied... $925.00 | 11/15/2004 | $247.94- | $677.06- | $0.00 |
| Ending Balance | 11/21/2004 | $108,753.43 | $143.29 | $0.00 |

**Current Balance - As of 11/21/2004 = $108,896.72**

Your payments are due on the 21st of each month.

*If you prepay your loan(s), your next payment due date will be advanced into the future. See the back of this statement for more prepayment information.*

If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing Center immediately at the number above to discuss alternative arrangements.

Identity theft is one of the fastest growing crimes in the United States.

How can I protect myself from identity theft?

Check your monthly credit card and bank statements for unusual activity.

For more information, visit www.studentaid.ed.gov/idtheft

FSA FEDERAL STUDENT AID

$925.00 pd. #5716 12/9/04

.0188227 x rate x 108,753.43 = 143.29

Make Payments Electronically

Make payments on your loan(s) without having to write or mail a check. You can use this service anytime. Visit us at www.dl.ed.gov to make a payment now!

000077671

RC

BILFAV07

**Direct Loans** Billing Statement

BRENDA K PFEIFFER

REDACTED

Account Number

Questions? 1-800-848-0979

Negative Amortization Billing Statement - Payment Due 11/21/2004

| Current Repayment Plan | Monthly Payment Amount | Amount Past Due | Late Charges Due | Total Payment Due |
|---|---|---|---|---|
| Income Contingent | $548.42 | $0.00 | $0.00 | $548.42 |

Please Pay This Amount by 11/21/2004

## Important Account Information

Please note that (1) your *Monthly Payment Amount* is less than interest owed on your loan(s) and (2) uncapitalized accrued interest on your loan(s) is currently $246.20.

When unpaid interest is capitalized once a year, it will increase the cost of your loan(s). To avoid or reduce capitalization, you can (1) send a payment to cover all or a portion of interest owed or (2) pay at least the amount of interest charged monthly to your loan(s) (about $624.49).

### Activity From 09/27/2004 To 10/24/2004

| | Date | Principal Balance | Interest Balance | Late Charges |
|---|---|---|---|---|
| Opening Balance | 09/27/2004 | $109,370.53 | $226.45 | $0.00 |
| Net Disbursement Activity | | $0.00 | | |
| Net Principal Adjustments | | $0.00 | | |
| Capitalized Interest | | $0.00 | $0.00 | |
| Rebate Activity | | $0.00 | | |
| Interest/Late Charges - Accrued/Adjusted | 10/24/2004 | | $575.59 | $0.00 |
| Payment Applied... $925.00 | 10/13/2004 | $369.16- | $555.84- | $0.00 |
| Ending Balance | 10/24/2004 | $109,001.37 | $246.20 | $0.00 |

**Current Balance - As of 10/24/2004 = $109,247.57**

Your payments are due on the 21st of each month.

*If you prepay your loan(s), your next payment due date will be advanced into the future. See the back of this statement for more prepayment information.*

If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing center immediately at the number above to discuss alternative arrangements.

Identity theft is one of the fastest growing crimes in the United States.

How can I protect myself from identity theft?

Report lost or stolen credit cards immediately.

For more information, visit: www.studentaid.ed.gov/idtheft

FSA FEDERAL STUDENT AID

$925.00 11/6/04 #5709 pd.

Make Payments Electronically
Make payments on your loan(s) without having to write or mail a check. You can use this service anytime. Visit us at www.dl.ed.gov to make a payment now!

000087331

RC

BILFAV07

CONFIDENTIAL

P00364

BRENDA K PFEIFFER

# Direct Loans Billing Statement

REDACTED

| Account Number |
Questions? 1-800-848-0979

## Negative Amortization Billing Statement - Payment Due 10/21/2004

| Current Repayment Plan | Monthly Payment Amount | Amount Past Due | Late Charges Due | Total Payment Due |
|---|---|---|---|---|
| Income Contingent | $548.42 | $0.00 | $0.00 | $548.42 |

Please Pay This Amount by 10/21/2004

## Important Account Information

Please note that (1) your *Monthly Payment Amount* is less than interest owed on your loan(s) and (2) uncapitalized accrued interest on your loan(s) is currently $226.45.

When unpaid interest is capitalized once a year, it will increase the cost of your loan(s). To avoid or reduce capitalization, you can (1) send a payment to cover all or a portion of interest owed or (2) pay at least the amount of interest charged monthly to your loan(s) (about $626.60).

### Activity From 08/23/2004 To 09/26/2004

| | Date | Principal Balance | Interest Balance | Late Charges |
|---|---|---|---|---|
| Opening Balance | 08/23/2004 | $109,630.83 | $144.45 | $0.00 |
| Net Disbursement Activity | | $0.00 | | |
| Net Principal Adjustments | | $0.00 | | |
| Capitalized Interest | | $0.00 | $0.00 | |
| Rebate Activity | | $0.00 | | |
| Interest/Late Charges - Accrued/Adjusted | 09/26/2004 | | $721.70 | $0.00 |
| Payment Applied... $900.00 | 09/16/2004 | $260.30 | $639.70 | $0.00 |
| Ending Balance | 09/26/2004 | $109,370.53 | $226.45 | $0.00 |

**Current Balance - As of 09/26/2004 = $109,596.98**
Your payments are due on the 21st of each month.

If you prepay your loan(s), your next payment due date will be advanced into the future. See the back of this statement for more prepayment information.

If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing center immediately at the number above to discuss alternative arrangements.

Identity theft is one of the fastest growing crimes in the United States.

How can I protect myself from identity theft?

Always use a firewall program on your computer, especially if you leave your computer connected to the internet 24 hours a day.

For more information, visit www.studentaid.ed.gov/idtheft

Make Payments Electronically
Make payments on your loan(s) without having to write or mail a check. You can use this service anytime. Visit us at www.dl.ed.gov to make a payment now!

000089963
RC

BILFAV07

CONFIDENTIAL

P00365

**Direct Loans** Billing Statement

BRENDA K PFEIFFER

REDACTED

Account Number

Questions? 1-800-848-0979

## Negative Amortization Billing Statement - Payment Due 09/21/2004

| Current Repayment Plan | Monthly Payment Amount | Amount Past Due | Late Charges Due | Total Payment Due |
|---|---|---|---|---|
| Income Contingent | $548.42 | $0.00 | $0.00 | $548.42 |

**Please Pay This Amount by 09/21/2004**

### Important Account Information

Please note that (1) your *Monthly Payment Amount* is less than interest owed on your loan(s) and (2) uncapitalized accrued interest on your loan(s) is currently $144.45.

When unpaid interest is capitalized once a year, it will increase the cost of your loan(s). To avoid or reduce capitalization, you can (1) send a payment to cover all or a portion of interest owed or (2) pay at least the amount of interest charged monthly to your loan(s) (about $628.09).

### Activity From 07/26/2004 To 08/22/2004

| | Date | Principal Balance | Interest Balance | Late Charges |
|---|---|---|---|---|
| Opening Balance | 07/26/2004 | $109,971.93 | $124.20 | $0.00 |
| Net Disbursement Activity | | $0.00 | | |
| Net Principal Adjustments | | $0.00 | | |
| Capitalized Interest | | $0.00 | $0.00 | |
| Rebate Activity | | $0.00 | | |
| Interest/Late Charges - Accrued/Adjusted | 08/22/2004 | | $579.15 | $0.00 |
| Payment Applied... $900.00 | 08/16/2004 | $341.10- | $558.90- | $0.00 |
| Ending Balance | 08/22/2004 | $109,630.83 | $144.45 | $0.00 |

**Current Balance - As of 08/22/2004 = $109,775.28**

Your payments are due on the 21st of each month.

*If you prepay your loan(s), your next payment due date will be advanced into the future. See the back of this statement for more prepayment information.*

Identity theft is one of the fastest growing crimes in the United States.

**How can I protect myself from identity theft?**

Do not download files sent to you by strangers or click on hyperlinks from people you don't know.

For more information, visit www.studentaid.ed.gov/idtheft

FSA FEDERAL STUDENT AID

Pd. $900 ✓ #5694 9/7/04

If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing center immediately at the number above to discuss alternative arrangements.

**Make Payments Electronically**
Make payments on your loan(s) without having to write or mail a check. You can use this service anytime. Visit us at www.dl.ed.gov to make a payment now!

000085814-

RC

BILFAV07

CONFIDENTIAL

**Direct Loans** Billing Statement

BRENDA K PFEIFFER

REDACTED

Account Number

Questions? 1-800-848-0979

Also: isn't there something about not charging cap. int. if bal: exceeds 10% of orig?

Negative Amortization Billing Statement - Payment Due 08/21/2004

| Current Repayment Plan | Monthly Payment Amount | Amount Past Due | Late Charges Due | Total Payment Due |
|---|---|---|---|---|
| Income Contingent | $548.42 | $0.00 | $0.00 | $548.42 |

Please Pay This Amount by 08/21/2004

## Important Account Information

Please note that (1) your *Monthly Payment Amount* is less than interest owed on your loan(s) and (2) uncapitalized accrued interest on your loan(s) is currently $124.20.

When unpaid interest is capitalized once a year, it will increase the cost of your loan(s). To avoid or reduce capitalization, you can (1) send a payment to cover all or a portion of interest owed or (2) pay at least the amount of interest charged monthly to your loan(s) (about $630.05).

If payment 1st look - goes up, posting date differ!

Identity theft is one of the fastest growing crimes in the United States.

How can I protect myself from identity theft?

Always shred pre-approved credit applications and other financial documents before discarding them.

For more information visit www.studentaid.ed.gov/idtheft

### Activity From 06/28/2004 To 07/25/2004

| | Date | Principal Balance | Interest Balance | Late Charges |
|---|---|---|---|---|
| Opening Balance | 06/28/2004 | $110,269.27 | $145.29 | $0.00 |
| Net Disbursement Activity | | $0.00 | | |
| Net Principal Adjustments | | $0.00 | | |
| Capitalized Interest | | $207.56 | $207.56- | |
| Rebate Activity | | $0.00 | | |
| Interest/Late Charges - Accrued/Adjusted | 07/25/2004 | | $581.57 | $0.00 |
| Payment Applied... $900.00 | 07/20/2004 | $504.90- | $395.10- | $0.00 |
| Ending Balance | 07/25/2004 | $109,971.93 | $124.20 | $0.00 |

**Current Balance - As of 07/25/2004 = $110,096.13**

Your payments are due on the 21st of each month.

*If you prepay your loan(s), your next payment due date will be advanced into the future. See the back of this statement for more prepayment information.*

207.56 added to loan 6/30/04 did they credit on 6/30 or 7/20/04? G. Entry

If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing center immediately at the number above to discuss alternative arrangements.

pd 8/18/04 # 5691 900.00 No capit. 601.91 interest 298.09 princ. $109971.18, 124

Make Payments Electronically
Make payments on your loan(s) without having to write or mail a check. You can use this service anytime. Visit us at www.dl.ed.gov to make a payment now!

000019422

RC

BILFAV07

CONFIDENTIAL

**Direct Loans** Billing Statement

BRENDA K PFEIFFER

REDACTED

Account Number

Questions? 1-800-848-0979

## Negative Amortization Billing Statement - Payment Due 07/21/2004

| Current Repayment Plan | Monthly Payment Amount | Amount Past Due | Late Charges Due | Total Payment Due |
|---|---|---|---|---|
| Income Contingent | $553.92 | $0.00 | $0.00 | $553.92 |

**Please Pay This Amount by 07/21/2004**

### Important Account Information

Please note that (1) your *Monthly Payment Amount* is less than interest owed on your loan(s) and (2) uncapitalized accrued interest on your loan(s) is currently $145.29.

When unpaid interest is capitalized once a year, it will increase the cost of your loan(s). To avoid or reduce capitalization, you can (1) send a payment to cover all or a portion of interest owed or (2) pay at least the amount of interest charged monthly to your loan(s) (about $631.75).

### Activity From 05/24/2004 To 06/27/2004

| | Date | Principal Balance | Interest Balance | Late Charges |
|---|---|---|---|---|
| Opening Balance | 05/24/2004 | $110,503.67 | $83.20 | $0.00 |
| Net Disbursement Activity | | $0.00 | | |
| Net Principal Adjustments | | $0.00 | | |
| Capitalized Interest | | $0.00 | $0.00 | |
| Rebate Activity | | $0.00 | | |
| Interest/Late Charges - Accrued/Adjusted | 06/27/2004 | | $727.69 | $0.00 |
| Payment Applied... $900.00 | 06/21/2004 | $234.40- | $665.60- | $0.00 |
| Ending Balance | 06/27/2004 | $110,269.27 | $145.29 | $0.00 |

**Current Balance - As of 06/27/2004 = $110,414.56**

Your payments are due on the 21st of each month.

*If you prepay your loan(s), your next payment due date will be advanced into the future. See the back of this statement for more prepayment information.*

Identity theft is one of the fastest growing crimes in the United States.

How can I protect myself from identity theft?

Never give personal or financial information over the phone or Internet unless you initiated the contact.

For more information visit www.studentaid.ed.gov/idtheft

FSA FEDERAL STUDENT AID

pd. #5680 $900.00 7/12/04

If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing center immediately at the number above to discuss alternative arrangements.

**Make Payments Electronically**
Make payments on your loan(s) without having to write or mail a check. You can use this service anytime. Visit us at www.dl.ed.gov to make a payment now!

000090512 BILFAV07

RC

CONFIDENTIAL



Direct Loans
William D. Ford Federal Direct Loan Program

## ANNUAL INTEREST CAPITALIZATION DISCLOSURE FOR NEGATIVELY AMORTIZED ACCOUNTS

ACCOUNT NUMBER **REDACTED** 06/30/2004

BRENDA K PFEIFFER

ACCOUNT STATEMENT

### NOTIFICATION OF CAPITALIZATION

During the past year, your total payments were less than your accrued interest on the loan(s) you had or have been repaying under the Income Contingent Repayment (ICR) plan (this is called negative amortization). We capitalized the interest (totaling $207.56), meaning we added it to your principal balance as required under the repayment plan.

why?

### MONTHLY PAYMENT AMOUNT

As a result of capitalizing the unpaid interest, your monthly payment (see below) may have changed. If you cannot pay your monthly amount, call our toll-free number, 1-800-848-0979. THIS IS NOT A BILL. Your next billing notification will reflect this new amount.

Please call us if you have questions.

New Monthly Payment
$548.42

6/21/04 (last payment posting)
– 6/30/04 = 10 days
110269.27 x rate x 10 = $207.56

FOR YOUR DIRECT CONSOLIDATION LOANS, THIS DISCLOSURE IS BASED ONLY ON TOTAL DEBT CONSOLIDATED BY THIS DATE. YOUR PAYMENT AMOUNT WILL BE RECALCULATED IF YOUR DEBT IS FULLY CONSOLIDATED AT A LATER DATE.

**Your interest rate information is shown on the back of this Notice.**

CONFIDENTIAL

OUR RECORDS INDICATE

| | | | |
|---|---|---|---|
| NET DISBURSEMENT AMOUNT | $116,181.50 | LOAN TYPE | CONSOL |
| CAPITALIZED INTEREST | $576.32 | SOCIAL SECURITY NO. | REDACTED |
| TOTAL PRINCIPAL PAID | $6,280.99 | TELEPHONE NO. | |
| TOTAL INTEREST PAID | $19,477.81 | LOAN STATUS | REPAYMENT |
| TOTAL LATE CHARGES PAID | $.00 | CURRENTLY ENROLLED AT | |
| OUTSTANDING PRINCIPAL BAL | $110,476.83 | | |
| LAST PAYMENT DEPOSITED | 06/21/2004 | ☐ FULL TIME ☐ HALF TIME ☐ PART TIME | |
| $TO PRINCIPAL | $234.40 | FORBEARANCE EXPIRES | |
| TO INT $665.60 LATE CHRG | $.00 | EXPECTED/ACTUAL SEPARATION DATE | 12/31/2001 |
| LATE CHARGES DUE* | $.00 | | |
| PAST DUE AMOUNT | $.00 | DEFERMENT EXPIRES | |
| CURRENT DUE AMOUNT | $553.92 | FIRST/NEXT INSTALLMENT | 07/21/2004 |
| TOTAL AMOUNT DUE | $553.92 | ACCRUED INT. THROUGH 06/30/2004 | $.00 |

* A late charge may be assessed for payments received after the due date. These charges are calculated to be five percent of your regular monthly payment amount. Late Charges Due represents the total unpaid late charges for your Direct Loan(s).

??

Please refer to the back of this statement for important information.

P00368

DSC4AV05

*Our Mission is to Ensure Equal Access to Education and to Promote Educational Excellence Throughout the Nation*

000123202

BRENDA K PFEIFFER

**Direct Loans** Billing Statement

REDACTED

Account Number

Questions? 1-800-848-0979

Negative Amortization Billing Statement - Payment Due 06/21/2004

| Current Repayment Plan | Monthly Payment Amount | Amount Past Due | Late Charges Due | Total Payment Due |
|---|---|---|---|---|
| Income Contingent | $553.92 | $0.00 | $0.00 | $553.92 |

Please Pay This Amount by 06/21/2004

## Important Account Information

Please note that (1) your *Monthly Payment Amount* is less than interest owed on your loan(s) and (2) uncapitalized accrued interest on your loan(s) is currently $83.20.

When unpaid interest is capitalized once a year, it will increase the cost of your loan(s). To avoid or reduce capitalization, you can (1) send a payment to cover all or a portion of interest owed or (2) pay at least the amount of interest charged monthly to your loan(s) (about $633.09).

### Activity From 04/26/2004 To 05/23/2004

| | Date | Principal Balance | Interest Balance | Late Charges |
|---|---|---|---|---|
| Opening Balance | 04/26/2004 | $110,757.40 | $145.93 | $0.00 |
| Net Disbursement Activity | | $0.00 | | |
| Net Principal Adjustments | | $0.00 | | |
| Capitalized Interest | | $0.00 | $0.00 | |
| Rebate Activity | | $0.00 | | |
| Interest/Late Charges - Accrued/Adjusted | 05/23/2004 | | $583.54 | $0.00 |
| Payment Applied... $900.00 | 05/20/2004 | $253.73- | $646.27- | $0.00 |
| Ending Balance | 05/23/2004 | $110,503.67 | $83.20 | $0.00 |

**Current Balance - As of 05/23/2004 = $110,586.87**

Your payments are due on the 21st of each month.

*If you prepay your loan(s), your next payment due date will be advanced into the future. See the back of this statement for more prepayment information.*

If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing center immediately at the number above to discuss alternative arrangements.

Identity theft is one of the fastest growing crimes in the United States.

How can I protect myself from identity theft?

Order credit reports every year from each of the major credit reporting agencies and thoroughly review them for accuracy.

For more information, visit www.studentaid.ed.gov/idtheft

FSA FEDERAL STUDENT AID

Pd 900 02 #5674 6/12/04

Make Payments Electronically
Make payments on your loan(s) without having to write or mail a check. You can use this service anytime. Visit us at www.dl.ed.gov to make a payment now!

000086448

RC

BILFAV07

CONFIDENTIAL

**Direct Loans** Billing Statement

BRENDA K PFEIFFER

REDACTED

Account Number

Questions? 1-800-848-0979

## Negative Amortization Billing Statement - Payment Due 05/21/2004

| Current Repayment Plan | Monthly Payment Amount | Amount Past Due | Late Charges Due | Total Payment Due |
|---|---|---|---|---|
| Income Contingent | $553.92 | $0.00 | $0.00 | $553.92 |

**Please Pay This Amount by 05/21/2004**

### Important Account Information

Please note that (1) your *Monthly Payment Amount* is less than interest owed on your loan(s) and (2) uncapitalized accrued interest on your loan(s) is currently $145.93.

When unpaid interest is capitalized once a year, it will increase the cost of your loan(s). To avoid or reduce capitalization, you can (1) send a payment to cover all or a portion of interest owed or (2) pay at least the amount of interest charged monthly to your loan(s) (about $634.55).

If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing Center immediately at the number above to discuss alternative arrangements.

### Activity From 03/22/2004 To 04/25/2004

| | Date | Principal Balance | Interest Balance | Late Charges |
|---|---|---|---|---|
| Opening Balance...................... | 03/22/2004 | $111,013.74 | $83.58 | $0.00 |
| Net Disbursement Activity.......... | | $0.00 | | |
| Net Principal Adjustments.......... | | $0.00 | | |
| Capitalized Interest.................. | | $0.00 | $0.00 | |
| Rebate Activity......................... | | $0.00 | | |
| Interest/Late Charges - Accrued/Adjusted...................... | 04/25/2004 | | $731.01 | $0.00 |
| Payment Applied... $925.00 | 04/19/2004 | $256.34- | $668.66- | $0.00 |
| Ending Balance......................... | 04/25/2004 | $110,757.40 | $145.93 | $0.00 |

**Current Balance - As of 04/25/2004 = $110,903.33**

Your payments are due on the 21st of each month.

*If you prepay your loan(s), your next payment due date will be advanced into the future. See the back of this statement for more prepayment information.*

FSA FEDERAL STUDENT AID

Make Payments Electronically
Make payments on your loan(s) without having to write or mail a check. You can use this service anytime. Visit us at www.dl.ed.gov to make a payment now!

We Help Put America Through School

$ 5670
$900 pd 5/13/04

000087263

RC

BILFAV06

CONFIDENTIAL

P00371

**Direct Loans** Billing Statement

BRENDA K PFEIFFER

REDACTED

Account Number

Questions? 1-800-848-0979

## Negative Amortization Billing Statement - Payment Due 04/21/2004

| Current Repayment Plan | Monthly Payment Amount | Amount Past Due | Late Charges Due | Total Payment Due |
|---|---|---|---|---|
| Income Contingent | $553.92 | $0.00 | $0.00 | $553.92 |

**Please Pay This Amount by 04/21/2004**

### Important Account Information

Please note that (1) your *Monthly Payment Amount* is less than interest owed on your loan(s) and (2) uncapitalized accrued interest on your loan(s) is currently $83.58.

When unpaid interest is capitalized once a year, it will increase the cost of your loan(s). To avoid or reduce capitalization, you can (1) send a payment to cover all or a portion of interest owed or (2) pay at least the amount of interest charged monthly to your loan(s) (about $636.02).

If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing Center immediately at the number above to discuss alternative arrangements.

**Make Payments Electronically**
Make payments on your loan(s) without having to write or mail a check. You can use this service anytime. Visit us at www.dl.ed.gov to make a payment now!

### Activity From 02/23/2004 To 03/21/2004

| | Date | Principal Balance | Interest Balance | Late Charges |
|---|---|---|---|---|
| Opening Balance | 02/23/2004 | $111,226.92 | $209.36 | $0.00 |
| Net Disbursement Activity | | $0.00 | | |
| Net Principal Adjustments | | $0.00 | | |
| Capitalized Interest | | $0.00 | $0.00 | |
| Rebate Activity | | $0.00 | | |
| Interest/Late Charges - Accrued/Adjusted | 03/21/2004 | | $586.04 | $0.00 |
| Payment Applied... $925.00 | 03/18/2004 | $213.18- | $711.82- | $0.00 |
| Ending Balance | 03/21/2004 | $111,013.74 | $83.58 | $0.00 |

**Current Balance - As of 03/21/2004 = $111,097.32**

Your payments are due on the 21st of each month.

*If you prepay your loan(s), your next payment due date will be advanced into the future. See the back of this statement for more prepayment information.*

FSA FEDERAL STUDENT AID

We Help Put America Through School

$925.00 pd. #5664 4/12/04

000084293

RC

BILFAV06

CONFIDENTIAL

# Direct Loans Billing Statement

**REDACTED**

Account Number

Questions? 1-800-848-0979

## Negative Amortization Billing Statement – Payment Due 03/21/2004

| Current Repayment Plan | Monthly Payment Amount | Amount Past Due | Late Charges Due | Total Payment Due |
|---|---|---|---|---|
| Income Contingent | $553.92 | $0.00 | $0.00 | $553.92 |

Please Pay This Amount by 03/21/2004

### Important Account Information

Please note that (1) your *Monthly Payment Amount* is less than interest owed on your loan(s) and (2) uncapitalized accrued interest on your loan(s) is currently $209.36.

When unpaid interest is capitalized once a year, it will increase the cost of your loan(s). To avoid or reduce capitalization, you can (1) send a payment to cover all or a portion of interest owed or (2) pay at least the amount of interest charged monthly to your loan(s) (about $637.24).

If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing Center immediately at the number above to discuss alternative arrangements.

Make Payments Electronically. Make payments on your loan(s) without having to write or mail a check. You can use this service anytime. Visit us at www.dl.ed.gov to make a payment now!

We Help Put America Through School

000075970
RC

### Activity From 01/26/2004 To 02/22/2004

| | Date | Principal Balance | Interest Balance | Late Charges |
|---|---|---|---|---|
| Opening Balance | 01/26/2004 | $111,563.94 | $209.99 | $0.00 |
| Net Disbursement Activity | | $0.00 | | |
| Net Principal Adjustments | | $0.00 | | |
| Capitalized Interest | | $0.00 | $0.00 | |
| Rebate Activity | | $0.00 | | |
| Interest/Late Charges - Accrued/Adjusted | 02/22/2004 | | $587.35 | $0.00 |
| Payment Applied    $925.00 | 02/14/2004 | $337.02 | $587.98 | $0.00 |
| Ending Balance | 02/22/2004 | $111,226.92 | $209.36 | $0.00 |

**Current Balance - As of 02/22/2004 = $111,436.28**

Your payments are due on the 21st of each month.

*If you prepay your loan(s), your next payment due date will be advanced into the future. See the back of this statement for more prepayment information.*

pd. 5657
$925 00
3/11/04

BILFAV06

CONFIDENTIAL

P00373

BRENDA K PFEIFFER

REDACTED

Account Number

Questions? 1-800-848-0979

# Direct Loans Billing Statement

Negative Amortization Billing Statement - Payment Due 02/21/2004

| Current Repayment Plan | Monthly Payment Amount | Amount Past Due | Late Charges Due | Total Payment Due |
|---|---|---|---|---|
| Income Contingent | $553.92 | $0.00 | $0.00 | $553.92 |

**Please Pay This Amount by 02/21/2004**

## Important Account Information

Please note that (1) your *Monthly Payment Amount* is less than interest owed on your loan(s) and (2) uncapitalized accrued interest on your loan(s) is currently $209.99.

When unpaid interest is capitalized once a year, it will increase the cost of your loan(s). To avoid or reduce capitalization, you can (1) send a payment to cover all or a portion of interest owed or (2) pay at least the amount of interest charged monthly to your loan(s) (about $639.17).

If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing Center immediately at the number above to discuss alternative arrangements.

**Activity From 12/22/2003 To 01/25/2004**

| | Date | Principal Balance | Interest Balance | Late Charges |
|---|---|---|---|---|
| Opening Balance | 12/22/2003 | $111,669.19 | $294.27 | $0.00 |
| Net Disbursement Activity | | $0.00 | | |
| Net Principal Adjustments | | $0.00 | | |
| Capitalized Interest | | $0.00 | $0.00 | |
| Rebate Activity | | $0.00 | | |
| Interest/Late Charges - Accrued/Adjusted | 01/25/2004 | | $735.47 | $0.00 |
| Payment Applied... $925.00 | 01/17/2004 | $105.25- | $819.75- | $0.00 |
| Ending Balance | 01/25/2004 | $111,563.94 | $209.99 | $0.00 |

**Current Balance - As of 01/25/2004 = $111,773.93**

Your payments are due on the 21st of each month.

*If you prepay your loan(s), your next payment due date will be advanced into the future. See the back of this statement for more prepayment information.*

FSA FEDERAL STUDENT AID

**Make Payments Electronically**
Make payments on your loan(s) without having to write or mail a check. You can use this service anytime. Visit us at www.dl.ed.gov to make a payment now!

We Help Put America Through School

pd 2/3/04 #5647 $925.00

000016267

RC

BILFAV06

CONFIDENTIAL

BRENDA K PFEIFFER

**Direct Loans** Billing Statement

REDACTED

Account Number

Questions? 1-800-848-0979

Negative Amortization Billing Statement - Payment Due 01/21/2004

| Current Repayment Plan | Monthly Payment Amount | Amount Past Due | Late Charges Due | Total Payment Due |
|---|---|---|---|---|
| Income Contingent | $553.92 | $0.00 | $0.00 | $553.92 |

**Please Pay This Amount by 01/21/2004**

## Important Account Information

Please note that (1) your *Monthly Payment Amount* is less than interest owed on your loan(s) and (2) uncapitalized accrued interest on your loan(s) is currently $294.27.

When unpaid interest is capitalized once a year, it will increase the cost of your loan(s). To avoid or reduce capitalization, you can (1) send a payment to cover all or a portion of interest owed or (2) pay at least the amount of interest charged monthly to your loan(s) (about $639.77).

If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing Center immediately at the number above to discuss alternative arrangements.

**Activity From 11/24/2003 To 12/21/2003**

| | Date | Principal Balance | Interest Balance | Late Charges |
|---|---|---|---|---|
| Opening Balance | 11/24/2003 | $112,171.91 | $126.68 | $0.00 |
| Net Disbursement Activity | | $0.00 | | |
| Net Principal Adjustments | | $0.00 | | |
| Capitalized Interest | | $0.00 | $0.00 | |
| Rebate Activity | | $0.00 | | |
| Interest/Late Charges - Accrued/Adjusted | 12/21/2003 | | $589.87 | $0.00 |
| Payment Applied... $925.00 | 12/08/2003 | $502.72- | $422.28- | $0.00 |
| Ending Balance | 12/21/2003 | $111,669.19 | $294.27 | $0.00 |

**Current Balance - As of 12/21/2003 = $111,963.46**

Your payments are due on the 21st of each month.

*If you prepay your loan(s), your next payment due date will be advanced into the future. See the back of this statement for more prepayment information.*

FSA FEDERAL STUDENT AID

**Make Payments Electronically**
Make payments on your loan(s) without having to write or mail a check. You can use this service anytime. Visit us at www.dl.ed.gov to make a payment now!

We Help Put America Through School

Pd. $925.00 1/12/04 # 5636

000084074

RC

BILFAV08

CONFIDENTIAL

BRENDA K PFEIFFER

# Direct Loans Billing Statement

REDACTED

Account Number
Questions? 1-800-848-0979

## Negative Amortization Billing Statement - Payment Due 12/21/2005

| Current Repayment Plan | Monthly Payment Amount | Amount Past Due | Late Charges Due | Total Payment Due |
|---|---|---|---|---|
| Income Contingent | $538.90 | $0.00 | $0.00 | $538.90 |

## Important Account Information

Please Pay This Amount by 12/21/2005

Please note that (1) your *Monthly Payment Amount* is less than interest owed on your loan(s) and (2) uncapitalized accrued interest on your loan(s) is currently $257.20.

When unpaid interest is capitalized once a year, it will increase the cost of your loan(s). To avoid or reduce capitalization, you can (1) send a payment to cover all or a portion of interest owed or (2) pay at least the amount of interest charged monthly to your loan(s) (about $602.20).

### Activity From 10/24/2005 To 11/26/2005

| | Date | Principal Balance | Interest Balance | Late Charges |
|---|---|---|---|---|
| Opening Balance................... | 10/24/2005 | $105,455.94 | $138.95 | $0.00 |
| Net Disbursement Activity........... | | $0.00 | | |
| Net Principal Adjustments........... | | $0.00 | | |
| Capitalized Interest................. | | $0.00 | $0.00 | |
| Rebate Activity...................... | | $0.00 | | |
| Interest/Late Charges - Accrued/Adjusted..................... | 11/26/2005 | | $674.05 | $0.00 |
| Payment Applied...    $900.00 | 11/14/2005 | $344.20 | $555.80 | $0.00 |
| Ending Balance..................... | 11/26/2005 | $105,111.74 | $257.20 | $0.00 |

**Current Balance - As of 11/26/2005 = $105,368.94**

Your payments are due on the 21st of each month.

*If you prepay your loan(s), your next payment due date will be advanced into the future. See the back of this statement for more prepayment information.*

If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing center immediately at the number above to discuss alternative arrangements.



**Make Payments Electronically**
Make payments on your loan(s) without having to write or mail a check. You can use this service anytime. Visit us at www.dl.ed.gov to make a payment now!

000085178
03

BILFAV08

CONFIDENTIAL

EXHIBIT B

P00467

BRENDA K PFEIFFER

# Direct Loans Billing Statement

**REDACTED**

Account Number
Questions? 1-800-848-0979

## Negative Amortization Billing Statement - Payment Due 11/21/2005

| Current Repayment Plan | Monthly Payment Amount | Amount Past Due | Late Charges Due | Total Payment Due |
|---|---|---|---|---|
| Income Contingent | $538.90 | $0.00 | $0.00 | $538.90 |

**Please Pay This Amount by 11/21/2005**

## Important Account Information

Please note that (1) your *Monthly Payment Amount* is less than interest owed on your loan(s) and (2) uncapitalized accrued interest on your loan(s) is currently $138.95.

When unpaid interest is capitalized once a year, it will increase the cost of your loan(s). To avoid or reduce capitalization, you can (1) send a payment to cover all or a portion of interest owed or (2) pay at least the amount of interest charged monthly to your loan(s) (about $604.17).

### Activity From 09/26/2005 To 10/23/2005

| | Date | Principal Balance | Interest Balance | Late Charges |
|---|---|---|---|---|
| Opening Balance.................. | 09/26/2005 | $105,541.44 | $397.32 | $0.00 |
| Net Disbursement Activity.......... | | $0.00 | | |
| Net Principal Adjustments.......... | | $0.00 | | |
| Capitalized Interest.................. | | $0.00 | $0.00 | |
| Rebate Activity...................... | | $0.00 | | |
| Interest/Late Charges - Accrued/Adjusted.................. | 10/23/2005 | | $556.13 | $0.00 |
| Payment Applied...    $900.00 | 10/17/2005 | $85.50 | $814.50 | $0.00 |
| Ending Balance...................... | 10/23/2005 | $105,455.94 | $138.95 | $0.00 |

**Current Balance - As of 10/23/2005 = $105,594.89**

Your payments are due on the 21st of each month.

*If you prepay your loan(s), your next payment due date will be advanced into the future. See the back of this statement for more prepayment information.*

If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing center immediately at the number above to discuss alternative arrangements.

**Make Payments Electronically**
Make payments on your loan(s) without having to write or mail a check. You can use this service anytime. Visit us at www.dl.ed.gov to make a payment now!

000088408

03

BILFAV08

CONFIDENTIAL

P00468

BRENDA K PFEFFER

# Direct Loans Billing Statement

REDACTED

| Account Number |
| --- |

Questions?  1-800-848-0979

## Negative Amortization Billing Statement - Payment Due 10/21/2005

| Current Repayment Plan | Monthly Payment Amount | Amount Past Due | Late Charges Due | Total Payment Due |
| --- | --- | --- | --- | --- |
| Income Contingent | $538.90 | $0.00 | $0.00 | $538.90 |

Please Pay This Amount by 10/21/2005

## Important Account Information

Please note that (1) your *Monthly Payment Amount* is less than interest owed on your loan(s) and (2) uncapitalized accrued interest on your loan(s) is currently $397.32.

When unpaid interest is capitalized once a year, it will increase the cost of your loan(s). To avoid or reduce capitalization, you can (1) send a payment to cover all or a portion of interest owed or (2) pay at least the amount of interest charged monthly to your loan(s) (about $604.66).

### Activity From  08/22/2005  To  09/25/2005

| | Date | Principal Balance | Interest Balance | Late Charges |
| --- | --- | --- | --- | --- |
| Opening Balance.................... | 08/22/2005 | $105,923.06 | $219.31 | $0.00 |
| Net Disbursement Activity........... | | $0.00 | | |
| Net Principal Adjustments........... | | $0.00 | | |
| Capitalized Interest.................... | | $0.00 | $0.00 | |
| Rebate Activity......................... | | $0.00 | | |
| Interest/Late Charges - Accrued/Adjusted.................. | 09/25/2005 | | $696.39 | $0.00 |
| Payment Applied...    $900.00 | 09/06/2005 | $381.62* | $518.38* | $0.00 |
| Ending Balance...................... | 09/25/2005 | $105,541.44 | $397.32 | $0.00 |

| Current Balance - As of 09/25/2005 = $105,938.76 |
| --- |

Your payments are due on the 21st of each month.

*If you prepay your loan(s), your next payment due date will be advanced into the future. See the back of this statement for more prepayment information.*

If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing center immediately at the number above to discuss alternative arrangements.

Make Payments Electronically
Make payments on your loan(s) without having to write or mail a check. You can use this service anytime. Visit us at www.dl.ed.gov to make a payment now!

000091873

03

BILFAV08

CONFIDENTIAL

P00469

BRENDA K PFEIFFER

# Direct Loans Billing Statement

**REDACTED**

| Account Number |
|---|
| Questions? 1-800-848-0979 |

## Negative Amortization Billing Statement - Payment Due 09/21/2005

| Current Repayment Plan | Monthly Payment Amount | Amount Past Due | Late Charges Due | Total Payment Due |
|---|---|---|---|---|
| Income Contingent | $538.90 | $0.00 | $0.00 | $538.90 |

### Important Account Information

Please note that (1) your *Monthly Payment Amount* is less than interest owed on your loan(s) and (2) uncapitalized accrued interest on your loan(s) is currently $219.31.

When unpaid interest is capitalized once a year, it will increase the cost of your loan(s). To avoid or reduce capitalization, you can (1) send a payment to cover all or a portion of interest owed or (2) pay at least the amount of interest charged monthly to your loan(s) (about $606.85).

**Please Pay This Amount by 09/21/2005**

### Activity From 07/25/2005 To 08/21/2005

| | Date | Principal Balance | Interest Balance | Late Charges |
|---|---|---|---|---|
| Opening Balance.................... | 07/25/2005 | $106,263.01 | $220.02 | $0.00 |
| Net Disbursement Activity........... | | $0.00 | | |
| Net Principal Adjustments.......... | | $0.00 | | |
| Capitalized Interest.................. | | $0.00 | $0.00 | |
| Rebate Activity....................... | | $0.00 | | |
| Interest/Late Charges - Accrued/Adjusted.................. | 08/21/2005 | | $559.34 | $0.00 |
| Payment Applied...    $900.00 | 08/11/2005 | $339.95* | $560.05* | $0.00 |
| Ending Balance.................... | 08/21/2005 | $105,923.06 | $219.31 | $0.00 |

| Current Balance - As of 08/21/2005 = $106,142.37 |
|---|

Your payments are due on the 21st of each month.

*If you prepay your loan(s), your next payment due date will be advanced into the future. See the back of this statement for more prepayment information.*

| If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing center immediately at the number above to discuss alternative arrangements. |
|---|





**Make Payments Electronically**
Make payments on your loan(s) without having to write or mail a check. You can use this service anytime. Visit us at www.dl.ed.gov to make a payment now!

000088122

03

BILFAV08

**CONFIDENTIAL**

P00470

# Direct Loans Billing Statement

BRENDA K PFEIFFER

REDACTED

Account Number

Questions? 1-800-848-0979

## Negative Amortization Billing Statement - Payment Due 08/21/2005

| Current Repayment Plan | Monthly Payment Amount | Amount Past Due | Late Charges Due | Total Payment Due |
|---|---|---|---|---|
| Income Contingent | $538.90 | $0.00 | $0.00 | $538.90 |

Please Pay This Amount by 08/21/2005

## Important Account Information

Please note that (1) your *Monthly Payment Amount* is less than interest owed on your loan(s) and (2) uncapitalized accrued interest on your loan(s) is currently $220.02.

When unpaid interest is capitalized once a year, it will increase the cost of your loan(s). To avoid or reduce capitalization, you can (1) send a payment to cover all or a portion of interest owed or (2) pay at least the amount of interest charged monthly to your loan(s) (about $608.80).

### Activity From 06/27/2005 To 07/24/2005

| | Date | Principal Balance | Interest Balance | Late Charges |
|---|---|---|---|---|
| Opening Balance | 06/27/2005 | $106,485.42 | $360.78 | $0.00 |
| Net Disbursement Activity | | $0.00 | | |
| Net Principal Adjustments | | $0.00 | | |
| Capitalized Interest | | $440.95 | $440.95- | |
| Rebate Activity | | $0.00 | | |
| Interest/Late Charges - Accrued/Adjusted | 07/24/2005 | | $561.83 | $0.00 |
| Payment Applied... $925.00 | 07/14/2005 | $663.36- | $261.64- | $0.00 |
| Ending Balance | 07/24/2005 | $106,263.01 | $220.02 | $0.00 |

**Current Balance - As of 07/24/2005 = $106,483.03**

Your payments are due on the 21st of each month.

*If you prepay your loan(s), your next payment due date will be advanced into the future. See the back of this statement for more prepayment information.*

If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing center immediately at the number above to discuss alternative arrangements.

June 9 - June 30 22 days .0188227 Rate

**Make Payments Electronically**
Make payments on your loan(s) without having to write or mail a check. You can use this service anytime. Visit us at www.dl.ed.gov to make a payment now!

000023171

BILFAV08

CONFIDENTIAL

P00471

BRENDA K PFEIFFER

# Direct Loans Billing Statement

REDACTED

Account Number

Questions? 1-800-848-0979

## Negative Amortization Billing Statement - Payment Due 07/21/2005

| Current Repayment Plan | Monthly Payment Amount | Amount Past Due | Late Charges Due | Total Payment Due |
|---|---|---|---|---|
| Income Contingent | $543.23 | $0.00 | $0.00 | $543.23 |

Please Pay This Amount by 07/21/2005

## Important Account Information

Please note that (1) your *Monthly Payment Amount* is less than interest owed on your loan(s) and (2) uncapitalized accrued interest on your loan(s) is currently $360.78.

When unpaid interest is capitalized once a year, it will increase the cost of your loan(s). To avoid or reduce capitalization, you can (1) send a payment to cover all or a portion of interest owed or (2) pay at least the amount of interest charged monthly to your loan(s) (about $610.07).

Pd #5785

7/11/05 $925 –

### Activity From 05/23/2005 To 06/26/2005

| | Date | Principal Balance | Interest Balance | Late Charges |
|---|---|---|---|---|
| Opening Balance | 05/23/2005 | $106,902.49 | $140.85 | $0.00 |
| Net Disbursement Activity | | $0.00 | | |
| Net Principal Adjustments | | $0.00 | | |
| Capitalized Interest | | $0.00 | $0.00 | |
| Rebate Activity | | $0.00 | | |
| Interest/Late Charges - Accrued/Adjusted | 06/26/2005 | | $702.86 | $0.00 |
| Payment Applied... $900.00 | 06/09/2005 | $417.07- | $482.93- | $0.00 |
| Ending Balance | 06/26/2005 | $106,485.42 | $360.78 | $0.00 |

**Current Balance - As of 06/26/2005 = $106,846.20**

Your payments are due on the 21st of each month.

*If you prepay your loan(s), your next payment due date will be advanced into the future. See the back of this statement for more prepayment information.*

If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing center immediately at the number above to discuss alternative arrangements.

FSA
FEDERAL
STUDENT AID

**Make Payments Electronically**
Make payments on your loan(s) without having to write or mail a check. You can use this service anytime. Visit us at www.dl.ed.gov to make a payment now!

000093185 BILFAV08

CONFIDENTIAL

**Direct Loans**
William D. Ford Federal Direct Loan Program

# ANNUAL INTEREST CAPITALIZATION DISCLOSURE FOR NEGATIVELY AMORTIZED ACCOUNTS

ACCOUNT NUMBER REDACTED 06/30/2005

BRENDA K PFEIFFER

Rec. 7/16/05

ACCOUNT STATEMENT

## NOTIFICATION OF CAPITALIZATION

During the past year, your total payments were less than your accrued interest on the loan(s) you had or have been repaying under the Income Contingent Repayment (ICR) plan (this is called negative amortization). We capitalized the interest (totaling $440.95), meaning we added it to your principal balance as required under the repayment plan.

## MONTHLY PAYMENT AMOUNT

As a result of capitalizing the unpaid interest, your monthly payment (see below) may have changed. If you cannot pay your monthly amount, call our toll-free number, 1-800-848-0979. THIS IS NOT A BILL. Your next billing notification will reflect this new amount.

Please call us if you have questions.

New Monthly Payment
$538.90

FOR YOUR DIRECT CONSOLIDATION LOANS, THIS DISCLOSURE IS BASED ONLY ON TOTAL DEBT CONSOLIDATED BY THIS DATE. YOUR PAYMENT AMOUNT WILL BE RECALCULATED IF YOUR DEBT IS FULLY CONSOLIDATED AT A LATER DATE.

**Your interest rate information is shown on the back of this Notice.**

OUR RECORDS INDICATE

| | | | |
|---|---|---|---|
| NET DISBURSEMENT AMOUNT | $116,181.50 | LOAN TYPE | CONSOL |
| [illegible] | [illegible] | [illegible] | [illegible] |
| TOTAL PRINCIPAL PAID | $10,272.40 | TELEPHONE NO. | REDACTED |
| [illegible] | [illegible] | [illegible] | [illegible] |
| TOTAL LATE CHARGES PAID | $.00 | CURRENTLY ENROLLED AT | |
| [illegible] | [illegible] | [illegible] | [illegible] |
| LAST PAYMENT DEPOSITED | 06/09/2005 | ☐ FULL TIME ☐ HALF TIME ☐ PART TIME | |
| [illegible] | [illegible] | [illegible] | [illegible] |
| TO INT $482.93 LATE CHRG | $.00 | EXPECTED/ACTUAL SEPARATION DATE | 12/31/2001 |
| [illegible] | [illegible] | [illegible] | [illegible] |
| PAST DUE AMOUNT | $.00 | DEFERMENT EXPIRES | |
| [illegible] | [illegible] | [illegible] | [illegible] |
| TOTAL AMOUNT DUE | $543.23 | ACCRUED INT. THROUGH 06/30/2005 | $.00 |

* A late charge may be assessed for payments received after the due date. These charges are calculated to be five percent of your regular monthly payment amount. Late Charges Due represents the total unpaid late charges for your Direct Loan(s).

Please refer to the back of this statement for important information. CONFIDENTIAL P00429

DSC4AV06

*Our Mission is to Ensure Equal Access to Education and to Promote Educational Excellence Throughout the Nation*

BRENDA K PFEIFFER

# Direct Loans Billing Statement

**REDACTED**

William D. Ford Federal Direct Loan Program

| Account Number |
| --- |

**Questions? 1-800-848-0979**

## Negative Amortization Billing Statement - Payment Due 06/21/2005

| Current Repayment Plan | Monthly Payment Amount | Amount Past Due | Late Charges Due | Total Payment Due |
| --- | --- | --- | --- | --- |
| Income Contingent | $543.23 | $0.00 | $0.00 | $543.23 |

Please Pay This Amount by 06/21/2005

## Important Account Information

Please note that (1) your *Monthly Payment Amount* is less than interest owed on your loan(s) and (2) uncapitalized accrued interest on your loan(s) is currently $140.85.

When unpaid interest is capitalized once a year, it will increase the cost of your loan(s). To avoid or reduce capitalization, you can (1) send a payment to cover all or a portion of interest owed or (2) pay at least the amount of interest charged monthly to your loan(s) (about $612.46).



### Activity From  04/25/2005  To  05/22/2005

| | Date | Principal Balance | Interest Balance | Late Charges |
| --- | --- | --- | --- | --- |
| Opening Balance.................. | 04/25/2005 | $107,181.90 | $221.92 | $0.00 |
| Net Disbursement Activity........... | | $0.00 | | |
| Net Principal Adjustments........... | | $0.00 | | |
| Capitalized Interest.................. | | $0.00 | $0.00 | |
| Rebate Activity.................. | | $0.00 | | |
| Interest/Late Charges - Accrued/Adjusted................. | 05/22/2005 | | $564.52 | $0.00 |
| Payment Applied...    $925.00 | 05/18/2005 | $279.41- | $645.59- | $0.00 |
| Ending Balance.................. | 05/22/2005 | $106,902.49 | $140.85 | $0.00 |

| Current Balance - As of 05/22/2005 =  $107,043.34 |
| --- |

Your payments are due on the 21st of each month.

*If you prepay your loan(s), your next payment due date will be advanced into the future. See the back of this statement for more prepayment information.*

| If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing center immediately at the number above to discuss alternative arrangements. |
| --- |

**Make Payments Electronically**
Make payments on your loan(s) without having to write or mail a check. You can use this service anytime. Visit us at www.dl.ed.gov to make a payment now!

000089392

03

BILFAV08

CONFIDENTIAL

P00473

**Direct Loans** Billing Statement

BRENDA K PFEIFFER

REDACTED

Account Number

Questions? 1-800-848-0979

Negative Amortization Billing Statement - Payment Due 05/21/2005

| Current Repayment Plan | Monthly Payment Amount | Amount Past Due | Late Charges Due | Total Payment Due |
|---|---|---|---|---|
| Income Contingent | $543.23 | $0.00 | $0.00 | $543.23 |

Please Pay This Amount by 05/21/2005

## Important Account Information

Please note that (1) your *Monthly Payment Amount* is less than interest owed on your loan(s) and (2) uncapitalized accrued interest on your loan(s) is currently $221.92.

When unpaid interest is capitalized once a year, it will increase the cost of your loan(s). To avoid or reduce capitalization, you can (1) send a payment to cover all or a portion of interest owed or (2) pay at least the amount of interest charged monthly to your loan(s) (about $614.06).

**Activity From 03/28/2005 To 04/24/2005**

| | Date | Principal Balance | Interest Balance | Late Charges |
|---|---|---|---|---|
| Opening Balance..................... | 03/28/2005 | $107,479.75 | $283.23 | $0.00 |
| Net Disbursement Activity........... | | $0.00 | | |
| Net Principal Adjustments........... | | $0.00 | | |
| Capitalized Interest.................. | | $0.00 | $0.00 | |
| Rebate Activity......................... | | $0.00 | | |
| Interest/Late Charges - Accrued/Adjusted...................... | 04/24/2005 | | $565.84 | $0.00 |
| Payment Applied... $925.00 | 04/14/2005 | $297.85- | $627.15- | $0.00 |
| Ending Balance........................ | 04/24/2005 | $107,181.90 | $221.92 | $0.00 |

**Current Balance - As of 04/24/2005 = $107,403.82**

Your payments are due on the 21st of each month.

*If you prepay your loan(s), your next payment due date will be advanced into the future. See the back of this statement for more prepayment information.*

If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing center immediately at the number above to discuss alternative arrangements.

pd. #5760 $925.00 5/11/05

**Make Payments Electronically**
Make payments on your loan(s) without having to write or mail a check. You can use this service anytime. Visit us at www.dl.ed.gov to make a payment now!

000088065

03

BILFAV08

CONFIDENTIAL

P00474

# Direct Loans Billing Statement

BRENDA K PFEIFFER

REDACTED

Account Number

Questions? 1-800-848-0979

## Negative Amortization Billing Statement - Payment Due 04/21/2005

| Current Repayment Plan | Monthly Payment Amount | Amount Past Due | Late Charges Due | Total Payment Due |
|---|---|---|---|---|
| Income Contingent | $543.23 | $0.00 | $0.00 | $543.23 |

Please Pay This Amount by 04/21/2005

## Important Account Information

Please note that (1) your *Monthly Payment Amount* is less than interest owed on your loan(s) and (2) uncapitalized accrued interest on your loan(s) is currently $283.23.

When unpaid interest is capitalized once a year, it will increase the cost of your loan(s). To avoid or reduce capitalization, you can (1) send a payment to cover all or a portion of interest owed or (2) pay at least the amount of interest charged monthly to your loan(s) (about $615.77).

## Activity From 02/28/2005 To 03/27/2005

| | Date | Principal Balance | Interest Balance | Late Charges |
|---|---|---|---|---|
| Opening Balance | 02/28/2005 | $107,876.81 | $243.66 | $0.00 |
| Net Disbursement Activity | | $0.00 | | |
| Net Principal Adjustments | | $0.00 | | |
| Capitalized Interest | | $0.00 | $0.00 | |
| Rebate Activity | | $0.00 | | |
| Interest/Late Charges - Accrued/Adjusted | 03/27/2005 | | $567.51 | $0.00 |
| Payment Applied... $925.00 | 03/14/2005 | $397.06- | $527.94- | $0.00 |
| Ending Balance | 03/27/2005 | $107,479.75 | $283.23 | $0.00 |

**Current Balance - As of 03/27/2005 = $107,762.98**

Your payments are due on the 21st of each month.

*If you prepay your loan(s), your next payment due date will be advanced into the future. See the back of this statement for more prepayment information.*

If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing center immediately at the number above to discuss alternative arrangements.

Pd #5159 $925.00 04/11/05

**Make Payments Electronically**
Make payments on your loan(s) without having to write or mail a check. You can use this service anytime. Visit us at www.dl.ed.gov to make a payment now!

000090749

03

BILFAV08

CONFIDENTIAL

P00475

**Direct Loans** Billing Statement

BRENDA K PFEIFFER

REDACTED

Account Number

Questions? 1-800-848-0979

Negative Amortization Billing Statement - Payment Due 03/21/2005

| Current Repayment Plan | Monthly Payment Amount | Amount Past Due | Late Charges Due | Total Payment Due |
|---|---|---|---|---|
| Income Contingent | $543.23 | $0.00 | $0.00 | $543.23 |

Please Pay This Amount by 03/21/2005

## Important Account Information

Please note that (1) your *Monthly Payment Amount* is less than interest owed on your loan(s) and (2) uncapitalized accrued interest on your loan(s) is currently $243.66.

When unpaid interest is capitalized once a year, it will increase the cost of your loan(s). To avoid or reduce capitalization, you can (1) send a payment to cover all or a portion of interest owed or (2) pay at least the amount of interest charged monthly to your loan(s) (about $618.04).

### Activity From 01/24/2005 To 02/27/2005

| | Date | Principal Balance | Interest Balance | Late Charges |
|---|---|---|---|---|
| Opening Balance | 01/24/2005 | $108,211.13 | $122.21 | $0.00 |
| Net Disbursement Activity | | $0.00 | | |
| Net Principal Adjustments | | $0.00 | | |
| Capitalized Interest | | $0.00 | $0.00 | |
| Rebate Activity | | $0.00 | | |
| Interest/Late Charges - Accrued/Adjusted | 02/27/2005 | | $712.13 | $0.00 |
| Payment Applied... $925.00 | 02/16/2005 | $334.32- | $590.68- | $0.00 |
| Ending Balance | 02/27/2005 | $107,876.81 | $243.66 | $0.00 |

**Current Balance - As of 02/27/2005 = $108,120.47**

Your payments are due on the 21st of each month.

*If you prepay your loan(s), your next payment due date will be advanced into the future. See the back of this statement for more prepayment information.*

If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing center immediately at the number above to discuss alternative arrangements.

**Make Payments Electronically**
Make payments on your loan(s) without having to write or mail a check. You can use this service anytime. Visit us at www.dl.ed.gov to make a payment now!

000092088

BILFAV08

03

CONFIDENTIAL

BRENDA K PFEIFFER

# Direct Loans Billing Statement

REDACTED

Account Number

Questions? 1-800-848-0979

Negative Amortization Billing Statement - Payment Due 02/21/2005

| Current Repayment Plan | Monthly Payment Amount | Amount Past Due | Late Charges Due | Total Payment Due |
|---|---|---|---|---|
| Income Contingent | $543.23 | $0.00 | $0.00 | $543.23 |

Please Pay This Amount by 02/21/2005

## Important Account Information

Please note that (1) your *Monthly Payment Amount* is less than interest owed on your loan(s) and (2) uncapitalized accrued interest on your loan(s) is currently $122.21.

When unpaid interest is capitalized once a year, it will increase the cost of your loan(s). To avoid or reduce capitalization, you can (1) send a payment to cover all or a portion of interest owed or (2) pay at least the amount of interest charged monthly to your loan(s) (about $619.96).

### Activity From 12/26/2004 To 01/23/2005

| | Date | Principal Balance | Interest Balance | Late Charges |
|---|---|---|---|---|
| Opening Balance...................... | 12/26/2004 | $108,401.59 | $265.25 | $0.00 |
| Net Disbursement Activity.......... | | $0.00 | | |
| Net Principal Adjustments.......... | | $0.00 | | |
| Capitalized Interest.................... | | $0.00 | $0.00 | |
| Rebate Activity.......................... | | $0.00 | | |
| Interest/Late Charges - Accrued/Adjusted......................... | 01/23/2005 | | $591.50 | $0.00 |
| Payment Applied... $925.00 | 01/18/2005 | $190.46- | $734.54- | $0.00 |
| Ending Balance.......................... | 01/23/2005 | $108,211.13 | $122.21 | $0.00 |

**Current Balance - As of 01/23/2005 = $108,333.34**

Your payments are due on the 21st of each month.

*If you prepay your loan(s), your next payment due date will be advanced into the future. See the back of this statement for more prepayment information.*

If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing center immediately at the number above to discuss alternative arrangements.

**Make Payments Electronically**
Make payments on your loan(s) without having to write or mail a check. You can use this service anytime. Visit us at www.dl.ed.gov to make a payment now!

000088168

13

BILFAV08

CONFIDENTIAL

**Direct Loans** Billing Statement

BRENDA K PFEIFFER

**REDACTED**

| Account Number |
| Questions? **1-800-848-0979** |

Negative Amortization Billing Statement – Payment Due 01/21/2005

| Current Repayment Plan | Monthly Payment Amount | Amount Past Due | Late Charges Due | Total Payment Due |
|---|---|---|---|---|
| Income Contingent | $543.23 | $0.00 | $0.00 | $543.23 |

**Please Pay This Amount by 01/21/2005**

## Important Account Information

Please note that (1) your *Monthly Payment Amount* is less than interest owed on your loan(s) and (2) uncapitalized accrued interest on your loan(s) is currently $265.25.

When unpaid interest is capitalized once a year, it will increase the cost of your loan(s). To avoid or reduce capitalization, you can (1) send a payment to cover all or a portion of interest owed or (2) pay at least the amount of interest charged monthly to your loan(s) (about $621.05).

### Activity From 11/22/2004 To 12/25/2004

| | Date | Principal Balance | Interest Balance | Late Charges |
|---|---|---|---|---|
| Opening Balance.................. | 11/22/2004 | $108,753.43 | $143.29 | $0.00 |
| Net Disbursement Activity........... | | $0.00 | | |
| Net Principal Adjustments............ | | $0.00 | | |
| Capitalized Interest.................. | | $0.00 | $0.00 | |
| Rebate Activity...................... | | $0.00 | | |
| Interest/Late Charges - Accrued/Adjusted................ | 12/25/2004 | | $695.12 | $0.00 |
| Payment Applied...   $925.00 | 12/13/2004 | $351.84 | $573.16 | $0.00 |
| Ending Balance..................... | 12/25/2004 | $108,401.59 | $265.25 | $0.00 |

| Current Balance - As of 12/25/2004 = $108,666.84 |

Your payments are due on the 21st of each month.

*If you prepay your loan(s), your next payment due date will be advanced into the future. See the back of this statement for more prepayment information.*

If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing center immediately at the number above to discuss alternative arrangements.

**Make Payments Electronically**
Make payments on your loan(s) without having to write or mail a check. You can use this service anytime. Visit us at www.dl.ed.gov to make a payment now!

000092278

03

BILFAV08

CONFIDENTIAL

P00478

Faxed 12/27/05 3:10 pm from office
Total pg. rec. (7)

# PFEIFFER CHIROPRACTIC

REDACTED

EXHIBIT #16
Pfeiffer v Spelling
C.A.# 1:07cv00522 (EGS)

December 27, 2005

Direct Loans Program
Fax: 661.336.5780
Total Pages: 7

**Attn: Lupe Lopez**

Per our conversations the past two weeks, I am faxing information regarding my loan and the capitalization that continues to occur on my account.

Per my records from June 2003 to June 2004, I made payments totaling $11,000. In the same time period, the interest that accrued totaled $7815.11. On June 30th, 2004, $207.56 was capitalized to my loan.

Per my records from June 2004 to June 2005, again, I made payments totaling $11,000. The interest accruing during the same dates totaled $7008.59. On June 30th, 2005, $440.95 was capitalized to my loan.

As you will see in the faxed documents (I have highlighted the pertinent information with a *), the ICR program is only to capitalize interest once a year should the borrower's payments not meet the interest accruing.

By reviewing my payment history, it is obvious that I have indeed met and exceeded the interest accruing on the loan for the past several years therefore no capitalization should be occurring.

Should you have any questions, please contact me either at my home or office.

Thank you for your time and attention to this matter. I look forward to hearing from you.

Sincerely,

Dr. Brenda Pfeiffer

PLAINTIFF'S DEPOSITION EXHIBIT 18 Bartle

**Direct Loans**
William D. Ford Federal Direct Loan Program

# Repayment Plan Choices

William D. Ford Federal Direct Loan Program
Federal Direct Stafford/Ford Loans, Federal Direct Unsubsidized Stafford/Ford Loans, Federal Direct PLUS Loans, Federal Direct Consolidation Loans

The William D. Ford Federal Direct Loan (Direct Loan) Program offers four repayment plans so you can choose the one that is right for you. This document was designed to help you understand the differences among the four plans, which are:

- ❑ **Standard Repayment Plan**
- ❑ **Graduated Repayment Plan**
- ❑ **Extended Repayment Plan**
- ❑ **Income Contingent Repayment Plan**

For each plan: (1) The "Repayment Period" excludes periods of deferment and forbearance, (2) You can prepay your loan any time without a penalty, and (3) Your monthly payment will be adjusted annually to reflect changes in the variable interest rate. (For Standard, Extended, and Graduated Plans, you can request the maximum number of monthly payments be extended rather than pay a higher amount.)

If you do not select a repayment plan, you will be assigned the Standard Repayment Plan.

**If you are unsure which repayment plan to choose, or if you have any questions or concerns, please call the Loan Origination Center at 1-800-557-7392 for assistance. The TDD number for the hearing impaired is 1-800-557-7395.**

## STANDARD REPAYMENT PLAN

***Minimum Monthly Payment*** — ***$ 50.00***
***Maximum Repayment Period*** — ***10 years***

Under the Standard Repayment Plan, each of your monthly payments will be at least $50.00, and may be more if necessary to repay the loan within 10 years (excluding periods of deferment and forbearance). For small loan amounts, the number of monthly payments can be less than 120 (10 years). The repayment period under the Standard Repayment Plan is generally shorter than under any other plan. In general, the shorter the repayment period, the lower the total interest repaid. For this reason, choosing the Standard Repayment Plan may result in the lowest total repayment amount over the life of the loan.

## EXTENDED REPAYMENT PLAN

***Minimum Monthly Payment*** — ***$ 50.00***
***Repayment Period*** — ***12 - 30 years***

Under the Extended Repayment Plan, the minimum payment amount is $50.00, and may be more if necessary to pay off your loan in the maximum number of repayment years. The repayment period generally varies from 12 - 30 years according to the loan amount. The higher the loan amount, the longer the repayment period will be. Because the repayment period is generally longer than 10 years, the monthly payment amount will usually be lower than under the Standard Repayment Plan. However, the total repayment amount will usually be more, because you will pay more interest over the life of the loan.

## GRADUATED REPAYMENT PLAN

***Minimum Monthly Payment*** — ***$ 25.00***
***Repayment Period*** — ***12 - 30 years***

Under the Graduated Repayment Plan, the payments start out low and increase. In general, payments will increase every two years. The repayment period generally varies from 12 - 30 years, depending on the total amount borrowed. Your starting monthly payment amount will be the larger of the following two calculations:

1. 50 percent of the amount that would be required under the Standard Repayment Plan, or
2. the amount of interest that accrues monthly on the loan.

Generally, the amount you will repay over the term of your loan will be higher under the Graduated Repayment Plan than under the Standard or Extended Repayment Plans. However, the Graduated Repayment Plan has the advantage of offering lower payments early in your career while your income is lower. The maximum monthly payment will never be more than 150 percent of the amount required under the Standard Repayment Plan.

**Loan Amounts and Maximum Number of Monthly Payments for the Extended and Graduated Repayment Plans**

| Loan Amount | | Maximum Number of Monthly Payments |
|---|---|---|
| At Least | Less Than | |
| $ 0 | $10,000 | 144 (12 years) |
| $10,000 | $20,000 | 180 (15 years) |
| $20,000 | $40,000 | 240 (20 years) |
| $40,000 | $60,000 | 300 (25 years) |
| $60,000 | | 360 (30 years) |

## INCOME CONTINGENT REPAYMENT PLAN

***Minimum Monthly Payment*** — ***$ 0 or $5.00***
***Maximum Repayment Period*** — ***25 years***

This Income Contingent Repayment (ICR) Plan is effective for borrowers entering the Income Contingent Repayment Plan on or after July 1, 1996.

# Repayment Plan Choices *(continued)*

Under this plan the payment amount is based upon your income. The monthly payment amount will be the lesser of the following two calculations:

1. the amount you would pay if you repaid your loan in 12 years, multiplied by an income percentage factor (ranging from approximately 55 percent to 200 percent) that varies with your annual income, or

2. 20 percent of your monthly discretionary income. Discretionary income is your federal Adjusted Gross Income (AGI) minus the poverty level for your family size.

If you are married, both your AGI and your spouse's AGI will be used to calculate your monthly repayment amount, even if you file your income taxes separately from your spouse.

If your calculated monthly payment is between $ 0 and $ 5.00, you will be required to make a $5.00 monthly payment. If your income is less than or equal to the poverty level for your family size, your payment will be $0. In the event that your payment amount is less than the amount of interest accruing on your loan, the interest will be added to your loan principal (capitalized) once a year until the principal balance is 10 percent higher than the original balance. After this occurs, interest will continue to accrue but will not be added to the principal balance.

Under this plan, it is possible you will not make payments large enough to pay off your loans in 25 years. If loans are not fully repaid after 25 years of repayment—excluding periods in deferment, forbearance, the Graduated and/or 15 to 30-year Extended Plans—any unpaid amount will be canceled and considered taxable income.

Your repayment amount is adjusted annually. It will be higher when your income is higher, and lower when your income is lower.

If you select the Income Contingent Repayment Plan, we will:

1. require you to submit documentation of current income (yours and your spouse's) in the first year of repayment. You may be required to submit documentation of current income (yours and your spouse's) in your second year of repayment as well,

2. forward you a form that authorizes the Internal Revenue Service (IRS) to provide income information (yours and your spouse's) to the U.S. Department of Education. You must sign this form and return it to us. The AGI from the IRS will be used to calculate your monthly repayment amount in years subsequent to the year(s) in which alternative documentation is required.

In special circumstances when your federal tax return does not reflect your present income (for example, due to loss of employment), you may submit documentation of your current income. Your monthly payment will be based on this documented income information.

Federal Direct PLUS Loans may not be repaid under the ICR Plan.

## CHANGING REPAYMENT PLANS

During your repayment period, you may experience significant changes in your financial circumstances. You may change jobs, receive salary increases, or choose work that provides less income than you anticipated when you selected your repayment plan. If you want to change your repayment plan to adjust to changing circumstances, your repayment period for your new plan must be longer than your loans have already been in repayment. For example, you can change from the Extended Plan to the Standard Plan only if you have been in the Extended Plan less than 10 years. The term of your loan will equal your new repayment plan's maximum repayment period minus time spent in previous repayment plans. If you are switching to the ICR Plan, periods of repayment in the Graduated and 15 to 30-year Extended Plans do not count toward your 25-year maximum term. There is no limit to the number of times you may change plans. But, if you are required to repay a Direct Consolidation Loan under the ICR Plan due to a previously defaulted loan, you must make three consecutive monthly payments before you can change to another plan.

## LOAN CONSOLIDATION

If you have more than one student loan (including other federal education loans), it may be to your advantage to consolidate your loans into a single Direct Consolidation Loan. This may allow you to extend your repayment term, reduce your monthly payment amount, and make a single monthly payment. If you are interested in a Direct Consolidation Loan, contact the Consolidation Department of the Loan Origination Center at **1-800-557-7392**. The TDD number for the hearing impaired is **1-800-557-7395.**

**Typical Beginning Payments for Direct Loan Repayment Plans**

| Total Debt When Borrower Enters Repayment | Standard | | Extended | | Graduated | | Income Contingent | |
|---|---|---|---|---|---|---|---|---|
| | Per Month | Total | Per Month | Total | Per Month | Total | Per Month | Total |
| $ 2,500 | $ 50 | $ 3,074 | $ 50 | $ 3,074 | $ 25 | $ 4,029 | $ 23 | $ 4,412 |
| 5,000 | 61 | 7,359 | 55 | 7,893 | 32 | 8,655 | 46 | 8,825 |
| 7,500 | 92 | 11,039 | 82 | 11,839 | 53 | 12,982 | 69 | 13,237 |
| 10,000 | 123 | 14,718 | 97 | 17,463 | 70 | 19,085 | 93 | 17,650 |
| 15,000 | 184 | 22,077 | 146 | 26,194 | 105 | 28,628 | 139 | 26,474 |

**Notes:** Payments are calculated using the maximum interest rate of 8.25%.

The Income Contingent payment is based on annual income of $25,000 for a single borrower with no dependents.

The Income Contingent Repayment Plan assumes a 5% annual income growth (Census Bureau).

This plan might be right for you if you expect your income to increase steadily over time. The minimum monthly payment will be the greater of the interest that accumulates on your loan between payments, or half of the payment you would make each month using the Standard Repayment Plan. However, your monthly payments will never increase to more than one-and-one-half times what you would pay under standard repayment. Generally, the amount you'll repay over the term of your loan will be higher under graduated repayment than under extended repayment. However, graduated repayment has the advantage of offering you lower payments earlier in your career while your income is lower (see **Example C**).

**Example C**

This example shows a Direct Subsidized Consolidation Loan repaid at the maximum interest rate for student borrowers (8.25 percent) under the Graduated Repayment Plan for 15 years (180 payments).

| Loan Amount | Beginning Monthly Payment | Ending Monthly Payment | Total Amount Repaid |
|---|---|---|---|
| $15,000 | $105 | $238 | $28,628* |

*$15,000 in principal and $13,628 in interest.

## 4. Income Contingent Repayment Plan

This plan gives you the flexibility to meet your Direct Loan obligations without causing undue financial hardship. Each year, your monthly payments will be calculated on the basis of your annual income and the total amount of your Direct Loans. (Remember that parents may not use this plan to repay Direct PLUS Consolidation Loans.)

To participate in the Income Contingent Repayment Plan, you must sign a form that permits the Internal Revenue Service (IRS) to inform the U.S. Department of Education (ED) of your income. This information will be used to calculate your monthly payment, which will be adjusted annually.

If your payments are not large enough to cover the interest that has accumulated on your loans, the unpaid interest will be capitalized once each year. If capitalization increases the total amount you owe to 10 percent more than the original amount you owed when you entered repayment, interest will continue to accumulate but will no longer be capitalized.

The maximum repayment period is 25 years. If you make payments under the Standard Repayment Plan or the 12-year Extended Repayment Plan and then switch to the Income Contingent Repayment Plan, those periods are counted toward your 25-year repayment period. Earlier payment periods in other plans do not count toward the maximum 25 years. If you haven't fully repaid your loans after 25 years under this plan, the unpaid portion will be discharged. However, you will have to pay taxes on the amount that is discharged.

### *Changes to the Income Contingent Repayment Plan*

Effective July 1, 1996, there will be a new Income Contingent Repayment Plan for borrowers who enter repayment after July 1, 1996, and for borrowers who switch from another repayment plan to the Income Contingent Repayment Plan. Borrowers who are in repayment under the Income Contingent Repayment Plan prior to July 1, 1996, will continue to make payments in accordance with the provisions of the old Income Contingent Repayment Plan. However, they will be given the option to switch to the new plan.

Under this plan, you will pay an amount based on the Adjusted Gross Income (AGI) you report on your federal tax return, or, if you submit alternative documentation of income (see page 4), you will pay an amount based on your current income. If you're married, the amount you pay will be based on your income and your spouse's income.

### *New Formula*

Under the new plan, you will pay the lesser of

1) the amount you would pay if you repaid your loan in 12 years multiplied by a factor that varies with your annual income

2) 20 percent of your **discretionary income**, which is your AGI minus the poverty level for your family size (see **Examples D** and **E**)

P00452

## Example B

This chart compares the costs of paying (not capitalizing) interest and capitalizing interest on a $2,625 Direct Unsubsidized Loan at 8.25 percent interest, the maximum interest rate, under the Standard Repayment Plan. The borrower attended school for 9 months and then had a 6-month grace period.

| Type of Interest | Loan Amount | Interest Charged | Interest Paid | Principal to be Repaid | Monthly Payment | Number of Payments | Total Repayment |
|---|---|---|---|---|---|---|---|
| Not Capitalized | $2,625 | $230 | $230 | $2,625 | $50 | 65 | $3,498* |
| Capitalized** | $2,625 | $230 | $0 | $2,855 | $50 | 73 | $3,638 |

*Total repayment includes the $230 in interest paid before the loan went into repayment.
**Interest was capitalized once, when the borrower entered repayment (15 months after the loan was made).

### What is a deferment, and what does it do?

During deferment of Direct Subsidized Consolidation Loans, payments on principal are postponed, and interest is not charged. In the case of Direct Unsubsidized Consolidation Loans, payments on principal are postponed, but interest is charged during the deferment period. The interest may be paid on a regular basis during the deferment period or it may accumulate and be capitalized when the deferment period ends.

### What is forbearance, and what does it do?

Under forbearance, you can, if eligible, temporarily reduce your payment amount or temporarily stop making payments, as long as you intend to repay your loan. During forbearance, interest is charged on all loans. You may choose to pay the interest on a regular basis during the forbearance period or have it capitalized when the forbearance period ends.

### Please remember...

Consolidating your loan debt is an important financial decision that requires information and careful thought. If you have additional questions, call the *Loan Origination Center's* Consolidation Department at **1-800-557-7392**.

1-800-557-7392
TDD 1-800-557-7395

After reviewing the various options available to you, if you find that the Direct Consolidation Loan Program is able to offer features and benefits that you want, complete the application using the instructions that begin on page 11.

Direct Loans
William D. Ford Federal Direct Loan Program

# ANNUAL INTEREST CAPITALIZATION DISCLOSURE FOR NEGATIVELY AMORTIZED ACCOUNTS

ACCOUNT NUMBER

06/30/2004

BRENDA K PFEIFFER

REDACTED

ACCOUNT STATEMENT

inaccurate

## NOTIFICATION OF CAPITALIZATION

During the past year, your total payments were less than your accrued interest on the loan(s) you had or have been repaying under the Income Contingent Repayment (ICR) plan (this is called negative amortization). We capitalized the interest (totaling $207.56), meaning we added it to your principal balance as required under the repayment plan.

why?

## MONTHLY PAYMENT AMOUNT

As a result of capitalizing the unpaid interest, your monthly payment (see below) may have changed. If you cannot pay your monthly amount, call our toll-free number, 1-800-848-0979. THIS IS NOT A BILL. Your next billing notification will reflect this new amount.

Please call us if you have questions.

6/21/04 (last payment posting)
– 6/30/04 = 10 days
110269.27 x rate x 10 = $207.56

New Monthly Payment
$548.42

FOR YOUR DIRECT CONSOLIDATION LOANS, THIS DISCLOSURE IS BASED ONLY ON TOTAL DEBT CONSOLIDATED BY THIS DATE. YOUR PAYMENT AMOUNT WILL BE RECALCULATED IF YOUR DEBT IS FULLY CONSOLIDATED AT A LATER DATE.

**Your interest rate information is shown on the back of this Notice.**

OUR RECORDS INDICATE

| | | | |
|---|---|---|---|
| NET DISBURSEMENT AMOUNT | $116,181.50 | LOAN TYPE | CONSOL |
| CAPITALIZED INTEREST | $576.32 | SOCIAL SECURITY NO. | |
| TOTAL PRINCIPAL PAID | $6,280.99 | TELEPHONE NO. | |
| TOTAL INTEREST PAID | $19,477.81 | LOAN STATUS | REPAYMENT |
| TOTAL LATE CHARGES PAID | $.00 | CURRENTLY ENROLLED AT | |
| OUTSTANDING PRINCIPAL BAL | $110,476.83 | | |
| LAST PAYMENT DEPOSITED | 06/21/2004 | ☐ FULL TIME ☐ HALF TIME ☐ PART TIME | |
| TO PRINCIPAL | $234.40 | FORBEARANCE EXPIRES | |
| TO INT $665.60 LATE CHRG | $.00 | EXPECTED/ACTUAL SEPARATION DATE | 12/31/2001 |
| LATE CHARGES DUE* | $.00 | | |
| PAST DUE AMOUNT | $.00 | DEFERMENT EXPIRES | |
| CURRENT DUE AMOUNT | $553.92 | FIRST/NEXT INSTALLMENT | 07/21/2004 |
| TOTAL AMOUNT DUE | $553.92 | ACCRUED INT. THROUGH 06/30/2004 | $.00 |

* A late charge may be assessed for payments received after the due date. These charges are calculated to be five percent of your regular monthly payment amount. Late Charges Due represents the total unpaid late charges for your Direct Loan(s).

??

Please refer to the back of this statement for important information.

DSC4AV05

CONFIDENTIAL

**Direct Loans**

William D. Ford Federal Direct Loan Program

# ANNUAL INTEREST CAPITALIZATION DISCLOSURE FOR NEGATIVELY AMORTIZED ACCOUNTS

ACCOUNT NUMBER

06/30/2005

REDACTED

BRENDA K PFEIFFER

Rec. 7/16/05

ACCOUNT STATEMENT

## NOTIFICATION OF CAPITALIZATION

During the past year, your total payments were less than your accrued interest on the loan(s) you had or have been repaying under the Income Contingent Repayment (ICR) plan (this is called negative amortization). We capitalized the interest (totaling $440.95), meaning we added it to your principal balance as required under the repayment plan.

inaccurate

## MONTHLY PAYMENT AMOUNT

As a result of capitalizing the unpaid interest, your monthly payment (see below) may have changed. If you cannot pay your monthly amount, call our toll-free number, 1-800-848-0979. THIS IS NOT A BILL. Your next billing notification will reflect this new amount.

Please call us if you have questions.

New Monthly Payment
$538.90

FOR YOUR DIRECT CONSOLIDATION LOANS, THIS DISCLOSURE IS BASED ONLY ON TOTAL DEBT CONSOLIDATED BY THIS DATE. YOUR PAYMENT AMOUNT WILL BE RECALCULATED IF YOUR DEBT IS FULLY CONSOLIDATED AT A LATER DATE.

**Your interest rate information is shown on the back of this Notice.**

OUR RECORDS INDICATE

| | | | |
|---|---|---|---|
| NET DISBURSEMENT AMOUNT | $116,181.50 | LOAN TYPE | CONSOL |
| CAPITALIZED INTEREST | $1,017.27 | SOCIAL SECURITY NO. | REDACTED |
| TOTAL PRINCIPAL PAID | $10,272.40 | TELEPHONE NO. | |
| TOTAL INTEREST PAID | $26,486.40 | LOAN STATUS | REPAYMENT |
| TOTAL LATE CHARGES PAID | $.00 | CURRENTLY ENROLLED AT | |
| OUTSTANDING PRINCIPAL BAL | $106,926.37 | | |
| LAST PAYMENT DEPOSITED | 06/09/2005 | ☐ FULL TIME ☐ HALF TIME ☐ PART TIME | |
| TO PRINCIPAL | $417.07 | FORBEARANCE EXPIRES | |
| TO INT $482.93 LATE CHRG | $.00 | EXPECTED/ACTUAL SEPARATION DATE | 12/31/2001 |
| LATE CHARGES DUE* | $.00 | | |
| PAST DUE AMOUNT | $.00 | DEFERMENT EXPIRES | |
| CURRENT DUE AMOUNT | $543.23 | FIRST/NEXT INSTALLMENT | 07/21/2005 |
| TOTAL AMOUNT DUE | $543.23 | ACCRUED INT. THROUGH 06/30/2005 | $.00 |

* A late charge may be assessed for payments received after the due date. These charges are calculated to be five percent of your regular monthly payment amount. Late Charges Due represents the total unpaid late charges for your Direct Loan(s).

Please refer to the back of this statement for important information.

DSC4AV06

CONFIDENTIAL

BRENDA K PFEIFFER

Direct Loans Billing Statement

2004

REDACTED

Account Number

Questions? 1-800-848-0979

## Negative Amortization Billing Statement - Payment Due 12/21/2004

| Current Repayment Plan | Monthly Payment Amount | Amount Past Due | Late Charges Due | Total Payment Due |
|---|---|---|---|---|
| Income Contingent | $543.23 | $0.00 | $0.00 | $543.23 |

Please Pay This Amount by 12/21/2004

### Important Account Information

Please note that (1) your *Monthly Payment Amount* is less than interest owed on your loan(s) and (2) uncapitalized accrued interest on your loan(s) is currently $143.29.

When unpaid interest is capitalized once a year, it will increase the cost of your loan(s). To avoid or reduce capitalization, you can (1) send a payment to cover all or a portion of interest owed or (2) pay at least the amount of interest charged monthly to your loan(s) (about $623.07).

### Activity From 10/25/2004 To 11/21/2004

10/13 - 10/21

| | Date | Principal Balance | Interest Balance | Late Charges |
|---|---|---|---|---|
| Opening Balance | 10/25/2004 | $109,001.37 | $246.20 | $0.00 |
| Net Disbursement Activity | | $0.00 | | |
| Net Principal Adjustments | | $0.00 | | |
| Capitalized Interest | | $0.00 | $0.00 | |
| Rebate Activity | | $0.00 | | |
| Interest/Late Charges - Accrued/Adjusted | 11/21/2004 | | $574.15 | $0.00 |
| Payment Applied... $925.00 | 11/15/2004 | $247.94- | $677.06- | $0.00 |
| Ending Balance | 11/21/2004 | $108,753.43 | $143.29 | $0.00 |

**Current Balance - As of 11/21/2004 = $108,896.72**

Your payments are due on the 21st of each month.

*If you prepay your loan(s), your next payment due date will be advanced into the future. See the back of this statement for more prepayment information.*

If you think you may be unable to make a scheduled payment, please contact the Direct Loan Servicing Center immediately at the number above to discuss alternative arrangements.

Identity theft is one of the fastest growing crimes in the United States.

How can I protect myself from identity theft?

Check your monthly credit card and bank statements for unusual activity.

For more information, visit www.studentaid.ed.gov/idtheft

Make Payments Electronically
Make payments on your loan(s) without having to write or mail a check. You can use this service anytime. Visit us at www.dl.ed.gov to make a payment now!

$925.00 pd #5716 12/9/04

7 x .0188227 rate x 108,753.43 = 143.2 days

000077671

RC

BILFAV07

**A. Family Size.** Enter your family size on the line below. Your family size number includes you and your spouse. It includes your children if they get more than half their support from you. It includes other people only if: (1) they now live with you, *and* (2) they now get more than half their support from you *and* they will continue to get this support from you. ***Support*** includes money, gifts, loans, housing, food, clothes, car, medical and dental care, payment of college costs, etc. **If your family size number changes, notify the Direct Loan Servicing Center in writing at the mailing address or the web site address shown in Section 5.**

Family Size 1

**B. ICR Joint Repayment Option.** If you and your spouse each have Direct Loans and both of you want to repay the loans under the ICR Plan, you may choose to repay your loans jointly. If you choose to repay jointly, place an "X" in the box below and have your spouse sign and date this form.

☐ I wish to repay my loan(s) jointly with my spouse under the ICR Plan.

**C. Certification.** Read the certification statement below, then sign and date this form. If you selected the ICR Joint Repayment Option (see "B", above), your spouse must also sign and date this form.

All of the information I provided on this form is true and complete to the best of my knowledge. If asked by an authorized official, I agree to provide proof of the information that I have provided on this form.

Borrower's Signature [signature] Date 11/10/04

Spouse's Signature (if required) ____________ Date ____________

CONFIDENTIAL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Brenda Kay Pfeiffer,

On behalf of herself and all others similarly situated,

*Plaintiff*,

v.

Margaret Spellings, in her official capacity as United States Secretary of Education, the United States Department of Education, and the United States of America,

*Defendants*.

Civil No. 1:07-cv-00522 (EGS)

CLASS ACTION

**[PROPOSED] ORDER**

Upon consideration of Plaintiff's Motion for Partial Summary Judgment, the memoranda and materials filed by the parties, and the entire record herein, it is hereby ordered that the Motion be, and it is, **GRANTED**.

The Court further issues the following Order:

1. The Court hereby **DECLARES** that Defendants' practice of capitalizing accrued interest on June 30 each year on Class Members' loans is a breach of the plain terms of the form promissory notes executed by the Class Members because it capitalizes interest before it is due.

2. The Court hereby **ENJOINS** the Defendants from continuing to capitalize accrued interest on June 30 each year on the Class Members' loans.

3. The parties are hereby **ORDERED** to meet and confer within 30 days of this Order to determine if the proper measure of damages may be agreed to by stipulation.

So **ORDERED** this ____ day of __________, 2008.

______________________________
Emmet G. Sullivan
United States District Judge

cc:

John Warshawsky
U.S. Department of Justice
Civil Division, Commercial Litigation Branch
1100 L Street, N.W., Room 10030
Washington, D.C.  20530
Telephone:  (202) 307-0010
Facsimile:  (202) 514-9163
E-mail:  john.warshawsky@usdoj.gov

Steven M. Sprenger
Sprenger & Lang, PLLC
1400 Eye Street N.W.
Suite 500
Washington, DC 20005
Telephone: (202) 772-1160
Facsimile: (202) 332-6652
E-mail:  ssprenger@sprengerlang.com

Daniel C. Bryden
Sprenger & Lang, PLLC
310 Fourth Avenue S.
Suite 600
Minneapolis, MN 55415
Telephone:  (612) 871-8910
Facsimile:  (612) 871-9270
E-mail:  dbryden@sprengerlang.com