IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

BRENDA KAY PFEIFFER,                               )
                                                   )
            Plaintiff,                             )
                                                   )
      v.                                           )     Case No. 1:07-cv-00522
                                                   )     (Judge Sullivan)
MARGARET SPELLINGS, Secretary of Education,        )
      et al.,                                      )
                                                   )
            Defendants.                            )
_____)

DEFENDANTS' MEMORANDUM IN OPPOSITION
TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Rule 56(e) of the Federal Rules of Civil Procedure and Local Civil Rule 7,

defendants Margaret Spellings (the "Secretary"), the United States Department of Education (the

"Department of Education"), and the United States of America respectfully oppose the motion

for partial summary judgment filed by the plaintiff, Brenda Kay Pfeiffer ("Dr. Pfeiffer").

Plaintiff's Motion for Partial Summary Judgment ("Dr. Pfeiffer's Motion" or "Pl. Mot.") (Jan.

31, 2008) (Dkt. No. 25).  As we explain below, Dr. Pfeiffer's argument for entry of partial

summary judgment is fatally flawed because it disregards controlling regulations incorporated

within the terms of her contract, as set forth in her promissory notes, and relies upon

insupportable arguments for construction of the terms of her promissory notes.

I.     Overview of Defendants' Opposing Memorandum

On January 31, 2008, defendants filed their motion for summary judgment in this matter,

and our motion both sets forth the factual history surrounding Dr. Pfeiffer's student loans and

provides an overview of the William D. Ford Federal Direct Loan Program ("Direct Loan

Program") pursuant to which Dr. Pfeiffer obtained the loans at issue in this case.  See

Defendants' Motion for Summary Judgment at 2-6 (Jan. 31, 2008) (Dkt. No. 22) ("Def.

Motion").  For the sake of brevity, we will not repeat that history and overview here, but we

reference it for the Court's consideration.

As our motion for summary judgment explains, Dr. Pfeiffer obtained student loans

through the Direct Loan Program and elected to repay her loans under one of the repayment

arrangements offered to student loan borrowers, the Income Contingent Repayment ("ICR")

Plan.  Id. at 3-6.  Our motion further explains that under the ICR Plan, which considers a

borrower's income level in determining the amount of his or her scheduled payments,

Dr. Pfeiffer periodically was not required to make monthly payments sufficient to pay even the

interest that accrued on her debt.  At such times, her loans were designated as being in a

"Negative-Amortization" condition, in accordance with Department of Education regulations.

Id. at 6-9; see 34 C.F.R. § 685.202(b)(1), (4) (annual capitalization of unpaid accrued interest);

34 C.F.R. § 685.209(a) (determination of ICR Plan scheduled payment amounts); 34 C.F.R.

§ 685.211(a)(1) (allocation of payments among charges, costs, accrued interest, and principal

reduction).  For those periods when Dr. Pfeiffer's loans were in a Negative-Amortization

condition, defendants capitalized the total amount of unpaid accrued interest as of June 30th, in

accordance with a regulation implementing the Direct Loan Program.  Def. Mot. at 8-9

(discussing 34 C.F.R. § 685.202(1) and (4)).

Dr. Pfeiffer's Motion argues that since the interest that accrued on her loans between the

Government's receipt of her June payment and June 30th was not delinquent until after the

scheduled payment date in July, defendants were not contractually authorized to capitalize unpaid

interest as of June 30th during those times when her loans were in a Negative-Amortization

condition.  See Plaintiffs' Memorandum in Support of Motion for Partial Summary Judgment

("Pl. Memo.") at 1-3, 5-6.  In making this argument, Dr. Pfeiffer asks the Court to construe her

promissory notes in a fashion contrary to the terms which even she understood, as confirmed by

her deposition testimony.  Indeed, when her loans were in a Negative-Amortization condition,

she effectively never had a "due" date to pay any interest, except to the extent her scheduled

payment amount was greater than zero.[1]  Moreover, Dr. Pfeiffer's argument asks the Court to

ignore the express language of 34 C.F.R. § 685.202(1) and (4), which was incorporated in the

terms of her promissory notes, and urges that defendants should have applied her actual June

payments to interest not yet accrued, contrary to both common sense and the terms of 34 C.F.R.

§ 685.211(a)(1).

      II.      Dr. Pfeiffer's Motion Disregards Controlling Regulations Which
              Were Incorporated in the Terms of Her Promissory Notes and
              Misconstrues the Terms of Her Promissory Notes

     Defendants do not dispute the basic contract construction principles set forth in

Dr. Pfeiffer's Motion.  Contract construction begins with the plain language of the contract, see

Pl. Memo. at 4 (citations omitted); ambiguities are to be resolved against the drafter,[2] id.

---

     [1]     As we explain in our memorandum addressing Plaintiff's Motion for Class
Certification and Appointment of Counsel (Jan. 31, 2008) (Dkt. No. 24), which we have filed
contemporaneously with this brief, the vast majority of borrowers whose loans are in a Negative-
Amortization condition have a scheduled payment amount of zero based upon the formula
prescribed by 34 C.F.R. § 685.209(a).  In other words, such borrowers effectively have no due
date to pay any interest because they are not contractually obligated to make any payment when
they have scheduled payments of zero.  See Defendants' Memorandum in Response to Plaintiff's
Motion for Class Certification and Appointment of Counsel (Feb. 28, 2008).

     [2]     While defendants recognize the general rule of construction that ambiguities are to
be resolved against the drafter, this rule has no application in this case.  As we explain below, the

(citations omitted); and, where possible, contracts should be construed in a fashion that gives

meaning to all provisions in the contract, id. at 7-8 (citations omitted).  As we explain further,

however, Dr. Pfeiffer's arguments both strain and ignore the plain language of the contract,

largely by disregarding Direct Loan Program regulations incorporated in the terms of her

promissory notes.

        The linchpin of Dr. Pfeiffer's Motion is her assertion that interest which accrued on her

student loans following the Government's receipt of her June payment was not "due" until the

scheduled payment date in July, after which her payment would be deemed delinquent.  See Pl.

Memo. at 5-6; Pl. Mot., Ex. 13 (defining "Payment Due Date" as "The date during the month

when payment of the current due amount must be received. . . .").  As support for her position,

Dr. Pfeiffer asserts that the following provision in her promissory notes barred defendants from

capitalizing her accrued and unpaid June interest on June 30th:

> [The Department of Education] may add interest that accrues but is
> not paid when due to the unpaid principal balance of this loan, as
> provided under the [Higher Education Act of 1965, as amended, 20
> U.S.C. § 1070 et seq., and applicable Department of Education
> regulations.] This is called capitalization.

Pl. Memo. at 2 (quoting "Interest" provision).  While this language does not expressly address

the subject of Dr. Pfeiffer's complaint, Dr. Pfeiffer essentially argues that this language implicitly

prohibited the capitalization of her unpaid June interest because, in her analysis, that amount was

---

only so-called "ambiguities" are those created by Dr. Pfeiffer's strained contract interpretations,
and these are not sufficient to establish the presence of an ambiguity.  See, e.g., Segar v.
Mukasey, 508 F.3d 16, 22 (D.C. Cir. 2007) ("[A] contract provision 'is not ambiguous merely
because the parties later disagree on its meaning.' . . . It is ambiguous only 'if it is reasonably
susceptible of different constructions.'") (quoting Bennett Enterprises, Inc. v. Domino's Pizza,
Inc., 45 F.3d 493, 497 (D.C. Cir.1995)).

not due until her scheduled payment date in July.  In making this argument, however, Dr. Pfeiffer

ignores the language specifically referring to the Higher Education Act of 1965, as amended, 20

U.S.C. 1070 et seq., and the implementing regulations.  As we explain below, the Court should

reject Dr. Pfeiffer's argument because it wholly ignores the clear, express language of one of the

implementing regulations, 34 C.F.R. § 685.202(b)(1) and (4), which specifically addresses and

authorizes the practice of which she complains.

> A.    Dr. Pfeiffer's Motion Ignores an Implementing
>        Regulation, 34 C.F.R. § 685.202(b)(1) and (4),
>        Which Was Incorporated in the Terms of Her
>        Contract by the Language of Her Promissory Notes

In our motion for summary judgment, we explained that all of Dr. Pfeiffer's promissory

notes contained a section captioned "Promise to Pay," which Dr. Pfeiffer confirmed she read

before she signed her promissory notes.  Def. Mot. at 3, 5-6; Defendants' Statement of Material

Facts as to Which There Are No Genuine Issues to Be Tried Statement of Facts ¶¶ 3, 4, 8, and 9

(Jan. 31, 2008) (Dkt. No. 22-3) ("Statement of Facts").  This section included the following

certifications by Dr. Pfeiffer:

> I understand that this is a Promissory Note.  I will not sign this note
> before reading it, including the text on the reverse side, even if I
> am advised not to read the note. . . .  My signature certifies that I
> have read, understand, and agree, to the terms and conditions of
> this Promissory Note, including the Borrower Certification and
> Authorization printed on the reverse side and the accompanying
> Borrower's Rights and Responsibilities.

Statement of Facts ¶ 3 (emphasis added).[3]  Our motion further explained that the reverse side of

---

[3]      As explained in our motion for summary judgment, the provisions in her
promissory notes were substantively identical.  The only difference was that while the second
sentence of the 1997 promissory notes referred to "Promissory Note," the second sentence of the
2001 promissory note simply referred to "note."  Def. Mot. at 6 note 4; Statement of Facts ¶ 8.

Dr. Pfeiffer's promissory notes began with the following statement:

> Governing Law and Notices
>
> This Promissory Note (note) applies to Federal Direct Consolidation Loans (Direct Consolidation Loans). In this note, the Higher Education Act of 1965, as amended, 20 U.S.C. 1070 et seq. and applicable U.S. Department of Education (ED) regulations are referred to as "the Act." The terms of this note will be interpreted according to the Act and other applicable federal statutes and regulations.

Def. Mot. at 4, 6; Statement of Facts ¶¶ 5, 10.

The "Governing Law and Notices" provision unquestionably incorporated by reference the terms of 34 C.F.R. § 685.202(b)(1) and (4). Part 685 is expressly titled as the regulations for the "William D. Ford Federal Direct Loan Program," 34 C.F.R. Part 685, and 34 C.F.R. § 685.202 is entitled "Charges for which Direct Loan Program borrowers are responsible." Subsection (b) of the regulation is entitled "Capitalization," 34 C.F.R. § 685.202(b), and subparagraph (1) defines the practice of "capitalization" as the addition of "unpaid accrued interest to the borrower's unpaid principal balance," 34 C.F.R. § 685.202(b)(1). Subparagraph (4) expressly states that ICR borrowers whose loans are in a Negative-Amortization condition will be subject to annual capitalization of unpaid interest:

> Except as provided in [three non-applicable subsections], the Secretary annually capitalizes unpaid interest when the borrower is paying under the . . . income contingent repayment plan[] and the borrower's scheduled payments do not cover the interest that has accrued on the loan.

34 C.F.R. § 685.202(b)(4) (emphasis added).[4]

---

[4]     The Department of Education's regulations place a "10 percent" ceiling on the amount of interest that may be capitalized for loans in a Negative-Amortization condition. 34 C.F.R. § 685.209(c)(5).

Rather than addressing the clear and precise language of 34 C.F.R. § 685.202(b)(1) and (4), Dr. Pfeiffer suggests that the regulation was not incorporated into the terms of her contract. Pl. Memo. at 6.[5]  In doing so, Dr. Pfeiffer characterizes the "Governing Law and Notices" section as containing "general language" and asserts that defendants' Rule 30(b)(6) deposition witness "did not know what regulations or portions of the Higher Education Act this language refer[red] to." Pl. Memo. at 6 (citing Dr. Pfeiffer's Statement of Facts ¶ 5).  A review of the deposition transcript referenced by Dr. Pfeiffer confirms, however, that the deponent simply testified that she could not provide citations to specific regulations "[o]ff the top of [her] head" and that she did not know "specifically" which regulations were referenced by the promissory note.  See Defendants' Statement of Genuine Issues ¶ 5 (Feb. 28, 2008).[6]  Given the specific language in 34 C.F.R. § 685.202, which plainly referred to the operations of the Direct Loan Program, there can be no serious doubt that defendants' Rule 30(b)(6) witness would have confirmed the applicability of this regulation had she been asked by Dr. Pfeiffer's counsel whether the Direct Loan Program regulations were among those referenced in Dr. Pfeiffer's Direct Loan Program promissory notes.

Dr. Pfeiffer proceeds to characterize the Governing Law and Notices language as "obscure," Pl. Memo. at 6, and argues, in only a few sentences, that 34 C.F.R. § 685.202(b)(4)

---

[5]     While Dr. Pfeiffer does offer a discussion of other subparagraphs of 34 C.F.R. § 685.202(b), as well, her argument neither proffers a construction of 34 C.F.R. § 685.202(b)(4) supportive of her position nor explains why her argument about other subparagraphs would dictate a construction of 34 C.F.R. § 685.202(b)(4) supportive of her argument.  See Pl. Memo. at 9-10.  Thus, Dr. Pfeiffer's motion simply disregards the plain language of 34 C.F.R. § 685.202(b)(4).

[6]     Defendants' Statement of Genuine Issues has been filed contemporaneously with our opposition to Dr. Pfeiffer's Motion.

"simply limits the number of times the Secretary may capitalize accrued interest each year." Pl.
Memo. at 7.  Contrary to Dr. Pfeiffer's argument, however, a review of the regulation's  language
confirms that it contains no "limiting" language.  Rather, as we explained in our motion for
summary judgment, the regulation sets forth an affirmative statement about the Secretary's
capitalization practices for ICR borrowers, and a review of that language confirms that it
expressly applied for those periods when Dr. Pfeiffer's loans were in a Negative-Amortization
condition, just as it would have applied to all other ICR borrowers with scheduled payments less
than accrued interest.  See Def. Mot. at 6-9, 13-15.

> B.     Dr. Pfeiffer's Motion Misconstrues the Term "Due"
> in a Manner Which is Contrary to Her Own
> Understanding of Her Contractual Obligations and
> in Defiance of the Contract's Plain Language

As explained above, Dr. Pfeiffer's motion relies upon her proffered construction of the
following provision:

> [The Department of Education] may add interest that accrues but is
> not paid when due to the unpaid principal balance of this loan, as
> provided under the [Higher Education Act of 1965, as amended, 20
> U.S.C. § 1070 et seq., and applicable Department of Education
> regulations.] This is called capitalization.

Pl. Memo. at 2 (quoting language in Dr. Pfeiffer's promissory notes).  Dr. Pfeiffer asserts that
this provision, which states that the Secretary "may add interest that accrues but is not paid when
due," actually serves as a restriction on the Secretary.  Pl. Memo. at 1-2, 5-6.

While Dr. Pfeiffer refers the Court to general legal principles regarding contract
construction, she cites no specific authority to support her argument that accrued interest is not
"due" until the scheduled payment date.  At best, she argues that an online Thesaurus definition

of "unpaid" supports her argument that accrued interest is not due.  See Pl. Memo. at 8 (citing an Internet reference to Roget's II, The New Thesaurus (3d ed. 1995)).

Dr. Pfeiffer's reference to this Thesaurus definition is selective, however, because its definition of "unpaid" is much broader than simply "due"; its full definition provides the following: "Owed as a debt: due, outstanding, owed, owing, payable, receivable, unsettled." Exhibit I (.pdf copy of definition).  Thus, the definition cited by Dr. Pfeiffer principally defines "unpaid" as "[o]wed as a debt," confirming that when her Thesaurus reference defines the term "due," the issue is whether a borrower has incurred a liability and not whether the borrower has reached the point in time after which payment would be delinquent.

Further, the definition supported by Dr. Pfeiffer's Thesaurus reference, i.e., that payment for interest is due when it is "owed as a debt," is wholly consistent with Dr. Pfeiffer's own deposition testimony.  When asked about this issue, Dr. Pfeiffer recognized that she became liable to pay interest as it accrued:

> Q. . . . What is your understanding as to how often interest accrues or what period of time is used for the accrual of interest on your note?
>
> A.  My interest accrues daily.
>
> Q.  That means each day a calculation can be made as to how much additional interest is owed on the note even if it isn't scheduled for payment then, is that correct?
>
> A.  Yes.

Def. Mot. at 12 and Appendix to Def. Mot. ("App.") at 20-21 (Dkt. No. 22-2).  Indeed, Dr. Pfeiffer concedes that, as a matter of "common sense," she is obligated to pay the interest that accrues each day, even if it is not scheduled for payment on the day it accrues:

> Q. And do you have an understanding as to whether you owe that additional amount that accrues on a daily basis even if it's not scheduled for payment until, say, the 21st of month?
>
> MR. BRYDEN: To the extent you're seeking a conclusion, I object, but you can answer the question.
>
> THE WITNESS: Yes. I owe the interest that's accruing. Yeah. That's common sense, yes.

Def. Mot. at 12 and App. 21.

Aside from Dr. Pfeiffer's own understanding, the construction of "due" as being synonymous with the incurrence of a liability is consistent with the relevant definition in Black's Law Dictionary, which includes, among its definitions, "Owing or payable; constituting a debt." Black's Law Dictionary (8th ed. 2004).[7] Thus, the construction of "due" as applied by defendants and as understood by Dr. Pfeiffer when she was deposed is consistent with the plain meaning of the term, as defined in Black's Law Dictionary. By comparison, Dr. Pfeiffer cites no authority – not even the Thesaurus referenced in her motion – to support her construction of "due."

It is fundamental that "the judicial task in construing a contract is to give effect to the mutual intentions of the parties." NRM Corp. v. Hercules, Inc., 758 F.2d 676, 681 (D.C. Cir. 1985) (citations omitted), cited in McCarthy v. Azure, 22 F.3d 351, 355 (1st Cir. 1994). The interest capitalization practice of which Dr. Pfeiffer now complains is expressly authorized by the terms of the promissory notes – including 34 C.F.R. § 685.202(b)(1) and (4), incorporated by

---

[7] Black's Law Dictionary also includes as a definition, "Immediately enforceable," as in "payment is due on delivery." In the case of repayment of a promissory note, with scheduled payments, the notion of immediate enforcability is inapposite because no delivery is involved with a promissory note.

- 10 -

reference in the "Interest" provision cited by Dr. Pfeiffer, Pl. Memo. at 2 – and is consistent with Dr. Pfeiffer's understanding of her liability for accrued interest.  By comparison, the construction urged in Dr. Pfeiffer's motion disregards the implementing regulations and defies her own understanding.  This Court should reject Dr. Pfeiffer's proffered construction of the term "due."

III.     Dr. Pfeiffer's Motion Invites the Court to Conclude That Defendants Were Entitled to Apply Her Actual Payments to Unaccrued Interest, Contrary to Both 34 C.F.R. § 685.211(a)(1) and Common Sense

Dr. Pfeiffer's final argument asserts that because she chose to pay amounts in excess of the interest that had accrued when her payments were received, even though her scheduled payments were lower, defendants were required to consider the actual amounts of her payments and apply amounts to all interest that had accrued.  Pl. Memo. at 10-11.  In fact, that is precisely what defendants did, pursuant to 34 C.F.R. § 685.211(a)(1).  As we explained in our motion for summary judgment, this regulation provides that when loan payments are received by defendants, the payments are allocated, first, to "any accrued charges and collection costs, then to any outstanding interest, and then to outstanding principal."  Id.; see Def. Mot. at 7-8 and note 7.

Dr. Pfeiffer's argument does not actually challenge defendants' practices, unless she is asserting that defendants were required to apply her June payment to interest that would accrue in the future, i.e., during the period following receipt of her June payment and June 30th.[8]  Simply put, such an allocation would conflict with the express language of  34 C.F.R. § 685.211(a)(1)

---

[8]     By the time Dr. Pfeiffer submitted her June payment, defendants would have already received payments during the preceding July through May and would have allocated them between accrued interest and principal reduction, pursuant to 34 C.F.R. § 685.211(a)(1). Thus, Dr. Pfeiffer presumably is suggesting that the Court focus on her June payment and allocate a portion of it for the entire month of June, including the time after defendants received her payment through June 30th.

because the regulation only provides for the allocation of a payment to "outstanding interest"; it does not provide for the allocation to interest that had not accrued. Further, it is hard to imagine a legal justification for assessing a borrower for interest that had not yet accrued. Even Dr. Pfeiffer recognized, during her deposition, that "[her] interest accrues daily" and that "[she] owe[s] the interest that's accruing." Def. Mot. at 12 and App. 20-21.[9]

Finally, if Dr. Pfeiffer's attacks directed to the Department of Education's "interest capitalization practice," Pl. Memo. at 10, are intended to serve as a legal challenge to the Secretary's regulations for implementation of the Higher Education Act of 1965, as amended, she has not pled such a cause of action. As the Executive agency entrusted with the administration of this statute, the Department of Education is entitled to "considerable deference" with regard to the construction of this statute and its administrative interpretations. Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844 (1984) (footnote omitted); see, e.g.,

---

[9]        In her motion, Dr. Pfeiffer asserts that Ms. Cynthia Battle, the Department of Education's Rule 30(b)(6) witness, "agreed with the proposition that borrowers who pay more than the accrued interest each month should not experience any interest capitalization." Pl. Memo. at 11. In support of this, she cites one answer from the deposition and references paragraph 21 of her Statement of Facts. As we explain in our response to paragraph 21, Dr. Pfeiffer's reliance upon this single answer plainly mischaracterizes the exchange between her counsel and Ms. Battle. Def. Statement of Genuine Issues ¶ 21 (Feb. 28, 2008). A review of the entire exchange confirms that Ms. Battle repeatedly stated that she did not understand the question posed by Dr. Pfeiffer's counsel. See Def. Statement of Genuine Issues, Exhibit II (Battle Depo. Tr. 102:6-107:5). For example, immediately prior to the testimony cited by Dr. Pfeiffer, Ms. Battle testified that she was "unclear" as to what she was being asked. Id. (Battle Depo. Tr. 103:16-18, 20). It was in that context that she testified that she "guess[ed]" about the answer, which is quoted in the memorandum supporting Dr. Pfeiffer's Motion. Pl. Memo. at 11. After that – in a section not cited by Dr. Pfeiffer – Ms. Battle explained her answer, and Dr. Pfeiffer's counsel responded, "I guess I don't understand your answer." Def. Statement of Genuine Issues, Exhibit II (Battle Depo. Tr. 104:15-24). Ms. Battle then responded, "Okay. Clarify your question and I'll clarify my answer." Id. (Battle Depo. Tr. 104:25-106:1). Contrary to the brief summary set forth in Dr. Pfeiffer's memorandum, Ms. Battle's testimony was hardly a concession of Dr. Pfeiffer's argument.

Transmission Agency of Northern California v. FERC, 495 F.3d 663, 673 (D.C. Cir. 2007) (if

statute is silent or ambiguous as to specific issue, court inquires whether agency's answer is

based on a permissible construction of the statute, and the court upholds agency's interpretation

if it is reasonable) (citing Village of Bergen v. FERC, 33 F.3d 1385, 1389 (D.C. Cir.1994)).

It is not sufficient for Dr. Pfeiffer simply to urge that the Department of Education should

adopt a different mechanism for administering the loans of ICR Plan borrowers or loans in a

Negative-Amortization condition.[10]  If she wishes to challenge the Secretary's implementing

regulations, she should amend her complaint and specify why the Secretary's regulations are

contrary to law.  5 U.S.C. § 706(2)(A).

CONCLUSION

For the foregoing reasons, defendants respectfully request that this Court deny Dr.

Pfeiffer's motion for partial summary judgment.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

J. CHRISTOPHER KOHN
Director

---

[10]     While not relevant unless Dr. Pfeiffer chooses to challenge the legal grounding of the Secretary's regulations, we note that the impact of defendants' process for capitalizing interest for borrowers in Dr. Pfeiffer's situation is de minimis.  To the extent interest is capitalized as of June 30th, it is no longer "outstanding" when the borrower's July payment is received and, therefore, a greater portion of the July payment is allocated to principal reduction than would be the case if it was being allocated to interest that accrued after receipt of the June payment and June 30th.  See 34 C.F.R. § 685.211(a)(1).  While defendants do not concede the accuracy of her calculation, even Dr. Pfeiffer concedes that through November 15, 2007, the impact of the practice in her case is less than $4.  See Exhibit II at 2 (amended answer to damages interrogatory) (attached calculations omitted).

ROBERT E. KIRSCHMAN, JR.
Deputy Director


/s/ John Warshawsky
_____
JOHN WARSHAWSKY (D.C. Bar No. 417170)
Senior Trial Counsel
CHRISTIAN J. GROSTIC
Trial Attorney
Commercial Litigation Branch
Civil Division
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044-0875
Telephone: (202) 307-0010
Facsimile: (202) 305-4933
Attorneys for Defendants

February 28, 2008

<u>Certificate of Service by ECF</u>

I hereby certify that, on February 28, 2008, the foregoing "DEFENDANTS'
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT" was filed electronically in the Court's Electronic Case Filing ("ECF") system.  I
understand that notice of this filing will be sent to all counsel by operation of the Court's ECF
system and that parties may access this filing through the Court's system.


/s/ John Warshawsky
_____



‹ PREVIOUS                                                                      NEXT ›

CONTENTS · GUIDE · BIBLIOGRAPHIC RECORD

Roget's II: The New Thesaurus, Third Edition.  1995.

# unpaid

**ADJECTIVE:** **1.** Owed as a debt: due, outstanding, owed, owing, payable, receivable, unsettled. *See* PAY. **2.** Contributing one's time without pay: uncompensated, unrecompensed, unremunerated, unsalaried, voluntary. *See* PAY, WORK.

Roget's II: The New Thesaurus, Third Edition. Copyright © 1995 by Houghton Mifflin Company. Published by the Houghton Mifflin Company. All rights reserved.

CONTENTS · GUIDE · BIBLIOGRAPHIC RECORD

‹ PREVIOUS                                                                      NEXT ›



Click here to shop the Bartleby Bookstore.

Welcome · Press · Advertising · Linking · Terms of Use · © 2008 Bartleby.com

EXHIBIT I TO DEFENDANTS' OPPPOSITION TO PARTIAL SUMMARY JUDGMENT MOTION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Brenda Kay Pfeiffer, | ) | |
| | ) | |
| On behalf of herself and all others similarly | ) | |
| situated, | ) | Civil No. 1:07-cv-00522 (EGS) |
| | ) | |
| *Plaintiff,* | ) | |
| v. | ) | CLASS ACTION |
| | ) | |
| Margaret Spellings, in her official capacity as | ) | |
| United States Secretary of Education, the United | ) | |
| States Department of Education, and the United | ) | |
| States of America, | ) | |
| | ) | |
| *Defendants.* | ) | |

## PLAINTIFF BRENDA KAY PFEIFFER'S OBJECTIONS
## AND AMENDED ANSWER TO DEFENDANTS' INTERROGATORY NO. 11

Plaintiff Brenda Kay Pfeiffer, by and through her undersigned counsel and pursuant to

Fed. R. Civ. P. 33, hereby submits the following Objections and Amended Answer to

Interrogatory No. 11.

### GENERAL OBJECTIONS

1.    Plaintiff objects to any interrogatories to the extent that they seek information

protected from disclosure by the attorney-client privilege.   In providing responses, Plaintiff does

not waive the attorney-client privilege over any information to which the privilege attaches that may

be sought by the interrogatories.   Similarly, Plaintiff objects to any interrogatories to the extent that

they seek information covered by the work-product doctrine.   In providing responses, Plaintiff does

not waive any immunity from disclosure that attaches to any information to which the work-product

doctrine applies that may be sought by the interrogatories.   Accordingly, unless otherwise indicated,

Plaintiff's responses will exclude from their scope:

EXHIBIT II TO DEFENDANTS' OPPPOSITION TO PARTIAL SUMMARY JUDGMENT MOTION

    a.      All communications between counsel for Plaintiff, between Plaintiff and her counsel, and between other clients and their counsel; and

    b.      All information generated or prepared in anticipation of litigation by or for Plaintiff or her representatives. To the extent that any answer could be construed as containing work product, Plaintiff does not waive immunity with respect to any other such work product.

2.     Plaintiff objects to the interrogatories to the extent that they are vague and ambiguous. Plaintiff has responded to each of the interrogatories as she interprets and understands them. Plaintiff reserves the right to clarify, correct, amend or supplement these responses in the event that Defendant later asserts a different interpretation that is accepted by the Plaintiff.

3.     Plaintiff objects to the instructions contained in the interrogatories to the extent that any such instruction seeks to impose on Plaintiff any duty greater than that required by Rules 26 and 33 of the Federal Rules of Civil Procedure.

4.     Plaintiff objects to these interrogatories because they exceed the number designated by the Federal Rules of Civil Procedure.

## AMENDED ANSWER TO INTERROGATORY NO. 11

**Interrogatory No. 11:**

State whether you have suffered any damages as a result of Defendants' alleged breach of contract, and, if so, set forth a computation of your damages as described in FRCP 26(a)(1)(c).

**Amended Answer to Interrogatory No. 11:**

Yes, Plaintiff has suffered damages as a result of Defendants' breach of contract.

Plaintiff computes her damages by calculating what her principal loan balance would have been

if DOE had not capitalized interest on her account in 2002, 2004 and 2005, and subtracting that

2

amount from her principal loan balance as calculated by DOE. The difference is Plaintiff's damages.

The calculations attached hereto as Exhibit A demonstrate Plaintiff's calculations. Plaintiff's damages as of November 15, 2007 were $3.76.

**AS TO ANSWERS:**

I declare under the penalty of perjury that the foregoing is true and accurate to the best of my knowledge.

Dated: 01/23/08

Brenda Kay Pfeiffer

2020848

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
BRENDA KAY PFEIFFER,                        )
                                            )
              Plaintiff,                    )
                                            )
       v.                                   )        Case No. 1:07-cv-00522
                                            )        (Judge Sullivan)
MARGARET SPELLINGS, Secretary of Education, )
       et al.,                              )
                                            )
              Defendants.                   )
_____    )

## DEFENDANTS' STATEMENT OF GENUINE ISSUES

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 7(h),

Defendants Margaret Spellings (the "Secretary"), the United States Department of Education (the

"Department of Education"), and the United States of America respectfully submit the following

statement of genuine issues with regard to Plaintiff's Statement of Undisputed Material Facts

("Plaintiff's Statement") included within Plaintiff's Motion for Partial Summary Judgment (Jan.

31, 2008) (Dkt. No. 25).  The numbers used in this pleading correspond to the paragraph

numbers set forth in Plaintiff's Statement.

### General Statements

The following responses are submitted pursuant to Local Civil Rule 7(h) solely in

conjunction with the Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 25).  In

providing these responses, Defendants do not waive their right to challenge the factual or legal

basis for any of Plaintiff's Statement in subsequent pleadings or proceedings, if necessary.

Plaintiff's Statement frequently includes multiple sentences setting forth allegations

- 1 -

within each paragraph.  Defendants have prepared a copy of Plaintiff's Statement with numbers

inserted to identify the sentences to which this pleading responds.  A copy of Plaintiff's

Statement with the numbered sentences is attached hereto as Exhibit I to this pleading.

<u>Defendants' Response to Plaintiff's Statement</u>

1.      Defendants do not dispute sentences 1, 2, or 3 for purposes of Local Civil Rule

7(h).

2.      Defendants do not dispute sentences 1 or 3 for purposes of Local Civil Rule 7(h).

Defendants object to sentence 2 because it sets forth a legal conclusion as to what

constitutes "the governing legal contract" at issue.  As such, its presence in Plaintiff's Statement

is contrary to the requirements of Local Civil Rule 7(h), which provides that "[e]ach motion for

summary judgment shall be accompanied by a statement of material <u>facts</u> as to which the moving

party contends there is no genuine issue . . . ."  (Emphasis added.).  Subject to the foregoing,

Defendants do not dispute that the document cited in support of sentence 2 defines the term

"Promissory Note" as:

> A legally binding contract between a lender and a borrower.  The
> promissory note contains the terms and conditions of the loan,
> including how and when the loan must be repaid.

Plaintiff's Statement ("Pl. St."), Ex. 10, at 2.

3.      Defendants do not dispute sentences 1 or 2 for purposes of Local Civil Rule 7(h).

4.      Defendants do not dispute sentences 1 or 3 for purposes of Local Civil Rule 7(h).

Defendants object to sentence 2 because it sets forth a legal conclusion as to what

language in the promissory note "addresses interest capitalization."  As such, its presence in

Plaintiff's Statement is contrary to the requirements of Local Civil Rule 7(h), which provides that

- 2 -

"[e]ach motion for summary judgment shall be accompanied by a statement of material <u>facts</u> as to which the moving party contends there is no genuine issue . . . ." (Emphasis added.). Further, as set forth more fully in Defendants' Motion for Summary Judgment (Jan. 31, 2008) (Dkt. No. 22), the promissory note expressly incorporated by reference the Higher Education Act of 1965, as amended, 20 U.S.C. 1070 <u>et seq</u>., and applicable U.S. Department of Education regulations, including 34 C.F.R. § 685.202(b)(1) and (4), and these both defined and expressly authorized the interest capitalization practice challenged by Plaintiff in her complaint.

     5.    Defendants dispute sentence 1. Plaintiff's allegation refers to language quoted in paragraph 4 of Plaintiff's Statement ("The above-quoted language in the note . . . ."), but the document cited in paragraph 4 – Dr. Pfeiffer's promissory note – contains other references to applicable regulations. <u>See</u> Pl. St. Ex. 11, p. 00486. In fact, Plaintiff's allegations are contradicted by the first paragraph on the page of Dr. Pfeiffer's promissory notes, all of which state:

> Governing Law and Notices
>
> This Promissory Note (note) applies to Federal Direct Consolidation Loans (Direct Consolidation Loans). In this note, the Higher Education Act of 1965, as amended, 20 U.S.C. 1070 <u>et seq</u>. and applicable U.S. Department of Education (ED) regulations are referred to as "the Act." The terms of this note will be interpreted according to the Act and other applicable federal statutes and regulations.

<u>See</u>, <u>e.g.</u>, Pl. St. Ex.11, p. 00486.

     Defendants dispute sentence 2. A review of the relevant deposition transcript confirms that Ms. Battle simply testified that she could not provide citations to specific regulations "[o]ff the top of [her] head" and that she did not know "specifically" which regulations were referenced

by the promissory note.  Exhibit II to this pleading (Battle Depo. Tr. 88:3-89:20).  Ms. Battle did

not testify in the manner paraphrased by Plaintiff in sentence 2.

Defendants do not dispute sentence 3 for purposes of Local Civil Rule 7(h).

6.     Defendants do not dispute sentences 1, 2, or 3 for purposes of Local Civil Rule

7(h).

7.     Defendants dispute sentences 1 and 2.  The application of payments is controlled

by 34 C.F.R § 685.211(a)(1), which provides, "The Secretary applies any payment first to any

accrued charges and collection costs, then to any outstanding interest, and then to outstanding

principal."  Thus, the hypothetical payment described in sentence 2 would be applied as provided

in 34 C.F.R. § 685.211(a)(1).

Defendants do not dispute sentence 3 for purposes of Local Civil Rule 7(h).

8.     Defendants do not dispute sentences 1, 2, or 3 for purposes of Local Civil Rule

7(h).

9.     Defendants dispute sentence 1.  The calculation of the scheduled payment amount

is controlled by 34 C.F.R. § 685.209(a), and application of the regulation often results in

borrowers having scheduled payment amounts as low as $ 0.

Defendants do not dispute sentence 2 for purposes of Local Civil Rule 7(h).

10.    Defendants do not dispute sentences 1, 2, or 3 for purposes of Local Civil Rule

7(h).

11.    Defendants object to sentences 1 and 2 to the extent they set forth argument,

rather than facts.  The presence of argument in Plaintiff's Statement is contrary to the

requirements of Local Civil Rule 7(h), which provides that "[e]ach motion for summary

judgment shall be accompanied by a statement of material <u>facts</u> as to which the moving party contends there is no genuine issue . . . ."  (Emphasis added.).

With regard to sentence 1, subject to the foregoing objection, Defendants do not dispute that the Secretary consistently capitalizes all unpaid accrued interest through June 30th for loans in Negative Amortization condition, pursuant to 34 C.F.R. § 685.202(b)(1) and (4).

With regard to sentence 2, subject to the foregoing objection, Defendants do not dispute that the interest capitalization authorized by 34 C.F.R. § 685.202(b)(1) and (4) is based upon a borrower's scheduled payment amount and not the actual payment amounts; as provided by 34 C.F.R § 685.211(a)(1), any amount voluntarily paid in excess of the amount required to pay accrued interest is applied to reduce the outstanding principal balance.

With the understanding that Plaintiff's reference to "June payment date" refers to the date of receipt of the June payment, Defendants do not dispute sentence 3 for purposes of Local Civil Rule 7(h).

12.    Defendants dispute sentences 1 and 2.  A review of the deposition transcript cited by Plaintiff confirms that Ms. Battle testified that interest accruing after receipt of a June payment was not required to be paid until the July payment due date but that it was still due when it accrued.  Moreover, within the testimony cited by Plaintiff, Ms. Battle testified contrary to the assertion in sentence 2:  "You are not billed until the next month.  But interest is due.  It's still due.  It's accrued daily."  Exhibit II (Battle Depo. Tr. 54:22-24)

Defendants do not dispute sentence 3 for purposes of Local Civil Rule 7(h).

13.    Defendants do not dispute sentence 1 for purposes of Local Civil Rule 7(h).

14.    Defendants do not dispute sentence 1 for purposes of Local Civil Rule 7(h).

15.    Defendants do not dispute sentence 1 for purposes of Local Civil Rule 7(h).

16.    Defendants do not dispute sentences 1, 2, or 3 for purposes of Local Civil Rule 7(h).

17.    Defendants do not dispute sentences 1 or 2 for purposes of Local Civil Rule 7(h).

18.    Defendants do not dispute sentences 1 or 2 for purposes of Local Civil Rule 7(h).

Defendants dispute sentence 3 to the extent it asserts that Plaintiff's payments through June 14, 2002, exceed interest that accrued after June 14, 2002. As provided by 34 C.F.R § 685.211(a)(1), any amount voluntarily paid by Plaintiff in excess of the amount required to pay accrued interest was applied to reduce the outstanding principal balance as of June 14, 2002, and interest continued to accrue after June 14, 2002.

19.    Defendants do not dispute sentence 1 for purposes of Local Civil Rule 7(h).

20.    Defendants dispute sentence 1 to the extent it asserts that Plaintiff's payments through June 30, 2004, exceed interest that accrued after receipt of her June 2004 payment. As provided by 34 C.F.R § 685.211(a)(1), any amount voluntarily paid by Plaintiff in excess of the amount required to pay accrued interest was applied to reduce the outstanding principal balance as of the receipt of her June 2004 payment, and interest continued to accrue after receipt of the June 2004 payment.

Defendants do not dispute sentence 2 for purposes of Local Civil Rule 7(h).

21.    Defendants dispute sentences 1 and 2. Plaintiff's citation of the single response on page 104 of Ms. Battle's deposition mischaracterizes the entire exchange between Plaintiff's counsel and Ms. Battle. A review of the entire exchange, beginning on page 102, line 6, and continuing through page 107, line 5, confirms that Ms. Battle repeatedly stated that she did not

understand Plaintiff's counsel's question.  <u>See</u> Exhibit II (Battle Depo. Tr. 102:6-107:5).  For example, Ms. Battle immediately prior to the testimony cited by Plaintiff, Ms. Battle testified that she was "unclear" as to what she was being asked.  <u>Id.</u> (Battle Depo. Tr. 103:16-18, 20).  It was in that context that she testified, as quoted by Plaintiff Statement, that she "guess[ed]" about the answer.  She then explained her answer, and Plaintiff's counsel responded, "I guess I don't understand your answer."  <u>Id.</u> (Battle Depo. Tr. 104:15-24).  Ms. Battle then responded, "Okay. Clarify your question and I'll clarify my answer."  <u>Id.</u> (Battle Depo. Tr. 104:25-106:1).  A review of the following testimony confirms that Ms. Battle's testimony has been mischaracterized by the selective quotations in sentences 1 and 2.  <u>See id.</u> (Battle Depo. Tr. 106:2-107:5).

22.    Defendants do not dispute sentences 1 and 2 for purposes of Local Civil Rule 7(h).

23.    Defendants do not dispute sentence 1 for purposes of Local Civil Rule 7(h).

Defendants dispute sentence 2 to the extent it asserts that Plaintiff's payments through June 30, 2004, exceed interest that accrued after receipt of her June 2004 payment.  As provided by 34 C.F.R § 685.211(a)(1), any amount voluntarily paid by Plaintiff in excess of the amount required to pay accrued interest was applied to reduce the outstanding principal balance as of the receipt of her June 2004 payment, and interest continued to accrue after receipt of the June 2004 payment.

24.    Defendants dispute sentence 1 to the extent it asserts that Plaintiff's payments through June 30, 2005, exceed interest that accrued after receipt of her June 2005 payment.  As provided by 34 C.F.R § 685.211(a)(1), any amount voluntarily paid by Plaintiff in excess of the amount required to pay accrued interest was applied to reduce the outstanding principal balance

as of the receipt of her June 2005 payment, and interest continued to accrue after receipt of the

June 2005 payment.

Defendants do not dispute sentence 2 for purposes of Local Civil Rule 7(h).

25.    Defendants do not dispute sentence 1 for purposes of Local Civil Rule 7(h).

With the understanding that Plaintiff's reference to "June payment" refers to the date of

receipt of the June payment, Defendants do not dispute sentence 2 for purposes of Local Civil

Rule 7(h).

26.    Defendants do not dispute sentence 1 for purposes of Local Civil Rule 7(h).

Defendants dispute sentence 2 to the extent it asserts that Plaintiff's payments through

June 30, 2005, exceed interest that accrued after receipt of her June 2005 payment.  As provided

by 34 C.F.R § 685.211(a)(1), any amount voluntarily paid by Plaintiff in excess of the amount

required to pay accrued interest was applied to reduce the outstanding principal balance as of the

receipt of her June 2005 payment, and interest continued to accrue after receipt of the June 2005

payment.

27.    Defendants do not dispute sentence 1 for purposes of Local Civil Rule 7(h).

28.    Defendants dispute sentence 1 to the extent it mischaracterizes the estimate of

26,900 borrowers discussed by Ms. Battle in the deposition transcript cited in Plaintiff's

Statement.  Subject to the foregoing, Defendants do not dispute that there are numerous student

loan borrowers whose loans are characterized by Defendants as being in a Negative Amortization

condition, regardless of whether the actual payments equaled or exceeded the amount of interest

that accrued as of the receipt of their payments.

Defendants object to sentence 2 to the extent it sets forth argument, rather than facts.  The

- 8 -

presence of argument in Plaintiff's Statement is contrary to the requirements of Local Civil Rule

7(h), which provides that "[e]ach motion for summary judgment shall be accompanied by a

statement of material <u>facts</u> as to which the moving party contends there is no genuine issue . . . ."

(Emphasis added.).  Subject to the foregoing objection, Defendants do not dispute that the

Secretary consistently capitalizes all unpaid accrued interest through June 30th for loans in

Negative Amortization condition, pursuant to 34 C.F.R. § 685.202(b)(1) and (4).

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

J. CHRISTOPHER KOHN
Director

ROBERT E. KIRSCHMAN, JR.
Deputy Director


/s/ John Warshawsky
_____
JOHN WARSHAWSKY (D.C. Bar No. 417170)
Senior Trial Counsel
CHRISTIAN J. GROSTIC
Trial Attorney
Commercial Litigation Branch
Civil Division
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044-0875
Telephone: (202) 307-0010
Facsimile: (202) 305-4933
Attorneys for Defendants

February 28, 2008

Certificate of Service by ECF

I hereby certify that, on February 28, 2008, the foregoing "DEFENDANTS'
STATEMENT OF GENUINE ISSUES" was filed electronically in the Court's Electronic Case
Filing ("ECF") system.  I understand that notice of this filing will be sent to all counsel by
operation of the Court's ECF system and that parties may access this filing through the Court's
system.

/s/ John Warshawsky

_____

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Brenda Kay Pfeiffer, | ) | |
| | ) | |
| On behalf of herself and all others similarly | ) | Civil No. 1:07-cv-00522 (EGS) |
| situated, | ) | |
| | ) | |
| *Plaintiff,* | ) | CLASS ACTION |
| v. | ) | |
| | ) | |
| Margaret Spellings, in her official capacity as | ) | |
| United States Secretary of Education, the United | ) | |
| States Department of Education, and the United | ) | |
| States of America, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

1.      The United States Department of Education ("DOE") lends money to post-secondary students through the William D. Ford Direct Loan Program (the "Program").  There are several loan types available under the Program, including Stafford Loans and Consolidation Loans.  Ex. 1 (Battle[1] Depo. at 36-37).  Regardless of the type of loan it issues, DOE requires student loan borrowers to execute a standard form promissory note.

2.      The form promissory note for each loan type is identical or substantially identical for all borrowers. *Id.* at 79, 86-88; Ex. 2 (Battle Depo. Ex. 1 at 7-8 (Answer to Interrogatory No. 6)); Exs. 3-9 (Battle Depo. Exs. 4-10 (form promissory notes)).  The form promissory note signed by the borrower is the governing legal contract between DOE and the borrower.  Ex. 10 (Battle Depo. Ex. 13, at P00406).  DOE informs borrowers that the "promissory note contains the terms and conditions of the loan, including how and when the loan must be repaid." *Id*; Ex. 1

EXHIBIT I TO DEFENDANTS' STATEMENT OF GENUINE ISSUES

(Battle Depo. at 97 (explaining that Battle Depo. Ex. 13 is a glossary provided to borrowers with the Loan Application)).

3.  ①Since at least March 19, 2001, the form promissory notes executed by Stafford and Consolidation Loan borrowers have contained identical or substantially similar language with respect to interest capitalization. Ex. 2 (Battle Depo. Ex. 1, at 7-8 (Answer to Interrogatory No. 6)); Ex. 1 (Battle Depo. at 86-88); *compare* Ex. 11 (Battle Depo. Ex. 3, at P00486 (promissory note executed by Dr. Pfeiffer in 2001)) *with* Exs. 3-9 (Battle Depo. Exs. 4 – 10 (form promissory notes produced by DOE)). ②Dr. Pfeiffer executed such a form promissory note when she obtained her Consolidation Loan from DOE in 2001. Ex. 11 (Battle Depo. Ex. 3).

4.  ①The form promissory note executed by Dr. Pfeiffer provides that DOE may capitalize interest if the borrower does not pay the interest when it is due:

> **Interest.**   Except for interest [DOE] does not charge me during an in-school, grace or deferment period, I agree to pay interest on the principal amount of my Direct Consolidation Loan from the date of disbursement until the loan is paid in full or discharged.   [DOE] <u>may add interest that accrues but is not paid when due</u> to the unpaid principal balance of this loan, as provided under the [Higher Education Act of 1965, as amended, 20 U.S.C. 1070 *et seq*., and applicable Department of Education regulations].   This is called capitalization.

*Id.* at P00486.  (emphasis added). ②The above-quoted provision is the only language in the form promissory note that addresses interest capitalization. Ex. 1 (Battle Depo. at 73-75). ③This provision is identical or substantially similar for all members of the proposed class. Ex. 2 (Battle Depo. Ex. 1, at 7-8 (Answer to Interrogatory No. 6)).

5.  ①The above-quoted language in the note referring to the "Higher Education Act of 1965, as amended, 20 U.S.C. 1070 *et seq*., and applicable Department of Education regulations" is the only language in the note that suggests there are regulations that may apply to the note. ②At

---

[1]    DOE designated Cynthia D. Battle as its deposition representative pursuant to Fed. R. Civ. P. 30(b)(6).  Ms. Battle's job title is Servicing Director for the Direct Loan Program.

her deposition, the Servicing Director for the Direct Loan Program stated she did not know what regulations or portions of the Higher Education Act this language refers to. Ex. 1 (Battle Depo. at 89-90). DOE does not provide borrowers any further information regarding what regulations or portions of the Higher Education Act may be relevant to the note. *Id.* at 90.

6.    When a student loan borrower's loan enters repayment, he or she is assigned a "payment due date" of the 7th, 14th, 21st or 28th of each month. *Id.* at 49-50. A borrower's "payment due date" is also commonly referred to as the "monthly due date" or simply the "due date." *Id.* at 49-50; Ex. 12 (Battle Depo. Ex. 2 (monthly billing statements sent to Dr. Pfeiffer indicating the 21st of each month as the "current payment due date")); Ex. 13 (Battle Depo. Ex. 27 (DOE glossary defining the term "payment due date")). DOE documents define the "payment due date" as "[t]he date during the month when payment of the current due amount must be received." *Id.*

7.    DOE applies payments received first to fees (if any), second to accrued interest, and third to the principal balance. Ex. 1 (Battle Depo. at 51). Thus, if a borrower's payment due date is the 21st of each month and the borrower makes a payment on February 21st, then DOE would apply that payment first to fees (if any), second to interest accrued through February 21st, and third to the principal balance. *See Id.* The borrower is not billed for or expected to pay the interest accruing after February 21st until his or her next payment due date, *i.e.*, March 21st. *Id.* at 76-77.

8.    Stafford and Consolidation Loan borrowers have the option of repaying their student loans under the Income Contingent Repayment Plan ("ICRP"). Under the ICRP, a borrower's monthly payment amount is determined by a formula that is based on his or her adjusted annual income, family size and the principal balance of the loan. *Id.* at 38. The

3

EXHIBIT I TO DEFENDANTS' STATEMENT OF GENUINE ISSUES

payment amount determined by this formula is referred to by DOE as the "scheduled payment" or the "fixed payment amount." *Id.* at 48; Ex. 2 (Battle Depo. Ex. 1 (column labeled "fixed payment amount" contained within computer print-out showing payment history for Dr. Pfeiffer's loans attached to Defendant's Response to Plaintiff's First Set of Interrogatories)).

9. Generally speaking, under the ICRP the higher a borrower's income, the higher his or her scheduled payment and, conversely, the lower a borrower's income, the lower his or her scheduled payment. Notwithstanding the amount of a borrower's scheduled payment, he or she may voluntarily pay a greater amount in any month. Ex. 1 (Battle Depo. at 48).

10. If a borrower's income is low in relation to his or her loan balance, the scheduled payment may be less than the amount of interest accruing on the loan each month. DOE refers to such borrowers as being on a "negative amortization payment schedule" or as "negatively amortized." *Id.* at 45-47. DOE treats approximately one-half of the 600,000 borrowers currently repaying their student loans under the ICRP as "negatively amortized." *Id.* at 91-92.

11. Throughout the liability period, DOE has consistently capitalized all interest accrued through June 30th on June 30th for all "negatively amortized" loans – that is, loans being repaid by a borrower whose scheduled payments are less than the amount of interest accruing on the loan each month. *Id.* at 58-59, 87-88; Ex. 2 (Battle Depo. Ex. 1, at 1(Answer to Interrogatory No. 1)). DOE has engaged in this interest capitalization practice notwithstanding the borrower's payment due date or actual payment amounts. Ex. 1 (Battle Depo. at 45-47, 55-56). This capitalization on June 30th of each year includes interest accruing *after* the borrower's June payment date through June 30th. *Id.* at 42-44, 52-53, 55-56.

12. Interest accruing after a borrower's June payment date is not billed or otherwise expected to be paid by DOE until the borrower's July payment date. *Id.* at 54-55. In her

4

deposition, Cynthia Battle, DOE's Rule 30(b)(6) representative and Servicing Director for the Direct Loan Program, admitted that the interest that accrues *after* a borrower's June payment due date is not due until July. She testified:

> Q:   So isn't the interest that accrues after a borrower's June payment date not due until their July payment date?
>
> A:   Yes, they would be billed for July.

*Id.* at 76-77.

13.   In 2001 Dr. Pfeiffer consolidated her student loans with DOE, and selected the Income Contingent Repayment Plan ("ICRP"). Cmplt. (Dkt. 1, at ¶ 14); Answr. (Dkt. 10, at ¶ 14).

14.   The promissory note Dr. Pfeiffer executed in connection with her loan consolidation contained the exact same language as the form promissory note set forth above in ¶ 4. Ex. 11 (Battle Depo. Ex. 3, at P00486).

15.   Dr. Pfeiffer's monthly payments were due on the 21st of each month after the 2001 consolidation. Cmplt. (Dkt. 1, at ¶ 15); Answr. (Dkt. 10, at ¶ 15).

16.   During the period January 1, 2002 through June 30, 2002, DOE considered Dr. Pfeiffer to be "negatively amortized" because her scheduled payments were less than the interest accruing on her loan. Ex. 12 (Battle Depo. Ex. 2 (monthly billing statements sent to Dr. Pfeiffer in 2002, stating that she was "negatively amortized")); Ex. 2 (Battle Depo. Ex. 1 (payment history attached to Defendants' Responses to Plaintiff's First Set of Interrogatories)).[2] Dr. Pfeiffer's actual payments each month during this period, however, exceeded the interest

---

[2]   The payment history attached to Defendants' Responses to Plaintiff's First Set of Interrogatories is not numbered by page. The left hand column on the payment history sets forth the "Transaction Date." On the Transaction Date 01/01/02, in the column captioned "Transaction," the payment history notes "Neg-Amortization Start." On Transaction Date

77477                 EXHIBIT I TO DEFENDANTS' STATEMENT OF GENUINE ISSUES

accruing on her loan each month. *Id.* at Transaction Dates 01/01/02 through 07/16/02 (under column captioned Total Payment Received, showing that Dr. Pfeiffer paid more each month than the amount of interest accruing each month on her loan as set forth in Ex. 12 (Battle Depo. Ex. 2)); Ⓐ Ex. 1 (Battle Depo. at 65-72). Each monthly payment made by Dr. Pfeiffer during this period was also received by DOE on or before her monthly payment due date. Ex. 2 (Battle Depo. Ex. 1, at payment history, Transaction Dates 01/01/02 through 07/16/02).

17. Ⓘ On or about June 30, 2002, Dr. Pfeiffer received notice that DOE had capitalized interest on her loan in the amount of $368.76. Ⓐ Ex. 14 (Battle Depo. Ex. 14). The interest capitalized on Dr. Pfeiffer's loan on June 30, 2002 is the interest that accrued between her June payment and June 30, 2002. Ex. 1 (Battle Depo. at 52-53); Cmplt. (Dkt. 1, at ¶ 17); Answr. (Dkt. 10, at ¶ 17).

18. Ⓘ The June 30, 2002 notice stated: "During the past year, your total payments were less than your accrued interest on the loan(s) [you] had or have been repaying under the Income Contingent Repayment (ICR) plan (this is called negative amortization)." Ⓐ By "the past year," this notice referred to the period July 1, 2001 through June 30, 2002. Ex. 1 (Battle Depo. at 99-100). Ⓒ In fact, Dr. Pfeiffer's payments through her June 2002 payment on June 14, 2002 exceeded the accrued interest on her loan. *Id.* at 52; Ex. 2 (Battle Depo. Ex. 1, at payment history, Transaction Dates 12/14/01 through 06/14/02); Ex. 12 (Battle Depo. Ex. 2 (2002 monthly billing statements stating the amount of interest accruing each month on Dr. Pfeiffer's loan)).

19. Ⓘ DOE did not consider Dr. Pfeiffer's loan to be negatively amortized during the period November 24, 2002 through June 30, 2003 and, therefore, did not capitalize interest on

---

11/24/02, in the column captioned "Transaction," the payment history notes "Neg-Amortization End."

6

EXHIBIT I TO DEFENDANTS' STATEMENT OF GENUINE ISSUES

her loan in June of 2003. *See* Ex. 2 (Battle Depo. Ex. 1, at payment history, Transaction Date 11/24/02 (with notation "Neg-Amortization End")).

20.    During the period July 1, 2003 through June 30, 2004, Dr. Pfeiffer's actual payments exceeded the amount of interest accruing on her loan. Ex. 2 (Battle Depo. Ex. 1, at payment history, Transaction Dates 07/16/03 through 07/20/04); Ex. 15 (Pfeiffer Decl., Ex. A (2004 monthly billing statements stating the amount of interest accruing each month on Dr. Pfeiffer's loan)). In addition, all of Dr. Pfeiffer's monthly payments during this period were received by DOE on or before her monthly due date. Ex. 2 (Battle Depo. Ex. 1, at payment history, Transaction Dates 07/16/03 through 07/20/04).

21.    At her deposition, Ms. Battle was asked "[i]f a borrower's total payments during the past year were more than the accrued interest on their loans, should there be any interest capitalization?" Her answer was "Oh, I understand. I guess the answer would be – should there be capitalization? I guess the answer would be no." Ex. 1 (Battle Depo. at 104).

22.    On or about June 30, 2004, Dr. Pfeiffer received notice that DOE had capitalized interest on her loan in the amount of $207.56. Ex. 16 (Battle Depo. Ex. 18, at P00454). The interest capitalized on her loan on June 30, 2004 is the interest that accrued between her June payment and June 30, 2004. Cmplt. (Dkt. 1, at ¶ 20); Answr. (Dkt. 10, at ¶ 20).

23.    The June 30, 2004 notice further stated: "During the past year, your total payments were less than your accrued interest on the loan(s) you had or have been repaying under the Income Contingent Repayment (ICR) plan (this is called negative amortization)." Ex. 16 (Battle Depo. Ex. 18, at P00454). In fact, Dr. Pfeiffer's payments from July 1, 2003 through June 30, 2004 exceeded the accrued interest on her loan. Ex. 2 (Battle Depo. Ex. 1, at payment history, Transaction Dates 07/16/03 through 07/20/04); Ex. 15 (Pfeiffer Decl., Ex. A (2004

7

EXHIBIT I TO DEFENDANTS' STATEMENT OF GENUINE ISSUES

monthly billing statements stating the amount of interest accruing each month on Dr. Pfeiffer's loan)).

24.     During the period July 1, 2004 through June 30, 2005, Dr. Pfeiffer's actual loan payments exceeded the amount of interest accruing on her loan. Ex. 2 (Battle Depo. Ex. 1, at payment history, Transaction Dates 07/20/04 through 06/09/05); Ex. 15 (Pfeiffer Decl., Ex. B (2005 monthly billing statements stating the amount of interest accruing each month on Dr. Pfeiffer's loan)). All of Dr. Pfeiffer's monthly payments during this period were received by DOE on or before Dr. Pfeiffer's monthly due date. Ex. 2 (Battle Depo. Ex. 1, at payment history, Transaction Dates 07/20/04 through 06/09/05).

25.     On or about June 30, 2005, Dr. Pfeiffer received notice that DOE had capitalized interest on her loan in the amount of $440.95. Ex. 16 (Battle Depo. Ex. 18, at P00455). The interest capitalized on her loan on June 30, 2005 is the interest that accrued between her June payment and June 30, 2005. Cmplt. (Dkt. 1, at ¶ 22); Answr. (Dkt. 10, at ¶ 22).

26.     The June 30, 2005 notice stated: "During the past year, your total payments were less than your accrued interest on the loan(s) had or have been repaying under the Income Contingent Repayment (ICR) plan (this is called negative amortization)." Ex. 16 (Battle Depo. Ex. 18, at P00455). In fact, Dr. Pfeiffer's payments from July 1, 2004 through June 30, 2005 exceeded the accrued interest on her loan. Ex. 2 (Battle Depo. Ex. 1, at payment history, Transaction Dates 07/20/04 through 06/09/05); Ex. 15 (Pfeiffer Decl., Ex. B (2005 monthly billing statements stating the amount of interest accruing each month on Dr. Pfeiffer's loan)).

27.     DOE has not considered Dr. Pfeiffer's loan to be negatively amortized at any time after July 1, 2005. Ex. 2 (Battle Depo. Ex. 1, at payment history, Transaction Dates 12/01/05 through 10/31/07).

8

EXHIBIT I TO DEFENDANTS' STATEMENT OF GENUINE ISSUES

28.    ①There are approximately 26,900 student loan borrowers DOE considers to be negatively amortized but whose actual payments have been equal to or greater than the amount of interest accruing on their loan each month.  Ex. 2 (Battle Depo. Ex. 1, at 2-3 (Answer to Interrogatory No. 2); Ex. 1 (Battle Depo. at 90-92). ② Nevertheless, like Dr. Pfeiffer, and the other 270,000 borrowers DOE considers negatively amortized, DOE capitalized interest on these borrower's loans.  Ex. 1 (Battle Depo. at 58-59 (explaining that DOE capitalized interest on June 30 each year for all borrowers repaying under the ICRP that it considered negatively amortized)); Ex. 2 (Battle Depo. Ex. 1, at 1).

77477
EXHIBIT I TO DEFENDANTS' STATEMENT OF GENUINE ISSUES

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

----------------------------------x

BRENDA KAY PFEIFFER,                 :

On behalf of herself and all         :

others similarly situated,           :

        Plaintiff,           :Case No.:

vs.                                  :1:07-CV-00522(EGS)

MARGARET SPELLINGS, Secretary        :

of Education, et al.,                :

        Defendants.          :

----------------------------------x

                December 10, 2007

                Washington, DC

DEPOSITION OF:

        CYNTHIA DENISE BATTLE,

called for oral examination by counsel for the

Plaintiff, at the Law Offices of Sprenger & Lang, PLLC,

1400 I Street, NW, Suite 500, Washington, DC,

beginning at 9:44 a.m., Monday, December 10, 2007,

before Lohna Esteb, Reporter and Notary Public,

when were present:

EXHIBIT II TO DEFENDANTS' STATEMENT OF GENUINE ISSUES    fbb5b806-0cac-495d-ac33-36f2cd4a21d2

Page 54

1          MR. WARSHAWSKY:   Object to the form.   You

2      can answer subject.

3  BY MR. BRYDEN:

4      Q     Do you understand the question?

5      A     No.   Could you ask it again?

6      Q     Sure.

7      A     Okay.

8      Q     The interest that accrues after a payment

9  is made in any given month, if my payment date is

10  the 21st --

11      A     Correct.

12      Q      -- I pay all the outstanding interest on,

13  let's say, February 21st, the interest that

14  accrues after that payment until March 21st isn't

15  due until March 21, my next monthly payment,

16  correct?

17      A     What do you mean by due?

18      Q     That's when the payment is expected by the

19  department.

20      A     You mean you are not billed?

21      Q     Right.

22      A     You are not billed until the next month.

23  But interest is due.   It's still due.   It's accrued

24  daily.

25      Q     Right.

EXHIBIT II TO DEFENDANTS' STATEMENT OF GENUINE ISSUES  fbb5b806-0cac-495d-ac33-36f2cd4a21d2

Page 88

1          THE WITNESS:  No, not to my knowledge.

2    BY MR. BRYDEN:

3          Q    Are there regulations, Department of

4    Education regulations, that address when interest

5    may be capitalized?

6          A    Yes.

7          Q    And do you know the cites for those

8    regulations?

9          A    Off the top of my head, no.  It's probably

10   in the documentation. Do you want me to cite that?

11         Q    You can look in there, sure.  I don't know

12   if the interrogatory answer has all the cites.

13         MR. WARSHAWSKY:  I'm reasonably sure it

14       does not.  That was getting into a legal area.

15         MR. BRYDEN:  Sure.

16         MR. WARSHAWSKY:  That was in response --

17       that was in response to one of your document

18       production requests that we talked about.

19         MR. BRYDEN:  Right.

20   BY MR. BRYDEN:

21         Q    You don't know off the top of your head

22   the cites to the regulations that address interest

23   capitalization?

24         MR. WARSHAWSKY:  I'll just object to the

25       extent you are asking for a legal conclusion

EXHIBIT II TO DEFENDANTS' STATEMENT OF GENUINE ISSUES   fbb5b806-0cac-495d-ac33-36f2cd4a21d2

1          from the witness.

2                    You may answer subject to.

3                    THE WITNESS:  No, I do not.

4     BY MR. BRYDEN:

5          Q     Okay.  Can I ask you to take another look

6     at Exhibit No. 3.  Can you turn to Page P00486.

7                    And do you see in the upper left-hand

8     corner, there's a paragraph captioned "Governing Law

9     and Notices."

10         A     Yes.

11         Q     Could I ask you to read that paragraph to

12    yourself.

13                   (Pause)

14         A     Okay.

15         Q     Do you know what Department of Education

16    regulations that paragraph refers to?

17         A     Not specifically, no.

18         Q     Do you know what provisions of the Higher

19    Education Act that paragraph is referring to?

20         A     Not specifically, no.

21         Q     Is there any information that's given to

22    borrowers about what regulations or parts of the

23    Higher Education Act are referred to in that

24    paragraph when they took out their loans?

25                   MR. WARSHAWSKY:  You mean aside from the

EXHIBIT II TO DEFENDANTS' STATEMENT OF GENUINE ISSUES  fbb5b806-0cac-495d-ac33-36f2cd4a21d2

Page 102

1    15?

2         A    Yes, it does.

3                   (Deposition Exhibit No. 17 was

4                   marked for identification)

5    BY MR. BRYDEN:

6         Q    Can you take a moment and read Exhibit

7    No. 17?

8         A    Okay.

9         Q    Now, if a borrower's total payments

10   between July 1st in one year and June 30th in

11   the next year, if you were to total all their

12   payments during that time period, and, it was more

13   than the interest that had accrued during that same

14   time period, should there be any interest

15   capitalization on June 30th?

16        A    Repeat your question.

17             COURT REPORTER: "Now, if a borrower's

18             total payments between July 1st in one year

19             and June 30th in the next year, if you were

20             to total all their payments during that time

21             period and it was more than the interest that

22             had accrued during that same time period,

23             should there be any interest capitalization on

24             June 30th?"

25             MR. WARSHAWSKY:  May I ask for

EXHIBIT II TO DEFENDANTS' STATEMENT OF GENUINE ISSUES   fbb5b806-0cac-495d-ac33-36f2cd4a21d2

Page 103

1    clarification?  Are you asking her about total

2    scheduled payments, or total actual payments?

3  BY MR. BRYDEN:

4    Q    Well, I guess we could ask it either way;

5  but, how about total actual payments?

6    A    Okay.  The total actual payments, if I

7  calculate it -- if I added those all up, and the

8  remaining portion of the question is what?

9         If I added my actual payments for an

10  entire year.

11    Q    If you were to add a borrower's actual

12  payments for an entire year and the total amount

13  that the borrower had paid during that year was more

14  than the interest accruing during that same time

15  period, should there be any interest capitalization?

16    A    I guess I'm still unclear as to what

17  you're asking me because we don't calculate payments

18  that way.  So  ...

19    Q    Okay.

20    A    So I'm unclear.

21    Q    Let's go back to the exhibits we were just

22  looking at, 14, 15 and 16.

23    A    Uh-huh.

24    Q    If you look at the first sentence on all

25  of these, it reads, "During the past year, your

Page 104

1    total payments were less than your accrued interest

2    on the loans you had."

3            If a borrower's total payments during the

4    past year were more than the accrued interest on

5    their loans, should there be any interest

6    capitalization?

7        A    Oh, I understand. I guess the answer would

8    be -- should there be capitalization?

9            I guess the answer would be no.

10       Q    But, in fact, there could be

11   capitalization or there was in Dr. Pfeiffer's case,

12   correct?

13       A    There was capitalization between her last

14   payment and June 30th, yes.

15       Q    And so there's interest being capitalized

16   to her account, even though her payments from

17   July 1st, for example in 2004, through

18   June 30th, 2004, were larger than the interest

19   that accrued during that year?

20       A    They weren't until June 30th, but it

21   depends on what her payment date was.  I understand

22   your question.  As of her -- from July 1st through

23   whatever her last payment date was.

24       Q    I guess I don't understand your answer.

25       A    Okay.  Clarify your question and I'll

EXHIBIT II TO DEFENDANTS' STATEMENT OF GENUINE ISSUES   fbb5b806-0cac-495d-ac33-36f2cd4a21d2

Page 105

1    clarify my answer.

2         Q    So I believe you testified earlier,

3    correct me if I'm wrong, that if a borrower's total

4    payments between July 1st and June 30th of the

5    next year totaled more than the interest that

6    accrued during that time period, there should not be

7    interest capitalization, is that correct?

8         A    That would be correct.

9         Q    Okay.  But if you look at -- can we go

10   back to that payment chart?

11        A    Uh-huh.

12        Q    Why don't we look at July 1st, 2004.

13        A    July 1st, 2004, okay.

14        Q    Through June 30th, 2005.

15        A    Okay.

16        Q    Now, as we discussed earlier, every time

17   principal is being paid off, that's because her

18   payment covered all the interest that accrued, and

19   there was also some left over to pay off principal,

20   right?

21             MR. WARSHAWSKY:  Interest.  Say that

22        again.

23             MR. BRYDEN:  Did I say it backwards?

24             THE WITNESS:  I think you said -- say it

25        again.

EXHIBIT II TO DEFENDANTS' STATEMENT OF GENUINE ISSUES

Page 106

1    BY MR. BRYDEN:

2         Q    Let me say it again.

3              Every time we see a payment where a

4    portion of the principal is being paid down, that

5    means that the payment was large enough to cover all

6    the accrued interest, and what was left was applied

7    to pay down the principal?

8         A    Yes.

9         Q    Okay.  And so if we go through all of the

10   payments between July 1st, 2004 and through

11   June 30th, 2005 --

12        A    Yes.

13        Q    -- is it fair to say that Dr. Pfeiffer's

14   payments exceeded the interest that accrued on her

15   loan during that time period?

16             MR. WARSHAWSKY:  The document speaks for

17        itself.  You can answer subject to.

18   BY MR. BRYDEN:

19        Q    Do you understand my question?

20        A    Okay.  Repeat.

21        Q    All I am asking is between July 1, 2004

22   and June 30th, 2005, is it accurate to say that Dr.

23   Pfeiffer's payments exceeded the interest accruing

24   on her loan during that time period?

25        A    No.

EXHIBIT II TO DEFENDANTS' STATEMENT OF GENUINE ISSUES  fbb5b806-0cac-495d-ac33-36f2cd4a21d2

Page 107

1      Q      Okay.  And why do you say no?

2      A      Because Dr. Pfeiffer's payments from,

3   whatever the first payment date in June, to, if we

4   are talking about 2005, only covered the period up

5   until June 9th.  It didn't cover the entire month.

6      Q      Right.  I understand that.  But if you

7   look at --

8              MR. WARSHAWSKY:  I'm sorry.  Were you

9          finished?

10             THE WITNESS:  I was finished.

11  BY MR. BRYDEN:

12     Q      But if you look at -- and I understand

13  what you're saying -- let me just state it to make

14  sure I understand it right.

15             I think what you're saying is that between

16  June 9th, 2005 and June 30th, 2005, there was $440

17  in interest that accrued, right?  Is that what you

18  are referring to?

19     A      Yes, between June 9th, 2005 and June 30th,

20  there was $440 that capitalized.

21     Q      But if you look at the amounts that her

22  loan was paid down over that year period, it's a lot

23  more than $440, isn't it?

24             MR. WARSHAWSKY:  I am going to object.

25             Mr. Bryden, you are arguing with the

EXHIBIT II TO DEFENDANTS' STATEMENT OF GENUINE ISSUES   fbb5b806-0cac-495d-ac33-36f2cd4a21d2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | | |
|---|---|---|
| BRENDA KAY PFEIFFER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:07-cv-00522 |
| | ) | (Judge Sullivan) |
| MARGARET SPELLINGS, Secretary of Education, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

_____)

**ORDER**

This matter comes before the Court on *Plaintiff's Motion for Partial Summary Judgment*

[Docket No. 25].  Upon consideration of the Motion, Defendants' Response, and any Reply

thereto, and the entire record of this case, it is hereby

ORDERED that the Motion is DENIED.

SO ORDERED.


_____
Emmet G. Sullivan
UNITED STATES DISTRICT JUDGE


Date:_____

cc:

Steven M. Sprenger, Esq.
Sprenger & Lang, PLLC
1400 Eye Street, N.W., Suite 500
Washington, D.C.  20005
Facsimile: (202) 332-6652
E-mail: ssprenger@sprengerlang.com

John Warshawsky, Esq.
United States Department of Justice
Civil Division, Commercial Litigation Branch
1100 L Street, N.W., Room 10030
Washington, D.C.  20530
Facsimile: (202) 514-9163
E-mail: john.warshawsky@usdoj.gov