IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

BRENDA KAY PFEIFFER,                )
                                       )
        Plaintiff,               )
                                       )
     v.                       )     Case No. 1:07-cv-00522
                                       )     (Judge Sullivan)
MARGARET SPELLINGS, Secretary of Education,  )
   et al.,                     )
                                     )
        Defendants.         )
_____)

DEFENDANTS' MEMORANDUM IN RESPONSE TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF COUNSEL

Pursuant to Rule 23 of the Federal Rules of Civil Procedure and Local Civil Rule 7(b),
defendants Margaret Spellings (the "Secretary"), the United States Department of Education (the
"Department of Education"), and the United States of America respectfully submit the following
memorandum in response to Plaintiff's Motion for Class Certification and Appointment of
Counsel (Jan. 31, 2008) (Dkt. No. 24) ("Motion for Class Certification").

I.     Overview

This is a breach of contract action commenced by the plaintiff, Dr. Pfeiffer, who has
borrowed money for student loans under the William D. Ford Federal Direct Loan Program
("Direct Loan Program").  In her complaint, Dr. Pfeiffer challenges defendants' interest
capitalization practices for a subset of Direct Loan Program borrowers.  On January 31, 2008, the
parties filed motions for dispositive relief, pursuant to Rule 56 of the Federal Rules of Civil
Procedure.  Defendants' Motion for Summary Judgment (Jan. 31, 2008) (Dkt. No. 22);

Plaintiff's Motion for Partial Summary Judgment (Jan. 31, 2008) (Dkt. No. 25).[1]  In addition, on

January 31, 2008, Dr. Pfeiffer filed her Motion for Class Certification, and defendants' response

to that motion is set forth below.

II.     Dr. Pfeiffer's Proposed Classes

In her Motion for Class Certification, Dr. Pfeiffer alternatively proposes two classes of

Direct Loan Program borrowers for class certification.  Her initial request proposes a much

broader class, defined in her motion as follows:

> All borrowers who elected to repay their student loans issued by the United States
> Department of Education under the Income Contingent Repayment Plan and
> whose annual scheduled payments at any time after March 19, 2001 were
> insufficient to cover the interest accruing on their loan.

Motion for Class Certification ¶ 1 (emphasis in original).[2]  In the alternative, Dr. Pfeiffer

proposes a smaller class, defined as follows:

> All borrowers who elected to repay their student loans issued by the United States
> Department of Education under the Income Contingent Repayment Plan and
> whose annual scheduled payments at any time after March 19, 2001 were
> insufficient to cover the interest accruing on the loan, but whose actual payments
> were equal to or greater than the interest accruing on their loan.

Id. (emphasis in original).[3]  As we explain below, defendants respectfully oppose certification of

---

[1]      Defendants have set forth a more complete summary of the case and the issues in
our motion for summary judgment, and for the sake of brevity, we respectfully refer the Court to
the discussion set forth therein.  See Defendants' Motion for Summary Judgment at 2-9 (Jan. 31,
2008) (Dkt. No. 22).

[2]      Defendants understand Dr. Pfeiffer's initial proposal to refer to all borrowers
whose loans were in a Negative-Amortization condition and who had interest capitalized on
June 30th in at least one year since March 19, 2001, irrespective of the amount of their actual
payments during the year in which interest was capitalized.

[3]      Defendants understand Dr. Pfeiffer's alternative proposal to refer to all borrowers
whose June payment paid all interest that had accrued as of the date that payment was received

the larger class initially proposed by Dr. Pfeiffer, but defendants do not oppose certification of the alternative class proposed by Dr. Pfeiffer.

### III.     The Court Should Deny Certification of the Broader Class Proposed by Dr. Pfeiffer

Dr. Pfeiffer initially proposes that the Court certify a broad class of borrowers whose loans were in a Negative-Amortization condition and who had interest capitalized on June 30th in at least one year since March 19, 2001, irrespective of the amount of their actual payments during the year in which interest was capitalized. While the precise number of borrowers who would be members of such a class is uncertain, it is clear that Dr. Pfeiffer's interests conflict with a substantial majority of the proposed class members.

As of January 31, 2008, 325,217 ICR Plan borrowers had loans which were designated as being in a Negative-Amortization condition. Exhibit I, ¶ 6 (Declaration of Cynthia Battle).[4] Slightly less than 79 percent of those borrowers had loans with no scheduled payment, that is, the formula prescribed by 34 C.F.R. § 685.209(a) generated a scheduled monthly payment of $0 for 256,247 of the borrowers. Exhibit I, ¶ 7. Because "zero-payment" borrowers comprise the vast majority of Dr. Pfeiffer's first proposed class, it is critical that this Court assess whether Dr.

---

by defendants, but whose loans had interest capitalized as of June 30th in at least one year since March 19, 2001 because their loans were in a Negative-Amortization condition when interest was capitalized, pursuant to 34 C.F.R. § 685.202(b)(1) and (4). See generally Defendants' Motion for Summary Judgment at 4-5 (discussing Negative-Amortization condition and capitalization).

[4]     Defendants note that the information set forth in Ms. Battle's declaration presents borrower number information as of January 31, 2008. The number of total borrowers whose loans are designated as being in a Negative-Amortization condition varies over time as student loans are made and the individual financial conditions of borrowers change and result in new scheduled payment amounts.

Pfeiffer is an adequate representative of borrowers whose actual payments were insufficient to cover accrued interest, including but not limited to zero-payment borrowers. As we explain below, Dr. Pfeiffer cannot satisfy this requirement; she can only represent Negative-Amortization loan borrowers like herself, whose actual payments were sufficient to pay accrued interest through the date that their June payments were received. This more limited group comports with defendants' understanding of how Dr. Pfeiffer has defined her alternative proposed class.

For those borrowers whose loans were in a Negative-Amortization condition and had interest capitalized in June in at least one year since March 19, 2001, but whose June payment paid off all interest that had accrued as of the date that payment was received – Dr. Pfeiffer's <u>second</u> proposed class – Dr. Pfeiffer contends that defendants were barred from capitalizing any interest on June 30. The vast majority of members of her <u>first</u> proposed class do not fall into that category, however. For those borrowers whose June payment, if any, did not pay off all interest that had accrued, Dr. Pfeiffer apparently does not dispute that defendants were permitted to capitalize interest; rather, Dr. Pfeiffer apparently alleges that defendants capitalized interest on the wrong date for those borrowers. <u>See</u>, <u>e.g.</u>, Plaintiff's Memorandum in Support of Motion for Class Certification ("Pl. Memo.") at 5 (alleging that "[Department of Education] has no contractual right under its form promissory notes to capitalize interest accruing <u>after</u> a borrower's June payment due date") (emphasis in original). The difference in positions taken by Dr. Pfeiffer with regard to the two subclasses is critical for this Court's analysis.

        A.     Dr. Pfeiffer Cannot Adequately Represent the
                 Broader Class Initially Proposed in Her Motion for
                 Class Certification

Dr. Pfeiffer cannot serve as an adequate representative of the broader class initially

proposed in her Motion for Class Certification, as required by Rule 23(a)(4), because she has

actual or potential conflicts with many, if not most, members of the proposed class.  Dr.

Pfeiffer's claims are not typical of the claims of members of her first proposed class, as required

by Rule 23(a)(3), because she has not and cannot articulate a theory for recovery that she shares

with the class.  Further, because Dr. Pfeiffer's first proposed class is not cohesive and is wholly

unmanageable, it cannot be certified under Rule 23(b)(2) or 23(b)(3).

"To obtain class certification, a class plaintiff has the burden of showing that the

requirements of Rule 23(a) are met and that the class is maintainable pursuant to one of Rule

23(b)'s subdivisions."  Richards v. Delta Air Lines, Inc., 453 F.3d 525, 529 (D.C. Cir. 2006).

While defendants do not dispute that Dr. Pfeiffer's first proposed class satisfies the numerosity

and commonality requirements of Rule 23(a)(1) and Rule 23(a)(2), Dr. Pfeiffer has failed to meet

her burden in all other respects.

> B.    Dr. Pfeiffer's Interests May Conflict With Those of
>        Other Putative Class Members in the Proposed
>        Broader Class

In order for this Court to certify any class, Dr. Pfeiffer must show that she "will fairly and

adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Among other necessary

qualifications, "'the named representative must not have antagonistic or conflicting interests with

the unnamed members of the class.'"  Twelve John Does v. District of Columbia, 117 F.3d 571,

575-76 (D.C. Cir. 1997) (quoting National Association of Regional Medical Programs, Inc. v.

Mathews, 551 F.2d 340, 345 (D.C. Cir. 1976)).  "Class members whose interests are antagonistic

in fact to, or even 'potentially conflicting' with, the interests of the ostensibly representative

parties cannot be bound, consistent with the requirements of due process to an adjudication taken

in their name." Phillips v. Klassen, 502 F.2d 362, 366 (D.C. Cir. 1974) (emphasis added).  The Court must "undertake a stringent and continuing examination of the adequacy of representation by the named class representative[]," Mathews, 551 F.2d at 344, including the potential for conflict between the named representative and any members of the proposed class.

Dr. Pfeiffer has actual or potential conflicts with many, if not most, members of her first proposed class.  The vast majority of members of Dr. Pfeiffer's first proposed class have no scheduled monthly payment.  For those borrowers, defendants' practice of capitalizing all unpaid accrued interest as of June 30th, rather than capitalizing interest on another date, such as the June scheduled payment date, arguably benefitted these zero-payment borrowers.

This conflict is illustrated by Exhibit II to this memorandum, which considers the case of a zero-payment borrower who obtained a hypothetical loan of $100,000 under the same terms as Dr. Pfeiffer's 2001 loan.  A zero-payment borrower who obtained such a loan in December of 2001 would, in June 2003, reach the 10 percent limitation on the amount of interest that may be capitalized, regardless of the date in June on which interest was capitalized.  Compare Exhibit II, page 2 (line 19) with Exhibit II, page 3 (line 19); 34 C.F.R. § 685.209(c)(5) ("After the outstanding principal amount is ten percent greater than the original amount, interest continues to accrue but is not capitalized.").  Thus, regardless of the date in June on which interest was capitalized, the loan's principal balance would be the same, i.e., the original principal balance plus 10 percent.

Dr. Pfeiffer's argument is antagonistic to such borrowers, however, because the sum of each borrower's total unpaid principal and accrued interest on the loan would be less under defendants' current practice than it would be had defendants capitalized interest on the

borrower's June payment due date.  As the hypothetical depicted in Exhibit II demonstrates, such a borrower's total amount of principal plus interest would be $112,191.00 under the Secretary's current practice, as opposed to $112,196.89 if the Secretary capitalized interest on the scheduled payment date of June 21st.  Thus, Dr. Pfeiffer's interests would conflict with the interests of zero-payment members of her proposed class.  See Mathews, 551 F.2d at 344-45; Valley Drug Co. v. Geneva Pharmaceuticals, Inc., 350 F.3d 1181, 1189 (11th Cir. 2003) ("A fundamental conflict exists where some party members claim to have been harmed by the same conduct that benefitted other members of the class."); cf. Polo v. Goodings Supermarkets, Inc., 232 F.R.D. 399, 407-08 (M.D. Fla. 2004) (holding that a class of all ATM customers could not be certified because some were charged less than the fee they had authorized and others were charged more). Accordingly, Dr. Pfeiffer is not an adequate representative of her first proposed class.

Potential conflicts are not limited to zero-payment borrowers.  Another example of a potential conflict is illustrated by Exhibit III to this memorandum, which considers the case of a borrower who obtained a hypothetical loan of $100,000 under the same terms as Dr. Pfeiffer's 2001 loan but who makes scheduled monthly payments of $100, which are still less than the amount of interest accruing on his or her loan.  As Exhibit III shows, for a borrower who submitted a payment of $100 each month on the same dates that Dr. Pfeiffer submitted her payment, defendants' practice could be beneficial or harmful, depending on when one looks at the borrower's situation.  In August 2002, the sum of the loan's outstanding principal and interest was less under defendants' current practice than it would be had defendants capitalized interest on the borrower's June payment date.  See Exhibit III ($100 Scheduled Payment Spreadsheets). By June 2003, however, the sum of the loan's outstanding principal and interest was greater, and

by August 2003, the sum of the loan's outstanding principal and interest was again less under defendants' current practice. See Exhibit III ($100 Scheduled Payment Spreadsheets). Dr. Pfeiffer can hardly claim to adequately represent such a borrower, whose alleged harm or benefit depends on the day on which the borrower's total principal and interest is analyzed and whose ultimate interests in this litigation Dr. Pfeiffer cannot know.

        C.     Dr. Pfeiffer's Claims Are Not Typical of the Claims
              of Other Putative Members of the Broader Class

      In order for this Court to certify any class, Dr. Pfeiffer must also show that her "claims or defenses . . . are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The purpose of the typicality requirement is to "ensure[] that the claims of the representative and absent class members are sufficiently similar so that the representatives' acts are also acts on behalf of, and safeguard the interests of, the class." Littlewolf v. Hodel, 681 F. Supp. 929, 935 (D.D.C. 1988). A named plaintiff's claim is typical only "if it arises from the same event or practice or course of conduct that gives rise to a claim of another class member's where his or her claims are based on the same legal theory." Stewart v. Rubin, 948 F. Supp. 1077, 1088 (D.D.C. 1996) (internal quotation marks omitted).

      Dr. Pfeiffer's claims are not typical of the claims of members of her first proposed class because they are not, and cannot, be based on the same legal theory. Dr. Pfeiffer argues that "[s]he asserts the same breach of contract claim as the members of both classes," Pl. Memo. at 10, but Dr. Pfeiffer has never articulated how her asserted legal theory applies to members of the first proposed class, including but not limited to zero-payment borrowers. Dr. Pfeiffer has set forth a theory under which borrowers whose June payment paid off all interest that had accrued

as of that date allegedly were harmed and should recover, but has not set forth any theory under which zero-payment borrowers and other members of the first proposed class were harmed and should recover.

This is no mere academic task. Under Dr. Pfeiffer's legal theory, many members of her first proposed class simply were not harmed by defendants' practices, and many others have an alleged harm or benefit, depending on the day which their total principal and interest is analyzed. Thus, Dr. Pfeiffer's own legal theory is fundamentally different from any possible theory under which members of the first proposed class could allege harm and a right to recovery. Again, Dr. Pfeiffer's unsupported assertions to the contrary fail to satisfy her burden of showing that her claims are typical of the claims of members of her first proposed class.

        D.      Dr. Pfeiffer's First Proposed Class Does Not Satisfy Rule 23(b)(2) or Rule 23(b)(3)

In addition to meeting the criteria of Rule 23(a), Dr. Pfeiffer must meet the criteria of one of Rule 23(b)'s subsections before this Court can certify any class. Rule 23(b)(2) permits certification of a class king equitable relief if "the party opposing the class has acted or refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) permits certification of a class only if common questions of law or fact "predominate" over individual questions and if a class action is "superior" to other methods of adjudication. Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) also lists specific factors "pertinent to these findings," including "the likely difficulties in managing a class action." Id. "Commonly referred to as 'manageability,' this consideration encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." Eisen v. Carlisle & Jacquelin, 417 U.S. 156,

164 (1974).  Although Rule 23(b)(2) does not explicitly require predominance or superiority, a Rule 23(b)(2) class must still be "a cohesive group with few conflicting interests."  In re Veneman, 309 F.3d 789, 792 (D.C. Cir. 2002); see also In re St. Jude Medical, Inc., 425 F.3d 1116, 1121 (8th Cir. 2005) ("Although Rule 23(b)(2) contains no predominance or superiority requirements, class claims thereunder still must be cohesive."); Barnes v. American Tobacco Co., 161 F.3d 127, 143 (3d Cir. 1998) ("While 23(b)(2) class actions have no predominance or superiority requirements, it is well established that the class claims must be cohesive.").

Dr. Pfeiffer's first proposed class is not cohesive and is wholly unmanageable.  Under Dr. Pfeiffer's theory, many members of her first proposed class simply were not harmed by defendants' practices, and many others have an alleged harm, or even a benefit, that varies by the day on which the borrower's total principal and interest is analyzed.  Managing the first proposed class would require subclasses whose composition changes from day to day and whose interests might align or conflict with those of other subclasses from day to day.  Alternatively, managing the first proposed class would require fixed subclasses unique to the dates and terms of each borrower's loan, necessitating almost as many subclasses as borrowers.  Cf. In re Bridgestone/Firestone, Inc., 288 F.3d 1012, 1018-20 (7th Cir. 2002) (explaining the unmanageability of a class requiring a large number of subclasses, including subclasses comprised of members who had been harmed and members who had not).

> E.  Defendants Do Not Oppose Dr. Pfeiffer's Claim
>     That She Can Adequately Represent the Alternative
>     Class Proposed in Her Class Certification Motion

Subject to the understanding as set forth in footnote 3, above, defendants do not oppose certification of the alternative class proposed by Dr. Pfeiffer, consisting of:

> All borrowers who elected to repay their student loans issued by the United States Department of Education under the <u>Income Contingent Repayment Plan</u> and whose annual scheduled payments at any time after March 19, 2001 were insufficient to cover the interest accruing on the loan, but whose <u>actual payments</u> were equal to or greater than the interest accruing on their loan.

Motion for Class Certification ¶ 1.  Defendants similarly do not dispute that Dr. Pfeiffer's counsel may serve as adequate counsel for the class.

IV.     Dr. Pfeiffer Should Bear the Cost of Providing Notice to Any Class <u>Certified By This Court</u>

Dr. Pfeiffer asserts that "the cost of notice, including postage, should be borne by defendants."  Motion for Class Certification ¶ 3.  It is settled law, however, that "the plaintiff must pay for the cost of notice as part of the ordinary burden of financing h[er] own suit."  <u>Eisen</u>, 417 U.S. at 178-79.  Dr. Pfeiffer has not shown that hers is an extraordinary case warranting an exception to the rule.  Moreover, Dr. Pfeiffer's wholesale failure to support this part of her motion forfeits her argument.  <u>See</u> <u>Davis v. District of Columbia</u>, 503 F. Supp. 2d 104, 130 (D.D.C. 2007) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived . . . ." (internal quotation marks omitted)).

<u>CONCLUSION</u>

For the foregoing reasons, defendants respectfully request that this Court deny Plaintiff's motion to certify her first proposed class.  Defendants do not oppose Plaintiff's motion to certify her second proposed class.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

J. CHRISTOPHER KOHN
Director

ROBERT E. KIRSCHMAN, JR.
Deputy Director


/s/ John Warshawsky
_____
JOHN WARSHAWSKY (D.C. Bar No. 417170)
Senior Trial Counsel
CHRISTIAN J. GROSTIC
Trial Attorney
Commercial Litigation Branch
Civil Division
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044-0875
Telephone: (202) 307-0010
Facsimile: (202) 305-4933
Attorneys for Defendants

February 28, 2008

<u>Certificate of Service by ECF</u>

I hereby certify that, on February 28, 2008, the foregoing "DEFENDANTS'

MEMORANDUM IN RESPONSE TO PLAINTIFF'S MOTION FOR CLASS

CERTIFICATION AND APPOINTMENT OF COUNSEL" was filed electronically in the

Court's Electronic Case Filing ("ECF") system.  I understand that notice of this filing will be sent

to all counsel by operation of the Court's ECF system and that parties may access this filing

through the Court's system.


/s/ John Warshawsky

_____

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRENDA KAY PFEIFFER, )<br><br>Plaintiff, )<br><br>v. )<br><br>MARGARET SPELLINGS, Secretary of Education,<br>et al., )<br><br>Defendants. ) | Case No. 1:07-cv-00522<br>(Judge Sullivan) |

DECLARATION OF CYNTHIA D. BATTLE

Background of Declarant

1.      I am currently employed as Director of the Non-Default Group at the United

States Department of Education ("Department"), Office of Federal Student Aid ("FSA"). I have

been employed in various positions at the Department since 1993 and have served as the

Director of the Non-Default Group since November 2006.

2.      As the Director of the Non-Default Group, my responsibilities are program

management oversight of the Non-Defaulted loan portfolios (Direct Loan Servicing, Loan

Consolidation, and Conditional Discharge Disability) held by FSA, including the evaluation of

servicing tools, portfolio analysis, program services, and partner relations. My specific

responsibilities include, but are not limited to: providing expert guidance to assist in formulation

of operational policy and procedures related to repayment activities for the non-defaulted loan

portfolios held by FSA; providing recommendations for operational improvements and/or

enhancements for the non-defaulted loan portfolios; designing and producing management

information and other special reports on non-default repayment activities; reviewing and taking

- 1 -

action on all quality control and quality assurance reviews; and coordinating program activities.

3.      During the course of my employment at the Department, I have become familiar with Title IV of the Higher Education Act of 1965, applicable Department regulations regarding the William D. Ford Federal Direct Loan Program, and Department policies regarding the William D. Ford Federal Direct Loan Program. I have also become familiar with the Department's receipt of information related to Direct Loans, the Department's creation and maintenance of records related to Direct Loans, the various repayment plans available to borrowers, and the servicing of Direct Loans by the Department and its servicing contractor.

Loans in a Negative-Amortization Condition

4.      When a borrower's scheduled monthly payment under the Income Contingent Repayment ("ICR") plan is less than the amount of monthly interest that accrues on the borrower's loan, the loan is designated in a "Negative-Amortization" condition.

5.      I have reviewed the Department's business records regarding the number of borrowers with loans being paid under the ICR plan that are currently designated in a "Negative-Amortization" condition.

6.      The Department's business records confirm that, as of January 31, 2008, 325,217 borrowers had loans being paid under the ICR plan that were designated in a "Negative-Amortization" condition.

7.      The Department's business records confirm that, as of January 31, 2008, 256,247 borrowers had loans being paid under the ICR plan that had a scheduled monthly payment of $0.00.

- 2 -

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge.

Dated: February $\underline{27}$, 2008

Cynthia Battle

- 3 -

# Zero-Payment Spreadsheets

**Summary Information on Negative-Amortization Loan - Zero-Payment Spreadsheets**

Hypothetical Initial Loan Balance                    $100,000

Scheduled Monthly Payment                              $0

Fixed Interest Rate of 6.875%    Daily Interest Rate Factor    0.000188230


**Borrower Balance as of 8/21/2003 with Capitalization on June 30th**           Principal + Interest    **$ 112,191.00**

**Borrower Balance as of 8/21/2003 with Capitalization on June Payment Date**    Principal + Interest    **$ 112,196.89**

EXHIBIT II:  DEFENDANTS' RESPONSE TO CLASS CERTIFICATION MOTION

**CAPITALIZATION OF UNPAID ACCRUED INTEREST ON JUNE 30TH**

Fixed Interest Rate of 6.875%          Daily Int. Factor     0.000188230

Accrued Interest =
Daily Interest Factor x Days of Interest

|   | Transaction | Date | Total Pmt | Pd to Prin | Pd to Int | Borrower Balance | Days of Int | Accrued Interest | |
|---|---|---|---|---|---|---|---|---|---|
|  |  | 12/1/2001 |  |  |  | $ 100,000.00 |  |  | |
| 1 | payment | 12/21/2001 | $ - | $ - | $ - | $ 100,000.00 | 20 | $ 376.46 | |
| 2 | payment | 1/21/2002 | $ - | $ - | $ - | $ 100,000.00 | 31 | $ 959.97 | |
| 3 | payment | 2/21/2002 | $ - | $ - | $ - | $ 100,000.00 | 31 | $ 1,543.49 | |
| 4 | payment | 3/21/2002 | $ - | $ - | $ - | $ 100,000.00 | 28 | $ 2,070.53 | |
| 5 | payment | 4/21/2002 | $ - | $ - | $ - | $ 100,000.00 | 31 | $ 2,654.04 | |
| 6 | payment | 5/21/2002 | $ - | $ - | $ - | $ 100,000.00 | 30 | $ 3,218.73 | |
| 7 | payment | 6/21/2002 | $ - | $ - | $ - | $ 100,000.00 | 31 | $ 3,802.25 | |
| 7 | CAP Adj | 7/1/2002 |  |  |  | $ 103,990.48 | 10 | $ 3,990.48 | |
| 8 | payment | 7/21/2002 | $ - | $ - | $ - | $ 103,990.48 | 20 | $ 391.48 | |
| 9 | payment | 8/21/2002 | $ - | $ - | $ - | $ 103,990.48 | 31 | $ 998.28 | |
| 10 | payment | 9/21/2002 | $ - | $ - | $ - | $ 103,990.48 | 31 | $ 1,605.08 | |
| 11 | payment | 10/21/2002 | $ - | $ - | $ - | $ 103,990.48 | 30 | $ 2,192.30 | |
| 12 | payment | 11/21/2002 | $ - | $ - | $ - | $ 103,990.48 | 31 | $ 2,799.10 | |
| 13 | payment | 12/21/2002 | $ - | $ - | $ - | $ 103,990.48 | 30 | $ 3,386.32 | |
| 14 | payment | 1/21/2003 | $ - | $ - | $ - | $ 103,990.48 | 31 | $ 3,993.12 | |
| 15 | payment | 2/21/2003 | $ - | $ - | $ - | $ 103,990.48 | 31 | $ 4,599.92 | |
| 16 | payment | 3/21/2003 | $ - | $ - | $ - | $ 103,990.48 | 28 | $ 5,148.00 | |
| 17 | payment | 4/21/2003 | $ - | $ - | $ - | $ 103,990.48 | 31 | $ 5,754.79 | |
| 18 | payment | 5/21/2003 | $ - | $ - | $ - | $ 103,990.48 | 30 | $ 6,342.02 | |
| 19 | payment | 6/21/2003 | $ - | $ - | $ - | $ 103,990.48 | 31 | $ 6,948.82 | |
| 19 | CAP Adj | 7/1/2003 |  |  |  | $ 110,000.00 | 10 | $ 7,144.56 | See * below |
| 20 | payment | 7/21/2003 | $ - | $ - | $ - | $ 110,000.00 | 20 | $ 1,549.14 | |
| 21 | payment | 8/21/2003 | $ - | $ - | $ - | $ 110,000.00 | 31 | $ 2,191.00 | |

Principal + Interest as of 8/21/03          $ 112,191.00

\* Capitalization limited to 10% of initial principal

EXHIBIT II:  DEFENDANTS' RESPONSE TO CLASS CERTIFICATION MOTION

**CAPITALIZATION OF UNPAID ACCRUED INTEREST ON JUNE 21ST (SCHEDULED PAYMENT DATE)**

Fixed Interest Rate of 6.875%        Daily Int. Factor        0.000188230

Accrued Interest =
Daily Interest Factor x Days of Interest

|   | Transaction | Date | Total Pmt | Pd to Prin | Pd to Int | Borrower Balance | Days of Int | Accrued Interest | |
|---|---|---|---|---|---|---|---|---|---|
| | | 12/1/2001 | | | | $   100,000.00 | | | |
| 1 | payment | 12/21/2001 | $          - | $          - | $          - | $   100,000.00 | 20 | $        376.46 | |
| 2 | payment | 1/21/2002 | $          - | $          - | $          - | $   100,000.00 | 31 | $        959.97 | |
| 3 | payment | 2/21/2002 | $          - | $          - | $          - | $   100,000.00 | 31 | $     1,543.49 | |
| 4 | payment | 3/21/2002 | $          - | $          - | $          - | $   100,000.00 | 28 | $     2,070.53 | |
| 5 | payment | 4/21/2002 | $          - | $          - | $          - | $   100,000.00 | 31 | $     2,654.04 | |
| 6 | payment | 5/21/2002 | $          - | $          - | $          - | $   100,000.00 | 30 | $     3,218.73 | |
| 7 | payment | 6/21/2002 | $          - | $          - | $          - | $   100,000.00 | 31 | $     3,802.25 | |
| 7 | CAP Adj | 6/21/2002 | | | | $   103,802.25 | 0 | $     3,802.25 | |
| 8 | payment | 7/21/2002 | $          - | $          - | $          - | $   103,802.25 | 30 | $        586.16 | |
| 9 | payment | 8/21/2002 | $          - | $          - | $          - | $   103,802.25 | 31 | $     1,191.86 | |
| 10 | payment | 9/21/2002 | $          - | $          - | $          - | $   103,802.25 | 31 | $     1,797.56 | |
| 11 | payment | 10/21/2002 | $          - | $          - | $          - | $   103,802.25 | 30 | $     2,383.72 | |
| 12 | payment | 11/21/2002 | $          - | $          - | $          - | $   103,802.25 | 31 | $     2,989.42 | |
| 13 | payment | 12/21/2002 | $          - | $          - | $          - | $   103,802.25 | 30 | $     3,575.58 | |
| 14 | payment | 1/21/2003 | $          - | $          - | $          - | $   103,802.25 | 31 | $     4,181.28 | |
| 15 | payment | 2/21/2003 | $          - | $          - | $          - | $   103,802.25 | 31 | $     4,786.98 | |
| 16 | payment | 3/21/2003 | $          - | $          - | $          - | $   103,802.25 | 28 | $     5,334.06 | |
| 17 | payment | 4/21/2003 | $          - | $          - | $          - | $   103,802.25 | 31 | $     5,939.76 | |
| 18 | payment | 5/21/2003 | $          - | $          - | $          - | $   103,802.25 | 30 | $     6,525.92 | |
| 19 | payment | 6/21/2003 | $          - | $          - | $          - | $   103,802.25 | 31 | $     7,131.62 | |
| 19 | CAP Adj | 6/21/2003 | | | | $   110,000.00 | 0 | $     7,131.62 | See * below |
| 20 | payment | 7/21/2003 | $          - | $          - | $          - | $   110,000.00 | 30 | $     1,555.03 | |
| 21 | payment | 8/21/2003 | $          - | $          - | $          - | $   110,000.00 | 31 | $     2,196.89 | |

Principal + Interest as of 8/21/03        $  112,196.89

* Capitalization limited to 10% of initial principal

EXHIBIT II:  DEFENDANTS' RESPONSE TO CLASS CERTIFICATION MOTION

# $100 Scheduled Payment Spreadsheets

**Summary Information on Negative-Amortization Loan - $100-Payment Spreadsheets**

| | |
|---|---|
| Hypothetical Initial Loan Balance | $100,000 |
| Scheduled Monthly Payment | $100 |

Fixed Interest Rate of 6.875%     Daily Interest Rate Factor     0.000188230

| | | |
|---|---|---|
| **Borrower Balance as of 8/16/2002 with Capitalization on June 30th** | Principal + Interest | $ 103,870.91 |
| **Borrower Balance as of 8/16/2002 with Capitalization on June Payment Date** | Principal + Interest | $ 103,874.91 |
| **Borrower Balance as of 6/16/2003 with Capitalization on June 30th** | Principal + Interest | $ 108,774.93 |
| **Borrower Balance as of 6/16/2003 with Capitalization on June Payment Date** | Principal + Interest | $ 108,768.15 |
| **Borrower Balance as of 8/18/2003 with Capitalization on June 30th** | Principal + Interest | $ 109,851.66 |
| **Borrower Balance as of 8/18/2003 with Capitalization on June Payment Date** | Principal + Interest | $ 109,853.60 |

EXHIBIT III:  DEFENDANTS' RESPONSE TO CLASS CERTIFICATION MOTION

**CAPITALIZATION OF UNPAID ACCRUED INTEREST ON JUNE 30TH**

Fixed Interest Rate of 6.875%          Daily Int. Factor     0.000188230

Accrued Interest =
Daily Interest Factor x Days of Interest

| Transaction | Date | Total Pmt | Pd to Prin | Pd to Int | Borrower Balance | Days of Int | Accrued Interest |
|---|---|---|---|---|---|---|---|
| | 12/7/2001 | | | | $ 100,000.00 | | |
| payment | 12/14/2001 | $ 100.00 | $ - | $ 100.00 | $ 100,000.00 | 7 | $ 131.76 |
| payment | 1/15/2002 | $ 100.00 | $ - | $ 100.00 | $ 100,000.00 | 32 | $ 634.10 |
| payment | 2/19/2002 | $ 100.00 | $ - | $ 100.00 | $ 100,000.00 | 35 | $ 1,192.90 |
| payment | 3/18/2002 | $ 100.00 | $ - | $ 100.00 | $ 100,000.00 | 27 | $ 1,601.12 |
| payment | 4/15/2002 | $ 100.00 | $ - | $ 100.00 | $ 100,000.00 | 28 | $ 2,028.17 |
| payment | 5/16/2002 | $ 100.00 | $ - | $ 100.00 | $ 100,000.00 | 31 | $ 2,511.68 |
| payment | 6/14/2002 | $ 100.00 | $ - | $ 100.00 | $ 100,000.00 | 29 | $ 2,957.55 |
| CAP Adj | 7/1/2002 | | | | $ 103,177.54 | 17 | $ 3,177.54 |
| payment | 7/16/2002 | $ 100.00 | $ - | $ 100.00 | $ 103,177.54 | 15 | $ 291.32 |
| payment | 8/16/2002 | $ 100.00 | $ - | $ 100.00 | $ 103,177.54 | 31 | $ 793.37 |
| payment | 9/13/2002 | $ 100.00 | $ - | $ 100.00 | $ 103,177.54 | 28 | $ 1,237.16 |
| payment | 10/8/2002 | $ 100.00 | $ - | $ 100.00 | $ 103,177.54 | 25 | $ 1,622.69 |
| payment | 11/18/2002 | $ 100.00 | $ - | $ 100.00 | $ 103,177.54 | 41 | $ 2,318.96 |
| payment | 12/16/2002 | $ 100.00 | $ - | $ 100.00 | $ 103,177.54 | 28 | $ 2,762.75 |
| payment | 1/14/2003 | $ 100.00 | $ - | $ 100.00 | $ 103,177.54 | 29 | $ 3,225.96 |
| payment | 2/18/2003 | $ 100.00 | $ - | $ 100.00 | $ 103,177.54 | 35 | $ 3,805.70 |
| payment | 3/18/2003 | $ 100.00 | $ - | $ 100.00 | $ 103,177.54 | 28 | $ 4,249.49 |
| payment | 4/15/2003 | $ 100.00 | $ - | $ 100.00 | $ 103,177.54 | 28 | $ 4,693.28 |
| payment | 5/16/2003 | $ 100.00 | $ - | $ 100.00 | $ 103,177.54 | 31 | $ 5,195.33 |
| payment | 6/16/2003 | $ 100.00 | $ - | $ 100.00 | $ 103,177.54 | 31 | $ 5,697.39 |
| CAP Adj | 7/1/2003 | | | | $ 109,066.24 | 15 | $ 5,888.70 |
| payment | 7/16/2003 | $ 100.00 | $ - | $ 100.00 | $ 109,066.24 | 15 | $ 307.94 |
| payment | 8/18/2003 | $ 100.00 | $ - | $ 100.00 | $ 109,066.24 | 33 | $ 885.42 |

Principal + Interest as of 8/16/02          $ 103,870.91

Principal + Interest as of 6/16/03          $ 108,774.93

Principal + Interest as of 8/18/03          $ 109,851.66

EXHIBIT III:  DEFENDANTS' RESPONSE TO CLASS CERTIFICATION MOTION

**CAPITALIZATION OF UNPAID ACCRUED INTEREST ON JUNE PAYMENT DATE**

Fixed Interest Rate of 6.875%        Daily Int. Factor      0.000188230

Accrued Interest =
Daily Interest Factor x Days of Interest

| Transaction | Date | Total Pmt | Pd to Prin | Pd to Int | Borrower Balance | Days of Int | Accrued Interest |
|---|---|---|---|---|---|---|---|
| | 12/7/2001 | | | | $ 100,000.00 | | |
| payment | 12/14/2001 | $ 100.00 | $ - | $ 100.00 | $ 100,000.00 | 7 | $ 131.76 |
| payment | 1/15/2002 | $ 100.00 | $ - | $ 100.00 | $ 100,000.00 | 32 | $ 634.10 |
| payment | 2/19/2002 | $ 100.00 | $ - | $ 100.00 | $ 100,000.00 | 35 | $ 1,192.90 |
| payment | 3/18/2002 | $ 100.00 | $ - | $ 100.00 | $ 100,000.00 | 27 | $ 1,601.12 |
| payment | 4/15/2002 | $ 100.00 | $ - | $ 100.00 | $ 100,000.00 | 28 | $ 2,028.17 |
| payment | 5/16/2002 | $ 100.00 | $ - | $ 100.00 | $ 100,000.00 | 31 | $ 2,511.68 |
| payment | 6/14/2002 | $ 100.00 | $ - | $ 100.00 | $ 100,000.00 | 29 | $ 2,957.55 |
| CAP Adj | 6/21/2002 | | | | $ 102,989.31 | 7 | $ 2,989.31 |
| payment | 7/16/2002 | $ 100.00 | $ - | $ 100.00 | $ 102,989.31 | 25 | $ 484.64 |
| payment | 8/16/2002 | $ 100.00 | $ - | $ 100.00 | $ 102,989.31 | 31 | $ 985.60 |
| payment | 9/13/2002 | $ 100.00 | $ - | $ 100.00 | $ 102,989.31 | 28 | $ 1,428.40 |
| payment | 10/8/2002 | $ 100.00 | $ - | $ 100.00 | $ 102,989.31 | 25 | $ 1,813.04 |
| payment | 11/18/2002 | $ 100.00 | $ - | $ 100.00 | $ 102,989.31 | 41 | $ 2,507.85 |
| payment | 12/16/2002 | $ 100.00 | $ - | $ 100.00 | $ 102,989.31 | 28 | $ 2,950.65 |
| payment | 1/14/2003 | $ 100.00 | $ - | $ 100.00 | $ 102,989.31 | 29 | $ 3,412.84 |
| payment | 2/18/2003 | $ 100.00 | $ - | $ 100.00 | $ 102,989.31 | 35 | $ 3,991.33 |
| payment | 3/18/2003 | $ 100.00 | $ - | $ 100.00 | $ 102,989.31 | 28 | $ 4,434.13 |
| payment | 4/15/2003 | $ 100.00 | $ - | $ 100.00 | $ 102,989.31 | 28 | $ 4,876.93 |
| payment | 5/16/2003 | $ 100.00 | $ - | $ 100.00 | $ 102,989.31 | 31 | $ 5,377.89 |
| payment | 6/16/2003 | $ 100.00 | $ - | $ 100.00 | $ 102,989.31 | 31 | $ 5,878.84 |
| CAP Adj | 6/21/2003 | | | | $ 108,865.08 | 5 | $ 5,875.77 |
| payment | 7/16/2003 | $ 100.00 | $ - | $ 100.00 | $ 108,865.08 | 25 | $ 512.29 |
| payment | 8/18/2003 | $ 100.00 | $ - | $ 100.00 | $ 108,865.08 | 33 | $ 1,088.52 |

Principal + Interest as of 8/16/02        $ 103,874.91

Principal + Interest as of 6/16/03        $ 108,768.15

Principal + Interest as of 8/18/03        $ 109,853.60

EXHIBIT III: DEFENDANTS' RESPONSE TO CLASS CERTIFICATION MOTION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————————
BRENDA KAY PFEIFFER,                          )
                                              )
                Plaintiff,                    )
                                              )
        v.                                    )        Case No. 1:07-cv-00522
                                              )        (Judge Sullivan)
MARGARET SPELLINGS, Secretary of Education,   )
        et al.,                               )
                                              )
                Defendants.                   )
———————————————————————————)

**ORDER**

This matter comes before the Court on *Plaintiff's Motion for Class Certification and Appointment of Counsel* [Docket No. 24].  Upon consideration of the Motion, Defendants' Response, and any Reply thereto, and the entire record of this case, it is hereby

ORDERED that the Motion is GRANTED IN PART AND DENIED IN PART, and

IT IS FURTHER ORDERED that Plaintiff's request to represent the class defined as "All borrowers who elected to repay their student loans issued by the United States Department of Education under the Income Contingent Repayment Plan and whose annual scheduled payments at any time after March 19, 2001 were insufficient to cover the interest accruing on their loan" is DENIED, and

IT IS FURTHER ORDERED that Plaintiff's request to represent the class defined as "All borrowers who elected to repay their student loans issued by the United States Department of Education under the Income Contingent Repayment Plan and whose annual scheduled payments at any time after March 19, 2001 were insufficient to cover the interest accruing on the loan, but whose actual payments were equal to or greater than the interest accruing on their loan" is GRANTED, and

IT IS FURTHER ORDERED that Dr. Pfeiffer's counsel is approved to serve as counsel for the class certified by this Court, and

IT IS FURTHER ORDERED that Dr. Pfeiffer shall bear the cost of providing notice to the class certified by this Court, and

IT IS FURTHER ORDERED that the parties shall confer and report to the Court no later than _____ regarding efforts to agree upon the terms of a proposed notice to the class and upon efforts to identify members of the class certified by this Court.

SO ORDERED.

_____
Emmet G. Sullivan
UNITED STATES DISTRICT JUDGE

Date:_____

cc:

Steven M. Sprenger, Esq.
Sprenger & Lang, PLLC
1400 Eye Street, N.W., Suite 500
Washington, D.C.  20005
Facsimile: (202) 332-6652
E-mail: ssprenger@sprengerlang.com

John Warshawsky, Esq.
United States Department of Justice
Civil Division, Commercial Litigation Branch
1100 L Street, N.W., Room 10030
Washington, D.C.  20530
Facsimile: (202) 514-9163
E-mail: john.warshawsky@usdoj.gov