IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

BRENDA KAY PFEIFFER,              )
                                    )
     Plaintiff,                  )
                                    )
     v.                       )     Case No. 1:07-cv-00522
                                    )     (Judge Sullivan)
ARNE DUNCAN, Secretary of Education, et al.,     )
                                    )
     Defendants.               )
_____)

DEFENDANTS' COMBINED RENEWED CROSS-MOTION FOR SUMMARY
JUDGMENT AND OPPOSITION TO PLAINTIFF'S RENEWED
MOTION FOR PARTIAL SUMMARY JUDGMENT

INTRODUCTION

Plaintiff, Brenda Kay Pfeiffer ("Dr. Pfeiffer"), borrowed money from Defendants for her education and is repaying this money under the terms of promissory notes executed by Dr. Pfeiffer. These notes incorporate, and their terms are governed by, certain regulations promulgated by the Department of Education ("Education"). Under the circumstances described in the regulations, Defendants are authorized to annually add unpaid interest to the principal balance owed. Dr. Pfeiffer claims that adding unpaid interest to the principal violated another provision in her promissory notes and that, as of November 15, 2007, her damages for this breach of contract total $3.76.

The material facts are not in dispute. However, Dr. Pfeiffer's current interpretation of the unambiguous terms of her contract is unreasonable and in direct conflict with the regulations. As a matter of law, Defendants have not violated any provision of the promissory notes. In addition, in her complaint, Dr. Pfeiffer asks the Court to enjoin certain action by Defendants. This Court does not have subject-matter jurisdiction over any non-monetary claims by Dr. Pfeiffer.

Pursuant to Rule 56(b) of the Federal Rules of Civil Procedure and Local Civil Rule 7, Defendants respectfully move this Court to enter summary judgment in their favor and against Plaintiff.  In support of this motion, Defendants rely upon the pleadings, the following memorandum of points and authorities, and Defendants' Statement of Material Facts as to Which There Are No Genuine Issues To Be Tried ("Statement of Material Facts") (attached as Exhibit A).  For the same reasons, Plaintiffs' Renewed Motion for Partial Summary Judgment should be denied.

<u>STATEMENT OF THE ISSUES</u>

1.  Whether the promissory notes executed by Dr. Pfeiffer contractually authorized Defendants to capitalize the amount of interest that accrued during the period between Defendants' receipt of Dr. Pfeiffer's June payment and June 30th for those years when Dr. Pfeiffer's loan was in a "Negative-Amortization" condition under the Income Contingent Repayment Plan.

2.  Whether the Court has subject matter jurisdiction over Plaintiff's non-monetary claims.

<u>STATEMENT OF THE CASE</u>

I.      <u>Nature of the Case</u>

This is a breach of contract action brought by Dr. Pfeiffer, who has borrowed money for student loans under the William D. Ford Federal Direct Loan Program ("Direct Loan Program"). In her complaint, Dr. Pfeiffer challenges Defendants' interest capitalization practices for a subset of direct student loan borrowers, as more fully described below.

A.     The William D. Ford Federal Direct Loan Program

The Federal Direct Student Loan Program was established by the Student Loan Reform Act of 1993, Pub. L. No. 103-66, Title IV, Subtitle A, 107 Stat. 340, current version codified at 20 U.S.C. § 1087a et. seq.  This legislation "[c]reate[d] a new direct loan program to take the place of the [then-]existing guaranteed student loan program."  H.R. Rep. No. 103-111, at 106, reprinted in 1993 U.S.C.C.A.N. 378, 474.  One of the key principles of this reformative legislation was the

> focus on the "back end" of the system, that is, repayment of loans by student borrowers or their parents.  In this regard, the [Federal Direct Student Loan Program] would provide for a variety of flexible repayment plans – including fixed, extended, graduated, and income-contingent schedules.  Borrowers would choose the repayment option best suited to their individual needs.

H.R. Rep. No. 103-111, at 107, reprinted in 1993 U.S.C.C.A.N. 378, 475.  The following year, the Federal Direct Student Loan Program was renamed the William D. Ford Federal Direct Loan Program.  See Improving America's Schools Act of 1994, Pub. L. No. 103-382, § 358A, 108 Stat. 3518, 3968, codified at 20 U.S.C. § 1087a.

B.     Dr. Pfeiffer's Promissory Notes Executed in 1997

During 1997, Dr. Pfeiffer executed two variable interest rate promissory notes for Federal Direct Consolidation Loans under the Direct Loan Program.[1]  The two promissory notes included the following representations within a section captioned "Promise to Pay":

> I understand that this is a Promissory Note.  I will not sign this Promissory Note before reading it, including the text on the reverse side, even if I am advised not to

---

[1]     The Federal Direct Consolidation Loan Program is one of four program components of the Direct Loan Program.  The other programs are the Federal Direct Stafford/Ford Loan Program, the Federal Direct Unsubsidized Stafford/Ford Loan Program, and the Federal Direct PLUS Program.  34 C.F.R. § 685.100(a).  As the name implies, the Federal Direct Consolidation Loan Program "provides loans to borrowers to consolidate certain Federal educational loans."  34 C.F.R. § 685.100(a)(4).

> read the Promissory Note. . . .  My signature certifies that I have read, understand, and agree, to the terms and conditions of this Promissory Note, including the Borrower Certification and Authorization printed on the reverse side and the accompanying Borrower's Rights and Responsibilities.

Dr. Pfeiffer has confirmed that she read, understood, and agreed to all of the terms and conditions of the 1997 promissory notes.

The reverse side of the two promissory notes, referenced in the "Promise to Pay" section quoted above, began with the following statement:

> Governing Law and Notices
>
> This Promissory Note (note) applies to Federal Direct Consolidation Loans (Direct Consolidation Loans).  In this note, the Higher Education Act of 1965, as amended, 20 U.S.C. 1070 et seq. and applicable U.S. Department of Education (ED) regulations are referred to as "the Act."  The terms of this note will be interpreted according to the Act and other applicable federal statutes and regulations.

C.    The Income Contingent Repayment Plan and Applicable Department of Education Regulations

When Dr. Pfeiffer executed her two promissory notes in 1997, she elected to repay them under the Income Contingent Repayment ("ICR") Plan.[2]  As the name of this plan implies, the ICR Plan provides a borrower with the option of having her scheduled monthly payment determined based primarily upon the borrower's Adjusted Gross Income.  See 34 C.F.R. § 685.209(a) ("Repayment amount calculation").  Moreover, under the ICR Plan, the maximum repayment period is twenty-five years, and if the borrower has not repaid his or her loan at the end of the twenty-five year repayment period, the Secretary cancels the unpaid balance of the loan, i.e., the debt is forgiven.  34 C.F.R. § 685.209(c)(4)(i), (iv).

---

[2]    The Direct Loan Program offers borrowers a choice of up to five repayment plans: Standard, Extended, Graduated, Income Contingent, and Alternative.  See 34 C.F.R. § 685.208.

Because the ICR Plan provides that scheduled monthly payments are determined based primarily upon a borrower's Adjusted Gross Income – not the amount of her loan, as would be the case in "traditional" repayment plans – a borrower's scheduled monthly payment may be less than the amount of interest that accrues on the loan.  In those circumstances, the Secretary may capitalize the unpaid interest pursuant to another Department of Education regulation, which provides:

> The Secretary may add unpaid accrued interest to the borrower's unpaid principal balance.  This increase in the principal balance of a loan is called "capitalization."

34 C.F.R. § 685.202(b)(1).  Because this process increases the outstanding principal, it is often referred to as "negative amortization."  The regulation further states:

> Except as provided in [three non-applicable subsections], the Secretary annually capitalizes unpaid interest when the borrower is paying under the . . . income contingent repayment plan[] and the borrower's scheduled payments do not cover the interest that has accrued on the loan.

34 C.F.R. § 685.202(b)(4).[3]

### D.    Dr. Pfeiffer's Promissory Note Executed in 2001

In November 2001, Dr. Pfeiffer executed a new promissory note for the purpose of "locking in" a fixed interest rate for her loan.  The 2001 promissory note included virtually

---

[3]    The Department of Education's regulations place a "10 percent" ceiling on the amount of interest that may be capitalized:

> Limitation on capitalization of interest.  If the amount of a borrower's monthly payment is less than the accrued interest, the unpaid interest is capitalized until the outstanding principal amount is ten percent greater than the original principal amount.  After the outstanding principal amount is ten percent greater than the original amount, interest continues to accrue but is not capitalized. . . .

34 C.F.R. § 685.209(c)(5).

identical representations to those contained in the two 1997 variable interest rate promissory

notes executed by Dr. Pfeiffer.  Specifically, in the section captioned "Promise to Pay," Dr.

Pfeiffer confirmed:

> I understand that this is a Promissory Note.  I will not sign this note before reading
> it, including the text on the reverse side, even if I am advised not to read the note.
> . . .  My signature certifies that I have read, understand, and agree, to the terms and
> conditions of this Promissory Note, including the Borrower Certification and
> Authorization printed on the reverse side and the accompanying Borrower's
> Rights and Responsibilities.[4]

Moreover, like the 1997 promissory notes, the November 2001 promissory note included the

following statement on the reverse side

> Governing Law and Notices
>
> This Promissory Note (note) applies to Federal Direct Consolidation Loans
> (Direct Consolidation Loans).  In this note, the Higher Education Act of 1965, as
> amended, 20 U.S.C. 1070 et seq. and applicable U.S. Department of Education
> (ED) regulations are referred to as "the Act."  The terms of this note will be
> interpreted according to the Act and other applicable federal statutes and
> regulations.

As was the case in 1997, when Dr. Pfeiffer executed her promissory note in 2001, she elected to

repay it under the ICR Plan, and her scheduled monthly payments were determined primarily

based upon her Adjusted Gross Income.

      E.      Defendants Capitalize Unpaid Interest on Dr. Pfeiffer's Loan as of
            June 30, 2002; June 30, 2004; and June 30, 2005

Pursuant to the ICR Plan, Dr. Pfeiffer's scheduled monthly payments under the 2001

_____

      [4]      The only difference between the language in the 1997 promissory notes and the
language in the November 2001 promissory note was that the second sentence of the 1997
promissory notes referred to "Promissory Note," while the second sentence of the 2001
promissory note simply referred to "note."

promissory note were determined in accordance with 34 C.F.R. § 685.209(a),[5] and for some, but

not all of the years that followed, the application of 34 C.F.R. § 685.209(a) resulted in Dr.

Pfeiffer having scheduled monthly payments which were less than the amounts of interest that

accrued on her loan.  Specifically, Dr. Pfeiffer's monthly scheduled payments were less than the

amount of interest that accrued on her loan in the years ending June 30, 2002; June 30, 2004; and

June 30, 2005.[6]  Thus, in those years, Dr. Pfeiffer was not contractually required to make

payments that covered the amount of interest accruing on her loan, and because her monthly

scheduled payments were less than the amounts of monthly interest accruing on her loan, Dr.

Pfeiffer's loan was designated as being in a "Negative-Amortization" condition for those years.

In accordance with 34 C.F.R § 685.202(b)(1) and (4), Defendants capitalized any unpaid interest

as of June 30th of those years.

Defendants' determination as to the amount of interest to capitalize as of June 30th

begins with allocating each payment received from a borrower between accrued interest and

principal reduction.  Interest accrues on a daily basis, and when a borrower's payment is

received, the payment is applied, first, to pay interest that has accrued since receipt of the

---

[5]       Dr. Pfeiffer's complaint does not challenge Defendants' interest capitalization
practices with regard to her 1997 promissory notes and, accordingly, this Statement of the Case
does not discuss interest capitalization under those promissory notes.  Defendants note, however,
that Dr. Pfeiffer's scheduled monthly payments under the 1997 promissory notes similarly were
determined in accordance with 34 C.F.R. § 685.209(a).

[6]       Dr. Pfeiffer's scheduled monthly payments exceeded the amounts of interest that
accrued on her loan for the years ending June 30, 2003, and June 30, 2006.  Further, while the
year ending June 30, 2007, concluded after the filing of the complaint and, therefore, was not a
subject of the allegations in the complaint, Defendants note that Dr. Pfeiffer's scheduled
payments exceeded the amount of interest that accrued on her loan for that year.

borrower's previous payment.[7]  34 C.F.R. § 685.211(a)(1).  If the amount actually received is sufficient to pay the entire amount of interest that has accrued, any amount in excess of accrued interest is applied to reduce the outstanding principal balance.  Id.

During the three years that Dr. Pfeiffer's loan was in a Negative-Amortization condition, she actually made payments that exceeded her scheduled monthly amounts, and Defendants do not dispute that during those periods, Dr. Pfeiffer's actual payments exceeded the amounts of interest that had accrued as of the receipt date of the payments.  Accordingly, during those years and consistent with applicable regulations, Defendants applied Dr. Pfeiffer's payments, first, to pay all interest that had accrued as of the receipt date of her payment and, second, to reduce the amount of her outstanding principal.

As noted above, and as Dr. Pfeiffer has conceded, interest accrued on a daily basis, including during the period between the receipt date of Dr. Pfeiffer's June payment and the June 30th that followed shortly thereafter.  The following summarizes the key events at issue in this case:

- In June 2002, Dr. Pfeiffer's payment was received on June 14, 2002, and that payment was applied to accrued interest and to reduce Dr. Pfeiffer's principal balance.  Thereafter, interest accrued on Dr. Pfeiffer's loan for the period of June 15, 2002, to June 30, 2002, and the amount of that accrued interest was unpaid as of June 30, 2002.

- In June 2004, Dr. Pfeiffer's payment was received on June 21, 2004, and that payment was applied to accrued interest and to reduce Dr. Pfeiffer's principal balance.  Thereafter, interest accrued on Dr. Pfeiffer's loan for the period of June 22, 2004, to June 30, 2004, and the amount of that accrued interest was unpaid as of June 30, 2004.

---

[7]     Although not at issue in this case, if a borrower has been assessed charges or Defendants have incurred collection costs, the Secretary applies payments to such charges and costs before applying a payment to accrued interest.  34 C.F.R. § 685.211(a)(1).

- In June 2005, Dr. Pfeiffer's payment was received on June 9, 2005, and that payment was applied to accrued interest and to reduce Dr. Pfeiffer's principal balance.  Thereafter, interest accrued on Dr. Pfeiffer's loan for the period of June 10, 2005, to June 30, 2005, and the amount of that accrued interest was unpaid as of June 30, 2005.

As provided by 34 C.F.R. § 685.202(b)(4), the Secretary annually capitalized the amounts of Dr. Pfeiffer's unpaid interest as of June 30, 2002; June 30, 2004; and June 30, 2005, and it is the Secretary's capitalization of interest for these three periods – June 15-30, 2002; June 22-30, 2004; and June 10-30, 2005 – that Dr. Pfeiffer has challenged in her complaint.

II.    Statement Of The Facts

Defendants incorporate, as their statement of facts, the facts stated in Defendants' Statement of Material Facts, attached as Exhibit A.

ARGUMENT

Defendants' practice of capitalizing the interest that accrued on Dr. Pfeiffer's loan, when it was in a Negative-Amortization condition, was expressly authorized by the terms of the promissory notes executed by Dr. Pfeiffer.  Dr. Pfeiffer confirmed that when she executed her promissory notes, she read, understood, and agreed to all of the terms and conditions of the promissory notes, including the promissory notes' provision that the notes would be interpreted according to the Higher Education Act of 1965, as amended, and applicable regulations promulgated by the Department of Education.

In this regard, two subparagraphs of a Department of Education regulation are controlling.  First, the practice of capitalization is both defined and expressly authorized at 34 C.F.R. § 685.202(b)(1).  Second, the annual capitalization of unpaid interest for borrowers such

as Dr. Pfeiffer – the practice about which she complains – is expressly described in 34 C.F.R.

§ 685.202(b)(4), and the terms of that subparagraph confirm that this practice is undertaken by

the Secretary for ICR borrowers such as Dr. Pfeiffer, whose monthly scheduled payments were

insufficient to cover the interest that has accrued on their loans.

Thus, these two subparagraphs of 34 C.F.R. § 685.202(b) expressly authorize the practice

of which Dr. Pfeiffer complains, and this regulation undeniably was incorporated by reference in

Dr. Pfeiffer's promissory notes.  As a matter of law, Dr. Pfeiffer's complaint that Defendants

have breached their contract with her is without merit and, accordingly, Defendants are entitled

to summary judgment.

I.      Summary Judgment Is Appropriate In This Case

The standard for granting summary judgment is well-established:

> Summary judgment is appropriate when the pleadings and the evidence
> demonstrate that "there is no genuine issue as to any material fact and that the
> moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).
> A dispute about a material fact is "genuine" only "if the evidence is such that a
> reasonable jury could return a verdict for the nonmoving party." Anderson v.
> Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Feirson v. District of Columbia, 506 F.3d 1063, 1066 (D.C. Cir. 2007).  In this case, there can be

no serious dispute that Dr. Pfeiffer's promissory notes incorporated by reference the Department

of Education regulation governing and expressly authorizing the capitalization of unpaid interest

on her loan when it was designated as being in a Negative-Amortization condition, i.e., as of

June 30, 2002; June 30, 2004; and June 30, 2005.  Accordingly, Defendants are entitled to

summary judgment because, as a matter of law, Defendants have not breached their contract with

Dr. Pfeiffer.

II.     Defendants are Entitled to Summary Judgment Because Dr. Pfeiffer's Promissory
        Notes Expressly Authorized the Capitalization of Interest Not Paid By Her as of
        June 30, 2002; June 30, 2004; and June 30, 2005

At the outset, there is no dispute that Dr. Pfeiffer's loan was properly designated as being

in a Negative-Amortization condition as of June 30, 2002; June 30, 2004; and June 30, 2005.  At

those times, Dr. Pfeiffer's scheduled monthly payments were less than the monthly amounts of

interest that accrued on her loan,[8] and her loan was subject to the capitalization practice both

authorized and expressly described in 34 C.F.R. § 685.202(b)(1) and (4).  See, e.g., United States

ex rel. Dep't of Labor v. Ins. Co. of North Am., 131 F.3d 1037, 1042 (D.C. Cir. 1997) (in

construing bond that referred to "applicable regulations," court holds that "[w]hen a contract

incorporates a regulation by reference, that regulation becomes a part of the contract for the

indicated purposes as if the words of that regulation were set out in full in the contract")

(citations omitted).

In 2002, 2003, and 2005, Dr. Pfeiffer made payments in June, prior to June 30th, and,

again, there can be no serious dispute that interest both accrued after receipt of her June

payments and that Dr. Pfeiffer was obliged to pay that interest.  Indeed, Dr. Pfeiffer conceded

these points when she was deposed in December 2007:

> Q. . . . What is your understanding as to how often interest accrues or what period
> of time is used for the accrual of interest on your note?
>
> A.  My interest accrues daily.

---

[8]     Because her scheduled monthly payments exceeded the monthly amounts of
interest that accrued on her loans as of June 30, 2003, and June 30, 2006, Dr. Pfeiffer's loan was
not designated as being in a Negative-Amortization condition at those times.  This is the reason
the Secretary did not capitalize unpaid accrued interest in 2003 and 2006, as noted in Dr.
Pfeiffer's complaint.  See Complaint ¶¶ 19, 24.

Q.  That means each day a calculation can be made as to how much additional interest is owed on the note even if it isn't scheduled for payment then, is that correct?

A.  Yes.

Appendix ("App.") 20-21 (Pfeiffer Deposition at 66:20-67:3).[9]  Moreover, Dr. Pfeiffer conceded

that, as a matter of "common sense," she is obligated to pay the interest that accrues each day,

even if it is not scheduled for payment on the day it accrues:

Q.  And do you have an understanding as to whether you owe that additional amount that accrues on a daily basis even if it's not scheduled for payment until, say, the 21st of month?

MR. BRYDEN:  To the extent you're seeking a conclusion, I object, but you can answer the question.

THE WITNESS:  Yes.  I owe the interest that's accruing.  Yeah.  That's common sense, yes.

App. 21 (Pfeiffer Deposition at 67:4-13).[10]

---

[9]     "Appendix" refers to the Appendix to Defendants' Renewed Motion for Summary Judgment, attached as Exhibit B.

[10]     Dr. Pfeiffer has long understood, as well, that when Defendants receive her payments, those payments are applied, first, to interest that has accrued as of the date her payment is received and, second, to principal reduction:

Q.  You had a conversation with [a Department of Education representative] named Valentino --

A.  Yes.

Q.  --  sometime in 2002, didn't you?

A.  Yes.

Q.  And didn't he go through the process of explaining how interest is calculated on a daily basis?

The Secretary's authority to capitalize unpaid accrued interest is expressly disclosed in

the following regulation, incorporated by reference into Dr. Pfeiffer's promissory notes:

> The Secretary may add unpaid accrued interest to the borrower's unpaid principal
> balance.  This increase in the principal balance of a loan is called "capitalization."

34 C.F.R. § 685.202(b)(1).  The regulation further discloses that the Secretary will capitalize

unpaid interest for ICR borrowers whose loans are in a Negative-Amortization condition, such as

Dr. Pfeiffer:

> Except as provided in [three non-applicable sections], <u>the Secretary annually
> capitalizes unpaid interest</u> when the borrower is paying under the alternative or
> <u>income contingent repayment plans and</u> the borrower's <u>scheduled payments do
> not cover the interest that has accrued on the loan</u>.

34 C.F.R. § 685.202(b)(4) (emphasis added).

As previously explained, in June 2002, Dr. Pfeiffer's payment was received on June 14,

2002, and following application of that payment to accrued interest and principal, interest

accrued on Dr. Pfeiffer's loan for the period of June 15, 2002, to June 30, 2002.  The related

capitalization of interest, described in Dr. Pfeiffer's complaint, Complaint ¶ 17, was expressly

---

A.  Yes.

Q.  And during that conversation, didn't he -- wasn't he able to recompute the
allocation of principal and interest in various payments?

A.  Yes, I believe he did.

Q.  So based on your conversation with Valentino back in 2002, you understood
that Education was making an allocation of principal and interest based on the
date that your payment was received; right?

A.  Yes.

App. 22-23 (Pfeiffer Deposition at 112:20-113:13).

authorized by 34 C.F.R. § 685.202 (which was incorporated by reference in Dr. Pfeiffer's 2001 promissory note).

Similarly, in June 2004, Dr. Pfeiffer's payment was received on June 21, 2004, and following application of that payment to accrued interest and principal, interest accrued on Dr. Pfeiffer's loan for the period of June 22, 2004, to June 30, 2004.  Again, the related capitalization of interest, described in Dr. Pfeiffer's complaint, Complaint ¶ 20, was expressly authorized by 34 C.F.R. § 685.202.

Finally, in June 2005, Dr. Pfeiffer's payment was received on June 9, 2005, and following application of that payment to accrued interest and principal, interest accrued on Dr. Pfeiffer's loan for the period of June 10, 2005, to June 30, 2005.  As before, the related capitalization of interest, described in Dr. Pfeiffer's complaint, Complaint ¶ 22, was expressly authorized by 34 C.F.R. § 685.202.

Thus, the three instances of interest capitalization cited in Dr. Pfeiffer's complaint – covering the periods of June 15-30, 2002; June 22-30, 2004; and June 10-30, 2005 – were all expressly authorized by the terms of her 2001 promissory note.[11]  The gravamen underlying her complaint is without legal merit; rather than being a breach of contract, the interest capitalization practice was expressly in compliance with Dr. Pfeiffer's contract.  Accordingly, Defendants are entitled to summary judgment.

---

[11]     Dr. Pfeiffer's complaint also refers to the capitalization of interest on her 1997 loans as of June 30, 1998 and June 30, 1999, Complaint ¶¶ 11-12, but in light of the six-year statute of limitations set forth at 28 U.S.C. § 2401(a), her Complaint apparently only seeks to challenge the practice beginning on March 19, 2001.  See Complaint ¶ 28.  As a result, we have not specifically addressed the interest capitalization on Dr. Pfeiffer's loans in June 1998 and June 1999, but in the event Dr. Pfeiffer seeks to challenge the practices in those years, as well, we note that the foregoing arguments would apply equally to Defendants' practices in 1998 and 1999.

III.    Answers to the Court's Questions

By Order of March 16, 2009, the Court directed the parties to specifically address two

topics, in the event of renewed motions for summary judgment.  Defendants' answers to the

Court's questions are as follows:

> 1.    Under the applicable regulations, does the agency lack the authority to apply
> borrower payments to interest that has not yet accrued?  If so, which regulation
> constrains the agency in this way?

Education does not have authority to apply a payment to unaccrued interest.  According to

34 C.F.R. § 685.211(a)(1): "The Secretary applies any payment first to any accrued charges and

collection costs, then to any outstanding interest, and then to outstanding principal."[12]  Id.  This

provision does not authorize Education to apply borrower payments to interest that has not yet

accrued (i.e., interest that is not "outstanding interest" as of the date of receipt of payment).

Moreover, even if Education could apply a payment to unaccrued interest, this would not

benefit a borrower.  Education's current practice benefits borrowers, reducing the total amount

that they must pay when compared with applying a payment (or a portion of a payment) to

unaccrued interest.  When a borrower submits a payment in excess of the outstanding accrued

interest as of that date, Education applies the excess to pay down the principal balance.  Thus, the

principal balance is less than it would be if Education retained the excess to pay off later-

accruing interest, and for every following day, interest accrues on this lesser principal balance.

For example, assume a borrower submits a payment of $500 on June 15, when only $300

of accrued interest is outstanding.  Assume also that, on the current principal balance of the loan,

---

[12]    Effective July 1, 2009, the language of this regulation will change slightly to
reflect the addition of a new "income-based" loan program, not relevant to the income contingent
repayment plan applicable here.

$200 of interest accrued every 15 days.  Under the regulation, Education would first apply the

$500 payment to the $300 outstanding interest.  If Education withheld the excess payment to

apply it to later-accrued interest, then on June 30, an additional $200 dollars of interest would

have accrued, and the withheld excess – $200 – would exactly satisfy this interest.  As of June

30, the borrower's balance would be equal to the original principal balance.

Under Education's current practice, however, the excess – $200 – is used to pay down the

principal as of the date of receipt.  The borrower's new principal balance would be $200 less, and

interest would accrue on this new, lesser balance for 15 days.  Because $200 would accrue on the

original principal balance every 15 days, <u>less than $200 interest would accrue on the new balance

in those 15 days</u>.  Thus, when interest is capitalized on June 30, less than $200 interest would be

added to the new principal balance of the loan, and the final principal balance would be less than

the original balance.

2.      If a borrower sends payment *before* the June scheduled payment date and the
        agency processes the payment *before* that date, will the borrower necessarily be
        subjected to capitalization of interest that accrues between the time that the
        payment is processed and June 30?  If so, does such capitalization constitute a
        breach of the terms of the promissory note?

If a borrower is (1) on the ICR plan, (2) has scheduled monthly payments that are less

than the amount of interest that accrues on the loan, and (3) submits a payment before the June

scheduled payment date, the borrower will have all unpaid accrued interest capitalized on June

30, including interest that accrues between the time that the payment is received and June 30.

Such a capitalization is not a breach of any provision in the promissory note.  As

discussed above, this capitalization is authorized by 34 C.F.R. § 685.202(b)(1) and (4), which

have been incorporated into the promissory note.  The only potential term in the note that could

possibly restrict this practice – the term relied upon by Plaintiffs – states that

> [The Department of Education] may add interest that accrues but is not paid when due to the unpaid principal balance of this loan, as provided under the [Higher Education Act of 1965, as amended, 20 U.S.C. § 1070 et seq., and applicable Department of Education regulations.] This is called capitalization.

Plaintiff claims that the word "due" in this provision is synonymous with the term "scheduled payment date."  If this construction were accurate then capitalizing interest that accrues after a payment has been received, but before the next scheduled payment date, would be in conflict with this term.

Plaintiff's current interpretation of this term, however, is unreasonable on its face because it cannot be reconciled with other terms of the contract – the incorporated regulations.  The applicable regulations authorize capitalization of interest in a number of circumstances in which there is no scheduled payment date, including grace periods, deferments, and forbearances.  See 34 C.F.R. § 685.202(b)(2)-(3).  Interest is "due" in those circumstances, even in the absence of a scheduled payment date.  To construe the contract otherwise, as Dr. Pfeiffer suggests, would be to render 34 C.F.R. § 685.202(b)(2)-(3) meaningless, in violation of the "'cardinal principle'" that a contract "'should be read to give effect to all its provisions and to render them consistent with each other.'"  Segar v. Mukasey, 508 F.3d 16, 22 (D.C. Cir. 2007) (quoting Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 63 (1995)).  It is only Dr. Pfeiffer's construction of "due," read in isolation and without considering the context of the contract as a whole, that creates conflicts and gives certain provisions no effect.

Similarly, borrowers in Negative-Amortization status – their scheduled payments are less than the amount of interest that has accrued between that scheduled payment and the last

scheduled payment – have no "due" date with respect to the amount of interest that has accrued above their scheduled payment amount.  For example, assume a borrower has a monthly scheduled payment of $100, but the interest that has accrued between that scheduled payment and the one from the previous month is $500.  Under Plaintiff's interpretation of the disputed term in her promissory note, only $100 of interest is "due" (i.e. scheduled to be paid) but the remaining $400 of accrued interest has no "due" date and thus could never be capitalized.

For the hundreds of thousands of borrowers under Education's loan program who because of poverty or other circumstances qualify for a scheduled payment of $0, no interest would ever be "due" if Plaintiff is to be believed – and thus, again, Education would be unable to capitalize any interest, in contravention of 34 C.F.R. § 685.202(b).  Therefore, if Plaintiff's interpretation were accepted,  34 C.F.R. § 685.202(b)(1) and (4) would be rendered a nullity.

Defendants' interpretation of this contested provision – "due" means "owed as a debt" – is the only construction of this term that is reasonable and harmonizes all of the terms of the contract, including the regulations.  Interest accrues, and becomes "due," in the sense that it is owed as a debt by the borrower, every day.  A payment towards all or some portion of the accrued interest – unless the borrower qualifies for no payments – must be made each month on the scheduled date to avoid late charges (although the borrower has 30 days before late charges are assessed), or default, and that scheduled payment is "due" each month by the scheduled time, but the accrued interest is due each day until the loan is paid off.[13]

---

[13]     Defendants' interpretation of this disputed provision is discussed in more detail below in the opposition to Plaintiffs' Renewed Motion for Summary Judgment.

IV.     <u>No Subject Matter Jurisdiction Over Plaintiff's Non-monetary Claims</u>

The Little Tucker Act, 28 U.S.C. § 1346(a)(2), grants district court jurisdiction over breach of contract claims that seek less than $10,000 from the United States.  The Little Tucker Act authorizes "only actions for money judgments and not suits for equitable relief against the United States."  <u>Richardson v. Morris</u>, 409 U.S. 464, 465 (1973).  In <u>Lee v. Thornton</u>, 420 U.S. 139 (1975), the Supreme Court held that § 1346(a)(2) "empowers district courts to award damages but not to grant injunctive or declaratory relief."  <u>Id.</u> at 140.

Dr. Pfeiffer relies on § 1346(a)(2) for jurisdiction over her claims.  Complaint ¶ 6.  In her Complaint, however, Dr. Pfeiffer seeks certain declaratory and injunctive relief, in addition to her claim for damages for an alleged breach of contract.  <u>See</u> Complaint, Prayer for Relief at ¶ 3 (injunction against Education's interest capitalization practices); ¶ 4 (injunction modifying interest capitalization practices); ¶ 5 (declaration regarding interest capitalization practices); ¶ 7 (other equitable relief); ¶ 9 (retention of jurisdiction until interest capitalization practices are "determined to be in compliance with law").[14]

This Court does not have jurisdiction over Dr. Pfeiffer's non-monetary claims.  As such, summary judgment should also be entered against Dr. Pfeiffer on all her non-monetary claims.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S<br><u>RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

Pursuant to Rule 56(e) of the Federal Rules of Civil Procedure and Local Civil Rule 7, Defendants respectfully oppose Dr. Pfeiffer's motion for partial summary judgment.  Plaintiff's Renewed Motion for Partial Summary Judgment ("Pl. Mot.") (May 1, 2009) (Dkt. No. 41).  Dr.

---

[14]     Dr. Pfeiffer also asks for non-monetary relief in her Renewed Motion for Partial Summary Judgment.  <u>See</u> Pl. Motion at 2.

Pfeiffer's argument for entry of partial summary judgment is fatally flawed because it disregards controlling regulations incorporated within the terms of her contract, as set forth in her promissory notes, and relies upon insupportable arguments for construction of the terms of her promissory notes.

I.      Overview of Defendants' Opposing Memorandum

Dr. Pfeiffer argues that because the interest that accrued on her loans between Education's receipt of her June payment and June 30th was not delinquent until after the scheduled payment date in July, Defendants were not contractually authorized to capitalize unpaid interest as of June 30th during those times when her loans were in a Negative-Amortization condition.  See Plaintiffs' Memorandum in Support of Renewed Motion for Partial Summary Judgment ("Pl. Memo.") at 1-3, 5-6.  In making this argument, Dr. Pfeiffer asks the Court to construe her promissory notes in a fashion contrary to the terms which even she understood, as confirmed by her deposition testimony.  Indeed, when her loans were in a Negative-Amortization condition, she effectively never had a "due" date to pay any interest, except to the extent her scheduled payment amount was greater than zero.[15]  Moreover, Dr. Pfeiffer's argument asks the Court to ignore the express language of 34 C.F.R. § 685.202(b)(1) and (4), which was incorporated in the terms of her promissory notes.

_____

[15]     The vast majority of borrowers whose loans are in a Negative-Amortization condition have a scheduled payment amount of zero based upon the formula prescribed by 34 C.F.R. § 685.209(a).  In other words, such borrowers effectively have no due date to pay any interest because they are not contractually obligated to make any payment when they have scheduled payments of zero.

II.   Dr. Pfeiffer's Motion Disregards Controlling Regulations Which Were
      Incorporated in the Terms of Her Promissory Notes and Misconstrues the Terms
      of Her Promissory Notes

Defendants do not dispute the basic contract construction principles set forth in

Dr. Pfeiffer's Motion.  Contract construction begins with the plain language of the contract, see

Pl. Memo. at 4 (citations omitted); ambiguities are to be resolved against the drafter,[16] id.

(citations omitted); and, where possible, contracts should be construed in a fashion that gives

meaning to all provisions in the contract, id. at 7-8 (citations omitted).  As we explain further,

however, Dr. Pfeiffer's arguments both strain and ignore the plain language of the contract,

largely by disregarding Direct Loan Program regulations incorporated in the terms of her

promissory notes.

The linchpin of Dr. Pfeiffer's Motion is her assertion that interest which accrued on her

student loans following the Government's receipt of her June payment was not "due" until the

scheduled payment date in July, after which her payment would be deemed delinquent.  See Pl.

Memo. at 5-6; Pl. Mot., Ex. 13 (defining "Payment Due Date" as "The date during the month

when payment of the current due amount must be received. . . .").  As support for her position,

Dr. Pfeiffer asserts that the following provision in her promissory notes barred defendants from

capitalizing her accrued and unpaid June interest on June 30th:

---

[16]   While Defendants recognize the general rule of construction that ambiguities are
to be resolved against the drafter, this rule has no application in this case.  As we explain below,
the only so-called "ambiguities" are those created by Dr. Pfeiffer's strained contract
interpretations, and these are not sufficient to establish the presence of an ambiguity.  See, e.g.,
Segar, 508 F.3d at 22 ("[A] contract provision 'is not ambiguous merely because the parties later
disagree on its meaning.' . . . It is ambiguous only 'if it is reasonably susceptible of different
constructions.'") (quoting Bennett Enters., Inc. v. Domino's Pizza, Inc., 45 F.3d 493, 497 (D.C.
Cir.1995)).

> [The Department of Education] may add interest that accrues but is
> not paid when due to the unpaid principal balance of this loan, as
> provided under the [Higher Education Act of 1965, as amended, 20
> U.S.C. § 1070 et seq., and applicable Department of Education
> regulations.] This is called capitalization.

Pl. Memo. at 1-2 (quoting "Interest" provision).  While this language does not expressly address

the subject of Dr. Pfeiffer's complaint, Dr. Pfeiffer essentially argues that this language implicitly

prohibited the capitalization of her unpaid June interest because, in her analysis, that amount was

not due until her scheduled payment date in July.  In making this argument, however, Dr. Pfeiffer

ignores the language specifically referring to the Higher Education Act of 1965, as amended, 20

U.S.C. 1070 et seq., and the implementing regulations.  The Court should reject Dr. Pfeiffer's

argument because it wholly ignores the clear, express language of the implementing regulations,

34 C.F.R. § 685.202(b)(1) and (4), which specifically address and authorize the practice of which

she complains.

> A.      Dr. Pfeiffer's Motion Ignores an Implementing Regulation, 34
>         C.F.R. § 685.202(b)(1) and (4), Which Was Incorporated in the
>         Terms of Her Contract by the Language of Her Promissory Notes

As discussed above, all of Dr. Pfeiffer's promissory notes contained a section captioned

"Promise to Pay," which Dr. Pfeiffer confirmed she read before she signed her promissory notes.

Defendants' Statement of Material Facts ¶¶ 3, 4, 8, and 9 (attached as Exhibit A).  This section

included the following certifications by Dr. Pfeiffer:

> I understand that this is a Promissory Note.  I will not sign this note before reading
> it, including the text on the reverse side, even if I am advised not to read the note.
> . . .  My signature certifies that I have read, understand, and agree, to the terms and
> conditions of this Promissory Note, including the Borrower Certification and
> Authorization printed on the reverse side and the accompanying Borrower's
> Rights and Responsibilities.

Statement of Facts ¶ 3 (emphasis added).  The reverse side of Dr. Pfeiffer's promissory notes

begins with the following statement:

> Governing Law and Notices
>
> This Promissory Note (note) applies to Federal Direct Consolidation Loans
> (Direct Consolidation Loans).  In this note, the Higher Education Act of 1965, as
> amended, 20 U.S.C. 1070 et seq. and applicable U.S. Department of Education
> (ED) regulations are referred to as "the Act."  The terms of this note will be
> interpreted according to the Act and other applicable federal statutes and
> regulations.

Statement of Facts ¶¶ 5, 10.

The "Governing Law and Notices" provision unquestionably incorporated by reference

the terms of 34 C.F.R. § 685.202(b)(1) and (4).  Part 685 is expressly titled as the regulations for

the "William D. Ford Federal Direct Loan Program," 34 C.F.R. Part 685, and 34 C.F.R.

§ 685.202 is entitled "Charges for which Direct Loan Program borrowers are responsible."

Subsection (b) of the regulation is entitled "Capitalization," 34 C.F.R. § 685.202(b), and

subparagraph (1) defines the practice of "capitalization" as the addition of "unpaid accrued

interest to the borrower's unpaid principal balance," 34 C.F.R. § 685.202(b)(1).  Subparagraph

(4) expressly states that ICR borrowers whose loans are in a Negative-Amortization condition

will be subject to annual capitalization of unpaid interest:

> Except as provided in [three non-applicable subsections], the Secretary annually
> capitalizes unpaid interest when the borrower is paying under the . . . income
> contingent repayment plan[] and the borrower's scheduled payments do not cover
> the interest that has accrued on the loan.

34 C.F.R. § 685.202(b)(4) (emphasis added).

Rather than addressing the clear and precise language of 34 C.F.R. § 685.202(b)(1) and

(4), Dr. Pfeiffer suggests that the regulation was not incorporated into the terms of her contract.

-23-

Pl. Memo. at 6.[17]  In doing so, Dr. Pfeiffer characterizes the "Governing Law and Notices"

section as containing "general language" and asserts that Ms. Cynthia Battle, Defendants' Rule

30(b)(6) deposition witness, "did not know what regulations or portions of the Higher Education

Act this language refer[red] to."  Pl. Memo. at 6 (citing Dr. Pfeiffer's Statement of Facts ¶ 5).  A

review of the deposition transcript referenced by Dr. Pfeiffer confirms, however, that Ms. Battle

simply testified that she could not provide citations to specific regulations "[o]ff the top of [her]

head" and that she did not know "specifically" which regulations were referenced by the

promissory note.  See Defendants' Statement of Genuine Issues ¶ 5, attached as Exhibit C.

Given the specific language in 34 C.F.R. § 685.202, which plainly referred to the operations of

the Direct Loan Program, and the balance of Ms. Battle's deposition testimony where she

described the capitalization process set forth in 34 C.F.R. § 685.202(b), there can be no serious

doubt that Defendants' Rule 30(b)(6) witness would have confirmed the applicability of this

regulation had she been asked by Dr. Pfeiffer's counsel whether the Direct Loan Program

regulations were among those referenced in Dr. Pfeiffer's Direct Loan Program promissory notes.

Dr. Pfeiffer proceeds to characterize the Governing Law and Notices language as

"obscure," Pl. Memo. at 6, and argues, in only a few sentences, that 34 C.F.R. § 685.202(b)(4)

"simply limits the number of times the Secretary may capitalize accrued interest each year."  Pl.

Memo. at 7.  Contrary to Dr. Pfeiffer's argument, however, a review of the regulation's  language

confirms that it contains no "limiting" language.  Rather, as explained above, the regulation sets

---

[17]     While Dr. Pfeiffer does offer a discussion of other subparagraphs of 34 C.F.R.
§ 685.202(b), as well, her argument neither proffers a construction of 34 C.F.R. § 685.202(b)(4)
supportive of her position nor explains why her argument about other subparagraphs would
dictate a construction of 34 C.F.R. § 685.202(b)(4) supportive of her argument.  See Pl. Memo.
at 9-10.

forth an affirmative statement about the Secretary's capitalization practices for ICR borrowers, and a review of that language confirms that it expressly applied for those periods when Dr. Pfeiffer's loans were in a Negative-Amortization condition, just as it would have applied to all other ICR borrowers with scheduled payments less than accrued interest.

> B.   Dr. Pfeiffer's Motion Misconstrues the Term "Due" in a Manner Which is Contrary to Her Own Understanding of Her Contractual Obligations and in Defiance of the Contract's Plain Language

As explained above, Dr. Pfeiffer's motion relies upon her proffered construction of the following provision:

> [The Department of Education] may add interest that accrues but is not paid when due to the unpaid principal balance of this loan, as provided under the [Higher Education Act of 1965, as amended, 20 U.S.C. § 1070 et seq., and applicable Department of Education regulations.] This is called capitalization.

Pl. Memo. at 1-2 (quoting language in Dr. Pfeiffer's promissory notes).  Dr. Pfeiffer asserts that this provision, which states that the Secretary "may add interest that accrues but is not paid when due," actually serves as a restriction on the Secretary.  Pl. Memo. at 1-2, 5-6.

While Dr. Pfeiffer refers the Court to general legal principles regarding contract construction, she cites no specific authority to support her argument that accrued interest is not "due" until the scheduled payment date.  At best, she argues that an online Thesaurus definition of "unpaid" supports her argument that accrued interest is not due.  See Pl. Memo. at 8 (citing an Internet reference to Roget's II, The New Thesaurus (3d ed. 1995)).[18]

_____

[18]   Dr. Pfeiffer also cites Biggs v. Wilson, 1 F.3d 1537 (9th Cir. 1993), in support of her assumption, but Biggs is inapplicable here.  In Biggs, an employer argued that wages were unpaid for purposes of the Fair Labor Standards Act ("FLSA") only in cases of "nonpayment," as opposed to "late payment."  Biggs, 1 F.3d at 1540.  As the Ninth Circuit reasoned, the FLSA dictated the conclusion that late payment made wages "unpaid" for purposes of the statute.  Id. at 1539-40.  Dr. Pfeiffer is making an entirely different argument and, as explained below, the

Dr. Pfeiffer's reference to this Thesaurus definition is selective, however, because its definition of "unpaid" is much broader than simply "due"; its full definition provides the following: "Owed as a debt: due, outstanding, owed, owing, payable, receivable, unsettled." Exhibit D (.pdf copy of definition).  Thus, the definition cited by Dr. Pfeiffer principally defines "unpaid" as "[o]wed as a debt," confirming that when her Thesaurus reference defines the term "due," the issue is whether a borrower has incurred a liability and not whether the borrower has reached the point in time after which payment would be delinquent.

Further, the definition supported by Dr. Pfeiffer's Thesaurus reference, i.e., that payment for interest is due when it is "owed as a debt," is wholly consistent with Dr. Pfeiffer's own deposition testimony.  When asked about this issue, Dr. Pfeiffer recognized that she became liable to pay interest <u>as it accrued</u>:

> Q. . . . What is your understanding as to how often interest accrues or what period of time is used for the accrual of interest on your note?
>
> A.  My interest accrues daily.
>
> Q.  That means each day a calculation can be made as to how much additional interest is owed on the note even if it isn't scheduled for payment then, is that correct?
>
> A.  Yes.

App. at 20-21.  Indeed, Dr. Pfeiffer concedes that, as a matter of "common sense," she is obligated to pay the interest that accrues each day, even if it is not scheduled for payment on the day it accrues:

> Q.  And do you have an understanding as to whether you owe that additional

_____

applicable regulations dictate the conclusion that "unpaid" and "due" mean "owed as a debt" for purposes of Dr. Pfeiffer's promissory notes.

amount that accrues on a daily basis even if it's not scheduled for payment until, say, the 21st of month?

MR. BRYDEN:  To the extent you're seeking a conclusion, I object, but you can answer the question.

THE WITNESS:  Yes.  I owe the interest that's accruing.  Yeah.  That's common sense, yes.

App. at 21.

Aside from Dr. Pfeiffer's own understanding, the construction of "due" as being synonymous with the incurrence of a liability is consistent with the relevant definition in Black's Law Dictionary, which includes, among its definitions, "Owing or payable; constituting a debt." Black's Law Dictionary (8th ed. 2004).[19]  Thus, the construction of "due" as applied by defendants and as understood by Dr. Pfeiffer when she was deposed is consistent with the plain meaning of the term, as defined in Black's Law Dictionary.  By comparison, Dr. Pfeiffer cites no authority – not even the Thesaurus referenced in her motion – to support her construction of "due."

It is fundamental that "the judicial task in construing a contract is to give effect to the mutual intentions of the parties."  NRM Corp. v. Hercules, Inc., 758 F.2d 676, 681 (D.C. Cir. 1985) (citations omitted), cited in McCarthy v. Azure, 22 F.3d 351, 355 (1st Cir. 1994).  The interest capitalization practice of which Dr. Pfeiffer now complains is expressly authorized by the terms of the promissory notes – including 34 C.F.R. § 685.202(b)(1) and (4), incorporated by reference in the "Interest" provision cited by Dr. Pfeiffer, Pl. Memo. at 2 – and is consistent with

---

[19]     Black's Law Dictionary also includes as a definition, "Immediately enforceable," as in "payment is due on delivery."  In the case of repayment of a promissory note, with scheduled payments, the notion of immediate enforceability is inapposite because no delivery is involved with a promissory note.

Dr. Pfeiffer's understanding of her liability for accrued interest.  By comparison, the construction

urged in Dr. Pfeiffer's motion disregards the implementing regulations and defies her own

understanding.

Dr. Pfeiffer's reliance on Segar is misplaced.  See Pl. Memo. at 12-14.  As the Segar

court held, "a contract provision 'is not ambiguous merely because the parties later disagree on

its meaning.' . . . It is ambiguous only if 'it is reasonably susceptible of different constructions.'"

Segar, 508 F.3d at 22 (quoting Bennett Enterprises, 45 F.3d at 497).  Giving a contract a

reasonable construction requires "'that [the] document should be read to give effect to all its

provisions and to render them consistent with each other.'"  Id. (quoting Mastrobuono, 514 U.S.

at 63).  A court should not read one provision or another "in isolation but must consider each in

the context of the other."  Id.

Only Defendants have offered a reasonable construction of the contract that gives effect

to all provisions and renders all provisions consistent with each other.  This Court should reject

Dr. Pfeiffer's proffered construction of the term "due."[20]

---

[20]        In her motion, Dr. Pfeiffer asserts that Ms. Battle, Education's Rule 30(b)(6)
witness, "agreed with the proposition that borrowers who pay more than the accrued interest each
month should not experience any interest capitalization."  Pl. Memo. at 11.  In support of this,
she cites one answer from the deposition and references paragraph 21 of her Statement of Facts.
As we explain in our response to paragraph 21, Dr. Pfeiffer's reliance upon this single answer
plainly mischaracterizes the exchange between her counsel and Ms. Battle.  Def. Statement of
Genuine Issues ¶ 21.  A review of the entire exchange confirms that Ms. Battle repeatedly stated
that she did not understand the question posed by Dr. Pfeiffer's counsel.  See Def. Statement of
Genuine Issues, Exhibit I (Battle Depo. Tr. 102:6-107:5).  For example, immediately prior to the
testimony cited by Dr. Pfeiffer, Ms. Battle testified that she was "unclear" as to what was
being asked.  Id. (Battle Depo. Tr. 103:16-18, 20).  It was in that context that she testified that
she "guess[ed]" about the answer, which is quoted in the memorandum supporting Dr. Pfeiffer's
Motion.  Pl. Memo. at 11.  After that – in a section not cited by Dr. Pfeiffer – Ms. Battle
explained her answer, and Dr. Pfeiffer's counsel responded, "I guess I don't understand your
answer."  Def. Statement of Genuine Issues, Exhibit I (Battle Depo. Tr. 104:15-24).  Ms. Battle

Finally, if Dr. Pfeiffer's attacks directed to the Department of Education's "interest capitalization practice," Pl. Memo. at 10, are intended to serve as a legal challenge to the Secretary's regulations for implementation of the Higher Education Act of 1965, as amended, she has not pled such a cause of action.  As the Executive agency entrusted with the administration of this statute, the Department of Education is entitled to "considerable deference" with regard to the construction of this statute and its administrative interpretations.  Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 844 (1984) (footnote omitted); see, e.g., Transmission Agency of Northern California v. FERC, 495 F.3d 663, 673 (D.C. Cir. 2007) (if statute is silent or ambiguous as to specific issue, court inquires whether agency's answer is based on a permissible construction of the statute, and the court upholds agency's interpretation if it is reasonable) (citing Village of Bergen v. FERC, 33 F.3d 1385, 1389 (D.C. Cir. 1994)).

It is not sufficient for Dr. Pfeiffer simply to urge that the Department of Education should adopt a different mechanism for administering the loans of ICR Plan borrowers or loans in a Negative-Amortization condition.[21]  If she wishes to challenge the Secretary's implementing

_____

then responded, "Okay.  Clarify your question and I'll clarify my answer."  Id. (Battle Depo. Tr. 104:25-106:1).  Contrary to the brief summary set forth in Dr. Pfeiffer's memorandum, Ms. Battle's testimony was hardly a concession of Dr. Pfeiffer's argument.

[21]     While not relevant unless Dr. Pfeiffer chooses to challenge the legal grounding of the Secretary's regulations, we note that the impact of Defendants' process for capitalizing interest for borrowers in Dr. Pfeiffer's situation is de minimis.  To the extent interest is capitalized as of June 30th, it is no longer "outstanding" when the borrower's July payment is received and, therefore, a greater portion of the July payment is allocated to principal reduction than would be the case if it was being allocated to interest that accrued after receipt of the June payment and June 30th.  See 34 C.F.R. § 685.211(a)(1).  While Defendants do not concede the accuracy of her calculation, even Dr. Pfeiffer concedes that through November 15, 2007, the impact of the practice in her case is $3.76.  See Exhibit E at 2 (amended answer to damages interrogatory) (attached calculations omitted).

regulations, she should amend her complaint and specify why the Secretary's regulations are contrary to law.  5 U.S.C. § 706(2)(A).

CONCLUSION

For the foregoing reasons, Defendants respectfully request that (1) this Court enter summary judgment in Defendants' favor and against Plaintiff; and (2) the Court deny Plaintiff's Renewed Motion for Partial Summary Judgment.

JUNE 1, 2009                      Respectfully submitted,

                                 TONY WEST
                                 Assistant Attorney General
                                 J. CHRISTOPHER KOHN
                                 Director
                                 ROBERT E. KIRSCHMAN, JR.
                                 Deputy Director

                                 /s/ Phillip M. Seligman
                                 _____
                                 PHILLIP M. SELIGMAN (D.C. Bar No. 433422)
                                 Trial Attorney
                                 United States Department of Justice
                                 Civil Division, Commercial Litigation Branch
                                 1100 L Street, N.W., Room 10104
                                 Washington, D.C.  20530 (Overnight Zip Code: 20005)
                                 Telephone: (202) 307-1105
                                 Facsimile: (202) 307-0494
                                 E-mail: phillip.seligman@usdoj.gov

Certificate of Service

I hereby certify that on June 1, 2009, a copy of the foregoing "Defendants' Combined Renewed Cross-motion for Summary Judgment and Opposition to Plaintiff's Renewed Motion for Partial Summary Judgment" was filed electronically with the Court's Electronic Case Filing ("ECF") system.  I understand that notice of this filing will be sent to all parties by operation of the Court's ECF system.

/s/ Phillip M. Seligman