**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
_____
                                )
BRENDA KAY PFEIFFER,            )
                                )
            Plaintiff,          )
                                )
                                )   Civ. No. 07-522 (EGS)
        v.                      )
                                )
ARNE DUNCAN,¹ Secretary         )
of Education, et. al.,          )
                                )
            Defendants.         )
_____ )
```

**MEMORANDUM OPINION**

Student loan borrower Brenda Kay Pfeiffer has brought this breach of contract action against the U.S. Secretary of Education, the Department of Education, and the United States (collectively "DOE" or "defendants").  Plaintiff alleges that defendants violated the terms of the promissory note governing her student loan repayment plan, and has moved for partial summary judgment on the issue of liability.  Defendants have also filed a motion for summary judgment.  The question before the Court is whether the promissory note executed by plaintiff contractually authorizes defendants to capitalize interest that accrued during the period between defendants' receipt of

---

[1]  The complaint, filed on March 19, 2007, named as defendant Margaret Spellings, in her official capacity as U.S. Secretary of Education.  Arne Duncan was sworn in as Secretary of Education on January 20, 2009 and is therefore substituted in his official capacity for Ms. Spellings as a defendant in this case pursuant to Fed. R. Civ. P. 25(d).

plaintiff's June scheduled payment and June 30 – the date on which DOE annually capitalizes accrued interest – for those years when plaintiff's loan was in a "negative-amortization condition" under the Income Contingency Repayment Plan ("ICRP") in which she participated.  Upon consideration of the motions, responses and replies thereto, the applicable law, the entire record, and for the reasons stated below, the Court **GRANTS IN PART AND DENIES IN PART** both parties' motions.

**I.   Background**

 **A.   DOE's Direct Loan Program**

 DOE lends money to students pursuing post-secondary education through the William D. Ford Direct Loan Program (the "Direct Loan Program").  Borrowers participating in the Direct Loan Program are given a number of repayment plans from which to choose, *see* 34 C.F.R. § 685.208; Defs.' Mot. at 4 n.2, one of which is the ICRP.  Under the ICRP, a borrower's scheduled monthly payment is determined by a formula based on "adjusted annual income, family size and the principal balance of the loan."  Pl.'s Statement of Undisputed Material Facts ("Pl.'s Statement") ¶ 8; *see* 34 C.F.R. § 685.209(a) (explaining calculation of borrower's repayment amount under ICRP).  Because the monthly scheduled payments of borrowers participating in the ICRP are based primarily on their income rather than on the amount of their loan, the scheduled payment can sometimes be an

amount less than the interest accruing on their loans each month.
Pl.'s Statement ¶ 10; Defs.' Mot. at 7.  DOE designates these
loans as being in a negative-amortization condition.  *See* Pl.'s
Mot. at 2; Defs.' Statement of Material Facts as to Which There
Are No Genuine Issues to Be Tried ("Defs.' Statement") ¶ 21.

Individuals who obtain student loans from DOE pursuant to
the Direct Loan Program execute identical or substantially
identical form promissory notes.  Pl.'s Statement ¶¶ 1-2.  The
promissory note contains "the terms and conditions of the loan,
including how and when the loan must be repaid."  Pl.'s Statement
¶ 2 (internal citations and quotation marks omitted).

When a student borrower's loan enters repayment, DOE assigns
each borrower a monthly "payment due date" of the 7th, 14th,
21st, or 28th of each month.[2]  Pl.'s Statement ¶ 6; Tr. of Nov.
14, 2008 Mot. Hr'g ("Tr.") at 45, 56.  When the agency receives a
payment on a student loan, it applies the payment "first to any
accrued charges and collection costs, then to any outstanding
interest, and then to outstanding principal."  34 C.F.R. §
685.211(a)(1).  On each monthly due date, DOE bills the borrower
for the interest that has accrued as of his or her payment date.
Pl.'s Mot. at 2.  Interest that accrues after a borrower's

---

[2]  At the hearing held on November 14, 2008, counsel for
defendants initially stated that borrowers actually pick their
due dates.  Tr. at 19.  Counsel later clarified that the agency
assigns a payment due date to the borrower, but the borrower has
the ability to change that date.  Tr. at 62.

monthly due date is not billed until the borrower's next monthly due date the following month.  Pl.'s Mot. at 2.

### B.   DOE's Capitalization of Interest

Borrowers participating in the ICRP who are in a negative-amortization condition may be subject to the capitalization of certain interest that accrues on their loans.  As defined by 34 C.F.R. § 685.202(b)(1), capitalization is the process of increasing the principal balance of a loan by "add[ing] unpaid accrued interest to the borrower's unpaid principal balance."  DOE's form promissory notes describe the agency's practice of capitalizing interest as follows:

> **Interest.**  Except for interest [DOE] does not charge me during an in-school, grace or deferment period, I agree to pay interest on the principal amount of my Direct Consolidation Loan from the date of disbursement until the loan is paid in full or discharged.  [DOE] may add interest that accrues but is not paid when due to the unpaid principal balance of this loan, as provided under the Act.  This is called capitalization.

Pl.'s Mot. at Ex. 6 (form promissory note used in 2001); Defs.' Mot. App. at 27 (same).

DOE regulations also address the agency's authority to capitalize interest, but the regulatory language differs somewhat from the language contained in the form promissory notes.  Specifically, 34 C.F.R. § 685.202(b) states that "the Secretary [of Education] annually capitalizes unpaid interest when the borrower is paying under the [ICRP] and the borrower's scheduled

4

payments do not cover the interest that has accrued on the loan."
*Id.* § 685.202(b)(4).

The standard form promissory notes executed by borrowers also contain a section relating to governing law. *See* Pl.'s Mot. at Ex. 3. That provision of the promissory note states that

> [t]he terms of this [promissory note] will be
> interpreted in accordance with the Higher Education Act
> of 1965, as amended (20 U.S.C. 1070 <u>et seq</u>.), the U.S.
> Department of Education's . . . regulations, as they
> may be amended in accordance with their effective date,
> and other applicable federal laws and regulations
> (collectively referred to as the "Act").

*Id.*; Defs.' Mot. App. at 30.

Since at least March 19, 2001, DOE has been capitalizing interest accrued on loans in a negative-amortization condition not paid as of June 30 each year, a date that is not specified in the regulations but is chosen by the agency for administrative reasons. *See* Pl's Statement ¶ 11; Tr. at 37, 44-45. These interest-capitalization procedures are based upon a borrower's scheduled payment amount, regardless of the amount of the borrower's actual payments and payment due date. Defs.' Statement of Genuine Issues ¶ 11, attached to Defs.' Mot. ("Defs.' Opp'n Statement"). Moreover, the unpaid accrued interest annually capitalized on June 30 includes interest accruing after receipt of the borrower's June payment through June 30. *Id.*

C.  **Plaintiff's Participation in the Direct Loan Program**

Plaintiff graduated from chiropractic school in 1994 with multiple DOE student loans.  Compl. ¶ 7.  She executed two variable interest rate notes with the agency in 1997, and another note in November 2001 that consolidated her loans and "locked in" a fixed interest rate.  *See* Pl.'s Statement ¶¶ 13-14; Defs.' Statement ¶¶ 1-2, 7.  Since she executed the 2001 promissory note, plaintiff has participated in the Federal Direct Consolidation Loan Program, one of the four program components of the Direct Loan Program which "provides loans to borrowers to consolidate certain Federal educational loans."  34 C.F.R. § 685.100(a)(4); Defs.' Mot. at 3 n.1.  Plaintiff has at all times elected to use the ICRP for repayment of her loan.  Defs.' Statement ¶ 6.

Plaintiff's monthly scheduled payments were less than the amount of interest that accrued on her loan in the years ending June 30, 2002; June 20, 2004; and June 30, 2005.  Defs.' Mot. at 7.  In those years, plaintiff was not contractually required to make payments that covered the entire amount of interest accruing on her loan.  Defs.' Mot. at 7.  Because plaintiff's scheduled monthly payments were less than the amount of monthly interest accruing on her loan, her loan was designated in negative-amortization condition for these years, and defendants

capitalized all unpaid interest as of June 30 in those years. Defs.' Mot. at 7.

Plaintiff's actual monthly loan payments since November 2001 have been timely and at an amount "equal to or greater than the interest accrued in the previous month as estimated by [DOE]." Compl. ¶ 16.  Thus, even though plaintiff's scheduled monthly payments for the years in question did not cover the entire amount of the interest accruing on her loan, plaintiff's actual payments were greater than her scheduled monthly payment listed on the statements she received from DOE.

### D.   Procedural History

On March 19, 2007, plaintiff filed a complaint against defendants on behalf of herself and all others similarly situated seeking damages and injunctive and declaratory relief.[3]  *See generally* Compl.  Plaintiff alleges that DOE has breached the terms of her 2001 form promissory note by capitalizing interest that accrued after her June payment date through June 30, because payment for such interest was not required until her July payment

---

[3]   Pursuant to Federal Rule of Civil Procedure 23, plaintiff seeks to maintain this suit as a class action on behalf of "[a]ll individuals who have been obligated to repay money to the United States Department of Education at any time since March 19, 2001 pursuant to a Federal Direct Consolidation Loan Promissory Note." Compl. ¶ 28.  In January 2008, plaintiff filed a motion to certify a class.  The Court subsequently denied that motion without prejudice to refiling pending resolution of the motions for summary judgment.  This Memorandum Opinion therefore does not address any issues relating to plaintiff's request for class certification.

date.  *See* Compl. ¶¶ 1, 37-39.  The complaint does not challenge
defendants' interest-capitalization practices with regard to her
1997 promissory notes.  Defs.' Mot. at 7 n.5.  Furthermore, as
her scheduled monthly payments exceeded the amount of interest
that accrued on her loan for the years ending in June 30, 2003
and June 30, 2006,[4] plaintiff's complaint does not address her
loan payments during these years.  Defs.' Mot. at 7 n.6.

On January 31, 2008, defendants filed a motion for summary
judgment on the basis that the promissory note executed by
plaintiff expressly authorizes DOE to capitalize interest in the
challenged manner.  Plaintiff filed a cross-motion for partial
summary judgment with respect to defendants' liability for breach
of contract.  She seeks an Order from the Court (1) declaring
that defendants' practice of capitalizing interest that accrues
between a borrower's June payment due date and June 30 each year
constitutes a breach of the form promissory note; (2) enjoining
defendants from continuing this practice; and (3) directing the
parties to meet in an attempt to stipulate as to the proper
measure of damages.  The Court heard oral argument on November
14, 2008, at which point it directed the parties to submit
supplemental briefing on the applicability of *Segar v. Mukasey*,

---

[4] Plaintiff's scheduled monthly payments exceeded the
amounts of interest that accrued on her loan for the year ending
June 30, 2007 as well, though that date occurred after plaintiff
filed her complaint.

508 F.3d 16 (D.C. Cir. 2007).  On March 16, 2009, the Court denied the parties cross-motions without prejudice and ordered a renewed round of consolidated briefing.  The parties have rebriefed the issues and the cross-motions are now ripe for decision.

## II.  Standard of Review

Summary judgment is appropriate if the pleadings on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  In considering whether there is a triable issue of fact, the court must draw all reasonable inferences in favor of the non-moving party. *Tao*, 27 F.3d at 638.

## III. Discussion

### A.   Contract Interpretation

Courts interpreting a contract to which the United States is a party apply general principles of contract law. *See Franconia Assocs. v. United States*, 536 U.S. 129, 141 (2002).  The starting

point for such interpretation is the plain language of the
contract and the ordinary meaning of its terms – "unless the
parties mutually intended and agreed to an alternative meaning."
*Boeing Co. v. United States*, 75 Fed. Cl. 34, 42 (2007) (quoting
*Harris v. Dep't of Veteran Affairs*, 142 F.3d 1463, 1467 (Fed.
Cir. 1998)).  Because contract interpretation is a matter of law,
issues of contract interpretation are often "readily susceptible
of resolution via summary judgment."  *Id.*

In the event that a contract provision is ambiguous, the
ambiguity is to be resolved against the drafter, which in this
case is DOE.  *See United States v. Seckinger*, 397 U.S. 203, 216
(1970) (noting that this principle merited "considerable
emphasis" in that case "because of the Government's vast economic
resources and stronger bargaining position in contract
negotiations").  A contract provision, however, "'is not
ambiguous merely because the parties later disagree on its
meaning.'  It is ambiguous only 'if it is reasonably susceptible
of different constructions.'"  *Segar v. Mukasey*, 508 F.3d 16, 22
(D.C. Cir. 2007) (quoting *Bennett Enters. v. Domino's Pizza,
Inc.*, 45 F.3d 493, 497 (D.C. Cir. 1995)).

"When a contract incorporates a regulation by reference,
that regulation becomes a part of the contract for the indicated
purposes as if the words of that regulation were set out in full
in the contract."  *United States ex rel. Dep't of Labor v. Ins.*

10

*Co. of N. Am.* ("*INA II*"), 131 F.3d 1037, 1042 (D.C. Cir. 1997) (concluding that a bond provision, which stated that liability would be determined "pursuant to [the relevant] Act and the applicable regulations duly promulgated thereunder," evidenced an unambiguous intent by the parties to incorporate by reference the statute and implementing regulations).  Here, the governing law section of the promissory note and the reference to the Act in the note's section dealing with interest make clear that the language of the applicable DOE regulations is incorporated by reference into the note.[5]

In the present case then, the Court's task is to interpret the promissory note in a way that reconciles the language of 34 C.F.R. § 685.202(b) (defining capitalization as the practice of adding "*unpaid accrued interest*" to the loan balance and permitting DOE to capitalize "*unpaid interest*" (emphasis added)), with the language in the promissory note stating that the agency will annually capitalize "interest that accrues but is *not paid when due*," Pl.'s Mot. at Ex. 6; Defs.' Mot. App. at 30.  *See, e.g.*, *United States v. Ins. Co. of N. Am.* ("*INA I*"), 83 F.3d 1507, 1511 (D.C. Cir. 1996) ("[T]he 'cardinal principle of

---

[5] Although plaintiff did not explicitly concede this point, plaintiff's counsel did acknowledge at oral argument "that the regulation and the note should be construed consistently."  Tr. at 42.  The Court in any event finds no serious room for doubt that the regulatory language is incorporated by reference into the promissory note.

contract construction [is] that a document should be read to give effect to all its provisions.'" (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995))); *Shulman v. Voyou, LLC*, 251 F. Supp. 2d 166, 169 (D.D.C. 2003) ("[W]here two seemingly conflicting contract provisions exist within a contract, it is the province and duty of the court to find harmony between them and reconcile them if possible.").  In so doing, the Court is mindful that it "must give reasonable meaning to all parts of the contract and not render portions of the contract meaningless."  *YRT Servs. Corp. v. United States*, 28 Fed. Cl. 366, 389 (1993).

## B.   Scope of the Parties' Dispute

At the outset, the Court notes the substantial number of issues *not* seriously disputed by the parties.  Both plaintiff and defendants agree that interest accrues on plaintiff's loan on a daily basis, but that for the convenience of both parties, DOE does not require daily payment of such interest.  *See* Defs.' Mot. at 12; Tr. at 48, 63.  The parties also agree that DOE clearly has the authority to capitalize interest under certain circumstances – namely, that the promissory note authorizes the agency to capitalize any interest that accrues and has not been paid as of the borrower's scheduled payment date.  Furthermore, defendants do not dispute that during the relevant time period, plaintiff voluntarily submitted payments in excess of her

scheduled payment amount, but that she was nevertheless subject
to capitalization of the interest that accrued between the
agency's receipt of her June scheduled payment and June 30.   *See*
Defs.' Opp'n Statement ¶¶ 16-20.   Finally, defendants acknowledge
that under DOE's current practices, the *only* way for plaintiff to
avoid the capitalization of the interest that accrues during that
period would be to send a second payment of that amount to DOE
*and* ensure that the agency actually processes the payment on June
30.[6]   *See* Tr. at 19-20.   There also appears to be no dispute that
this course of action is foreclosed as a practical matter because
a borrower has no control over when the agency processes her
payment.

The resolution of the parties' cross-motions instead rests
on the narrow question of whether the promissory note – and
incorporated regulations – authorized defendants to capitalize
interest that accrued during the period between DOE's receipt of
plaintiff's June payment through June 30.   Plaintiff contends
that such a practice violates the terms of the promissory note,
because the note provides that DOE will capitalize "interest that
accrues *but is not paid when due*," but payment of interest
accruing between her June scheduled payment date and June 30 is

---

[6]   This is because, as the parties appear to agree, the
agency lacks the authority to apply any excess payment by a
borrower to interest that has not yet accrued at the time the
payment is processed.   *See* 34 C.F.R. § 685.211(a)(1).

13

not required (i.e., "due") until her July payment due date.  In
other words, plaintiff argues that DOE is prematurely
capitalizing unpaid accrued interest by capitalizing before that
interest is "due."  Pl.'s Mot. at 2.  By contrast, defendants
claim that an interpretation of the note that permits the
agency's current capitalization practice is the only way to
harmonize the phrase "not paid when due" with 34 C.F.R. §
685.202(b), which expressly authorizes DOE to "add unpaid accrued
interest" to a borrower's principal loan and specifically directs
the Secretary to "annually capitalize unpaid interest."  Defs.'
Mot. at 13-14.  Framed by the parties in this way, the question
before the Court is how to harmonize the note's use of the phrase
"not paid when due" and the regulations' reference to "unpaid
interest" and "unpaid accrued interest."

The Court agrees with defendants that a reasonable reading
of the plain terms of 34 C.F.R. § 685.202(b), standing alone,
might permit Defendant's current practice of annually
capitalizing "unpaid interest."  Moreover, defendants correctly
note that if plaintiff were challenging the validity of the
agency's interpretation of § 685.202(b), the agency would be
entitled to "'considerable deference' with regard to the
construction" of the regulation.  Defs.' Mot. at 29 (quoting
*Chevon USA, Inc. v. Nat'l Resource Defense Council, Inc.*, 467
U.S. 837, 844 (1984)).  But plaintiff here is *not* challenging the

14

regulation itself.  Rather, she is arguing that the promissory
note she executed has been breached.  In these circumstances,
where the agency is a party to a disputed contract, the Court
applies "neutral principles of contract law, not the deferential
principles of regulatory interpretation."  *Mesa Air Group v.
Dep't of Transp.*, 87 F.3d 498, 503 (D.C. Cir. 1996).

The recognition that the language in the regulations might
otherwise permit the challenged capitalization practice does not
end the matter, however, because the Court must read the language
of the regulations and the language of the promissory note in
conjunction with one another.  The language contained in the
promissory note does not refer to capitalizing "unpaid interest,"
but states that the agency will capitalize interest that is "not
paid when due."  Plaintiff's claim of a breach rests upon her
contention that the inclusion of the phrase "not paid when due"
in the promissory note bars DOE from capitalizing interest that
is not yet "due."  This interpretation, in turn, is based on
plaintiff's argument that "due" means "payment required," so that
the interest accruing between her June payment and June 30 cannot
be "due" before her July payment date.  *See* Pl.'s Mot. at 5-6.

By contrast, defendants argue that "due" means owed as a
debt.  Because interest accrues on plaintiff's loan every day,
defendants contend that the interest accruing between plaintiff's
scheduled payment date and the date that DOE capitalizes interest

is owed as a debt and properly capitalized under the terms of the promissory note.  *See* Defs.' Mot. at 18.  The heart of the dispute between the parties – and the key to interpreting the promissory note and incorporated regulations – therefore rests in large part on the meaning of the word "due."

### C.    The Parties' Proffered Interpretations

Both parties claim that the unambiguous language of the promissory note and incorporated regulations support their proffered interpretation, relying on both the plain meaning of the relevant terms and related portions of the regulations in an attempt to demonstrate that the note should be interpreted in their favor.

#### 1.    Plain Meaning

Plaintiff contends that the regulatory reference to "unpaid" interest and the promissory note's reference to interest "not paid when due" permit DOE to capitalize only "*interest that was not paid as it became due*[,] because 'unpaid' is synonymous with 'due.'"  Pl.'s Mot. at 8 (emphasis in original) (citing *Roget's II, The New Thesaurus, Third Edition* (1995)).  Accordingly, plaintiff asserts that the ordinary meaning of both the regulation and the promissory note allow annual capitalization of interest not paid by a borrower's scheduled due date, but not any interest that accrues between that date and June 30.  Pl.'s Mot. at 9.

Plaintiff also cites *Biggs v. Wilson*, 1 F.3d 1537 (9th Cir. 1993), a case interpreting the Fair Labor Standards Act, in support of her conclusion that "unpaid" interest is interest "not paid when due" on a borrower's scheduled payment date.  *See id.* at 1538-40 (holding that California's failure to issue paychecks promptly when due violated the statute's minimum-wage provision, because the provisions at issue "necessarily assume that wages are due at some point, and thereafter become unpaid").

Defendants contend that *Biggs* is inapplicable in the present case, Defs.' Mot. at 25 n.18, and further claim that plaintiff's reference to the particular Thesaurus definition she cites is selective.  Defs.' Mot. at 26.  As DOE points out, the full Thesaurus definition of "unpaid" cited by plaintiff reads: "Owed as a debt: due, outstanding, owed, owing, payable, receivable, unsettled."  Defs.' Mot. at Ex. D.  Defendants argue that the full definition actually supports the agency's proffered interpretation, that "unpaid" means "[o]wed as a debt." Defs.' Mot. at 26.

DOE further argues that the interchangeability of the words "unpaid" and "due" in the above definition confirms that both terms should be read as a reference to whether a borrower has incurred a liability and not whether the borrower has reached the point in time after which payment would be delinquent.  Def.'s Mot. at 26.  In other words, according to defendants, although

interest accruing after plaintiff's June payment date is not
billed until her July payment date, it is still considered "due"
on June 30.  They further note that this construction of "due" is
consistent with the relevant definition in *Black's Law
Dictionary*, which includes among its definitions for "due":
"Owing or payable; constituting a debt."  Defs.' Mot. at 27
(citing *Black's Law Dictionary* (8th ed. 2004)).[7]

## 2.  Interpretations Based on the Regulatory Framework

Both parties also rely on the regulations themselves to
support their arguments as to when the DOE may capitalize
interest that has accrued but that was not paid when due.

Plaintiff argues that if the regulations permit DOE to
capitalize interest before it is listed and due in a monthly
scheduled payment, then the regulations contradict and nullify
the "not paid when due" language in the promissory note.  Pl.'s
Mot. at 7.  Thus, she contends that the only way to harmonize the
language in the promissory note with the language in the
regulations is to conclude that "unpaid accrued interest" refers

---

[7] *Black's Law Dictionary* also includes as a definition for
"due": "Immediately enforceable," as in "payment is due on
delivery."  *Black's Law Dictionary* (8th ed. 2004).  Defendants
assert that in regards to repayment of a promissory note, under
scheduled payments, "the notion of immediate enforceability is
inapposite because no delivery is involved with a promissory
note."  Defs.' Mot. at 27 n.19.

to interest that has accrued and that was not paid as of the debtor's scheduled monthly payment date.  Pl.'s Mot. at 8.

Plaintiff also argues that her interpretation of "due" comports with the principle that a regulatory section should be interpreted in the context of the remainder of the regulation of which it is a part.  Pl.'s Mot. at 9 (citing *McCarthy v. Bronson*, 500 U.S. 136, 139 (1991)).  For instance, the regulations describe when "unpaid accrued interest" may be capitalized into the debtor's "unpaid principal balance."  34 C.F.R. § 685.202(b)(1).  Plaintiff asserts that within this regulation, the word "unpaid" cannot mean the same thing as "accrued," and indeed, that if "unpaid" meant "accrued," DOE would not have used both words in the phrase "unpaid accrued interest."  Plaintiff further argues that the remaining sections of the regulations also treat the words "unpaid" and "accrued" as having two different meanings.  Pl.'s Mot. at 9-10 (citing other subsections of 34 C.F.R. § 685.202(b) and 34 C.F.R. § 685.102(b)).

Finally, plaintiff points out that nothing in the regulations states that the annual capitalization of accrued interest that was "not paid when due" must occur on June 30.  If DOE capitalized such interest on the date of the debtor's timely June payment, DOE would be in compliance with both the promissory note and regulations and would not be prematurely capitalizing accrued interest.

19

DOE argues, in contrast, that the word "due" does not mean "scheduled payment date" because that interpretation cannot be reconciled with the regulations incorporated in the promissory note. Defs.' Mot. at 17. DOE notes that other sections of the regulations allow interest to be capitalized at times when there are no scheduled payment dates, such as in grace periods, deferments, and forbearances. Defs.' Mot. at 17 (citing 34 C.F.R. § 685.202(b)(2)-(3)). Thus, defendants contend that plaintiff's interpretation of the word "due" would render these other regulation sections meaningless.

DOE also points out that many debtors in a negative-amortization state have scheduled monthly payments that are less than the amount of interest that has accrued on the loan. Def.'s Mot. at 17-28. In that situation, interest accrues between each scheduled payment but is not "due" on the scheduled payment date. Nevertheless, the interest that accrues over the course of the year but is not paid is properly capitalized under the terms of the promissory note and regulations. Accordingly, DOE argues that the proper interpretation of "due" is "owed as a debt" because only such an interpretation harmonizes the terms of the promissory note and regulations.

D.   **The Promissory Note and Incorporated Regulations Are Not Ambiguous**

Upon consideration of the parties' proffered interpretations, the relevant authority, and the record, the

Court concludes that the language of the promissory note and incorporated regulations is not ambiguous and that plaintiff's interpretation is correct.

The parties agree that a student loan constitutes an outstanding debt and that interest accrues on that debt on a daily basis.  But the entire amount of the outstanding debt is not "due" on a daily basis, nor is the interest that accrues each day for the entire lifetime of the loan.  The promissory note specifies that the debtor will repay the loan plus accrued interest in "monthly installments" and that DOE will provide the debtor "with a repayment schedule that identifies [the debtor's] payment amounts and due dates."  Pl.'s Mot. at Ex. 3 (Federal Direct Consolidation Loan Application and Promissory Note).  Debtors are sent monthly statements that indicate the amount due (*i.e.,* listing the amount of interest that has accrued) as well as the scheduled monthly payment.  *See* Pl.'s Mot. at Ex. 12 (plaintiff's monthly billing statements).

For a typical loan, the amount due is the same as the monthly scheduled payment, which covers the accrued interest on the principal balance and a partial payment of the principal.  It is only in the unique situation of the ICRP that the amount due is not necessarily the same as the scheduled monthly payment.  In that situation, the amount of interest that has accrued on the loan is due each month, but the parties have a separate

contractual agreement not to require payment of the full amount that is due.  If the debtor does pay the entire amount due, however, which the debtor has the right to do (there is no penalty for prepayments), then no further amount of money is "due" until the next scheduled monthly payment.  This is true even though interest accrues on the outstanding principal balance on a daily basis, starting again the day after each monthly scheduled payment is processed.

This interpretation, that accrued interest is only "due" on each monthly scheduled payment date – whether or not the scheduled payment amount covers everything that is due – is in harmony with the rest of the language of the promissory note.  The note specifies that DOE will provide the debtor with a repayment schedule, payment amounts, and "due" dates.  Pl.'s Mot. at Ex. 3.  In addition, the note provides for "acceleration" of the entire amount of the loan if the debtor defaults.  Pl.'s Mot. at Ex. 3.  The acceleration clause therefore makes clear that the entire amount of the debtor's outstanding debt is not "due" on a daily basis.  Rather, the entire amount of the principal and all accrued interest can only become "due" all at once if the debtor defaults on the loan.  Pl.'s Mot. at Ex. 3.

This interpretation is also in harmony with the regulations, which spell out how the DOE capitalizes "unpaid accrued interest," but do not define that phrase.  Insofar as this phrase

becomes a part of the promissory note itself, it must be defined in the context of the other language in the note.  The regulations do make clear, however, that the words "unpaid" and "accrued" must mean two different things; otherwise, both words need not have been included in the regulations.  No one disputes that interest that accrues on the principal balance between monthly payments but is not paid by the debtor in her monthly payment is "unpaid accrued interest" that can be capitalized annually.  Indeed, the interest that accrues each month is "due" even though the debtor and DOE have a separate agreement that permits the debtor to pay less than what is due.  This does not mean, however, that DOE can choose any date of the year to capitalize interest that, while it is "unpaid" and has "accrued," is not "due" under the debtor's repayment schedule issued by DOE.

If any ambiguity exists in the promissory note or regulations with regard to how interest is capitalized, the ambiguity is created by the fact that DOE has chosen a date to capitalize interest that is arbitrary with respect to the debtor. At the hearing, defendants indicated that June 30 is the date the DOE capitalizes interest because July 1 is the date the Secretary adjusts interest rates for variable interest loans.  Tr. at 37. June 30 might make sense for DOE's administrative processes, but it is not tied in any way to the debtor's individual loan.  The fact that this date is arbitrary with regard to the individual

debtor is underscored by the fact that (1) similarly situated debtors experience different levels of capitalization based solely on how much time passes between their payment due date and June 30, despite the fact that the debtor does not initially choose her payment date; and (2) it is a virtual impossibility for a debtor in plaintiff's situation to avoid some amount of interest being capitalized each year despite every effort to pay the entire amount of interest that has accrued.  Moreover, although the amount of damages that this creates might be nominal with respect to some debtors, there is no dispute that the annual capitalization of interest between a debtor's June payment and June 30 increases the overall cost of the loan to the debtor. Indeed, the promissory note itself warns the debtor that capitalization will increase the overall cost of the loan to the debtor.  Pl.'s Mot. at Ex. 3.

### E.  Plaintiff's Interpretation of the Promissory Note is Supported by Authority

The fact that plaintiff and DOE can articulate differing interpretations of the language in the promissory note and the incorporated regulations does not mean that the language is ambiguous.  *See Segar*, 508 at 22.  In *Segar*, for instance, the D.C. Circuit held that the language in a footnote to the agreement must be interpreted within the context of the entire agreement, thereby holding that the language of the agreement was not ambiguous.  *Id.* at 23-24.

24

Similarly, the Court must interpret the language in the regulations within the context of the promissory note into which the regulations were incorporated.  If the Court concluded that DOE could capitalize interest that accrues between a debtor's June payment and June 30, the Court would essentially be writing out of the promissory note the language that allows DOE to capitalize accrued interest that is "not paid when due."  That phrase cannot be interpreted to simply mean "owed as a debt" or "accrued," because such an interpretation would render the phrase meaningless and the sentence nonsensical.  The sentence would essentially read "interest that accrues but is not paid when accrued."  Thus, although the dictionary definition of the word "due" may include "owed as a debt," in the context of this promissory note, the plain language of the note calls for capitalization of interest that is not paid by the scheduled monthly payment date; it does not call for capitalization of interest merely because it has accrued since the debtor sent in her timely monthly payment that covered all interest that had accrued to date.

In sum, the only interpretation of "due" and "not paid when due" that harmonizes the language of the regulations and makes sense within the context of the entire promissory note is plaintiff's interpretation.  The promissory note allows DOE to capitalize interest on an annual basis if the debtor has not paid

the entire amount of interest that has accrued within the course
of the year's scheduled monthly payments.  DOE's current practice
of capitalizing interest that accrues between a debtor's June
payment and June 30 is not authorized by the promissory note or
the incorporated regulations and is therefore inappropriate.

### F.   The Court Lacks Jurisdiction To Grant Injunctive and Declaratory Relief

Defendants argue that because the Court's jurisdiction in
this case is premised on the Little Tucker Act, 28 U.S.C.
§ 1346(a)(2), the Court lacks the authority to grant declaratory
or injunctive relief.  Therefore, according to defendants, DOE is
entitled to summary judgment on all of plaintiff's non-monetary
claims.  This Court agrees.

The Tucker Act grants jurisdiction to the U.S. Court of
Federal Claims over, *inter alia*, "any claim against the United
States founded . . . upon any express or implied contract with
the United States."  28 U.S.C. § 1491(a)(1).  Jurisdiction under
the Tucker Act is limited to claims for monetary relief,
*Richardson v. Morris*, 409 U.S. 464, 465 (1973) (per curiam), with
the following narrow exception:

> To provide an entire remedy and to complete the relief
> afforded by the judgment, the court may, as an incident
> of and collateral to any such judgment, issue orders
> directing restoration to office or position, placement
> in appropriate duty or retirement status, and
> correction of applicable records, and such orders may
> be issued to any appropriate official of the United
> States.

26

*Id.* § 1491(a)(2).  The Little Tucker Act, in turn, "grants concurrent Tucker Act jurisdiction to district courts where the amount in controversy is less than $10,000." *Cartwright Int'l Van Lines, Inc. v. Doan*, 525 F. Supp. 2d 187, 194 (D.D.C. 2007) (citing 28 U.S.C. § 1346(a)(2)); *see also Richardson*, 409 U.S. at 466 (noting that § 1346(a)(2) "did no more than authorize the District Court to sit as a court of claims and . . . the authority thus given to adjudicate claims against the United States does not extend to any suit which could not be maintained in the Court of Claims" (quoting *United States v. Sherwood*, 312 U.S. 584, 591 (1941))).

Plaintiff argues that her non-monetary claims are not barred under the Little Tucker Act because of the exception granting "subject matter jurisdiction over both monetary claims and 'any incidental relief in equity in aid of such a judgment.'"  Pl.'s Reply at 8 (quoting *Blanc v. United States*, 244 F.2d 708, 709-10 (2d Cir. 1957)).  *But see Blanc*, 244 F.2d at 709 (concluding that, with respect to the claims for equitable relief in that case, Tucker Act jurisdiction was lacking).  Section 1491(a)(2), however, clearly delineates the situations under which such relief "incident of and collateral to" a monetary judgment may be granted.  The relief requested by plaintiff in this case plainly does not qualify under the narrow types of equitable relief permitted by the Tucker Act (i.e., the issuance of "orders

directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records"), and her non-monetary claims must therefore be dismissed from the action. *See Greenhill v. Spellings*, 482 F.3d 569, 576 (D.C. Cir. 2007) (explaining that § 1491(a)(2) has been "narrowly construed" and that the D.C. Circuit has "found very sharp constraints on district court jurisdiction to grant equitable relief on contract claims against the government"); *cf. Transohio Sav. Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 608 (D.C. Cir. 1992) ("[T]he [Tucker] Act has long been construed as waiving sovereign immunity only for claims seeking damages, and not for those seeking equitable relief (except in very limited circumstances)." (internal quotation marks omitted)); *Sharp v. Weinberger*, 798 F.2d 1521, 1523 (D.C. Cir. 1986) (noting that "the Tucker Act and Little Tucker Act impliedly forbid [claims for declaratory and injunctive] relief").

## IV. Conclusion

For the reasons stated above, this Court concludes that plaintiff is entitled to summary judgment on her claim that defendants are liable for damages resulting from their breach of the promissory note. Defendants, however, are entitled to summary judgment as to plaintiff's claims for declaratory and injunctive relief. Accordingly, the parties' cross-motions are

28

**GRANTED IN PART AND DENIED IN PART.** An appropriate Order

accompanies this Memorandum Opinion.


**Signed:**      **Emmet G. Sullivan**
            **United States District Judge**
            **October 5, 2009**